IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | CHAPTER 13 |
| DOMINIC JOSEPH DECANTIS; AKA DOMINIC DECANTIS; AKA DOMINIC J DECANTIS, | CASE NO. 5-22-bk-01826-MJC |
| Debtor | |

### AFFIDAVIT OF CARLO SABATINI IN SUPPORT OF FEE APPLICATION[1]

1.      The Trustee in this case provided me with a report titled "Legal Claims Paid to Debtor Attorney Carlo Sabatini" (hereinafter "the Sabatini Report").

2.      The report describes the cases that populate the Sabatini Report as: "Legal claims of Debtor Attorney, and Plan was completed, and Petition date is after September 30, 2013 and through September 11, 2024 @ 9:49 am."

3.      The Sabatini Report also contains this notation: "Note: 'Attorney Fees Paid' column shows only attorney fees paid through the Trustee.  Direct payments from the Debtor are excluded."

4.      The Trustee in this case provided me with a report titled "Legal Claims Paid to Debtor Attorney Excluding Carlo Sabatini" (hereinafter "the Other Attorney Report")

5.      The description for the Other Attorney Report is the same as the Sabatini Report, except that the ending time on the Other Attorney Report is a few minutes later.

6.      The two reports each provide four pieces of data for each case on the report: the case number; the total amount of *filed* unsecured claims; the total amount *paid* to unsecured claims; and the total amount of attorney fees paid through the Trustee.

---

[1] This Affidavit contains little additional information other than what is already in the brief being contemporaneously filed, and the Court likely will not gain much from reading this affidavit as a stand-alone document.

7.      I used the information on the Sabatini Report to calculate for each of my cases on the report the amount of attorney fees and unsecured claims that the trustee paid in each case expressed as a percentage of the unsecured claims.

8.      Thus, the applicable formula used for the calculation is expressed as follows:

$$\frac{\text{(Total Unsecured Paid + Attorney Fees Paid)}}{\text{Total Unsecured}} = \text{Percentage paid}$$

9.      After completing that calculation for each case, I then determined the median amount the Trustee paid in my cases during the period for which data was provided.

10.     That median amount was 17.8%.

11.     That median case was case number 20-02046.

12.     The Sabatini Report shows the following information for that case:

| Total Unsecured | Total Unsecured Paid | Attorney Fees Paid |
|---|---|---|
| $42,823.33 | $2,196.06 | $5,425.72 |

13.     This information was entered into the formula in ¶ 8 as follows:

$$\frac{\$2,196.06 + \$5,425.72}{\$42,823.33} = 17.8\%$$

14.     I then determined the median amount the Trustee paid in each case on the Other Attorney Report.

15.     The median amount paid by the Trustee in cases filed by attorneys other than me during the same period was 36.43%.

16.     The Other Attorney report includes a $10,000,000 unsecured claim that was filed in case 18-00593.

2

17.     As of October 4, 2024, www.trustee13.com showed that the claim referenced in the previous paragraph was actually entered in the Trustee's system as a $1,000,000,000 claim.

18.     When that claim is included in the Other Attorney Report, the "average" amount of unsecured claims filed per case during this period is $233,535.

19.     Once that claim is removed from the calculation, the case average drops to less than $50,000.

20.     For the Chapter 13 cases filed by my office that closed during the 5-year period ending on December 31, 2020, only 5% ended with a dismissal instead of a discharge.

21.     This statistic was calculated using a report that I believe I obtained from the office of the Clerk of this Court in 2021.

22.     From my own review of my own records, it appears that none of the cases that closed in 2021, 2022 or 2023 were dismissed rather than discharged.

23.     Of the cases filed in this district, and which then closed during the 5-year period ending on December 31, 2020, 45% ended with a dismissal instead of a discharge. I calculated this statistic using the reports available at https://www.uscourts.gov/statistics-reports/analysis-reports/bankruptcy-abuse-prevention-and-consumer-protection-act-report, and specifically Publication Table Number BAPCPA 6 for each of the five years in the period.

24.     Part 2 of Schedule J is where a debtor is required to estimate ongoing monthly expenses.

25.     That part has 35 separate lines for different categories of expenses.

26.     The budget that Debtor in this case completed for Counsel contained 161 lines for different categories of expenses. That information was then used to prepare the 35 lines that are required for Schedule J.

27.     In Counsel's experience, the more granular the information that is requested from a debtor, the more comprehensive it is likely to be.

28.     The budget that Debtor in this case completed for Counsel identified expenses for vehicle registration, vehicle inspections, and driver's license renewals totaling $131.63/year.

29.     Here, my office's verification process for Debtor's budget caused the amount budgeted for cable to be increased from Debtor's original estimate of $88/month to a documented amount of $93.25/month, and Debtor's internet expense to be increased from an estimated amount of $87/month to a documented amount of $110.79/month.

30.     I follow the same detail-oriented procedures in every case, because I believe that the net result benefits the client.

31.     These procedures are followed even if the plan does not have enough funds to pay for the time that such additional detail requires.

32.     In cases such as this one where the plan funding is inadequate, the fee application almost always waives excess fees.

33.     The Trustee settled his objection to the fee application in this case.

34.     As part of that settlement, the parties agreed that Counsel would charge for only six hours of paralegal time and two hours of attorney time for preparing the petition, schedules and plan.

35.     The additional discount represented on the settlement document to effectuate that compromise amounts to $2,753.00.

36.     Dkt. Entry 57 is the adjusted bill that reflects the settlement with the Trustee.

37.    That document contains color coding which explains the resolutions of the various line items that the Trustee had objected to. That color coding is described in an email from Sabatini to McHale which was sent on July 3, 2024.

38.    In preparing the brief being contemporaneously filed with this affidavit, Counsel discovered that the paralegal time which was retained rather than discounted amounted to 6.5 hours rather than just 6 hours.

39.    *In re Sumski*, 17-bk-02507, Dkt. Entries 39-2 and 40 is an example of my practice of doing work even when there is no prospect of being paid. The *Sumski* fee application was filed less than six months into a five-year case where the total base plan was only $9,000.00. Over $10,000 of the Court-ordered fees were written off after discharge. Additionally, I never filed an application to be paid for all of the additional work done during the last 54 months of the case.

40.    In *In re Barker*, 5:20-bk-02896, Dkt. Entries 34-2 and 37, Judge Henry Van Eck approved without reduction $18,437 in fees for pre-confirmation services, including 10.1 hours of paralegal time and 6.4 hours of attorney time preparing the budget, schedules, or the plan, and an additional 8.8 hours of time working on checklists.

41.    In *In re DeSanto*, 18-bk-01167, Dkt. Entries 30-2 and 31, Judge Robert Opel, II approved without reduction $11,007.50 in fees for services through the day after confirmation, including 24.5 hours of paralegal time and 4.5 hours of attorney time preparing schedules or the plan, processing checklists, and preparing for and meeting with the client and filing the case.

42.    In *In re Sumski*, 17-bk-02507, Dkt. Entries 39-2 and 40, Judge John Thomas approved without reduction $20,517.59 in fees for services through the day after confirmation, including 44.2 hours of paralegal time and 2.6 hours of attorney time for work related to preparing schedules or the plan, meeting with the clients, and filing the case.

5

43.    At the hearing, the Court specifically questioned three entries of attorney time:

a.   1.7 hours on June 23, 2022,

b.   .6 hours on June 29, 2022, and

c.   1.7 hours on July 1, 2022.

44.    I have reviewed my files but have been unable to determine precisely what aspect of schedule preparation or plan review was being conducted on those dates.

45.    When these time entries were created, I was unaware that the Court expected greater detail.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 7, 2024

s/ Carlo Sabatini
Carlo Sabatini