# No. 3:25-cv-01927-KM

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

_____

**DOMINIC DECANTIS,**
*Appellant*,


v.


**JACK ZAHAROPOULOS.,**
*Appellee.*

_____

On Appeal from the United States Bankruptcy Court
for the Middle District of Pennsylvania
in Case No. 5:22-bk-01826-MJC

---

### APPELLANT'S APPENDIX

---

Carlo Sabatini
SABATINI LAW FIRM, LLC
216 N. Blakely St.
Dunmore, PA 18512
(570) 341-9000
carlo@bankruptcypa.com

*Attorney for Appellant*
*Dominic DeCantis*


February 25, 2026

TABLE OF CONTENTS

1.  Petition and Schedules ..........................................................................AA 001

2.  Chapter 13 Plan......................................................................................AA 057

3.  Fee Application .......................................................................................AA 064

4.  Trustee's Objection to Fee Application............................................AA 087

5.  Proceeding Memo for Hearing Scheduled on 5/30/2024....................AA 105

6.  Transcript of Hearing held 5/30/2024..............................................AA 107

7.  Stipulation Resolving Trustee's Objection to Fee Application.............AA 111

8.  Amended Proposed Order on Fee Application............................................AA 112

9.  Proceeding Memo for Hearing Scheduled on 8/07/2024....................AA 113

10. Transcript of Hearing held 8/07/2024..............................................AA 115

11. Debtor's Post-Hearing Brief in Support of Fee Application..................AA 152

12. Affidavit of Carlo Sabatini in Support of Fee Application .....................AA 198

13. Order on Fee Application ......................................................................AA 204

14. Notice of Appeal...................................................................................AA 209

15. Settlement Proposal..............................................................................AA 216

**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

MIDDLE DISTRICT OF PENNSYLVANIA, WILKES-BARRE DIVISION

Case number *(if known)* _____

Chapter you are filing under:

☐ Chapter 7
☐ Chapter 11
☐ Chapter 12
■ Chapter 13

☐ Check if this is an amended filing

# Official Form 101
# Voluntary Petition for Individuals Filing for Bankruptcy

06/22

The bankruptcy forms use *you* and *Debtor 1* to refer to a debtor filing alone. A married couple may file a bankruptcy case together—called a *joint case*—and in joint cases, these forms use *you* to ask for information from both debtors. For example, if a form asks, "Do you own a car," the answer would be *yes* if either debtor owns a car. When information is needed about the spouses separately, the form uses *Debtor 1* and *Debtor 2* to distinguish between them. In joint cases, one of the spouses must report information as *Debtor 1* and the other as *Debtor 2*. The same person must be *Debtor 1* in all of the forms.

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

| Part 1: | Identify Yourself |
|---|---|

| | | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|---|
| 1. | **Your full name**<br><br>Write the name that is on your government-issued picture identification (for example, your driver's license or passport).<br><br>Bring your picture identification to your meeting with the trustee. | Dominic<br>First name<br><br>Joseph<br>Middle name<br><br>DeCantis<br>Last name and Suffix (Sr., Jr., II, III) | _____<br>First name<br><br>_____<br>Middle name<br><br>_____<br>Last name and Suffix (Sr., Jr., II, III) |
| 2. | **All other names you have used in the last 8 years**<br><br>Include your married or maiden names. | Dominic DeCantis<br>Dominic J DeCantis | |
| 3. | **Only the last 4 digits of your Social Security number or federal Individual Taxpayer Identification number (ITIN)** | xxx-xx-6719 | |

Document Ref: ZPC4B-SHGYV-BVCPR-E2HXF

AA 001

Page 1 of 55

Debtor 1    **DeCantis, Dominic Joseph**                                    Case number *(if known)*

| About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|

**4.** Any business names and Employer Identification Numbers (EIN) you have used in the last 8 years

Include trade names and *doing business as* names

■ I have not used any business name or EINs.

☐ I have not used any business name or EINs.

Business name(s)

Business name(s)

EIN

EIN

**5.** Where you live

**830 N Main Ave**
**Scranton, PA 18504-1517**
Number, Street, City, State & ZIP Code

**Lackawanna**
County

**If your mailing address is different from the one above, fill it in here.** Note that the court will send any notices to you at this mailing address.

Number, P.O. Box, Street, City, State & ZIP Code

If Debtor 2 lives at a different address:

Number, Street, City, State & ZIP Code

County

**If Debtor 2's mailing address is different from yours, fill it in here.** Note that the court will send any notices to this mailing address.

Number, P.O. Box, Street, City, State & ZIP Code

**6.** Why you are choosing *this district* to file for bankruptcy

*Check one:*

■ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

☐ I have another reason.
Explain. (See 28 U.S.C. § 1408.)

*Check one:*

☐ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

■ I have another reason.
Explain. (See 28 U.S.C. § 1408.)

AA 002
Page 2 of 55

Debtor 1  **DeCantis, Dominic Joseph** _____   Case number _(if known)_ _____

| Part 2: | Tell the Court About Your Bankruptcy Case |
|---|---|

**7.** **The chapter of the Bankruptcy Code you are choosing to file under**

_Check one._ (For a brief description of each, see _Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy (Form 2010))._ Also, go to the top of page 1 and check the appropriate box.

☐ Chapter 7
☐ Chapter 11
☐ Chapter 12
☑ Chapter 13

**8.** **How you will pay the fee**

☑ **I will pay the entire fee when I file my petition.** Please check with the clerk's office in your local court for more details about how you may pay. Typically, if you are paying the fee yourself, you may pay with cash, cashier's check, or money order. If your attorney is submitting your payment on your behalf, your attorney may pay with a credit card or check with a pre-printed address.

☐ **I need to pay the fee in installments.** If you choose this option, sign and attach the _Application for Individuals to Pay The Filing Fee in Installments_ (Official Form 103A).

☐ **I request that my fee be waived** (You may request this option only if you are filing for Chapter 7. By law, a judge may, but is not required to, waive your fee, and may do so only if your income is less than 150% of the official poverty line that applies to your family size and you are unable to pay the fee in installments. If you choose this option, you must fill out the _Application to Have the Chapter 7 Filing Fee Waived_ (Official Form 103B) and file it with your petition.

**9.** **Have you filed for bankruptcy within the last 8 years?**

☑ No.
☐ Yes.

| District | _____ | When | _____ | Case number | _____ |
|---|---|---|---|---|---|
| District | _____ | When | _____ | Case number | _____ |
| District | _____ | When | _____ | Case number | _____ |

**10.** **Are any bankruptcy cases pending or being filed by a spouse who is not filing this case with you, or by a business partner, or by an affiliate?**

☑ No
☐ Yes.

| Debtor | _____ | | | Relationship to you | _____ |
|---|---|---|---|---|---|
| District | _____ | When | _____ | Case number, if known | _____ |
| Debtor | _____ | | | Relationship to you | _____ |
| District | _____ | When | _____ | Case number, if known | _____ |

**11.** **Do you rent your residence?**

☑ No.   Go to line 12.

☐ Yes.   Has your landlord obtained an eviction judgment against you?

☐ No. Go to line 12.

☐ Yes. Fill out _Initial Statement About an Eviction Judgment Against You_ (Form 101A) and file it as part of this bankruptcy petition.

Official Form 101   Voluntary Petition for Individuals Filing for Bankruptcy   page 3

Case 5:22-bk-01826-MJC   Doc 1   Filed 09/22/22   Entered 09/22/22 20:50:41   Desc   page 3
Main Document   Page 3 of 56

Document Ref: ZPC4B-SHGYV-BVCPR-E2HXF

AA 003

Page 3 of 55

Debtor 1    **DeCantis, Dominic Joseph**                                          Case number *(if known)* _____

| **Part 3:** | **Report About Any Businesses You Own as a Sole Proprietor** |

**12. Are you a sole proprietor of any full- or part-time business?**

☑ No.    Go to Part 4.

☐ Yes.    Name and location of business

A sole proprietorship is a business you operate as an individual, and is not a separate legal entity such as a corporation, partnership, or LLC.

_____
Name of business, if any

If you have more than one sole proprietorship, use a separate sheet and attach it to this petition.

_____
Number, Street, City, State & ZIP Code

*Check the appropriate box to describe your business:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ None of the above

**13. Are you filing under Chapter 11 of the Bankruptcy Code, and are you a** *small business debtor* **or a debtor as defined by 11 U.S. C. § 1182(1)?**
For a definition of *small business debtor,* see 11 U.S.C. § 101(51D).

*If you are filing under Chapter 11, the court must know whether you are a small business debtor or a debtor choosing to proceed under Subchapter V so that it can set appropriate deadlines.* If you indicate that you are a small business debtor or you are choosing to proceed under Subchapter V, you must attach your most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☑ No.    I am not filing under Chapter 11.

☐ No.    I am filing under Chapter 11, but I am NOT a small business debtor according to the definition in the Bankruptcy Code.

☐ Yes.    I am filing under Chapter 11, I am a small business debtor according to the definition in the Bankruptcy Code, and I do not choose to proceed under Subchapter V of Chapter 11.

☐ Yes.    I am filing under Chapter 11, I am a debtor according to the definition in § 1182(1) of the Bankruptcy Code, and I choose to proceed under Subchapter V of Chapter 11.

| **Part 4:** | **Report if You Own or Have Any Hazardous Property or Any Property That Needs Immediate Attention** |

**14. Do you own or have any property that poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety? Or do you own any property that needs immediate attention?**

*For example, do you own perishable goods, or livestock that must be fed, or a building that needs urgent repairs?*

☑ No.

☐ Yes.

What is the hazard?    _____

If immediate attention is needed, why is it needed?    _____

Where is the property?    _____

_____
Number, Street, City, State & Zip Code

**AA 004**

| Debtor 1 | **DeCantis, Dominic Joseph** | Case number *(if known)* |
|---|---|---|

| **Part 5:** | Explain Your Efforts to Receive a Briefing About Credit Counseling |
|---|---|

**15. Tell the court whether you have received a briefing about credit counseling.**

The law requires that you receive a briefing about credit counseling before you file for bankruptcy. You must truthfully check one of the following choices. If you cannot do so, you are not eligible to file.

If you file anyway, the court can dismiss your case, you will lose whatever filing fee you paid, and your creditors can begin collection activities again.

| **About Debtor 1:** | **About Debtor 2 (Spouse Only in a Joint Case):** |
|---|---|
| *You must check one:* | *You must check one:* |
| ■ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**<br><br>Attach a copy of the certificate and the payment plan, if any, that you developed with the agency. | ☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**<br><br>Attach a copy of the certificate and the payment plan, if any, that you developed with the agency. |
| ☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**<br><br>Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any. | ☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**<br><br>Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any. |
| ☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**<br><br>To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.<br><br>Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy. If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.<br><br>Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days. | ☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**<br><br>To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.<br><br>Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy.<br><br>If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.<br><br>Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days. |
| ☐ **I am not required to receive a briefing about credit counseling because of:** | ☐ **I am not required to receive a briefing about credit counseling because of:** |
| ☐ **Incapacity.** I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances. | ☐ **Incapacity.** I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances. |
| ☐ **Disability.** My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so. | ☐ **Disability.** My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so. |
| ☐ **Active duty.** I am currently on active military duty in a military combat zone. | ☐ **Active duty.** I am currently on active military duty in a military combat zone. |
| If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver credit counseling with the court. | If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court. |

AA 005

page 5

Document Ref: ZPC4B-SHGYV-BVCPR-E2HXF

Page 5 of 55

Debtor 1  **DeCantis, Dominic Joseph**                                   Case number *(if known)*

---

| **Part 6:** | **Answer These Questions for Reporting Purposes** |

**16. What kind of debts do you have?**

16a.  **Are your debts primarily consumer debts?** *Consumer debts* are defined in 11 U.S.C.§ 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

☐ No. Go to line 16b.

■ Yes. Go to line 17.

16b.  **Are your debts primarily business debts?** *Business debts* are debts that you incurred to obtain money for a business or investment or through the operation of the business or investment.

☐ No. Go to line 16c.

☐ Yes. Go to line 17.

16c.  State the type of debts you owe that are not consumer debts or business debts

---

**17. Are you filing under Chapter 7?**

■ No.  I am not filing under Chapter 7. Go to line 18.

Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available for distribution to unsecured creditors?

☐ Yes.  I am filing under Chapter 7. Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available to distribute to unsecured creditors?

☐ No

☐ Yes

---

**18. How many Creditors do you estimate that you owe?**

■ 1-49
☐ 50-99
☐ 100-199
☐ 200-999

☐ 1,000-5,000
☐ 5001-10,000
☐ 10,001-25,000

☐ 25,001-50,000
☐ 50,001-100,000
☐ More than100,000

---

**19. How much do you estimate your assets to be worth?**

☐ $0 - $50,000
☐ $50,001 - $100,000
■ $100,001 - $500,000
☐ $500,001 - $1 million

☐ $1,000,001 - $10 million
☐ $10,000,001 - $50 million
☐ $50,000,001 - $100 million
☐ $100,000,001 - $500 million

☐ $500,000,001 - $1 billion
☐ $1,000,000,001 - $10 billion
☐ $10,000,000,001 - $50 billion
☐ More than $50 billion

---

**20. How much do you estimate your liabilities to be?**

☐ $0 - $50,000
☐ $50,001 - $100,000
■ $100,001 - $500,000
☐ $500,001 - $1 million

☐ $1,000,001 - $10 million
☐ $10,000,001 - $50 million
☐ $50,000,001 - $100 million
☐ $100,000,001 - $500 million

☐ $500,000,001 - $1 billion
☐ $1,000,000,001 - $10 billion
☐ $10,000,000,001 - $50 billion
☐ More than $50 billion

---

| **Part 7:** | **Sign Below** |

**For you**

I have examined this petition, and I declare under penalty of perjury that the information provided is true and correct.

If I have chosen to file under Chapter 7, I am aware that I may proceed, if eligible, under Chapter 7, 11,12, or 13 of title 11, United States Code. I understand the relief available under each chapter, and I choose to proceed under Chapter 7.

If no attorney represents me and I did not pay or agree to pay someone who is not an attorney to help me fill out this document, I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I understand making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**Dominic Joseph DeCantis**
Signature of Debtor 1

Signature of Debtor 2

Executed on  **September 22, 2022**
MM / DD / YYYY

Executed on
MM / DD / YYYY

---

Official Form 101    Voluntary Petition for Individuals Filing for Bankruptcy    page 6

Case 5:22-bk-01826-MJC  Doc 1  Filed 09/22/22  Entered 09/22/22 20:50:41  Desc
Main Document    Page 6 of 56

AA 006
page 6
Page 6 of 55

Document Ref: ZPC4B-SHGYV-BVCPR-E2HXF

Debtor 1    **DeCantis, Dominic Joseph**                                  Case number *(if known)* _____

---

**For your attorney, if you are represented by one**

**If you are not represented by an attorney, you do not need to file this page.**

I, the attorney for the debtor(s) named in this petition, declare that I have informed the debtor(s) about eligibility to proceed under Chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each chapter for which the person is eligible. I also certify that I have delivered to the debtor(s) the notice required by 11 U.S.C. § 342(b) and, in a case in which § 707(b)(4)(D) applies, certify that I have no knowledge after an inquiry that the information in the schedules filed with the petition is incorrect.

*Carlo Sabatini*                                  Date    **September 22, 2022**
Signature of Attorney for Debtor                                  MM / DD / YYYY

**Carlo Sabatini**
Printed name

**Sabatini Freeman, LLC**
Firm name

**216 N Blakely St**
**Dunmore, PA 18512-1904**
Number, Street, City, State & ZIP Code

Contact phone    **(570) 341-9000**          Email address    **carlo@bankruptcypa.com**

**83831 PA**
Bar number & State

---

Document Ref: ZPC4B-SHGYV-BVCPR-E2HXF

**AA 007**

Page 7 of 55

Certificate Number: 20102-PAM-CC-036622896



20102-PAM-CC-036622896

# CERTIFICATE OF COUNSELING

I CERTIFY that on <u>June 16, 2022</u>, at <u>9:21</u> o'clock <u>PM EDT</u>, <u>Dominic DeCantis</u> received from <u>1stopbk.com Inc.</u>, an agency approved pursuant to 11 U.S.C. 111 to provide credit counseling in the <u>Middle District of Pennsylvania</u>, an individual [or group] briefing that complied with the provisions of 11 U.S.C. 109(h) and 111.

A debt repayment plan <u>was not prepared</u>. If a debt repayment plan was prepared, a copy of the debt repayment plan is attached to this certificate.

This counseling session was conducted <u>by internet</u>.

Date:    <u>June 16, 2022</u>          By:    <u>/s/Marcy Walter</u>

Name:    <u>Marcy Walter</u>

Title:    <u>President-Manager</u>

\* Individuals who wish to file a bankruptcy case under title 11 of the United States Bankruptcy Code are required to file with the United States Bankruptcy Court a completed certificate of counseling from the nonprofit budget and credit counseling agency that provided the individual the counseling services and a copy of the debt repayment plan, if any, developed through the credit counseling agency. *See* 11 U.S.C. 109(h) and 521(b).

Document Ref: ZPC4B-SHGYV-BVCPR-E2HXF

| Fill in this information to identify your case: | |
|---|---|
| Debtor 1 | **Dominic Joseph DeCantis** |
| | First Name          Middle Name          Last Name |
| Debtor 2 (Spouse if, filing) | |
| | First Name          Middle Name          Last Name |
| United States Bankruptcy Court for the: | MIDDLE DISTRICT OF PENNSYLVANIA, WILKES-BARRE DIVISION |
| Case number (if known) | |

☐ Check if this is an amended filing

## Official Form 106Sum

## Summary of Your Assets and Liabilities and Certain Statistical Information     12/15

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Fill out all of your schedules first; then complete the information on this form. If you are filing amended schedules after you file your original forms, you must fill out a new** *Summary* **and check the box at the top of this page.**

### Part 1:    Summarize Your Assets

| | **Your assets** Value of what you own |
|---|---|

1.  **Schedule A/B: Property** (Official Form 106A/B)
    1a. Copy line 55, Total real estate, from Schedule A/B.................................................... $ **184,000.00**

    1b. Copy line 62, Total personal property, from Schedule A/B............................................ $ **15,987.24**

    1c. Copy line 63, Total of all property on Schedule A/B.................................................... $ **199,987.24**

### Part 2:    Summarize Your Liabilities

| | **Your liabilities** Amount you owe |
|---|---|

2.  *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 106D)
    2a. Copy the total you listed in Column A, *Amount of claim,* at the bottom of the last page of Part 1 of *Schedule D...* $ **92,224.42**

3.  *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 106E/F)
    3a. Copy the total claims from Part 1 (priority unsecured claims) from line 6e of *Schedule E/F*................... $ **0.00**

    3b. Copy the total claims from Part 2 (nonpriority unsecured claims) from line 6j of *Schedule E/F*............ $ **20,159.35**

    **Your total liabilities** $ **112,383.77**

### Part 3:    Summarize Your Income and Expenses

4.  *Schedule I: Your Income* (Official Form 106I)
    Copy your combined monthly income from line 12 of *Schedule I*..................................... $ **4,543.42**

5.  *Schedule J: Your Expenses* (Official Form 106J)
    Copy your monthly expenses from line 22c of *Schedule J*........................................... $ **4,119.36**

### Part 4:    Answer These Questions for Administrative and Statistical Records

6.  **Are you filing for bankruptcy under Chapters 7, 11, or 13?**

    ☐ No. You have nothing to report on this part of the form. Check this box and submit this form to the court with your other schedules.

    ☑ Yes

7.  **What kind of debt do you have?**

    ☑ **Your debts are primarily consumer debts.** *Consumer debts* are those "incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). Fill out lines 8-9g for statistical purposes. 28 U.S.C § 159.

    ☐ **Your debts are not primarily consumer debts.** You have nothing to report on this part of the form. *Check this box* and submit this form to the court with your other schedules.

Official Form 106Sum          Summary of Your Assets and Liabilities and Certain Statistical Information          page 1 of 2

Debtor 1   **DeCantis, Dominic Joseph**                                    Case number *(if known)* _____

8.  **From the** *Statement of Your Current Monthly Income*: Copy your total current monthly income from Official Form 122A-1 Line 11; **OR**, Form 122B Line 11; **OR**, Form 122C-1 Line 14.         $ _____ 4,257.20

9.  **Copy the following special categories of claims from Part 4, line 6 of** *Schedule E/F*:

| From Part 4 on *Schedule E/F*, copy the following: | Total claim |
|---|---|
| 9a. Domestic support obligations (Copy line 6a.) | $ _____ 0.00 |
| 9b. Taxes and certain other debts you owe the government. (Copy line 6b.) | $ _____ 0.00 |
| 9c. Claims for death or personal injury while you were intoxicated. (Copy line 6c.) | $ _____ 0.00 |
| 9d. Student loans. (Copy line 6f.) | $ _____ 0.00 |
| 9e. Obligations arising out of a separation agreement or divorce that you did not report as priority claims. (Copy line 6g.) | $ _____ 0.00 |
| 9f. Debts to pension or profit-sharing plans, and other similar debts. (Copy line 6h.) | +$ _____ 0.00 |
| 9g. **Total.** Add lines 9a through 9f. | $ _____ 0.00 |

Official Form 106Sum          **Summary of Your Assets and Liabilities and Certain Statistical Information**          page 2 of 2

Software Copyright (c) 2022 CINGroup - www.cincompass.com

AA 010

Document Ref: ZPC4B-SHGYV-BVCPR-E2HXF

Page 10 of 55

**Fill in this information to identify your case and this filing:**

| | |
|---|---|
| Debtor 1 | **Dominic Joseph DeCantis** |
| | First Name    Middle Name    Last Name |
| Debtor 2 | |
| (Spouse, if filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court for the: | MIDDLE DISTRICT OF PENNSYLVANIA, WILKES-BARRE DIVISION |
| Case number | |

☐ Check if this is an amended filing

## Official Form 106A/B
# Schedule A/B: Property                                    12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:    Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1.  **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.

■ Yes. Where is the property?

1.1

**830 N Main Ave**
Street address, if available, or other description

**Scranton    PA    18504-1517**
City    State    ZIP Code

**Lackawanna**
County

**What is the property?** Check all that apply

☐ Single-family home
■ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
■ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

**Duplex (828-830 N Main Ave)**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property*.

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $184,000.00 | $184,000.00 |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**Joint**

☐ Check if this is community property (see instructions)

2.  **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here.........................................................................=>**

| |
|---|
| $184,000.00 |

**Part 2:    Describe Your Vehicles**

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases*.

Software Copyright (c) 2022 CINGroup - www.cincompass.com

**AA 011**

Document Ref: ZPC4B-SHGYV-BVCPR-E2HXF

Debtor 1    **DeCantis, Dominic Joseph**                          Case number *(if known)* _____

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No
☑ Yes

| 3.1 | Make: | **Volkswagen** |
|---|---|---|
| | Model: | **Tiguan** |
| | Year: | **2015** |
| | Approximate mileage: | **99174** |
| | Other information: | |

**Stated value is KBB PPV of $9,459 less 10% estimated cost of liquidation.**

**Who has an interest in the property?** Check one

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property
(see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property*.

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$8,513.10** | **$8,513.10** |

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

☑ No
☐ Yes

5. Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here...........................................................................=>     **$8,513.10**

**Part 3:    Describe Your Personal and  Household Items**

| Do you own or have any legal or equitable interest in any of the following items? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

6. **Household goods and furnishings**
*Examples:* Major appliances, furniture, linens, china, kitchenware
☐ No
☑ Yes.  Describe.....

| **Household Goods** | **$1,000.00** |
|---|---|

7. **Electronics**
*Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
☐ No
☑ Yes.  Describe.....

| **Electronics** | **$100.00** |
|---|---|

8. **Collectibles of value**
*Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles
☐ No
☑ Yes.  Describe.....

| **Collectibles** | **$50.00** |
|---|---|

9. **Equipment for sports and hobbies**
*Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments
☐ No
☑ Yes.  Describe.....

| **Sports/Hobby Equipment** | **$75.00** |
|---|---|

Official Form 106A/B                    Schedule A/B: Property                    page 2
Software Copyright (c) 2022 CINGroup - www.cincompass.com

**AA 012**

Case 5:22-bk-01826-MJC    Doc 1    Filed 09/22/22    Entered 09/22/22 20:50:41    Desc
Main Document    Page 12 of 56                                                    Page 12 of 55

Document Ref: ZPC4B-SHGYV-BVCPR-E2HXF

Debtor 1    **DeCantis, Dominic Joseph**                                    Case number *(if known)* _____

**10. Firearms**
*Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
■ No
☐ Yes.  Describe.....

**11. Clothes**
*Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
☐ No
■ Yes.  Describe.....

| Clothing | $50.00 |
|---|---|

**12. Jewelry**
*Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
☐ No
■ Yes.  Describe.....

| Jewelry | $200.00 |
|---|---|

**13. Non-farm animals**
*Examples:* Dogs, cats, birds, horses
☐ No
■ Yes.  Describe.....

| Dog | $0.00 |
|---|---|

**14. Any other personal and household items you did not already list, including any health aids you did not list**
■ No
☐ Yes.  Give specific information.....

**15. Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here** .........................................................................

| $1,475.00 |
|---|

**Part 4:    Describe Your Financial Assets**

| Do you own or have any legal or equitable interest in any of the following? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

**16. Cash**
*Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
☐ No
■ Yes...................................................................................................

| Cash as of 9/21/2022 | $52.00 |
|---|---|

**17. Deposits of money**
*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.
☐ No
■ Yes........................        Institution name:

| 17.1. | **Checking Account** | **Fidelity balance as of 9/21/2022** | $1,427.71 |
|---|---|---|---|
| 17.2. | **Checking Account** | **Fidelity balance as of 9/21/2022** | $620.90 |
| 17.3. | **Savings Account** | **Fidelity balance as of 9/21/2022** | $952.43 |

Software Copyright (c) 2022 CINGroup - www.cincompass.com

**AA 013**

Document Ref: ZPC4B-SHGYV-BVCPR-E2HXF                                                                Page 13 of 55

Debtor 1    __DeCantis, Dominic Joseph__                              Case number *(if known)*    _____

18.  **Bonds, mutual funds, or publicly traded stocks**
     *Examples:* Bond funds, investment accounts with brokerage firms, money market accounts
     ■ No
     ☐ Yes.................    Institution or issuer name:

19.  **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**
     ■ No
     ☐ Yes.  Give specific information about them...................
                 Name of entity:                                    % of ownership:

20.  **Government and corporate bonds and other negotiable and non-negotiable instruments**
     *Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
     *Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.
     ■ No
     ☐ Yes. Give specific information about them
                 Issuer name:

21.  **Retirement or pension accounts**
     *Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans
     ■ No
     ☐ Yes. List each account separately.
                 Type of account:            Institution name:

22.  **Security deposits and prepayments**
     Your share of all unused deposits you have made so that you may continue service or use from a company
     *Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others
     ■ No
     ☐ Yes. ....................                    Institution name or individual:

23.  **Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)
     ■ No
     ☐ Yes.............    Issuer name and description.

24.  **Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
     26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).
     ■ No
     ☐ Yes.............    Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

25.  **Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**
     ■ No
     ☐ Yes.  Give specific information about them...

26.  **Patents, copyrights, trademarks, trade secrets, and other intellectual property**
     *Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements
     ■ No
     ☐ Yes.  Give specific information about them...

27.  **Licenses, franchises, and other general intangibles**
     *Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses
     ■ No
     ☐ Yes.  Give specific information about them...

| Money or property owed to you? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

28.  **Tax refunds owed to you**
     ■ No
     ☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

                                                                    _____

Official Form 106A/B                          Schedule A/B: Property                          page 4

Software Copyright (c) 2022 CINGroup - www.cincompass.com

**AA 014**

Debtor 1  __DeCantis, Dominic Joseph__                          Case number *(if known)* _____

29. **Family support**
   *Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement
   ■ No
   ☐ Yes. Give specific information......

30. **Other amounts someone owes you**
   *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation, Social Security benefits; unpaid loans you made to someone else
   ■ No
   ☐ Yes. Give specific information..

31. **Interests in insurance policies**
   *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance
   ☐ No
   ■ Yes. Name the insurance company of each policy and list its value.

   | Company name: | Beneficiary: | Surrender or refund value: |
   |---|---|---|
   | **The Baltimore Life** | **Sarah E DeCantis** | **$247.14** |
   | **The Baltimore Life** | **Sarah E DeCantis** | **$2,698.96** |

32. **Any interest in property that is due you from someone who has died**
   If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.
   ■ No
   ☐ Yes. Give specific information..

33. **Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
   *Examples:* Accidents, employment disputes, insurance claims, or rights to sue
   ■ No
   ☐ Yes. Describe each claim.........

34. **Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
   ■ No
   ☐ Yes. Describe each claim.........

35. **Any financial assets you did not already list**
   ■ No
   ☐ Yes. Give specific information..

36. **Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here**.................................................................................................................
   
   | $5,999.14 |

**Part 5:**  Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.

37. **Do you own or have any legal or equitable interest in any business-related property?**
   ■ No. Go to Part 6.
   ☐ Yes.  Go to line 38.

**Part 6:**  Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.
If you own or have an interest in farmland, list it in Part 1.

46. **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**
   ■ No. Go to Part 7.
   ☐ Yes.  Go to line 47.

**Part 7:**  Describe All Property You Own or Have an Interest in That You Did Not List Above

---

Software Copyright (c) 2022 CINGroup - www.cincompass.com

**AA 015**

Document Ref: ZPC4B-SHGYV-BVCPR-E2HXF

Debtor 1    **DeCantis, Dominic Joseph**                                    Case number *(if known)* _____

53. **Do you have other property of any kind you did not already list?**
    *Examples:* Season tickets, country club membership

    ☑ No
    ☐ Yes. Give specific information.........

54. **Add the dollar value of all of your entries from Part 7. Write that number here** ..................................... | **$0.00** |

| Part 8: | List the Totals of Each Part of this Form |

| 55. | **Part 1: Total real estate, line 2** ........................................................................................... | | **$184,000.00** |
|---|---|---|---|
| 56. | **Part 2: Total vehicles, line 5** | $8,513.10 | |
| 57. | **Part 3: Total personal and household items, line 15** | $1,475.00 | |
| 58. | **Part 4: Total financial assets, line 36** | $5,999.14 | |
| 59. | **Part 5: Total business-related property, line 45** | $0.00 | |
| 60. | **Part 6: Total farm- and fishing-related property, line 52** | $0.00 | |
| 61. | **Part 7: Total other property not listed, line 54** | + $0.00 | |
| 62. | **Total personal property.** Add lines 56 through 61... | $15,987.24 | Copy personal property total ⟶ $15,987.24 |
| 63. | **Total of all property on Schedule A/B**. Add line 55 + line 62 | | $199,987.24 |

Official Form 106A/B                    Schedule A/B: Property                    page 6

Software Copyright (c) 2022 CINGroup - www.cincompass.com

AA 016

Case 5:22-bk-01826-MJC    Doc 1    Filed 09/22/22    Entered 09/22/22 20:50:41    Desc
Main Document    Page 16 of 56

Document Ref: ZPC4B-SHGYV-BVCPR-E2HXF                    Page 16 of 55

| **Fill in this information to identify your case:** | |
|---|---|
| Debtor 1 | **Dominic Joseph DeCantis** |
| | First Name          Middle Name          Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name          Middle Name          Last Name |
| United States Bankruptcy Court for the: | MIDDLE DISTRICT OF PENNSYLVANIA, WILKES-BARRE DIVISION |
| Case number | |
| (if known) | |

☐ Check if this is an amended filing

## Official Form 106C
## Schedule C: The Property You Claim as Exempt                    4/22

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

**For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.**

### Part 1:    Identify the Property You Claim as Exempt

1.  **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

    ■ You are claiming state and federal nonbankruptcy exemptions.   11 U.S.C. § 522(b)(3)

    ☐ You are claiming federal exemptions.   11 U.S.C. § 522(b)(2)

2.  **For any property you list on** *Schedule A/B* **that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br><br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| **830 N Main Ave**<br>**Scranton PA, 18504-1517**<br>**County : Lackawanna**<br>**Duplex (828-830 N Main Ave)**<br>Line from *Schedule A/B* **1.1** | **$184,000.00** | ☐ _____<br>■ 100% of fair market value, up to any applicable statutory limit | **Tenancy by the entirety** |
| **Household Goods**<br>Line from *Schedule A/B* **6.1** | **$1,000.00** | ☐ _____<br>■ 100% of fair market value, up to any applicable statutory limit | **Tenancy by the entirety** |
| **Electronics**<br>Line from *Schedule A/B* **7.1** | **$100.00** | ☐ _____<br>■ 100% of fair market value, up to any applicable statutory limit | **Tenancy by the entirety** |
| **Collectibles**<br>Line from *Schedule A/B* **8.1** | **$50.00** | ☐ _____<br>■ 100% of fair market value, up to any applicable statutory limit | **Tenancy by the entirety** |
| **Sports/Hobby Equipment**<br>Line from *Schedule A/B* **9.1** | **$75.00** | ☐ _____<br>■ 100% of fair market value, up to any applicable statutory limit | **Tenancy by the entirety** |

Software Copyright (c) 2022 CINGroup - www.cincompass.com

AA 017

Document Ref: ZPC4B-SHGYV-BVCPR-E2HXF

Debtor 1  **DeCantis, Dominic Joseph**                                    Case number (if known)

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own | Amount of the exemption you claim | Specific laws that allow exemption |
|---|---|---|---|
| | Copy the value from *Schedule A/B* | Check only one box for each exemption. | |
| **Clothing** Line from *Schedule A/B*: **11.1** | $50.00 | ☐ _____ ■ 100% of fair market value, up to any applicable statutory limit | 42 Pa.C.S. § 8124(a)(1) |
| **Jewelry** Line from *Schedule A/B*: **12.1** | $200.00 | ☐ _____ ■ 100% of fair market value, up to any applicable statutory limit | 42 Pa.C.S. § 8123(a) |
| **Dog** Line from *Schedule A/B*: **13.1** | $0.00 | ☐ _____ ■ 100% of fair market value, up to any applicable statutory limit | Tenancy by the entirety |
| **Cash as of 9/21/2022** Line from *Schedule A/B*: **16.1** | $52.00 | ☐ _____ ■ 100% of fair market value, up to any applicable statutory limit | 42 Pa.C.S. § 8123(a) |
| **Fidelity balance as of 9/21/2022** Line from *Schedule A/B*: **17.1** | $1,427.71 | ☐ _____ ■ 100% of fair market value, up to any applicable statutory limit | Tenancy by the entirety |
| **Fidelity balance as of 9/21/2022** Line from *Schedule A/B*: **17.2** | $620.90 | ☐ _____ ■ 100% of fair market value, up to any applicable statutory limit | Tenancy by the entirety |
| **Fidelity balance as of 9/21/2022** Line from *Schedule A/B*: **17.3** | $952.43 | ☐ _____ ■ 100% of fair market value, up to any applicable statutory limit | Tenancy by the entirety |
| **The Baltimore Life** Line from *Schedule A/B*: **31.1** | $247.14 | ☐ _____ ■ 100% of fair market value, up to any applicable statutory limit | 42 Pa.C.S. § 8124(c)(4) |
| **The Baltimore Life** Line from *Schedule A/B*: **31.2** | $2,698.96 | ☐ _____ ■ 100% of fair market value, up to any applicable statutory limit | 42 Pa.C.S. § 8124(c)(4) |

3. **Are you claiming a homestead exemption of more than $189,050?**
   (Subject to adjustment on 4/01/25 and every 3 years after that for cases filed on or after the date of adjustment.)

   ■ No

   ☐ Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?

      ☐ No

      ☐ Yes

Software Copyright (c) 2022 CINGroup - www.cincompass.com

**AA 018**

Document Ref: ZPC4B-SHGYV-BVCPR-E2HXF

Page 18 of 55

| **Fill in this information to identify your case:** | | |
|---|---|---|
| Debtor 1 | **Dominic Joseph DeCantis** | |
| | First Name    Middle Name    Last Name | |
| Debtor 2 | | |
| (Spouse if, filing) | First Name    Middle Name    Last Name | |
| United States Bankruptcy Court for the: | MIDDLE DISTRICT OF PENNSYLVANIA, WILKES-BARRE DIVISION | |
| Case number (if known) | _____ | ☐ Check if this is an amended filing |

## Official Form 106D
## Schedule D: Creditors Who Have Claims Secured by Property          **12/15**

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

■ Yes. Fill in all of the information below.

**Part 1:    List All Secured Claims**

| **2. List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor 's name. | | *Column A*<br>**Amount of claim**<br>Do not deduct the value of collateral. | *Column B*<br>**Value of collateral that supports this claim** | *Column C*<br>**Unsecured portion**<br>If any |
|---|---|---|---|---|
| **2.1** | **Arrow Financial Services, LLC** | $1,719.00 | $184,000.00 | $0.00 |
| | Creditor's Name | | | |

**Describe the property that secures the claim:**

**830 N Main Ave, Scranton, PA 18504-1517 Duplex (828-830 N Main Ave)**

**2605 Camino del Rio S San Diego, CA 92108-3706**
Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
■ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

**Date debt was incurred** _____    **Last 4 digits of account number** **4917**

Software Copyright (c) 2022 CINGroup - www.cincompass.com

AA 019

Document Ref: ZPC4B-SHGYV-BVCPR-E2HXF                                                                    Page 19 of 55

Debtor 1  **Dominic Joseph DeCantis**

     First Name         Middle Name         Last Name

Case number (if known) _____

---

| 2.2 | **Fidelity Bank** | | | | |
|---|---|---|---|---|---|

Creditor's Name

**Describe the property that secures the claim:** | $6,531.18 | $8,513.10 | $0.00

**2015 Volkswagen Tiguan**
**Stated value is KBB PPV of $9,459 less**
**10% estimated cost of liquidation.**

**PO Box 997**
**Scranton, PA 18501-0997**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)  **Vehicle Loan**

**Date debt was incurred**  03/11/2020      **Last 4 digits of account number**  4067

---

| 2.3 | **LVNV Funding, LLC** | | | | |
|---|---|---|---|---|---|

Creditor's Name

**Describe the property that secures the claim:** | $1,873.00 | $184,000.00 | $0.00

**830 N Main Ave, Scranton, PA**
**18504-1517**
**Duplex (828-830 N Main Ave)**

**C/O Resurgent Capital**
**Services**
**PO Box 10466**
**Greenville, SC 29603-0466**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
■ Judgment lien from a lawsuit
☐ Other (including a right to offset)

**Date debt was incurred** _____      **Last 4 digits of account number**  6317

---

| 2.4 | **Midland Funding, LLC** | | | | |
|---|---|---|---|---|---|

Creditor's Name

**Describe the property that secures the claim:** | $20,451.57 | $184,000.00 | $0.00

**830 N Main Ave, Scranton, PA**
**18504-1517**
**Duplex (828-830 N Main Ave)**

**c/o Hayt, Hayt & Landau,**
**LLC**
**2 Industrial Way W**
**Eatontown, NJ 07724-2265**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
■ Judgment lien from a lawsuit
☐ Other (including a right to offset)

**Date debt was incurred** _____      **Last 4 digits of account number**  2361

---

Official Form 106D      Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**      page 2 of 4

AA 020

Debtor 1   **Dominic Joseph DeCantis**
_____   Case number (if known) _____
First Name        Middle Name        Last Name

| 2.5 | **Portnoff Law Associates, Ltd.** | | Describe the property that secures the claim: | $9,130.41 | $184,000.00 | $0.00 |

Creditor's Name

Describe the property that secures the claim:

> **830 N Main Ave, Scranton, PA 18504-1517**
> **Duplex (828-830 N Main Ave)**

**PO Box 3020**
**Norristown, PA 19404-3020**
Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)   **Garbage Fees**

**Date debt was incurred** _____   **Last 4 digits of account number**   **1500**

---

| 2.6 | **Select Portfolio Sevices** | | Describe the property that secures the claim: | $52,519.26 | $184,000.00 | $0.00 |

Creditor's Name

Describe the property that secures the claim:

> **830 N Main Ave, Scranton, PA 18504-1517**
> **Duplex (828-830 N Main Ave)**

**PO Box 65250**
**Salt Lake City, UT 84165**
Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)   **Mortgage 1st**

**Date debt was incurred**   **11/15/2005**   **Last 4 digits of account number**   **2926**

---

| Add the dollar value of your entries in Column A on this page. Write that number here: | $92,224.42 |
| If this is the last page of your form, add the dollar value totals from all pages. Write that number here: | $92,224.42 |

**Part 2:   List Others to Be Notified for a Debt That You Already Listed**

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

[ ]   Name, Number, Street, City, State & Zip Code
**Bank of America**
**PO Box 982234**
**El Paso, TX 79998-2234**

On which line in Part 1 did you enter the creditor?   **2.4**

Last 4 digits of account number   **2361**

---

[ ]   Name, Number, Street, City, State & Zip Code
**City of Scranton**
**c/o Portnoff Law Associates, Ltd.**
**PO Box 3020**
**Norristown, PA 19404-3020**

On which line in Part 1 did you enter the creditor?   **2.5**

Last 4 digits of account number   **1500**

---

Official Form 106D    Additional Page of Schedule D: Creditors Who Have Claims Secured by Property    page 3 of 4

Software Copyright (c) 2022 CINGroup - www.cincompass.com

AA 021

Case 5:22-bk-01826-MJC    Doc 1    Filed 09/22/22    Entered 09/22/22 20:50:41    Desc
Main Document    Page 21 of 56

Document Ref: ZPC4B-SHGYV-BVCPR-E2HXF    Page 21 of 55

Debtor 1    **Dominic Joseph DeCantis**                                      Case number (if known) _____

     First Name         Middle Name          Last Name

---

[ ]    Name, Number, Street, City, State & Zip Code

**Martin Rubin, Managing Attorney**      On which line in Part 1 did you enter the creditor?  **2.4**
**Hayt, Hayt & Landau, LLC**
**2 Industrial Way W**           Last 4 digits of account number  **2361**
**Eatontown, NJ 07724-2265**

---

[ ]    Name, Number, Street, City, State & Zip Code

**Michael L Schuman**           On which line in Part 1 did you enter the creditor?  **2.4**
**c/o Hayt, Hayt, & Landau, LLC**
**2 Industrial Way W**           Last 4 digits of account number  **2361**
**Eatontown, NJ 07724-2265**

---

[ ]    Name, Number, Street, City, State & Zip Code

**Midland Funding, LLC**        On which line in Part 1 did you enter the creditor?  **2.4**
**c/o Pressler and Pressler, LLP**
**7 Entin Rd**           Last 4 digits of account number  **2361**
**Parsippany, NJ 07054-5020**

---

[ ]    Name, Number, Street, City, State & Zip Code

**Officer, Managing, or General Agent**  On which line in Part 1 did you enter the creditor?  **2.4**
**Hayt, Hayt & Landau, LLC**
**2 Industrial Way W**           Last 4 digits of account number  **2361**
**Eatontown, NJ 07724-2265**

---

[ ]    Name, Number, Street, City, State & Zip Code

**Officer, Managing, or General Agent**  On which line in Part 1 did you enter the creditor?  **2.3**
**LVNV Funding, LLC**
**PO Box 10466**           Last 4 digits of account number  **6317**
**Greenville, SC 29603-0466**

---

[ ]    Name, Number, Street, City, State & Zip Code

**Officer, Managing, or General Agent**  On which line in Part 1 did you enter the creditor?  **2.1**
**Arrow Financial Services, LLC**
**2605 Camino del Rio S**        Last 4 digits of account number  **4917**
**San Diego, CA 92108-3706**

---

Software Copyright (c) 2022 CINGroup - www.cincompass.com

**AA 022**

| **Fill in this information to identify your case:** | |
|---|---|
| Debtor 1 | **Dominic Joseph DeCantis** |
| | First Name          Middle Name          Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name          Middle Name          Last Name |
| United States Bankruptcy Court for the: | MIDDLE DISTRICT OF PENNSYLVANIA, WILKES-BARRE DIVISION |
| Case number (if known) | |

☐ Check if this is an amended filing

## Official Form 106E/F
## Schedule E/F: Creditors Who Have Unsecured Claims                    12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY claims and Part 2 for creditors with NONPRIORITY claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on Schedule A/B: Property (Official Form 106A/B) and on Schedule G: Executory Contracts and Unexpired Leases (Official Form 106G). Do not include any creditors with partially secured claims that are listed in Schedule D: Creditors Who Have Claims Secured by Property. If more space is needed, copy the Part you need, fill it out, number the entries in the boxes on the left. Attach the Continuation Page to this page. If you have no information to report in a Part, do not file that Part. On the top of any additional pages, write your name and case number (if known).

### Part 1:   List All of Your PRIORITY Unsecured Claims

1.   **Do any creditors have priority unsecured claims against you?**

☑ No. Go to Part 2.

☐ Yes.

### Part 2:   List All of Your NONPRIORITY Unsecured Claims

3.   **Do any creditors have nonpriority unsecured claims against you?**

☐ No. You have nothing to report in this part. Submit this form to the court with your other schedules.

☑ Yes.

4.   **List all of your nonpriority unsecured claims in the alphabetical order of the creditor who holds each claim.** If a creditor has more than one nonpriority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. Do not list claims already included in Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3.If you have more than three nonpriority unsecured claims fill out the Continuation Page of Part 2.

|  | | | **Total claim** |
|---|---|---|---|
| 4.1 | **PowerPay, LLC/Connexus Credit Union** <br> Nonpriority Creditor's Name | Last 4 digits of account number  9890 | **$20,059.35** |
| | | When was the debt incurred? | |
| | **PO Box 546** <br> **Conshohocken, PA 19428-0546** <br> Number Street City State Zip Code | As of the date you file, the claim is: Check all that apply | |

**Who incurred the debt?** Check one.

☑ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

☑ No

☐ Yes

☐ Contingent

☐ Unliquidated

☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

☐ Debts to pension or profit-sharing plans, and other similar debts

☑ Other. Specify    Home Improvement Loan

Debtor 1  **DeCantis, Dominic Joseph** _____  Case number (if known) _____

| 4.2 | | | |
|---|---|---|---|

**Xfinity** _____
Nonpriority Creditor's Name

Last 4 digits of account number  **6842** _____  $100.00

When was the debt incurred?  _____

**PO Box 6505**
**Chelmsford, MA 01824-0905**
Number Street City State Zip Code

**As of the date you file, the claim is:** Check all that apply

**Who incurred the debt?** Check one.

■ Debtor 1 only
□ Debtor 2 only
□ Debtor 1 and Debtor 2 only
□ At least one of the debtors and another
□ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
□ Yes

■ Contingent
□ Unliquidated
□ Disputed

**Type of NONPRIORITY unsecured claim:**

□ Student loans
□ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
□ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify  **Utility** _____

---

**Part 3:**   **List Others to Be Notified About a Debt That You Already Listed**

5. **Use this page only if you have others to be notified about your bankruptcy, for a debt that you already listed in Parts 1 or 2. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the original creditor in Parts 1 or 2, then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Parts 1 or 2, list the additional creditors here. If you do not have additional persons to be notified for any debts in Parts 1 or 2, do not fill out or submit this page.**

**Part 4:**   **Add the Amounts for Each Type of Unsecured Claim**

6. **Total the amounts of certain types of unsecured claims. This information is for statistical reporting purposes only. 28 U.S.C. §159. Add the amounts for each type of unsecured claim.**

|  | | | | Total Claim |
|---|---|---|---|---|
| **Total claims from Part 1** | 6a. | **Domestic support obligations** | 6a. | $ 0.00 |
| | 6b. | **Taxes and certain other debts you owe the government** | 6b. | $ 0.00 |
| | 6c. | **Claims for death or personal injury while you were intoxicated** | 6c. | $ 0.00 |
| | 6d. | **Other.** Add all other priority unsecured claims. Write that amount here. | 6d. | $ 0.00 |
| | 6e. | **Total Priority.** Add lines 6a through 6d. | 6e. | $ 0.00 |
|  | | | | Total Claim |
| **Total claims from Part 2** | 6f. | **Student loans** | 6f. | $ 0.00 |
| | 6g. | **Obligations arising out of a separation agreement or divorce that you did not report as priority claims** | 6g. | $ 0.00 |
| | 6h. | **Debts to pension or profit-sharing plans, and other similar debts** | 6h. | $ 0.00 |
| | 6i. | **Other.** Add all other nonpriority unsecured claims. Write that amount here. | 6i. | $ 20,159.35 |
| | 6j. | **Total Nonpriority.** Add lines 6f through 6i. | 6j. | $ 20,159.35 |

---

Official Form 106 E/F    Schedule E/F: Creditors Who Have Unsecured Claims    Page 2 of 2

Software Copyright (c) 2021 CINGroup - www.cincompass.com

AA 024

Case 5:22-bk-01826-MJC    Doc 1    Filed 09/22/22    Entered 09/22/22 20:50:41    Desc
Main Document    Page 24 of 56    Page 24 of 55

Document Ref: ZPC4B-SHGYV-BVCPR-E2HXF

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Dominic Joseph DeCantis** |
| | First Name        Middle Name        Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name        Middle Name        Last Name |
| United States Bankruptcy Court for the: | MIDDLE DISTRICT OF PENNSYLVANIA, WILKES-BARRE DIVISION |
| Case number (if known) | _____ |

☐ Check if this is an amended filing

Official Form 106G

# Schedule G: Executory Contracts and Unexpired Leases                    12/15

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the additional page, fill it out, number the entries, and attach it to this page. On the top of any additional pages, write your name and case number (if known).**

1. **Do you have any executory contracts or unexpired leases?**
   ☐ No. Check this box and file this form with the court with your other schedules.  You have nothing else to report on this form.
   ☑ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B:Property* (Official Form 106 A/B).

2. **List separately each person or company with whom you have the contract or lease. Then state what each contract or lease is for (for example, rent, vehicle lease, cell phone).** See the instructions for this form in the instruction booklet for more examples of executory contracts and unexpired leases.

| Person or company with whom you have the contract or lease<br>Name, Number, Street, City, State and ZIP Code | State what the contract or lease is for |
|---|---|
| 2.1  **Xfinity**<br>**PO Box 6505**<br>**Chelmsford, MA 01824-0905** | **Internet Service** |

Software Copyright (c) 2022 CINGroup - www.cincompass.com

AA 025

Document Ref: ZPC4B-SHGYV-BVCPR-E2HXF

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Dominic Joseph DeCantis** |
| | First Name    Middle Name    Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court for the: | MIDDLE DISTRICT OF PENNSYLVANIA, WILKES-BARRE DIVISION |
| Case number (if known) | |

☐ Check if this is an amended filing

## Official Form 106H
## Schedule H: Your Codebtors
12/15

Codebtors are people or entities who are also liable for any debts you may have. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, and number the entries in the boxes on the left. Attach the Additional Page to this page. On the top of any Additional Pages, write your name and case number (if known). Answer every question.

**1. Do you have any codebtors?** (If you are filing a joint case, do not list either spouse as a codebtor.)

■ No
☐ Yes

**2. Within the last 8 years, have you lived in a community property state or territory?** (Community property states and territories include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, and Wisconsin.)

■ No. Go to line 3.
☐ Yes. Did your spouse, former spouse, or legal equivalent live with you at the time?

**3. In Column 1, list all of your codebtors. Do not include your spouse as a codebtor if your spouse is filing with you. List the person shown in line 2 again as a codebtor only if that person is a guarantor or cosigner. Make sure you have listed the creditor on Schedule D (Official Form 106D), Schedule E/F (Official Form 106E/F), or Schedule G (Official Form 106G). Use Schedule D, Schedule E/F, or Schedule G to fill out Column 2.**

| Column 1: **Your codebtor** <br> Name, Number, Street, City, State and ZIP Code | Column 2: **The creditor to whom you owe the debt** <br> Check all schedules that apply: |
|---|---|
| **3.1** _____ <br> Name <br><br> _____ <br> Number    Street <br> _____ <br> City    State    ZIP Code | ☐ Schedule D, line _____ <br> ☐ Schedule E/F, line _____ <br> ☐ Schedule G, line _____ |
| **3.2** _____ <br> Name <br><br> _____ <br> Number    Street <br> _____ <br> City    State    ZIP Code | ☐ Schedule D, line _____ <br> ☐ Schedule E/F, line _____ <br> ☐ Schedule G, line _____ |

Software Copyright (c) 2022 CINGroup - www.cincompass.com

AA 026

Case 5:22-bk-01826-MJC    Doc 1    Filed 09/22/22    Entered 09/22/22 20:50:41    Desc
Main Document    Page 26 of 56

Document Ref: ZPC4B-SHGYV-BVCPR-E2HXF

Page 26 of 55

| Fill in this information to identify your case: | |
|---|---|
| Debtor 1 | **Dominic Joseph DeCantis** |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | MIDDLE DISTRICT OF PENNSYLVANIA, WILKES-BARRE DIVISION |
| Case number (If known) | |

Check if this is:

☐ An amended filing

☐ A supplement showing postpetition chapter 13 income as of the following date:

_____
MM / DD / YYYY

## Official Form 106I
## Schedule I: Your Income
12/15

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

| Part 1: | Describe Employment |
|---|---|

1. **Fill in your employment information.**

If you have more than one job, attach a separate page with information about additional employers.

Include part-time, seasonal, or self-employed work.

Occupation may include student or homemaker, if it applies.

| | | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|---|
| Employment status | | ■ Employed | ■ Employed |
| | | ☐ Not employed | ☐ Not employed |
| Occupation | | Cook | |
| Employer's name | | Camelot Restaurant and Inn | Salvatore Parlopiano |
| Employer's address | | 52 Ivywood Dr Clarks Summit, PA 18411-9180 | |
| How long employed there? | | 4 years and 3 months | 2 months |

| Part 2: | Give Details About Monthly Income |
|---|---|

Estimate monthly income as of the date you file this form. If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 2. | List monthly gross wages, salary, and commissions (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | 2. | $  2,854.11 | $  1,418.92 |
| 3. | Estimate and list monthly overtime pay. | 3. | +$  0.00 | +$  0.00 |
| 4. | Calculate gross income. Add line 2 + line 3. | 4. | $  2,854.11 | $  1,418.92 |

Debtor 1    **DeCantis, Dominic Joseph**                    Case number (if known) _____

|  |  | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| Copy line 4 here | 4. | $ 2,854.11 | $ 1,418.92 |

5.   List all payroll deductions:

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 5a. | Tax, Medicare, and Social Security deductions | 5a. | $ 650.84 | $ 239.33 |
| 5b. | Mandatory contributions for retirement plans | 5b. | $ 0.00 | $ 0.00 |
| 5c. | Voluntary contributions for retirement plans | 5c. | $ 0.00 | $ 0.00 |
| 5d. | Required repayments of retirement fund loans | 5d. | $ 0.00 | $ 0.00 |
| 5e. | Insurance | 5e. | $ 0.00 | $ 0.00 |
| 5f. | Domestic support obligations | 5f. | $ 0.00 | $ 0.00 |
| 5g. | Union dues | 5g. | $ 0.00 | $ 0.00 |
| 5h. | Other deductions. Specify: _____ | 5h.+ | $ 0.00 + | $ 0.00 |

6.   **Add the payroll deductions.** Add lines 5a+5b+5c+5d+5e+5f+5g+5h.    6.    $ 650.84    $ 239.33

7.   **Calculate total monthly take-home pay.** Subtract line 6 from line 4.    7.    $ 2,203.27    $ 1,179.59

8.   List all other income regularly received:

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 8a. | **Net income from rental property and from operating a business, profession, or farm** Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income. | 8a. | $ 902.00 | $ 0.00 |
| 8b. | Interest and dividends | 8b. | $ 0.02 | $ 0.00 |
| 8c. | **Family support payments that you, a non-filing spouse, or a dependent regularly receive** Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement. | 8c. | $ 0.00 | $ 0.00 |
| 8d. | Unemployment compensation | 8d. | $ 0.00 | $ 0.00 |
| 8e. | Social Security | 8e. | $ 0.00 | $ 0.00 |
| 8f. | **Other government assistance that you regularly receive** Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies. Specify: | 8f. | $ 0.00 | $ 0.00 |
| 8g. | Pension or retirement income | 8g. | $ 0.00 | $ 0.00 |
| 8h. | Other monthly income. Specify: 1/12th 2021 tax refund | 8h.+ | $ 147.75 + | $ 0.00 |

9.   **Add all other income.** Add lines 8a+8b+8c+8d+8e+8f+8g+8h.    9.    $ 1,049.77    $ 0.00

10.  **Calculate monthly income.** Add line 7 + line 9.    10.    $ 3,253.04  +  $ 1,179.59  =  $ 4,432.63
     Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse.

11.  **State all other regular contributions to the expenses that you list in** Schedule J.
     Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.
     Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in Schedule J.
     Specify:   **Debtor's sister-in-law contribution to internet**    11.   +$ 110.79

12.  **Add the amount in the last column of line 10 to the amount in line 11.** The result is the combined monthly income.
     Write that amount on the Summary of Schedules and Statistical Summary of Certain Liabilities and Related Data, if it applies    12.   $ 4,543.42

     **Combined monthly income**

13.  **Do you expect an increase or decrease within the year after you file this form?**
     ■ No.
     ☐ Yes. Explain: _____

Document Ref: ZPC4B-SHGYV-BVCPR-E2HXF

## ¶8a Statement of Net Income from Operating a Business (Rental Income)

| | |
|---|---|
| **Gross Receipts Monthly:** | **$950.00** |
| **Sewer Expense:** | **$48.00** |
| ====== | |
| **Total Monthly Net Income:** | **$902.00** |

Document Ref: ZPC4B-SHGYV-BVCPR-E2HXF

**Fill in this information to identify your case:**

Debtor 1 __Dominic Joseph DeCantis__

Debtor 2 _____
(Spouse, if filing)

United States Bankruptcy Court for the: MIDDLE DISTRICT OF PENNSYLVANIA,
WILKES-BARRE DIVISION

Case number _____
(If known)

Check if this is:

☐ An amended filing
☐ A supplement showing postpetition chapter 13
　 expenses as of the following date:

_____
MM / DD / YYYY

Official Form 106J

# Schedule J: Your Expenses
**12/15**

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1: Describe Your Household

1. **Is this a joint case?**

　■ No. Go to line 2.
　☐ Yes. **Does Debtor 2 live in a separate household?**

　　☐ No
　　☐ Yes. Debtor 2 must file Official Form 106J-2, *Expenses for Separate Household* of Debtor 2.

2. **Do you have dependents?** ■ No

　Do not list Debtor 1 and　☐ Yes. Fill out this information for
　Debtor 2.　　　　　　　　　each dependent..............

　Do not state the
　dependents names.

| Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|
| _____ | _____ | ☐ No / ☐ Yes |
| _____ | _____ | ☐ No / ☐ Yes |
| _____ | _____ | ☐ No / ☐ Yes |
| _____ | _____ | ☐ No / ☐ Yes |

3. **Do your expenses include expenses of people other than yourself and your dependents?**　☐ No　■ Yes

### Part 2: Estimate Your Ongoing Monthly Expenses

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the applicable date.

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form 106I.)

| | **Your expenses** |
|---|---|

4. **The rental or home ownership expenses for your residence.** Include first mortgage payments and any rent for the ground or lot.　　　4. $ _____ 1,128.11

　If not included in line 4:

　4a. Real estate taxes　　　　　　　　　　　　　　　　4a. $ _____ 0.00
　4b. Property, homeowner's, or renter's insurance　　　　4b. $ _____ 0.00
　4c. Home maintenance, repair, and upkeep expenses　　4c. $ _____ 13.89
　4d. Homeowner's association or condominium dues　　　4d. $ _____ 0.00

5. **Additional mortgage payments for your residence,** such as home equity loans　5. $ _____ 0.00

Debtor 1    **DeCantis, Dominic Joseph**                              Case number (if known)

| | | | |
|---|---|---|---|
| 6. | **Utilities:** | | |
| | 6a. Electricity, heat, natural gas | 6a. $ | 212.62 |
| | 6b. Water, sewer, garbage collection | 6b. $ | 155.09 |
| | 6c. Telephone, cell phone, Internet, satellite, and cable services | 6c. $ | 271.04 |
| | 6d. Other. Specify: | 6d. $ | 0.00 |
| 7. | **Food and housekeeping supplies** | 7. $ | 800.00 |
| 8. | **Childcare and children's education costs** | 8. $ | 0.00 |
| 9. | **Clothing, laundry, and dry cleaning** | 9. $ | 150.00 |
| 10. | **Personal care products and services** | 10. $ | 76.00 |
| 11. | **Medical and dental expenses** | 11. $ | 136.00 |
| 12. | **Transportation.** Include gas, maintenance, bus or train fare.<br>Do not include car payments. | 12. $ | 241.39 |
| 13. | **Entertainment, clubs, recreation, newspapers, magazines, and books** | 13. $ | 0.00 |
| 14. | **Charitable contributions and religious donations** | 14. $ | 0.00 |
| 15. | **Insurance.**<br>Do not include insurance deducted from your pay or included in lines 4 or 20. | | |
| | 15a. Life insurance | 15a. $ | 119.69 |
| | 15b. Health insurance | 15b. $ | 0.00 |
| | 15c. Vehicle insurance | 15c. $ | 97.19 |
| | 15d. Other insurance. Specify: | 15d. $ | 0.00 |
| 16. | **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20.<br>Specify: | 16. $ | 0.00 |
| 17. | **Installment or lease payments:** | | |
| | 17a. Car payments for Vehicle 1 | 17a. $ | 210.68 |
| | 17b. Car payments for Vehicle 2 | 17b. $ | 0.00 |
| | 17c. Other. Specify: | 17c. $ | 0.00 |
| | 17d. Other. Specify: | 17d. $ | 0.00 |
| 18. | **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5,** *Schedule I, Your Income* **(Official Form 106I).** | 18. $ | 0.00 |
| 19. | **Other payments you make to support others who do not live with you.**<br>Specify: | 19. | |
| 20. | **Other real property expenses not included in lines 4 or 5 of this form or on** *Schedule I: Your Income.* | | |
| | 20a. Mortgages on other property | 20a. $ | 0.00 |
| | 20b. Real estate taxes | 20b. $ | 0.00 |
| | 20c. Property, homeowner's, or renter's insurance | 20c. $ | 0.00 |
| | 20d. Maintenance, repair, and upkeep expenses | 20d. $ | 0.00 |
| | 20e. Homeowner's association or condominium dues | 20e. $ | 0.00 |
| 21. | **Other:** Specify:    **Misc.** | 21. +$ | 266.00 |
| | **Tax prep fees** | +$ | 25.00 |
| | **Non Filing Spouse retirement savings** | +$ | 216.66 |

22. **Calculate your monthly expenses**

| | |
|---|---|
| 22a. Add lines 4 through 21. | $    4,119.36 |
| 22b. Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2 | $ |
| 22c. Add line 22a and 22b.  The result is your monthly expenses. | $    4,119.36 |

23. **Calculate your monthly net income.**

| | | |
|---|---|---|
| 23a. Copy line 12 *(your combined monthly income)* from Schedule I. | 23a. $ | 4,543.42 |
| 23b. Copy your monthly expenses from line 22c above. | 23b. -$ | 4,119.36 |
| 23c. Subtract your monthly expenses from your income.<br>The result is your *monthly net income.* | 23c. $ | 424.06 |

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**
For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

☐ No.

☑ Yes.    Explain here: **Debtor has used the means test allowances to estimate some expenses.**

AA 031

Document Ref: ZPC4B-SHGYV-BVCPR-E2HXF

| | |
|---|---|
| **Fill in this information to identify your case:** | |

Debtor 1    **Dominic Joseph DeCantis**
First Name          Middle Name          Last Name

Debtor 2
(Spouse if, filing)    First Name          Middle Name          Last Name

United States Bankruptcy Court for the:    MIDDLE DISTRICT OF PENNSYLVANIA, WILKES-BARRE DIVISION

Case number
(if known)

☐ Check if this is an
amended filing

Official Form 106Dec

# Declaration About an Individual Debtor's Schedules

12/15

**If two married people are filing together, both are equally responsible for supplying correct information.**

**You must file this form whenever you file bankruptcy schedules or amended schedules. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

| | Sign Below |
|---|---|

**Did you pay or agree to pay someone who is NOT an attorney to help you fill out bankruptcy forms?**

■ No

☐ Yes.  Name of person _____    Attach *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119)

**Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct.**

X _____    X _____
**Dominic Joseph DeCantis**                Signature of Debtor 2
Signature of Debtor 1

Date  **September 22, 2022**            Date _____

AA 032

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Dominic Joseph DeCantis** |
| | First Name        Middle Name        Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name        Middle Name        Last Name |
| United States Bankruptcy Court for the: | MIDDLE DISTRICT OF PENNSYLVANIA, WILKES-BARRE DIVISION |
| Case number (if known) | _____ |

☐ Check if this is an amended filing

## Official Form 107
## Statement of Financial Affairs for Individuals Filing for Bankruptcy     04/22

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:    Give Details About Your Marital Status and Where You Lived Before

1. **What is your current marital status?**

   ■ Married
   ☐ Not married

2. **During the last 3 years, have you lived anywhere other than where you live now?**

   ■ No
   ☐ Yes. List all of the places you lived in the last 3 years. Do not include where you live now.

   | Debtor 1: | Dates Debtor 1 lived there | Debtor 2 Prior Address: | Dates Debtor 2 lived there |
   |---|---|---|---|
   | | | | |

3. **Within the last 8 years, did you ever live with a spouse or legal equivalent in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington and Wisconsin.)

   ■ No
   ☐ Yes. Make sure you fill out *Schedule H: Your Codebtors* (Official Form 106H).

### Part 2    Explain the Sources of Your Income

4. **Did you have any income from employment or from operating a business during this year or the two previous calendar years?**
   Fill in the total amount of income you received from all jobs and all businesses, including part-time activities.
   If you are filing a joint case and you have income that you receive together, list it only once under Debtor 1.

   ☐ No
   ■ Yes. Fill in the details.

   | | Debtor 1 | | Debtor 2 | |
   |---|---|---|---|---|
   | | Sources of income Check all that apply. | Gross income (before deductions and exclusions) | Sources of income Check all that apply. | Gross income (before deductions and exclusions) |
   | From January 1 of current year until the date you filed for bankruptcy: | ■ Wages, commissions, bonuses, tips | $23,667.12 | ☐ Wages, commissions, bonuses, tips | |
   | | ☐ Operating a business | | ☐ Operating a business | |

Software Copyright (c) 2022 CINGroup - www.cincompass.com

AA 033

Document Ref: ZPC4B-SHGYV-BVCPR-E2HXF

Page 33 of 55

Debtor 1   **DeCantis, Dominic Joseph**                          Case number *(if known)* _____

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | **Sources of income** Check all that apply. | **Gross income** (before deductions and exclusions) | **Sources of income** Check all that apply. | **Gross income** (before deductions and exclusions) |
| **For last calendar year:** (January 1 to December 31, 2021 ) | ■ Wages, commissions, bonuses, tips ☐ Operating a business | $35,162.78 | ☐ Wages, commissions, bonuses, tips ☐ Operating a business | |
| **For the calendar year before that:** (January 1 to December 31, 2020 ) | ■ Wages, commissions, bonuses, tips ☐ Operating a business | $27,522.00 | ☐ Wages, commissions, bonuses, tips ☐ Operating a business | |

5.   **Did you receive any other income during this year or the two previous calendar years?**
Include income regardless of whether that income is taxable. Examples of *other income* are alimony; child support; Social Security, unemployment, and other public benefit payments; pensions; rental income; interest; dividends; money collected from lawsuits; royalties; and gambling and lottery winnings. If you are filing a joint case and you have income that you received together, list it only once under Debtor 1.

List each source and the gross income from each source separately. Do not include income that you listed in line 4.

☐   No
■   Yes. Fill in the details.

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | **Sources of income** Describe below. | **Gross income from each source** (before deductions and exclusions) | **Sources of income** Describe below. | **Gross income** (before deductions and exclusions) |
| **From January 1 of current year until the date you filed for bankruptcy:** | Rental Income | $5,700.00 | | |
| | Savings Account Interest | $0.11 | | |
| **For last calendar year:** (January 1 to December 31, 2021 ) | Savings Account Interest | $1.03 | | |
| | COVID-19 Stimulus | $1,400.00 | | |
| | Rental Income | $11,400.00 | | |
| **For the calendar year before that:** (January 1 to December 31, 2020 ) | COVID-19 Stimulus | $0.00 | | |
| | Rental Income | $11,400.00 | | |

**Part 3:**   List Certain Payments You Made Before You Filed for Bankruptcy

6.   **Are either Debtor 1's or Debtor 2's debts primarily consumer debts?**
☐   No.   **Neither Debtor 1 nor Debtor 2 has primarily consumer debts.** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $7,575* or more?
☐   No.   Go to line 7.
☐   Yes   List below each creditor to whom you paid a total of $7,575* or more in one or more payments and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.
     * Subject to adjustment on 4/01/25 and every 3 years after that for cases filed on or after the date of adjustment.

Document Ref: ZPC4B-SHGYV-BVCPR-E2HXF

**AA 034**

| Debtor 1 | **DeCantis, Dominic Joseph** | Case number *(if known)* | |
|---|---|---|---|

■ **Yes. Debtor 1 or Debtor 2 or both have primarily consumer debts.**

During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $600 or more?

☐ **No.** Go to line 7.

■ **Yes** List below each creditor to whom you paid a total of $600 or more and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.

| Creditor's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Was this payment for ... |
|---|---|---|---|---|
| **Select Portfolio Servicing, Inc.**<br>**PO Box 65250**<br>**Salt Lake City, UT 84165-0250** | | $3,399.33 | $52,519.26 | ■ Mortgage<br>☐ Car<br>☐ Credit Card<br>☐ Loan Repayment<br>☐ Suppliers or vendors<br>☐ Other___ |
| **Fidelity Bank**<br>**101 N Blakely St**<br>**Dunmore, PA 18512-1901** | | $632.04 | $6,531.18 | ☐ Mortgage<br>■ Car<br>☐ Credit Card<br>☐ Loan Repayment<br>☐ Suppliers or vendors<br>☐ Other___ |

7. **Within 1 year before you filed for bankruptcy, did you make a payment on a debt you owed anyone who was an insider?**
   *Insiders* include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner; corporations of which you are an officer, director, person in control, or owner of 20% or more of their voting securities; and any managing agent, including one for a business you operate as a sole proprietor. 11 U.S.C. § 101. Include payments for domestic support obligations, such as child support and alimony.

   ■ No
   ☐ Yes. List all payments to an insider.

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment |
|---|---|---|---|---|

8. **Within 1 year before you filed for bankruptcy, did you make any payments or transfer any property on account of a debt that benefited an insider?**
   Include payments on debts guaranteed or cosigned by an insider.

   ☐ No
   ■ Yes. List all payments to an insider

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment<br>Include creditor's name |
|---|---|---|---|---|
| **Sarah DeCantis**<br>**830 N Main Ave**<br>**Scranton, PA 18504-1517** | **Various** | $0.00 | $0.00 | **Utility payments to UGI** |

| **Part 4:** | Identify Legal Actions, Repossessions, and Foreclosures |
|---|---|

9. **Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?**
   List all such matters, including personal injury cases, small claims actions, divorces, collection suits, paternity actions, support or custody modifications, and contract disputes.

   ☐ No
   ■ Yes. Fill in the details.

| Case title<br>Case number | Nature of the case | Court or agency | Status of the case |
|---|---|---|---|

Official Form 107                **Statement of Financial Affairs for Individuals Filing for Bankruptcy**                page 3

Software Copyright (c) 2022 CINGroup - www.cincompass.com

**AA 035**

Case 5:22-bk-01826-MJC    Doc 1    Filed 09/22/22    Entered 09/22/22 20:50:41    Desc
Main Document    Page 35 of 56

Document Ref: ZPC4B-SHGYV-BVCPR-E2HXF

Page 35 of 55

Debtor 1    **DeCantis, Dominic Joseph**                                    Case number *(if known)*

| Case title Case number | Nature of the case | Court or agency | Status of the case |
|---|---|---|---|
| **Midland Funding LLC v. Dominic DeCantis** 16-CV-5067 | Collections | Lackawanna County Court of Common Pleas 200 N Washington Ave Scranton, PA 18503-1551 | ■ Pending ☐ On appeal ☐ Concluded |

10. **Within 1 year before you filed for bankruptcy, was any of your property repossessed, foreclosed, garnished, attached, seized, or levied?** Check all that apply and fill in the details below.

   ■ No. Go to line 11.
   ☐ Yes. Fill in the information below.

| Creditor Name and Address | Describe the Property Explain what happened | Date | Value of the property |
|---|---|---|---|
| | | | |

11. **Within 90 days before you filed for bankruptcy, did any creditor, including a bank or financial institution, set off any amounts from your accounts or refuse to make a payment because you owed a debt?**

   ■ No
   ☐ Yes. Fill in the details.

| Creditor Name and Address | Describe the action the creditor took | Date action was taken | Amount |
|---|---|---|---|
| | | | |

12. **Within 1 year before you filed for bankruptcy, was any of your property in the possession of an assignee for the benefit of creditors, a court-appointed receiver, a custodian, or another official?**

   ■ No
   ☐ Yes

**Part 5:    List Certain Gifts and Contributions**

13. **Within 2 years before you filed for bankruptcy, did you give any gifts with a total value of more than $600 per person?**

   ■ No
   ☐ Yes. Fill in the details for each gift.

| Gifts with a total value of more than $600 per person Person to Whom You Gave the Gift and Address: | Describe the gifts | Dates you gave the gifts | Value |
|---|---|---|---|
| | | | |

14. **Within 2 years before you filed for bankruptcy, did you give any gifts or contributions with a total value of more than $600 to any charity?**

   ■ No
   ☐ Yes. Fill in the details for each gift or contribution.

| Gifts or contributions to charities that total more than $600 Charity's Name Address (Number, Street, City, State and ZIP Code) | Describe what you contributed | Dates you contributed | Value |
|---|---|---|---|
| | | | |

**Part 6:    List Certain Losses**

15. **Within 1 year before you filed for bankruptcy or since you filed for bankruptcy, did you lose anything because of theft, fire, other disaster, or gambling?**

   ■ No
   ☐ Yes. Fill in the details.

| Describe the property you lost and how the loss occurred | Describe any insurance coverage for the loss Include the amount that insurance has paid. List pending insurance claims on line 33 of *Schedule A/B: Property*. | Date of your loss | Value of property lost |
|---|---|---|---|
| | | | |

**Part 7:    List Certain Payments or Transfers**

16. **Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone you**

Software Copyright (c) CINGroup - www.cincompass.com

AA 036

Document Ref: ZPC4B-SHGYV-BVCPR-E2HXF

| Debtor 1 | **DeCantis, Dominic Joseph** | Case number *(if known)* |
|---|---|---|

**consulted about seeking bankruptcy or preparing a bankruptcy petition?**
Include any attorneys, bankruptcy petition preparers, or credit counseling agencies for services required in your bankruptcy.

☐ No

■ Yes. Fill in the details.

| Person Who Was Paid Address Email or website address Person Who Made the Payment, if Not You | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|
| 1stopbk.com Inc. PO Box 7262 Lakeland, FL 33807-7262 | Credit Counseling | 6/16/2022 | $14.95 |
| Sabatini Freeman, LLC 216 N Blakely St Dunmore, PA 18512-1904 Debtor and Sarah DeCantis | Attorney's Fee of $500 and Filing Fee of $313.00 | 6/13/2022 | $813.00 |

17. **Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone who promised to help you deal with your creditors or to make payments to your creditors?**
Do not include any payment or transfer that you listed on line 16.

■ No

☐ Yes. Fill in the details.

| Person Who Was Paid Address | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|

18. **Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?**
Include both outright transfers and transfers made as security (such as the granting of a security interest or mortgage on your property). Do not include gifts and transfers that you have already listed on this statement.

■ No

☐ Yes. Fill in the details.

| Person Who Received Transfer Address Person's relationship to you | Description and value of property transferred | Describe any property or payments received or debts paid in exchange | Date transfer was made |
|---|---|---|---|

19. **Within 10 years before you filed for bankruptcy, did you transfer any property to a self-settled trust or similar device of which you are a beneficiary?** (These are often called *asset-protection devices*.)

■ No

☐ Yes. Fill in the details.

| Name of trust | Description and value of the property transferred | Date Transfer was made |
|---|---|---|

**Part 8:**   List of Certain Financial Accounts, Instruments, Safe Deposit Boxes, and Storage Units

20. **Within 1 year before you filed for bankruptcy, were any financial accounts or instruments held in your name, or for your benefit, closed, sold, moved, or transferred?**
Include checking, savings, money market, or other financial accounts; certificates of deposit; shares in banks, credit unions, brokerage houses, pension funds, cooperatives, associations, and other financial institutions.

■ No

☐ Yes. Fill in the details.

| Name of Financial Institution and Address (Number, Street, City, State and ZIP Code) | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|

AA 037

Debtor 1    **DeCantis, Dominic Joseph**                                    Case number *(if known)*

21. **Do you now have, or did you have within 1 year before you filed for bankruptcy, any safe deposit box or other depository for securities, cash, or other valuables?**

    ■ **No**
    ☐ **Yes. Fill in the details.**

| Name of Financial Institution<br>**Address** (Number, Street, City, State and ZIP Code) | Who else had access to it?<br>**Address** (Number, Street, City, State and ZIP Code) | Describe the contents | Do you still have it? |
|---|---|---|---|

22. **Have you stored property in a storage unit or place other than your home within 1 year before you filed for bankruptcy?**

    ■ **No**
    ☐ **Yes. Fill in the details.**

| Name of Storage Facility<br>**Address** (Number, Street, City, State and ZIP Code) | Who else has or had access to it?<br>**Address** (Number, Street, City, State and ZIP Code) | Describe the contents | Do you still have it? |
|---|---|---|---|

| **Part 9:** | Identify Property You Hold or Control for Someone Else |
|---|---|

23. **Do you hold or control any property that someone else owns? Include any property you borrowed from, are storing for, or hold in trust for someone.**

    ■ **No**
    ☐ **Yes. Fill in the details.**

| Owner's Name<br>**Address** (Number, Street, City, State and ZIP Code) | Where is the property?<br>(Number, Street, City, State and ZIP Code) | Describe the property | Value |
|---|---|---|---|

| **Part 10:** | Give Details About Environmental Information |
|---|---|

For the purpose of Part 10, the following definitions apply:

■ *Environmental law* means any federal, state, or local statute or regulation concerning pollution, contamination, releases of hazardous or toxic substances, wastes, or material into the air, land, soil, surface water, groundwater, or other medium, including statutes or regulations controlling the cleanup of these substances, wastes, or material.

■ *Site* means any location, facility, or property as defined under any environmental law, whether you now own, operate, or utilize it or used to own, operate, or utilize it, including disposal sites.

■ *Hazardous material* means anything an environmental law defines as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, contaminant, or similar term.

Report all notices, releases, and proceedings that you know about, regardless of when they occurred.

24. **Has any governmental unit notified you that you may be liable or potentially liable under or in violation of an environmental law?**

    ■ **No**
    ☐ **Yes. Fill in the details.**

| Name of site<br>**Address** (Number, Street, City, State and ZIP Code) | Governmental unit<br>**Address** (Number, Street, City, State and ZIP Code) | Environmental law, if you know it | Date of notice |
|---|---|---|---|

25. **Have you notified any governmental unit of any release of hazardous material?**

    ■ **No**
    ☐ **Yes. Fill in the details.**

| Name of site<br>**Address** (Number, Street, City, State and ZIP Code) | Governmental unit<br>**Address** (Number, Street, City, State and ZIP Code) | Environmental law, if you know it | Date of notice |
|---|---|---|---|

Software Copyright (c) 2022 CINGroup - www.cincompass.com

**AA 038**

Document Ref: ZPC4B-SHGYV-BVCPR-E2HXF                                                                Page 38 of 55

Debtor 1    **DeCantis, Dominic Joseph** _____    Case number *(if known)* _____

26. **Have you been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

☑ No

☐ Yes. Fill in the details.

| Case Title<br>Case Number | Court or agency<br>Name<br>**Address** (Number, Street, City, State and ZIP Code) | Nature of the case | Status of the case |
|---|---|---|---|
| | | | |

| Part 11: | Give Details About Your Business or Connections to Any Business |
|---|---|

27. **Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business?**

☐ A sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time

☐ A member of a limited liability company (LLC) or limited liability partnership (LLP)

☐ A partner in a partnership

☐ An officer, director, or managing executive of a corporation

☐ An owner of at least 5% of the voting or equity securities of a corporation

☑ No. None of the above applies.  Go to Part 12.

☐ Yes. Check all that apply above and fill in the details below for each business.

| Business Name<br>Address<br>(Number, Street, City, State and ZIP Code) | Describe the nature of the business<br><br>Name of accountant or bookkeeper | Employer Identification number<br>Do not include Social Security number or ITIN.<br><br>Dates business existed |
|---|---|---|
| | | |

28. **Within 2 years before you filed for bankruptcy, did you give a financial statement to anyone about your business? Include all financial institutions, creditors, or other parties.**

☑ No

☐ Yes. Fill in the details below.

| Name<br>Address<br>(Number, Street, City, State and ZIP Code) | Date Issued |
|---|---|
| | |

| Part 12: | Sign Below |
|---|---|

I have read the answers on this *Statement of Financial Affairs* and any attachments, and I declare under penalty of perjury that the answers are true and correct. I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

_____    _____

**Dominic Joseph DeCantis**    Signature of Debtor 2
Signature of Debtor 1

Date    **September 22, 2022** _____    Date    _____

Did you attach additional pages to *Your Statement of Financial Affairs for Individuals Filing for Bankruptcy* **(Official Form 107)?**
☑ No
☐ Yes

Did you pay or agree to pay someone who is not an attorney to help you fill out bankruptcy forms?
☑ No
☐ Yes. Name of Person_____. Attach the *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

AA 039

B2030 (Form 2030) (12/15)

# United States Bankruptcy Court
## Middle District of Pennsylvania, Wilkes-Barre Division

In re  **DeCantis, Dominic Joseph**
                                        Debtor(s)    Case No.
                                                    Chapter    **13**

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR

1.  Pursuant to 11 U .S.C. § 329(a) and Fed. Bankr. P. 2016(b), I certify that I am the attorney for the above named debtor(s) and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

☐  **FLAT FEE**

For legal services, I have agreed to accept ................................................. $ _____

Prior to the filing of this statement I have received .................................... $ _____

Balance Due .................................................................................. $ _____

■  **RETAINER**

For legal services, I have agreed to accept and received a retainer of ............... $        **500.00**

The undersigned shall bill against the retainer at an hourly rate of .................. $        **415.00**
[Or attach firm hourly rate schedule.] Debtor(s) have agreed to pay all Court approved fees and expenses exceeding the amount of the retainer.

2.  The source of the compensation paid to me was:

   ☐ Debtor    ■ Other (specify):    **Debtor and Sarah DeCantis**

3.  The source of compensation to be paid to me is:

   ☐ Debtor    ■ Other (specify):    **Debtor and Sarah DeCantis**

4.  ■  I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

   ☐  I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm.  A copy of the agreement, together with a list of the names of the people sharing in the compensation is attached.

5.  In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

   a.  Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
   b.  Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
   c.  Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
   d.  [Other provisions as needed]
      **The above stated fee is a minimum fee. All work is performed at hourly rates. The current hourly rates are $415-$310/hour for attorneys and $150/hour for paralegals. Rates may be changed at any time with written notice to client and generally are increased at the beginning of each calendar year.**

6.  By agreement with the debtor(s), the above-disclosed fee does not include the following service:

Software Copyright (c) 2022 CINGroup - www.cincompass.com

**AA 040**

Document Ref: ZPC4B-SHGYV-BVCPR-E2HXF

In re  **DeCantis, Dominic Joseph** _____    Case No. _____
                                              Debtor(s)

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR
(Continuation Sheet)

| |
|---|
| **CERTIFICATION** |

    I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.

**September 22, 2022** _____

*Date*

*Carlo Sabatini*

**Carlo Sabatini**
*Signature of Attorney*
**Sabatini Freeman, LLC**

**216 N Blakely St**
**Dunmore, PA 18512-1904**
**(570) 341-9000**
**carlo@bankruptcypa.com** _____

*Name of law firm*

Software Copyright (c) 2022 CINGroup - www.cincompass.com

AA 041

Case 5:22-bk-01826-MJC     Doc 1     Filed 09/22/22     Entered 09/22/22 20:50:41     Desc
Main Document     Page 41 of 56

Document Ref: ZPC4B-SHGYV-BVCPR-E2HXF

Page 41 of 55

CHAPTER 13 BANKRUPTCY FEE AGREEMENT

1. SERVICES RETAINED FOR: Dominic DeCantis ("Client")

Client hires Sabatini Freeman, LLC ("Law Firm") to provide bankruptcy legal services and to represent Client with respect to all debts allegedly owed by Client. Law Firm will not provide any other non-bankruptcy services to Client. The fees in this agreement are in addition to any fees charged under any earlier agreement between Client and Law Firm. For example, if Law Firm has represented Client with respect to collection communications, then the fees to be charged under this new agreement are in addition to any other fees already charged.

While providing bankruptcy legal services, Law Firm might identify various claims that Client holds and will list those claims on the bankruptcy schedules; however, Law Firm will not represent Client with respect to these claims without a separate written agreement. One example is claims arising from unlawful collection communications.

This Agreement presumes that Client has provided Law Firm with accurate information about Client's financial situation and that Client's financial situation does not change before the bankruptcy case is filed. If Client's financial situation changes (including property ownership interests, income or expenses) then Client may no longer qualify for a Chapter 13, or the below minimum fees may increase.

**Client's bankruptcy case will not be filed until Client has done all of the following: (1) received credit counseling, (2) signed the bankruptcy petition, (3) paid the court-filing fee, (4) paid the up-front minimum attorney fee and (5) paid any additional attorney's fees incurred in excess of the minimum fee as of the date of filing. Until the bankruptcy case is filed, creditors may continue action against Client, such as property sales or repossessions. If before the bankruptcy case is filed Client fails to make any payment on time, this file may be closed.**

2. COSTS. Client must pay the bankruptcy court's filing fee that is in effect at the time that the case is filed. As of December 1, 2021, the court-filing fee for a Chapter 13 is $313. Client must also pay any expenses incurred by Law Firm including but not limited to other filing fees, transcripts, depositions, postage, photocopies, and bank fees incurred from returned checks. All of these costs are paid to Law Firm. Client must also pay for credit counseling and debtor education. Credit counseling and debtor education fees are <u>not</u> paid to Law Firm and total about $30.00.

3. ATTORNEY FEES. All time spent on this matter will be billed at the firm's regular hourly rates. The hourly rates are presently $415 - $350/hour for attorneys and $150/hour for paralegals. Rates may be changed at any time with written notice to Client, and are generally increased at the beginning of each calendar year. Travel time is charged at the full hourly rates.

Law Firm will not begin preparing your bankruptcy case for filing until the entire Pre-Filing Payment to Law Firm has been paid (see page 3 of this agreement). The time spent preparing the case for filing can be substantial. It is possible that the Pre-Filing Payment to Law Firm will not be sufficient to cover all time spent preparing the case for filing. If that occurs, then Law Firm may require client to pay all unpaid attorney's fees before Law Firm files the bankruptcy case.

After the bankruptcy case is filed, Client will not pay Law Firm any more attorney's fees directly.

1

AA 042

Document Ref: ZPC4B-SHGYV-BVCPR-E2HXF

Instead, those fees will be paid indirectly using money that Client's Chapter 13 Plan requires Client to pay to the Chapter 13 Trustee. Client understands that the Chapter 13 Plan that Law Firm will propose to the Bankruptcy Court might not seek approval of the lowest payment that could possibly be approved. Instead, the amount that the Plan requires Client to pay to the trustee may be more than the minimum amount required by the bankruptcy laws. These additional funds will be available to pay attorney's fees to Law Firm. If some of these funds are not used to pay attorney's fees, they will likely be paid to your other creditors. Additionally, even after the plan has been approved, the payment that you make to the Chapter 13 Trustee may be increased if necessary to cover additional fees.

4. NON-BASIC SERVICES PERFORMED ON A CONTINGENCY BASIS:  For cases alleging violations of the automatic stay, discharge injunction, or seeking recovery of preferences or turnover: Law Firm shall receive 33 and 1/3% of the gross recovery, if such amount is greater than the amount Law Firm would earn on an hourly basis. Otherwise, Law Firm shall be paid at hourly rates.

5. ATTORNEY'S LIEN FOR FEES. Law Firm shall have a lien for all accrued compensation and costs on any funds that Client has deposited with Law Firm or that are held by a third person (such as a trustee).

6. DIVORCE OR SEPARATION:  Client agrees to notify Law Firm immediately of any separation or divorce or other dispute between spouses. Such a dispute may create a conflict of interest that would cause Law Firm to seek to terminate this agreement.

7. CONVERSION FROM CHAPTER 13 TO CHAPTER 7: $1,000 plus court fee.

8. CASE DISMISSAL: If the bankruptcy case is dismissed, Law Firm shall have the right to recover all funds in the possession of the Chapter 13 trustee that would otherwise be refunded to Client, up to the total fees and costs then due for the bankruptcy case. Client will then pay directly to Law Firm any remaining amounts still owing for attorney's fees.

9. TERMINATION:  Client may terminate this agreement at any time. Law Firm may also terminate the agreement at any time, except that if Law Firm wishes to terminate the agreement after the bankruptcy case is filed, then Law Firm must first obtain permission from the bankruptcy court. If the agreement is terminated before a bankruptcy is filed or before a bankruptcy discharge is entered, Law Firm will be entitled to paid at the hourly rates for time spent. Six months after we close your file, we may destroy it without further notice to you, unless you make arrangements with us before that date to take your file.

10. AUTHORIZATIONS:  Client authorizes Law Firm to (a) disclose Client's Social Security Number to third parties for the purpose of obtaining investigative searches on Client, which searches may disclose information governed by the Gramm-Leach-Bliley Act, (b) reject settlement offers received from unsecured creditors without advising Client of the offer, (c) dispose of mail addressed to Client (e.g. catalogs, applications for new credit cards, etc.) without forwarding that mail to Client, and (d) communicate with Client by text message to Client's cell phone.

11. GUARANTORS: If Law Firm provides services to only one of the persons signing below, then Client authorizes Law Firm to communicate with both signers. Each signer agrees to be fully liable for all fees that become due under this agreement (even if services are provided to only one person).

12. DISCLOSURES: Before the case is filed, Client will have to complete an electronic questionnaire and a paper questionnaire. Client will also have to provide Law Firm with certain documents. Client agrees to

2

AA 043

Case 5:22-bk-01826-MJC     Doc 1     Filed 09/22/22     Entered 09/22/22 20:50:41     Desc
Main Document     Page 43 of 56
Document Ref: ZPC4B-SHGYV-BVCPR-E2HXF                                                    Page 43 of 55

complete the questionnaires within two weeks of when Client receives them, and to also provide all requested documents at the same time. Client also acknowledges that Client may have to disclose the bankruptcy case to Client's ex-spouse or separated spouse.

13. PAYMENT: The Pre-filing Payment to Law Firm is calculated as follows:

Court filing fee of <u>$313.00</u>, plus Minimum Attorney Fee of <u>$500.00</u> for a total of <u>$813.00</u>.

Guarantor made this payment on June 13, 2022 by using Law Firm's online portal at <u>https://secure.lawpay.com/pages/sabatinilaw/trust</u> and by entering at that portal the account information for a payment by eCheck. There is a $10.00 fee for each check returned for insufficient funds.


_____

Dominic DeCantis ("Client")


_____

Sarah DeCantis ("Guarantor")

3

AA 044

Document Ref: ZPC4B-SHGYV-BVCPR-E2HXF

# Signature Certificate

Reference number: MYGGF-ZKXRC-GJU88-3X9KX

| Signer | Timestamp | Signature |
|---|---|---|

**Sarah Decantis**
Email: sdecantis@yahoo.com

| | |
|---|---|
| Sent: | 14 Jun 2022 19:01:52 UTC |
| Viewed: | 14 Jun 2022 20:23:02 UTC |
| Signed: | 14 Jun 2022 20:23:57 UTC |

**Recipient Verification:**

✔Email verified          14 Jun 2022 20:23:02 UTC

IP address: 73.64.6.180
Location: Scranton, United States

**Dominic Decantis**
Email: sdecantis@gmail.com

| | |
|---|---|
| Sent: | 14 Jun 2022 19:01:52 UTC |
| Viewed: | 14 Jun 2022 20:25:56 UTC |
| Signed: | 14 Jun 2022 20:26:54 UTC |

**Recipient Verification:**

✔Email verified          14 Jun 2022 20:25:56 UTC

IP address: 73.64.6.180
Location: Scranton, United States

Document completed by all parties on:
14 Jun 2022 20:26:54 UTC

Page 1 of 1



**Signed with PandaDoc**

PandaDoc is a document workflow and certified eSignature
solution trusted by 30,000+ companies worldwide.



AA 045

**United States Bankruptcy Court**
**Middle District of Pennsylvania, Wilkes-Barre Division**

IN RE:                                                        Case No. _____

**DeCantis, Dominic Joseph** _____    Chapter **13** _____
                              Debtor(s)

## VERIFICATION OF CREDITOR MATRIX

The above named debtor(s) hereby verify(ies) that the attached matrix listing creditors is true to the best of my(our) knowledge.

Date: **September 22, 2022** _____    Signature: _____
                                                                                    Debtor

Date: _____    Signature: _____
                                                                            Joint Debtor, if any

Software Copyright (c) 2022 CINGroup - www.cincompass.com

AA 046

Case 5:22-bk-01826-MJC    Doc 1    Filed 09/22/22    Entered 09/22/22 20:50:41    Desc
Main Document    Page 46 of 56

Document Ref: ZPC4B-SHGYV-BVCPR-E2HXF

Page 46 of 55

DeCantis, Dominic Joseph
830 N Main Ave
Scranton, PA  18504-1517

Midland Funding, LLC
c/o Pressler and Pressler, LLP
7 Entin Rd
Parsippany, NJ  07054-5020

Sabatini Freeman, LLC
216 N Blakely St
Dunmore, PA  18512-1904

Midland Funding, LLC
c/o Hayt, Hayt & Landau, LLC
2 Industrial Way W
Eatontown, NJ  07724-2265

Arrow Financial Services, LLC
2605 Camino del Rio S
San Diego, CA  92108-3706

Officer, Managing, or General Agent
Hayt, Hayt & Landau, LLC
2 Industrial Way W
Eatontown, NJ  07724-2265

Bank of America
PO Box 982234
El Paso, TX  79998-2234

Officer, Managing, or General Agent
LVNV Funding, LLC
PO Box 10466
Greenville, SC  29603-0466

City of Scranton
c/o Portnoff Law Associates, Ltd.
PO Box 3020
Norristown, PA  19404-3020

Officer, Managing, or General Agent
Arrow Financial Services, LLC
2605 Camino del Rio S
San Diego, CA  92108-3706

Fidelity Bank
PO Box 997
Scranton, PA  18501-0997

Portnoff Law Associates, Ltd.
PO Box 3020
Norristown, PA  19404-3020

Lackawanna County Treasurer Office
123 Wyoming Ave
Scranton, PA  18503-2026

PowerPay, LLC/Connexus Credit
Union
PO Box 546
Conshohocken, PA  19428-0546

LVNV Funding, LLC
C/O Resurgent Capital Services
PO Box 10466
Greenville, SC  29603-0466

Select Portfolio Sevices
PO Box 65250
Salt Lake City, UT  84165

Martin Rubin, Managing Attorney
Hayt, Hayt & Landau, LLC
2 Industrial Way W
Eatontown, NJ  07724-2265

Single Tax Office
Lackawanna County Gov't Center
123 Wyoming Ave
Scranton, PA  18503-2026

Michael L Schuman
c/o Hayt, Hayt, & Landau, LLC
2 Industrial Way W
Eatontown, NJ  07724-2265

Xfinity
PO Box 6505
Chelmsford, MA  01824-0905

Document Ref: ZPC4B-SHGYV-BVCPR-E2HXF

<table>
<tr><td>

**Fill in this information to identify your case:**

Debtor 1    **Dominic Joseph DeCantis**

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:    Middle District of Pennsylvania, Wilkes-Barre Division

Case number
(if known)

</td><td>

**Check as directed in lines 17 and 21:**

According to the calculations required by this Statement:

■   1. Disposable income is not determined under 11 U.S.C. § 1325(b)(3).

☐   2. Disposable income is determined under 11 U.S.C. § 1325(b)(3).

■   3. The commitment period is 3 years.

☐   4. The commitment period is 5 years.

☐ Check if this is an amended filing

</td></tr>
</table>

## Official Form 122C-1
# Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period
**10/19**

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for being accurate. If more space is needed, attach a separate sheet to this form. Include the line number to which the additional information applies. On the top of any additional pages, write your name and case number (if known).

**Part 1:**    **Calculate Your Average Monthly Income**

1. **What is your marital and filing status?** Check one only.

   ☐ **Not married**. Fill out Column A, lines 2-11.

   ■ **Married**. Fill out both Columns A and B, lines 2-11.

Fill in the average monthly income that you received from all sources, derived during the 6 full months before you file this bankruptcy case. 11 U.S.C. § 101(10A). For example, if you are filing on September 15, the 6-month period would be March 1 through August 31. If the amount of your monthly income varied during the 6 months, add the income for all 6 months and divide the total by 6. Fill in the result. Do not include any income amount more than once. For example, if both spouses own the same rental property, put the income from that property in one column only. If you have nothing to report for any line, write $0 in the column.

| | | Column A<br>Debtor 1 | Column B<br>Debtor 2 or<br>non-filing spouse |
|---|---|---|---|
| 2. | **Your gross wages, salary, tips, bonuses, overtime, and commissions** (before all payroll deductions). | $ 2,869.65 | $ 374.74 |
| 3. | **Alimony and maintenance payments.** Do not include payments from a spouse if Column B is filled in. | $ 0.00 | $ 0.00 |
| 4. | **All amounts from any source which are regularly paid for household expenses of you or your dependents, including child support.** Include regular contributions from an unmarried partner, members of your household, your dependents, parents, and roommates. Do not include payments from a spouse. Do not include payments you listed on line 3 | $ 110.79 | $ 0.00 |

5. **Net income from operating a business, profession, or farm**    Debtor 1

| | | | | |
|---|---|---|---|---|
| Gross receipts (before all deductions) | $ | 0.00 | | |
| Ordinary and necessary operating expenses | -$ | 0.00 | | |
| Net monthly income from a business, profession, or farm | $ | 0.00 | **Copy here ->** $ 0.00 | $ 0.00 |

6. **Net income from rental and other real property**    Debtor 1

| | | | | |
|---|---|---|---|---|
| Gross receipts (before all deductions) | $ | 950.00 | | |
| Ordinary and necessary operating expenses | -$ | -48.00 | | |
| Net monthly income from rental or other real property | $ | 902.00 | **Copy here ->** $ 902.00 | $ 0.00 |

Software Copyright (c) 2022 CINGroup - www.cincompass.com

**AA 048**

Document Ref: ZPC4B-SHGYV-BVCPR-E2HXF

Debtor 1    __DeCantis, Dominic Joseph__    Case number (*if known*) _____

|  | Column A Debtor 1 | Column B Debtor 2 or non-filing spouse |
|---|---|---|

7. **Interest, dividends, and royalties**    $ 0.02    $ 0.00

8. **Unemployment compensation**    $ 0.00    $ 0.00

Do not enter the amount if you contend that the amount received was a benefit under the Social Security Act. Instead, list it here:

For you    $ 0.00

For your spouse    $ 0.00

9. **Pension or retirement income.** Do not include any amount received that was a benefit under the Social Security Act. Also, except as stated in the next sentence, do not include any compensation, pension, pay, annuity, or allowance paid by the United States Government in connection with a disability, combat-related injury or disability, or death of a member of the uniformed services. If you received any retired pay paid under chapter 61 of title 10, then include that pay only to the extent that it does not exceed the amount of retired pay to which you would otherwise be entitled if retired under any provision of title 10 other than chapter 61 of that title.    $ 0.00    $ 0.00

10. **Income from all other sources not listed above.** Specify the source and amount. Do not include any benefits received under the Social Security Act; payments received as a victim of a war crime, a crime against humanity, or international or domestic terrorism; or compensation, pension, pay, annuity, or allowance paid by the United States Government in connection with a disability, combat-related injury or disability, or death of a member of the uniformed services. If necessary, list other sources on a separate page and put the total below.

_____    $ 0.00    $ 0.00

_____    $ 0.00    $ 0.00

Total amounts from separate pages, if any.    + $ 0.00    $ 0.00

11. **Calculate your total average monthly income.** Add lines 2 through 10 for each column. Then add the total for Column A to the total for Column B.    $ 3,882.46    + $ 374.74    = $ 4,257.20

**Total average monthly income**

---

**Part 2:**    Determine How to Measure Your Deductions from Income

12. **Copy your total average monthly income from line 11.**    $ 4,257.20

13. **Calculate the marital adjustment.** Check one:

☐  You are not married. Fill in 0 below.

☐  You are married and your spouse is filing with you. Fill in 0 below.

☑  You are married and your spouse is not filing with you.

Fill in the amount of the income listed in line 11, Column B, that was NOT regularly paid for the household expenses of you or your dependents, such as payment of the spouse's tax liability or the spouse's support of someone other than you or your dependents.

Below, specify the basis for excluding this income and the amount of income devoted to each purpose. If necessary, list additional adjustments on a separate page.

If this adjustment does not apply, enter 0 below.

_____    $ _____

_____    $ _____

_____    + $ _____

Total    $ 0.00    Copy here=>    - 0.00

14. **Your current monthly income.** Subtract line 13 from line 12.    $ 4,257.20

15. **Calculate your current monthly income for the year.** Follow these steps:

15a.  Copy line 14 here=>    $ 4,257.20

Official Form 122C-1    Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period    page 2
Software Copyright (c) 2022 CINGroup - www.cincompass.com

AA 049

Case 5:22-bk-01826-MJC    Doc 1    Filed 09/22/22    Entered 09/22/22 20:50:41    Desc
Main Document    Page 49 of 56
Document Ref: ZPC4B-SHGYV-BVCPR-E2HXF    Page 49 of 55

Debtor 1    **DeCantis, Dominic Joseph**                                     Case number (*if known*)

| | | | |
|---|---|---|---|
| | Multiply line 15a by 12 (the number of months in a year). | | **x 12** |
| 15b. | The result is your current monthly income for the year for this part of the form. ........................................ | | $ **51,086.40** |

---

16. **Calculate the median family income that applies to you.** Follow these steps:

16a. Fill in the state in which you live.                    **PA**

16b. Fill in the number of people in your household.         **2**

16c. Fill in the median family income for your state and size of household.                    $ **74,805.00**
To find a list of applicable median income amounts, go online using the link specified in the separate
instructions for this form. This list may also be available at the bankruptcy clerk's office.

17. **How do the lines compare?**

17a.  ■  Line 15b is less than or equal to line 16c. On the top of page 1 of this form, check box 1, *Disposable income is not determined under 11 U.S.C. § 1325(b)(3)*. **Go to Part 3.** Do NOT fill out *Calculation of Your Disposable Income* (Official Form 122C-2).

17b.  ☐  Line 15b is more than line 16c. On the top of page 1 of this form, check box 2, *Disposable income is determined under 11 U.S.C. § 1325(b)(3)*. **Go to Part 3 and fill out Calculation of Your Disposable Income (Official Form 122C-2)**. On line 39 of that form, copy your current monthly income from line 14 above.

---

| **Part 3:** | **Calculate Your Commitment Period Under 11 U.S.C. § 1325(b)(4)** |
|---|---|

18. **Copy your total average monthly income from line 11 .** ....................................................    $ **4,257.20**

19. **Deduct the marital adjustment if it applies.** If you are married, your spouse is not filing with you, and you contend
that calculating the commitment period under 11 U.S.C. § 1325(b)(4) allows you to deduct part of your spouse's
income, copy the amount from line 13.
19a. If the marital adjustment does not apply, fill in 0 on line 19a.                    -$ **0.00**

19b. **Subtract line 19a from line 18.**                    $ **4,257.20**

20. **Calculate your current monthly income for the year.** Follow these steps:

20a. Copy line 19b                    $ **4,257.20**

Multiply by 12 (the number of months in a year).                    **x 12**

20b. The result is your current monthly income for the year for this part of the form                    $ **51,086.40**

20c. Copy the median family income for your state and size of household from line 16c                    $ **74,805.00**

21. **How do the lines compare?**

■  Line 20b is less than line 20c. Unless otherwise ordered by the court, on the top of page 1 of this form, check box 3, *The commitment period is 3 years.* Go to Part 4.

☐  Line 20b is more than or equal to line 20c. Unless otherwise ordered by the court, on the top of page 1 of this form, check box 4, *The commitment period is 5 years.* Go to Part 4.

---

| **Part 4:** | **Sign Below** |
|---|---|

By signing here, under penalty of perjury I declare that the information on this statement and in any attachments is true and correct.

**X** _____

**Dominic Joseph DeCantis**
Signature of Debtor 1

Date  **September 22, 2022**
      MM / DD / YYYY

If you checked 17a, do NOT fill out or file Form 122C-2.

If you checked 17b, fill out Form 122C-2 and file it with this form. On line 39 of that form, copy your current monthly income from line 14 above.

---

AA 050

**United States Bankruptcy Court**
**Middle District of Pennsylvania, Wilkes-Barre Division**

IN RE:                                                      Case No. _____

**DeCantis, Dominic Joseph** _____     Chapter **13** _____
                         Debtor(s)

## BUSINESS INCOME AND EXPENSES

**FINANCIAL REVIEW OF THE DEBTOR'S BUSINESS** (Note: <u>ONLY INCLUDE</u> information directly related to the business operation.)

**PART A** - GROSS BUSINESS INCOME FOR THE PREVIOUS 12 MONTHS:

   1.  Gross Income For 12 Months Prior to Filing:                 $ _____

**PART B** - ESTIMATED AVERAGE FUTURE <u>GROSS</u> MONTHLY INCOME:

   2.  Gross Monthly Income:                                      $ _____ **950.00**

**PART C** - ESTIMATED FUTURE MONTHLY EXPENSES:

   3.  Net Employee Payroll (Other Than Debtor)                   $ _____
   4.  Payroll Taxes                                              $ _____
   5.  Unemployment Taxes                                         $ _____
   6.  Worker's Compensation                                      $ _____
   7.  Other Taxes                                                $ _____
   8.  Inventory Purchases (Including raw materials)              $ _____
   9.  Purchase of Feed/Fertilizer/Seed/Spray                     $ _____
  10.  Rent (Other than debtor's principal residence)             $ _____
  11.  Utilities                                                  $ _____
  12.  Office Expenses and Supplies                               $ _____
  13.  Repairs and Maintenance                                    $ _____
  14.  Vehicle Expenses                                           $ _____
  15.  Travel and Entertainment                                   $ _____
  16.  Equipment Rental and Leases                                $ _____
  17.  Legal/Accounting/Other Professional Fees                   $ _____
  18.  Insurance                                                  $ _____
  19.  Employee Benefits (e.g., pension, medical, etc.)           $ _____
  20.  Payments to be Made Directly by Debtor to Secured Creditors for Pre-Petition
     Business Debts (Specify):                                 $ _____

  21.  Other (Specify):                                          $ _____ **48.00**
     **Maintenance, repair, upkeep, utilities          48.00**

  22.  Total Monthly Expenses (Add items 3-21)                    $ _____ **48.00**

**PART D** - ESTIMATED AVERAGE <u>NET</u> MONTHLY INCOME

  23.  **AVERAGE NET MONTHLY INCOME** (Subtract Item 22 from Item 2)    $ _____ **902.00**

Software Copyright (c) 2022 CINGroup - www.cincompass.com

AA 051

Document Ref: ZPC4B-SHGYV-BVCPR-E2HXF

# Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy (Form 2010)

This notice is for you if:

You are an individual filing for bankruptcy, and

Your debts are primarily consumer debts. *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

**The types of bankruptcy that are available to individuals**

Individuals who meet the qualifications may file under one of four different chapters of Bankruptcy Code:

Chapter 7 - Liquidation

Chapter 11 - Reorganization

Chapter 12 - Voluntary repayment plan for family farmers or fishermen

Chapter 13 - Voluntary repayment plan for individuals with regular income

**You should have an attorney review your decision to file for bankruptcy and the choice of chapter.**

| Chapter 7: | Liquidation | |
|---|---|---|
| | $245 | filing fee |
| | $78 | administrative fee |
| + | $15 | trustee surcharge |
| | $338 | total fee |

Chapter 7 is for individuals who have financial difficulty preventing them from paying their debts and who are willing to allow their non-exempt property to be used to pay their creditors. The primary purpose of filing under chapter 7 is to have your debts discharged. The bankruptcy discharge relieves you after bankruptcy from having to pay many of your pre-bankruptcy debts. Exceptions exist for particular debts, and liens on property may still be enforced after discharge. For example, a creditor may have the right to foreclose a home mortgage or repossess an automobile.

However, if the court finds that you have committed certain kinds of improper conduct described in the Bankruptcy Code, the court may deny your discharge.

You should know that even if you file chapter 7 and you receive a discharge, some debts are not discharged under the law. Therefore, you may still be responsible to pay:

most taxes;

most student loans;

domestic support and property settlement obligations;

Software Copyright (c) 2022 CINGroup - www.cincompass.com

AA 052

Document Ref: ZPC4B-SHGYV-BVCPR-E2HXF

most fines, penalties, forfeitures, and criminal restitution obligations; and

certain debts that are not listed in your bankruptcy papers.

You may also be required to pay debts arising from:

fraud or theft;

fraud or defalcation while acting in breach of fiduciary capacity;

intentional injuries that you inflicted; and

death or personal injury caused by operating a motor vehicle, vessel, or aircraft while intoxicated from alcohol or drugs.

If your debts are primarily consumer debts, the court can dismiss your chapter 7 case if it finds that you have enough income to repay creditors a certain amount. You must file *Chapter 7 Statement of Your Current Monthly Income* (Official Form 122A–1) if you are an individual filing for bankruptcy under chapter 7. This form will determine your current monthly income and compare whether your income is more than the median income that applies in your state.

If your income is not above the median for your state, you will not have to complete the other chapter 7 form, the *Chapter 7 Means Test Calculation* (Official Form 122A–2).

If your income is above the median for your state, you must file a second form —the *Chapter 7 Means Test Calculation* (Official Form 122A–2). The calculations on the form— sometimes called the *Means Test*—deduct from your income living expenses and payments on certain debts to determine any amount available to pay unsecured creditors. If

your income is more than the median income for your state of residence and family size, depending on the results of the *Means Test*, the U.S. trustee, bankruptcy administrator, or creditors can file a motion to dismiss your case under § 707(b) of the Bankruptcy Code. If a motion is filed, the court will decide if your case should be dismissed. To avoid dismissal, you may choose to proceed under another chapter of the Bankruptcy Code.

If you are an individual filing for chapter 7 bankruptcy, the trustee may sell your property to pay your debts, subject to your right to exempt the property or a portion of the proceeds from the sale of the property. The property, and the proceeds from property that your bankruptcy trustee sells or liquidates that you are entitled to, is called *exempt property.* Exemptions may enable you to keep your home, a car, clothing, and household items or to receive some of the proceeds if the property is sold.

Exemptions are not automatic. To exempt property, you must list it on *Schedule C: The Property You Claim as Exempt* (Official Form 106C). If you do not list the property, the trustee may sell it and pay all of the proceeds to your creditors.

---

**Chapter 11: Reorganization**

---

|   | $1,167 | filing fee |
|---|---|---|
| + | $571 | administrative fee |
|   | $1,738 | total fee |

Chapter 11 is often used for reorganizing a business, but is also available to individuals. The provisions of chapter 11 are too complicated to summarize briefly.

**Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy (Form 2010)**     page **2**

Software Copyright (c) 2022 CINGroup - www.cincompass.com

AA 053

Case 5:22-bk-01826-MJC     Doc 1     Filed 09/22/22     Entered 09/22/22 20:50:41     Desc
Main Document     Page 53 of 56

Document Ref: ZPC4B-SHGYV-BVCPR-E2HXF     Page 53 of 55

**Read These Important Warnings**

Because bankruptcy can have serious long-term financial and legal consequences, including loss of your property, you should hire an attorney and carefully consider all of your options before you file. Only an attorney can give you legal advice about what can happen as a result of filing for bankruptcy and what your options are. If you do file for bankruptcy, an attorney can help you fill out the forms properly and protect you, your family, your home, and your possessions.

Although the law allows you to represent yourself in bankruptcy court, you should understand that many people find it difficult to represent themselves successfully. The rules are technical, and a mistake or inaction may harm you. If you file without an attorney, you are still responsible for knowing and following all of the legal requirements.

You should not file for bankruptcy if you are not eligible to file or if you do not intend to file the necessary documents.

Bankruptcy fraud is a serious crime; you could be fined and imprisoned if you commit fraud in your bankruptcy case. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

## Chapter 12: Repayment plan for family farmers or fishermen

|   | $200 | filing fee |
|---|---|---|
| + | $78 | administrative fee |
|   | $278 | total fee |

Similar to chapter 13, chapter 12 permits family farmers and fishermen to repay their debts over a period of time using future earnings and to discharge some debts that are not paid.

## Chapter 13: Repayment plan for individuals with regular income

|   | $235 | filing fee |
|---|---|---|
| + | $78 | administrative fee |
|   | $313 | total fee |

Chapter 13 is for individuals who have regular income and would like to pay all or part of their debts in installments over a period of time and to discharge some debts that are not paid. You are eligible for chapter 13 only if your debts are not more than certain dollar amounts set forth in 11 U.S.C. § 109.

Under chapter 13, you must file with the court a plan to repay your creditors all or part of the money that you owe them, usually using your future earnings. If the court approves your plan, the court will allow you to repay your debts, as adjusted by the plan, within 3 years or 5 years, depending on your income and other factors.

After you make all the payments under your plan, many of your debts are discharged. The debts that are not discharged and that you may still be responsible to pay include:

- domestic support obligations,

- most student loans,

- certain taxes,

- debts for fraud or theft,

- debts for fraud or defalcation while acting in a fiduciary capacity,

- most criminal fines and restitution obligations,

- certain debts that are not listed in your bankruptcy papers,

- certain debts for acts that caused death or personal injury, and

- certain long-term secured debts.

AA 054

**Warning: File Your Forms on Time**

Section 521(a)(1) of the Bankruptcy Code requires that you promptly file detailed information about your creditors, assets, liabilities, income, expenses and general financial condition. The court may dismiss your bankruptcy case if you do not file this information within the deadlines set by the Bankruptcy Code, the Bankruptcy Rules, and the local rules of the court.

For more information about the documents and their deadlines, go to:
http://www.uscourts.gov/forms/bankruptcy-forms

**Bankruptcy crimes have serious consequences**

If you knowingly and fraudulently conceal assets or make a false oath or statement under penalty of perjury—either orally or in writing—in connection with a bankruptcy case, you may be fined, imprisoned, or both.

All information you supply in connection with a bankruptcy case is subject to examination by the Attorney General acting through the Office of the U.S. Trustee, the Office of the U.S. Attorney, and other offices and employees of the U.S. Department of Justice.

**Make sure the court has your mailing address**

The bankruptcy court sends notices to the mailing address you list on *Voluntary Petition for Individuals Filing for Bankruptcy* (Official Form 101). To ensure that you receive information about your case, Bankruptcy Rule 4002 requires that you notify the court of any changes in your address.

A married couple may file a bankruptcy case together—called a *joint case*. If you file a joint case and each spouse lists the same mailing address on the bankruptcy petition, the bankruptcy court generally will mail you and your spouse one copy of each notice, unless you file a statement with the court asking that each spouse receive separate copies.

**Understand which services you could receive from credit counseling agencies**

The law generally requires that you receive a credit counseling briefing from an approved credit counseling agency. 11 U.S.C. § 109(h). If you are filing a joint case, both spouses must receive the briefing. With limited exceptions, you must receive it within the 180 days *before* you file your bankruptcy petition. This briefing is usually conducted by telephone or on the Internet.

In addition, after filing a bankruptcy case, you generally must complete a financial management instructional course before you can receive a discharge. If you are filing a joint case, both spouses must complete the course.

You can obtain the list of agencies approved to provide both the briefing and the instructional course from: http://www.uscourts.gov/services-forms/bankruptcy/credit-counseling-and-debtor-education-courses.

In Alabama and North Carolina, go to: http://www.uscourts.gov/services-forms/bankruptcy/credit-counseling-and-debtor-education-courses

If you do not have access to a computer, the clerk of the bankruptcy court may be able to help you obtain the list.

Software Copyright (c) 2022 CINGroup - www.cincompass.com

AA 055

Document Ref: ZPC4B-SHGYV-BVCPR-E2HXF

# Signature Certificate

Reference number: ZPC4B-SHGYV-BVCPR-E2HXF

| Signer | Timestamp | Signature |
|--------|-----------|-----------|

**Carlo Sabatini**
Email: carlo@bankruptcypa.com

| | |
|---|---|
| Sent: | 23 Sep 2022 00:20:05 UTC |
| Viewed: | 23 Sep 2022 00:20:21 UTC |
| Signed: | 23 Sep 2022 00:21:00 UTC |

**Recipient Verification:**
✔ Email verified                23 Sep 2022 00:20:21 UTC

IP address: 174.54.241.253
Location: Dalton, United States

**Dominic DeCantis**
Email: sdecantis@gmail.com

| | |
|---|---|
| Sent: | 23 Sep 2022 00:20:05 UTC |
| Viewed: | 23 Sep 2022 00:22:47 UTC |
| Signed: | 23 Sep 2022 00:24:59 UTC |

**Recipient Verification:**
✔ Email verified                23 Sep 2022 00:22:47 UTC

IP address: 73.64.6.180
Location: Scranton, United States

Document completed by all parties on:
23 Sep 2022 00:24:59 UTC

Page 1 of 1



**Signed with PandaDoc**

PandaDoc is a document workflow and certified eSignature
solution trusted by 30,000+ companies worldwide.



AA 056

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

IN RE:
Dominic DeCantis

CHAPTER 13

CASE NO.

  X   ORIGINAL PLAN
      AMENDED PLAN (Indicate 1ST, 2ND, 3RD, etc.)
  3   Number of Motions to Avoid Liens
  0   Number of Motions to Value Collateral

**CHAPTER 13 PLAN**

**NOTICES**

Debtors must check one box on each line to state whether or not the plan includes each of the following items. If an item is checked as "Not Included" or if both boxes are checked or if neither box is checked, the provision will be ineffective if set out later in the plan.

| | | | |
|---|---|---|---|
| 1 | The plan contains nonstandard provisions, set out in § 9, which are not included in the standard plan as approved by the U.S. Bankruptcy Court for the Middle District of Pennsylvania. | [X] Included | [ ] Not Included |
| 2 | The plan contains a limit on the amount of a secured claim, set out in § 2.E, which may result in a partial payment or no payment at all to the secured creditor. | [ ] Included | [X] Not Included |
| 3 | The plan avoids a judicial lien or nonpossessory, nonpurchase-money security interest, set out in § 2.G. | [X] Included | [ ] Not Included |

**YOUR RIGHTS WILL BE AFFECTED**

READ THIS PLAN CAREFULLY. If you oppose any provision of this plan, you must file a timely written objection. This plan may be confirmed and become binding on you without further notice or hearing unless a written objection is filed before the deadline stated on the Notice issued in connection with the filing of the plan.

**1.  PLAN FUNDING AND LENGTH OF PLAN.**

    **A.  Plan Payments From Future Income**

        1.  To date, the Debtor paid   $0.00   (enter $0 if no payments have been made to the Trustee to date). Debtor shall pay to the Trustee for the remaining term of the plan the following payments. If applicable, in addition to monthly plan payments, Debtor shall make conduit payments through the Trustee as set forth below. The total base plan is   $15,266.16   , plus other payments and property stated in § 1B below:

| Start mm/yyyy | End mm/yyyy | Plan Payment | Estimated Conduit Payment | Total Monthly Payment | Total Payment Over Plan Tier |
|---|---|---|---|---|---|
| 10/2022 | 09/2025 | $424.06 | $0.00 | $424.06 | $15,266.16 |
| | | | | Total Payments: | $15,266.16 |

        2.  If the plan provides for conduit mortgage payments, and the mortgagee notifies the Trustee that a different payment is due, the Trustee shall notify the Debtor and any attorney for the Debtor, in writing, to adjust the conduit payments and the plan funding. Debtor must pay all post-petition mortgage payments that come due before the initiation of conduit mortgage payments.

3.  Debtor shall ensure that any wage attachments are adjusted when necessary to conform to the terms of the plan.

4.  CHECK ONE: __X__ Debtor is at or under median income. *If this line is checked, the rest of § 1.A.4 need not be completed or reproduced.*

**B.   Additional Plan Funding From Liquidation of Assets/Other**

1.  The Debtor estimates that the liquidation value of this estate is ___$1,981.92___. (Liquidation value is calculated as the value of all non- exempt assets after the deduction of valid liens and encumbrances and before the deduction of Trustee fees and priority claims.)

*Check one of the following two lines.*

__X__ No assets will be liquidated. *If this line is checked, skip § 1.B.2 and complete § 1.B.3 if applicable.*

**2.   SECURED CLAIMS.**

**A.   Pre-Confirmation Distributions. Check one.**

__X__ None. *If "None" is checked, the rest of § 2.A need not be completed or reproduced.*

**B.   Mortgages (Including Claims Secured by Debtor's Principal Residence) and Other Direct Payments by Debtor.** *Check one.*

__X__ None. *If "None" is checked, the rest of § 2.B need not be completed or reproduced.*

**C.   Arrears, including, but not limited to, claims secured by Debtor's principal residence.** *Check one.*

____ None. *If "None" is checked, the rest of § 2.C need not be completed or reproduced.*

__X__ The Trustee shall distribute to each creditor set forth below the amount of arrearages in the allowed claim. If post-petition arrears are not itemized in an allowed claim, they shall be paid in the amount stated below. Unless otherwise ordered, if relief from the automatic stay is granted as to any collateral listed in this section, all payments to the creditor as to that collateral shall cease, and the claim will no longer be provided for under § 1322(b)(5) of the Bankruptcy Code:

| Name of Creditor | Description of Collateral | Estimated Pre-petition Arrears to be Cured | Estimated Post-petition Arrears to be Cured | Estimated Total to be paid in plan |
|---|---|---|---|---|
| Portnoff Law Associates for Scranton (2011-2017) | 830 N. Main Ave., Scranton, PA 18504 (Refuse Fees) | 8,761.81 | 0 | 8,761.81 |

**D.   Other secured claims (conduit payments, claims for which a § 506 valuation is not applicable, etc.)**

__X__ None. *If "None" is checked, the rest of § 2.D need not be completed or reproduced.*

**E.   Secured claims for which a § 506 valuation is applicable.** *Check one.*

__X__ None. *If "None" is checked, the rest of § 2.E need not be completed or reproduced.*

**F.**   **Surrender of Collateral.**  *Check one.*

  X   None. *If "None" is checked, the rest of § 2.F need not be completed or reproduced.*

**G.**   **Lien Avoidance.** *Do not use for mortgages or for statutory liens, such as tax liens. Check one.*

  ___   None. *If "None" is checked, the rest of § 2.G need not be completed or reproduced.*

  X   The Debtor moves to avoid the following judicial and/or nonpossessory, nonpurchase money liens of the following creditors pursuant to § 522(f) (this § should not be used for statutory or consensual liens such as mortgages).

| Name of Lien Holder | Midland Funding, LLC | LVNV Funding, LLC | Arrow Financial Services LLC |
|---|---|---|---|
| Lien Description For judicial lien, include court and docket number. | Lackawanna County Court of Common Pleas Docket No. 16-cv-5067 | Lackawanna County Court of Common Pleas Docket No. 10-cv-06317 | Lackawanna County Court of Common Pleas Docket No. 09-cv-04917 |
| Description of the liened property. | 830 N. Main Avenue, Scranton, PA 18504 | 830 N. Main Avenue, Scranton, PA 18504 | 830 N. Main Ave., Scranton, PA 18504 |
| Liened Asset Value | $184,000.00 | $184,000.00 | $184,000.00 |
| Sum of Senior Liens | $52,519.26 | $52,519.26 | $52,519.26 |
| Exemption Claimed | $131,480.74 | $131,481.00 | $131,481.00 |
| Amount of Lien | $20,451.57 | $1,873.55 | $1,719.83 |
| Amount Avoided | $20,451.57 | $1,873.55 | $1,719.83 |

**3.**   **PRIORITY CLAIMS.**

**A**.   **Administrative Claims**

1.   Trustee's Fees.  Percentage fees payable to the Trustee will be paid at the rate fixed by the United States Trustee.

2.   Attorney's fees. Complete only one of the following options:

   a.   In addition to the retainer of _____ already paid by the Debtor, the amount of _____ in the plan. This represents the unpaid balance of the presumptively reasonable fee specified in L.B.R. 2016-2(c); or

   b.   $ __415.00__ per hour, with the hourly rate to be adjusted in accordance with the terms of the written fee agreement between the Debtor and the attorney. Payment of such lodestar compensation shall require a separate fee application with the compensation approved by the Court pursuant to L.B.R. 2016-2(b).

3.   Other.   Other administrative claims not included in §§ 3.A.1 or 3.A.2 above.
        *Check one of the following two lines.*

    X   None. If "None" is checked, the rest of § 3.A.3 need not be completed or reproduced.

**B.**   **Priority Claims (including certain Domestic Support Obligations)**

   Allowed unsecured claims, including domestic support obligations, entitled to priority under § 1322(a) will be paid in full unless modified under § 9.

| Name of Creditor | Estimated Total Payment |
|---|---|
|  |  |

C. **Domestic Support Obligations assigned to or owed to a governmental unit under 11 U.S.C. §507(a)(1)(B).** *Check one of the following two lines.*

    X     None. *If "None" is checked, the rest of § 3.C need not be completed or reproduced.*

4. **UNSECURED CLAIMS**

A. **Claims of Unsecured Nonpriority Creditors Specially Classified.** *Check one of the following two lines.*

    X     None. *If "None" is checked, the rest of § 4.A need not be completed or reproduced.*

B. **Remaining allowed unsecured claims will receive a pro-rata distribution of funds remaining after payment of other classes.**

5. **EXECUTORY CONTRACTS AND UNEXPIRED LEASES. *Check one of the following two lines.***

    ___     None. *If "None" is checked, the rest of § 5 need not be completed or reproduced.*

    X     The following contracts and leases are assumed (and arrears in the allowed claim to be cured in the plan) or rejected:

| Name of Other Party | Description of Contract or Lease | Monthly Payment | Interest Rate | Estimated Arrears | Total Plan Payment | Assume or Reject |
|---|---|---|---|---|---|---|
| Xfinity | Internet | | | | | Assume |

6. **VESTING OF PROPERTY OF THE ESTATE.**

**Property of the estate will vest in the Debtor upon**

*Check the applicable line:*

___plan confirmation.
___entry of discharge.
___closing of case.

7. **DISCHARGE: (Check one)**

( x )    The debtor will seek a discharge pursuant to § 1328(a).

(   )    The debtor is not eligible for a discharge because the debtor has previously received a discharge described in § 1328(f).

8. **ORDER OF DISTRIBUTION:**

If a pre-petition creditor files a secured, priority or specially classified claim after the bar date, the Trustee will treat the claim as allowed, subject to objection by the Debtor.

Payments from the plan will be made by the Trustee in the following order:
Level 1: Pre-Confirmation Distributions listed in ¶ 2.A
Level 2: Debtor's Attorney's Fees in ¶ 3.A.(2)
Level 3: Domestic Support Obligations
Level 4: Amounts listed in ¶ 2.E, pro rata
Level 5: Amounts listed in ¶ 2.C, pro rata. If a claim is filed the allowed amount of the arrearage shall be paid.

Document Ref: CQIYB-JIG49-DMZFD-RUYKJ

Level 6: <u>Amounts listed in ¶ 2.D, pro rata</u>
Level 7: <u>Amounts listed in ¶ 4.A, pro rata</u>
Level 8: <u>Priority amounts of non-Level 3 allowed claims listed in ¶ 3.B, pro rata</u>
Level 9: <u>General unsecured claims</u>

*If the above Levels are filled in, the rest of § 8 need not be completed or reproduced.*

9.  **NONSTANDARD PLAN PROVISIONS**

    **Include the additional provisions below or on an attachment. Any nonstandard provision placed elsewhere in the plan is void. (NOTE: The plan and any attachment must be filed as one document, not as a plan and exhibit.)**

    Dated: <u>September 22, 2022</u>

    _____
    Attorney for Debtor

    _____
    Debtor

    _____
    Joint Debtor

By filing this document, the debtor, if not represented by an attorney, or the Attorney for Debtor also certifies that this plan contains no nonstandard provisions other than those set out in § 9.

AA 061

Document Ref: CQIYB-JIG49-DMZFD-RUYKJ

9.     **OTHER PLAN PROVISIONS**

A.     **Vesting of Property.** Property of the estate vests in the debtor on confirmation, except for: (i) assets listed in Part 1 of Schedule A/B, which vest when the case closes and (ii) any asset that Debtor acquires post-confirmation and discloses on Schedule A/B, which vests upon discharge.

B.     **Proofs of Claim and Effect of Confirmation.** 11 U.S.C. § 502(a) controls when a claim is allowed. Mere confirmation of the plan shall not constitute a finding that any claim is allowed, and Debtor reserves the right to object to proofs of claim, even after confirmation. Confirmation of the plan shall not bar the Debtor from seeking a determination of the extent, validity, or priority of any lien or of the dischargeability of any debt.

C.     **Treatment of *Statutory Claims*.** *Statutory Claims* are those claims that are listed in paragraph 2.C and which are either secured by a statutory lien on real property or could be secured by a statutory lien on real property if not timely paid. Payments received by a creditor or its agent directly from the Debtors (rather than from the trustee) during this bankruptcy case shall not be applied to any *Statutory Claim*. Instead, any such payment shall be applied solely to claims not being paid by the trustee. Upon completion of this bankruptcy plan, all *Statutory Claims* shall be considered paid in full, as though no default had ever occurred. Without limiting the applicability of the foregoing, this provision is intended to include interest, late fees, attorneys' fees, penalties, and costs. The figure under the heading "Estimated Pre-petition Arrears to be Cured" is merely an estimate of the claim as of the date that this case was filed and if such figure is different than the amount listed in the allowed proof of claim, then the amount set forth on the allowed proof of claim shall control. The amounts required to be paid by the Trustee shall be the amounts stated on the creditor's or its agent's allowed proof of claim plus monthly interest on any pre-petition principal to be calculated by the trustee at the annual interest rate stated on the creditor's proof of claim, but not to exceed 10%. No interest shall be paid on pre-petition interest, attorney's fees, or court costs. The Debtor may file the claim in the name of the entity that was the creditor on the date the petition was filed, or in the name of any subsequent assignee, transferee, or agent.

Document Ref: CQIYB-JIG49-DMZFD-RUYKJ

# Signature Certificate

Reference number: CQIYB-JIG49-DMZFD-RUYKJ

| Signer | Timestamp | Signature |
|---|---|---|

**Carlo Sabatini**
Email: carlo@bankruptcypa.com

| | |
|---|---|
| Sent: | 22 Sep 2022 23:46:21 UTC |
| Viewed: | 22 Sep 2022 23:57:48 UTC |
| Signed: | 22 Sep 2022 23:58:06 UTC |

**Recipient Verification:**

✔Email verified      22 Sep 2022 23:57:48 UTC

IP address: 174.54.241.253
Location: Dalton, United States

---

**Dominic DeCantis**
Email: sdecantis@gmail.com

| | |
|---|---|
| Sent: | 22 Sep 2022 23:46:21 UTC |
| Viewed: | 22 Sep 2022 23:58:21 UTC |
| Signed: | 23 Sep 2022 00:00:18 UTC |

**Recipient Verification:**

✔Email verified      22 Sep 2022 23:58:21 UTC

IP address: 73.64.6.180
Location: Scranton, United States

Document completed by all parties on:
23 Sep 2022 00:00:18 UTC

Page 1 of 1



**Signed with PandaDoc**

PandaDoc is a document workflow and certified eSignature
solution trusted by 30,000+ companies worldwide.



AA 063

Rev. May 1, 2022

## LOCAL BANKRUPTCY FORM 2016-2(b)

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE: Dominic Joseph DeCantis

CHAPTER 13

Debtor(s) | CASE NO. 5:22-bk-01826-MJC

### APPLICATION OF ATTORNEY FOR CHAPTER 13 DEBTOR
### FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

*(Name of applicant)* Carlo Sabatini applies for approval of compensation as Chapter 13 Debtor(s)' counsel and for reimbursement of expenses pursuant to 11 U.S.C. § 330 as follows:

1. Applicant is counsel for Debtor(s)

2. Debtor(s) filed a petition for bankruptcy relief on 9/22/2022 *(date)*.

3. Applicant previously filed a Disclosure of Compensation of Attorney for Debtor(s) pursuant to Fed. R. Bankr. P. 2016(b), which is attached as Exhibit "A" to this Application.

4. This Application is interim *(state whether an interim or final application)*.

5. *(Check all applicable items)*

   ☑ a. Debtor(s)' Chapter 13 Plan was confirmed on 1/06/2023 *(date)*.

   ☐ b. The order approving the last post-confirmation modification on Debtor(s)' confirmed Chapter 13 plan was entered on _____ *(date)*.

   ☐ c. Debtor(s) have not confirmed a Plan.

6. The dates and amounts of previous compensation paid are:
   a. as a retainer $500.00 on 6/13/2022 *(list dates and amounts)*;

   b. paid by the Chapter 13 Trustee through a confirmed Plan *(list dates and amounts)*;

   c. other Debtor paid $313.00 on 6/13/2022 as advanced cost for filing fee.
      *(describe source, amount and date paid)*.

7. Compensation previously approved by the Court following the filing of an interim Application are: *(dates and amounts)*

   N/A

AA 064

Rev. May 1, 2022

8.    If Applicant has not agreed with Debtor(s) to accept the Presumptively Reasonable Fee ("PRF"), or is filing a supplemental fee application, Applicant requests compensation in the amount of $ 11,869.25*      and reimbursement of expenses in the amount of $ 449.85      for the period of 6/13/2022    to 12/01/2023    . A chronological listing of services performed and itemization of expenses for which reimbursement is requested for this time is attached as Exhibit "B" to this Application.

9.    Legal services were performed by all professionals at the hourly rates set forth at the beginning of the chronological listing of services provided on Exhibit "B."

10.    *(Check one)*

☑    Debtor(s) have reviewed this Application prior to its filing and have approved the requested amounts.

☐    Debtor(s) have reviewed this Application prior to its filing and have not approved the requested amounts.

☐    Debtor(s) have not reviewed this Application prior to its filing.

☐    Debtor(s) have not approved the requested amounts.

11.    Objections are pending to the following prior fee applications: (*list date application was filed and name of objector, if no objections pending state "none"*).

WHEREFORE, your Applicant respectfully requests this Honorable Court to approve the requested compensation in the amount of $ 11,869.25    and reimbursement of expenses in the amount of $ 449.85    pursuant to 11 U.S.C. § 330, and if this is a Final Fee Application, to determine that all prior interim orders are final.

Dated: April 29, 2024

s/Carlo Sabatini
_____
Applicant's Signature

\* To the extent that the trustee does not have sufficient funds to pay the amount requested, then Applicant waives the remaining fees. Applicant estimates that the total amount actually received from the trustee's office will be less than $7,068.77.

B2030 (Form 2030) (12/15)

# United States Bankruptcy Court
## Middle District of Pennsylvania, Wilkes-Barre Division

In re **DeCantis, Dominic Joseph** _____

Debtor(s)

Case No. _____

Chapter **13**

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR

1.  Pursuant to 11 U .S.C. § 329(a) and Fed. Bankr. P. 2016(b), I certify that I am the attorney for the above named debtor(s) and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

☐ **FLAT FEE**

For legal services, I have agreed to accept ................................. $ _____

Prior to the filing of this statement I have received ................ $ _____

Balance Due ................................................................... $ _____

■ **RETAINER**

For legal services, I have agreed to accept and received a retainer of ................ $        **500.00**

The undersigned shall bill against the retainer at an hourly rate of ............. $        **415.00**
[Or attach firm hourly rate schedule.] Debtor(s) have agreed to pay all Court approved fees and expenses exceeding the amount of the retainer.

2.  The source of the compensation paid to me was:

☐ Debtor     ■ Other (specify):     **Debtor and Sarah DeCantis**

3.  The source of compensation to be paid to me is:

☐ Debtor     ■ Other (specify):     **Debtor and Sarah DeCantis**

4.  ■ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

☐ I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation is attached.

5.  In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

a.  Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
b.  Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
c.  Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
d.  [Other provisions as needed]
    **The above stated fee is a minimum fee. All work is performed at hourly rates. The current hourly rates are $415-$310/hour for attorneys and $150/hour for paralegals. Rates may be changed at any time with written notice to client and generally are increased at the beginning of each calendar year.**

6.  By agreement with the debtor(s), the above-disclosed fee does not include the following service:

Software Copyright (c) 2022 CINGroup - www.cincompass.com

**AA 066**

Case 5:22-bk-01826-MJC    Doc 48-1    Filed 09/22/24    Entered 09/22/24 20:55:16    Desc
Exhibit A - Disc Document of Comp    Page 40 of 55    Page 1 of 6

Document Ref: ZPC4B-SHGYV-BVCPR-E2HFX    Page 40 of 55

In re  **DeCantis, Dominic Joseph** _____     Case No. _____

                               Debtor(s)

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR
### (Continuation Sheet)

**CERTIFICATION**

    I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.

**September 22, 2022** _____
_Date_

                                      _Carlo Sabatini_
                **Carlo Sabatini**
                _Signature of Attorney_
                **Sabatini Freeman, LLC**

                **216 N Blakely St**
                **Dunmore, PA 18512-1904**
                **(570) 341-9000**
                **carlo@bankruptcypa.com**
                _Name of law firm_

AA 067

Document Ref: ZPC4B-SHGYV-BVCPR-E2HFX

CHAPTER 13 BANKRUPTCY FEE AGREEMENT

1. SERVICES RETAINED FOR: Dominic DeCantis ("Client")

Client hires Sabatini Freeman, LLC ("Law Firm") to provide bankruptcy legal services and to represent Client with respect to all debts allegedly owed by Client. Law Firm will not provide any other non-bankruptcy services to Client. The fees in this agreement are in addition to any fees charged under any earlier agreement between Client and Law Firm. For example, if Law Firm has represented Client with respect to collection communications, then the fees to be charged under this new agreement are in addition to any other fees already charged.

While providing bankruptcy legal services, Law Firm might identify various claims that Client holds and will list those claims on the bankruptcy schedules; however, Law Firm will not represent Client with respect to these claims without a separate written agreement. One example is claims arising from unlawful collection communications.

This Agreement presumes that Client has provided Law Firm with accurate information about Client's financial situation and that Client's financial situation does not change before the bankruptcy case is filed. If Client's financial situation changes (including property ownership interests, income or expenses) then Client may no longer qualify for a Chapter 13, or the below minimum fees may increase.

**Client's bankruptcy case will not be filed until Client has done all of the following: (1) received credit counseling, (2) signed the bankruptcy petition, (3) paid the court-filing fee, (4) paid the up-front minimum attorney fee and (5) paid any additional attorney's fees incurred in excess of the minimum fee as of the date of filing. Until the bankruptcy case is filed, creditors may continue action against Client, such as property sales or repossessions. If before the bankruptcy case is filed Client fails to make any payment on time, this file may be closed.**

2. COSTS. Client must pay the bankruptcy court's filing fee that is in effect at the time that the case is filed. As of December 1, 2021, the court-filing fee for a Chapter 13 is $313. Client must also pay any expenses incurred by Law Firm including but not limited to other filing fees, transcripts, depositions, postage, photocopies, and bank fees incurred from returned checks. All of these costs are paid to Law Firm. Client must also pay for credit counseling and debtor education. Credit counseling and debtor education fees are <u>not</u> paid to Law Firm and total about $30.00.

3. ATTORNEY FEES. All time spent on this matter will be billed at the firm's regular hourly rates. The hourly rates are presently $415 - $350/hour for attorneys and $150/hour for paralegals. Rates may be changed at any time with written notice to Client, and are generally increased at the beginning of each calendar year. Travel time is charged at the full hourly rates.

Law Firm will not begin preparing your bankruptcy case for filing until the entire Pre-Filing Payment to Law Firm has been paid (see page 3 of this agreement). The time spent preparing the case for filing can be substantial. It is possible that the Pre-Filing Payment to Law Firm will not be sufficient to cover all time spent preparing the case for filing. If that occurs, then Law Firm may require client to pay all unpaid attorney's fees before Law Firm files the bankruptcy case.

After the bankruptcy case is filed, Client will not pay Law Firm any more attorney's fees directly.

1

AA 068

Instead, those fees will be paid indirectly using money that Client's Chapter 13 Plan requires Client to pay to the Chapter 13 Trustee. Client understands that the Chapter 13 Plan that Law Firm will propose to the Bankruptcy Court might not seek approval of the lowest payment that could possibly be approved. Instead, the amount that the Plan requires Client to pay to the trustee may be more than the minimum amount required by the bankruptcy laws. These additional funds will be available to pay attorney's fees to Law Firm. If some of these funds are not used to pay attorney's fees, they will likely be paid to your other creditors. Additionally, even after the plan has been approved, the payment that you make to the Chapter 13 Trustee may be increased if necessary to cover additional fees.

4. NON-BASIC SERVICES PERFORMED ON A CONTINGENCY BASIS:  For cases alleging violations of the automatic stay, discharge injunction, or seeking recovery of preferences or turnover: Law Firm shall receive 33 and 1/3% of the gross recovery, if such amount is greater than the amount Law Firm would earn on an hourly basis. Otherwise, Law Firm shall be paid at hourly rates.

5. ATTORNEY'S LIEN FOR FEES. Law Firm shall have a lien for all accrued compensation and costs on any funds that Client has deposited with Law Firm or that are held by a third person (such as a trustee).

6. DIVORCE OR SEPARATION:  Client agrees to notify Law Firm immediately of any separation or divorce or other dispute between spouses. Such a dispute may create a conflict of interest that would cause Law Firm to seek to terminate this agreement.

7. CONVERSION FROM CHAPTER 13 TO CHAPTER 7: $1,000 plus court fee.

8. CASE DISMISSAL: If the bankruptcy case is dismissed, Law Firm shall have the right to recover all funds in the possession of the Chapter 13 trustee that would otherwise be refunded to Client, up to the total fees and costs then due for the bankruptcy case. Client will then pay directly to Law Firm any remaining amounts still owing for attorney's fees.

9. TERMINATION:  Client may terminate this agreement at any time. Law Firm may also terminate the agreement at any time, except that if Law Firm wishes to terminate the agreement after the bankruptcy case is filed, then Law Firm must first obtain permission from the bankruptcy court. If the agreement is terminated before a bankruptcy is filed or before a bankruptcy discharge is entered, Law Firm will be entitled to paid at the hourly rates for time spent. Six months after we close your file, we may destroy it without further notice to you, unless you make arrangements with us before that date to take your file.

10. AUTHORIZATIONS:  Client authorizes Law Firm to (a) disclose Client's Social Security Number to third parties for the purpose of obtaining investigative searches on Client, which searches may disclose information governed by the Gramm-Leach-Bliley Act, (b) reject settlement offers received from unsecured creditors without advising Client of the offer, (c) dispose of mail addressed to Client (e.g. catalogs, applications for new credit cards, etc.) without forwarding that mail to Client, and (d) communicate with Client by text message to Client's cell phone.

11. GUARANTORS: If Law Firm provides services to only one of the persons signing below, then Client authorizes Law Firm to communicate with both signers. Each signer agrees to be fully liable for all fees that become due under this agreement (even if services are provided to only one person).

12. DISCLOSURES: Before the case is filed, Client will have to complete an electronic questionnaire and a paper questionnaire. Client will also have to provide Law Firm with certain documents. Client agrees to

2

complete the questionnaires within two weeks of when Client receives them, and to also provide all requested documents at the same time. Client also acknowledges that Client may have to disclose the bankruptcy case to Client's ex-spouse or separated spouse.

13. PAYMENT: The Pre-filing Payment to Law Firm is calculated as follows:

Court filing fee of <u>$313.00</u>, plus Minimum Attorney Fee of <u>$500.00</u> for a total of <u>$813.00</u>.

Guarantor made this payment on June 13, 2022 by using Law Firm's online portal at https://secure.lawpay.com/pages/sabatinilaw/trust and by entering at that portal the account information for a payment by eCheck. There is a $10.00 fee for each check returned for insufficient funds.

_____  
Dominic DeCantis ("Client")

_____  
Sarah DeCantis ("Guarantor")

3

AA 070

Document Ref: ZPC4B-SHGYV-BVCPR-E2HFX

# Signature Certificate

Reference number: MYGGF-ZKXRC-GJU88-3X9KX

| Signer | Timestamp | Signature |
|---|---|---|

**Sarah Decantis**
Email: sdecantis@yahoo.com

| | |
|---|---|
| Sent: | 14 Jun 2022 19:01:52 UTC |
| Viewed: | 14 Jun 2022 20:23:02 UTC |
| Signed: | 14 Jun 2022 20:23:57 UTC |

**Recipient Verification:**
✔Email verified                    14 Jun 2022 20:23:02 UTC

IP address: 73.64.6.180
Location: Scranton, United States

**Dominic Decantis**
Email: sdecantis@gmail.com

| | |
|---|---|
| Sent: | 14 Jun 2022 19:01:52 UTC |
| Viewed: | 14 Jun 2022 20:25:56 UTC |
| Signed: | 14 Jun 2022 20:26:54 UTC |

**Recipient Verification:**
✔Email verified                    14 Jun 2022 20:25:56 UTC

IP address: 73.64.6.180
Location: Scranton, United States

Document completed by all parties on:
14 Jun 2022 20:26:54 UTC

Page 1 of 1



**Signed with PandaDoc**

PandaDoc is a document workflow and certified eSignature
solution trusted by 30,000+ companies worldwide.



AA 071

Document Ref: ZPC4B-SHGYV-BVCPR-E...

Sabatini Law Firm, LLC
216 N. Blakely St., Dunmore, PA 18512
Statement as of 3/27/2024

**Dominic Decantis**
830 N Main Ave.
Scranton, PA 18504

### Rate Summary

| Professional | Gross | | | Discount | | Net |
|---|---|---|---|---|---|---|
| Carlo Sabatini | 18.5 hours at $415.00/hour. | $7,677.50 | | 1.3 hours | -518.75 | 7,158.75 |
| Ashley Werner | 17.8 hours at $150.00/hour. | $2,670.00 | | 3.2 hours | -475.00 | 2,195.00 |
| Tiffany Bator | 20.9 hours at $135.00/hour. | $2,821.50 | | 2.3 hours | -306.00 | 2,515.50 |
| | | | | | | 11,869.25 |

### Itemized Listing of Services / Comparable Entry

| Date | Description | Initials | Rate | Time | Amount | Disc. | Case | Date | Description | Rate | Time | Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 06/13/2022 | Meet with clients for consultataion. | CS | 415 | 0.80 | 332.00 | -166.00 | Roberson | 09/27/2022 | Meet with client for initial bankruptcy evaluation | A | | 290.50 |
| 06/13/2022 | Meeting with client concerning budget and the numbers looking like they won't work for a bankruptcy case. | CS | 415 | 0.80 | 332.00 | 0.00 | Roberson | | Meeting with client regarding budget/Zoom with client for a second budget analysis | A | 1.50 | 622.50 |
| 06/13/2022 | Third meeting with client regarding amended budget numbers. Discuss at length living within those numbers. Discuss bills that bankruptcy won't discharge. Discuss filing timeline. | CS | 415 | 0.40 | 166.00 | 0.00 | Roberson | | Meeting with client regarding budget/Zoom with client for a second budget analysis | A | 1.50 | 622.50 |
| 06/13/2022 | Receive and review email from client attaching budget. | ASW | 150 | 0.10 | 15.00 | -10.00 | | | | | | |
| 06/17/2022 | Call from client. She had questions concerning taxes. She said that she believes the tax information she gave us is incorrect. Provided correct tax information. | ASW | 150 | 0.30 | 45.00 | 0.00 | | | | | | |
| 06/18/2022 | Receive and review documentation needed to prepare schedules from client. Organize documentation and add to client's electronic file. | TLB | 135 | 0.30 | 40.50 | -25.50 | Roberson | 11/13/2022 | Receive and review documentation needed to prepare schedules from client. Organize documentation and add to client's electronic file. | P | 0.20 | 27.00 |
| 06/18/2022 | Receive and review documentation needed to prepare schedules from client. Organize documentation and add to client's electronic file. | TLB | 135 | 1.40 | 189.00 | -119.00 | Roberson | 11/13/2022 | Receive and review documentation needed to prepare schedules from client. Organize documentation and add to client's electronic file. | P | 0.20 | 27.00 |
| 06/19/2022 | Receive and review documentation needed to prepare schedules from client. Organize documentation and add to client's electronic file. | TLB | 135 | 1.80 | 243.00 | -153.00 | Roberson | 11/13/2022 | Receive and review documentation needed to prepare schedules from client. Organize documentation and add to client's electronic file. | P | 0.20 | 27.00 |
| 06/19/2022 | Prepare petition and schedules. | TLB | 135 | 1.90 | 256.50 | 0.00 | | | | | | |
| 06/20/2022 | Call from client. Answer questions concerning life insurance policy, social security document, garbage bill, listing assets in bankruptcy case. | ASW | 150 | 0.20 | 30.00 | 0.00 | | | | | | |
| 06/20/2022 | Call from client regarding life insurance policy. | ASW | 150 | 0.10 | 15.00 | 0.00 | | | | | | |
| 06/20/2022 | Continue preparing schedules. | TLB | 135 | 0.70 | 94.50 | 0.00 | | | | | | |
| 06/21/2022 | Do background check. Review file concerning filing timeline and issues with filing now. | ASW | 150 | 0.20 | 30.00 | 0.00 | | | | | | |
| 06/21/2022 | Work with I, J, MT, and Plan. | ASW | 150 | 1.20 | 180.00 | 0.00 | | | | | | |
| 06/21/2022 | Continue preparing schedules. | TLB | 135 | 1.10 | 148.50 | 0.00 | | | | | | |
| 06/22/2022 | Continue preparing schedules. | TLB | 135 | 0.40 | 54.00 | 0.00 | | | | | | |
| 06/23/2022 | Work with I, J, and MT. Prepare plan. | CS | 415 | 1.70 | 705.50 | 0.00 | | | | | | |
| 06/23/2022 | Continue preparing schedules. | TLB | 135 | 0.40 | 54.00 | 0.00 | | | | | | |

AA 072

| Date | Description | Init | Rate | Hours | Amount | Adj | Name | Date | Description | Code | Hours | Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 06/24/2022 | Call from client regarding UGI bill. | ASW | 150 | 0.20 | 30.00 | 0.00 | | | | | | |
| 06/24/2022 | Adjust I and MT, and special provisions attachment in plan. | ASW | 150 | 0.50 | 75.00 | 0.00 | | | | | | |
| 06/24/2022 | Receive and review documentation needed to prepare schedules from client. Organize documentation and add to client's electronic file. | TLB | 135 | 0.10 | 13.50 | -8.50 | Roberson | 11/13/2022 | Receive and review documentation needed to prepare schedules from client. Organize documentation and add to client's electronic file. | P | 0.20 | 27.00 |
| 06/25/2022 | Continue preparing schedules. | TLB | 135 | 1.20 | 162.00 | 0.00 | | | | | | |
| 06/26/2022 | Continue preparing schedules. | TLB | 135 | 1.80 | 243.00 | 0.00 | | | | | | |
| 06/26/2022 | Continue preparing schedules. | TLB | 135 | 1.50 | 202.50 | 0.00 | | | | | | |
| 06/29/2022 | Meet with paralegal to go over schedules, work on plan calculations, and address issues that she had flagged for me. | CS | 415 | 0.60 | 249.00 | 0.00 | | | | | | |
| 06/29/2022 | Continue preparing schedules. | TLB | 135 | 1.70 | 229.50 | 0.00 | | | | | | |
| 06/30/2022 | Continue preparing schedules. | TLB | 135 | 1.80 | 243.00 | 0.00 | | | | | | |
| 07/01/2022 | Continue preparing schedules. | ASW | 150 | 2.70 | 405.00 | 0.00 | | | | | | |
| 07/01/2022 | Draft post-filing instructions for client, draft plan attachment and complete my review of petition and schedules. | CS | 415 | 1.70 | 705.50 | 0.00 | | | | | | |
| 07/01/2022 | Continue preparing schedules. | TLB | 135 | 0.30 | 40.50 | 0.00 | | | | | | |
| 07/01/2022 | Call to client to ask for information regarding taxes, wage garnishment, and life insurance. | TLB | 135 | 0.40 | 54.00 | 0.00 | | | | | | |
| 07/01/2022 | Receive, review, and respond to email from Leininger with Portnoff Law garbage fee balances. | CS | 415 | 0.10 | 41.50 | 0.00 | | | | | | |
| 07/02/2022 | Generate, review, and revise schedules. | TLB | 135 | 0.40 | 54.00 | 0.00 | | | | | | |
| 07/03/2022 | Zoom meeting with client. Discussed the difficulty they would have in making a payment large enough to cure the garbage fees arrears. They are going to re-consider and we will meet again. | CS | 415 | 0.10 | 41.50 | 0.00 | | | | | | |
| 07/05/2022 | Email to Schuman regarding deposition continuance. | CS | 415 | 0.10 | 41.50 | 0.00 | | | | | | |
| 07/05/2022 | Receive, review, and respond to email from Hannum regarding rescheduling deposition and allowing 30- day extension to respond. | CS | 415 | 0.10 | 41.50 | 0.00 | | | | | | |
| 07/05/2022 | Receive, review, and respond to email from Leininger with breakdown of garbage debts. | CS | 415 | 0.10 | 41.50 | 0.00 | | | | | | |
| 07/11/2022 | Receive and review email from client with collection letter. | CS | 415 | 0.10 | 41.50 | 0.00 | R.B. Dwyer | 07/25/2023 | Review email and attachment from D. Verdugno re: RH Courtright collection activity | A | 0.10 | 38.50 |
| 07/12/2022 | Prep objection in Midland v. Dominic Decantis. | ASW | 150 | 0.10 | 15.00 | 0.00 | | | | | | |
| 07/12/2022 | Review message from client. Call to client. No answer, leave message regarding plan payment. | CS | 415 | 0.10 | 41.50 | 0.00 | | | | | | |
| 07/12/2022 | Return call from client concerning Sarah's new employment and what that means for the bankruptcy. Client asked about letter he received. Discuss the same. Discuss garbage bill and timeline for filing. | CS | 415 | 0.20 | 83.00 | 0.00 | | | | | | |
| 07/12/2022 | Receive and review email from Dugan attaching breakdown of delinquencies and interest. | CS | 415 | 0.10 | 41.50 | 0.00 | | | | | | |
| 07/12/2022 | Email to Dugan regarding delinquencies and interest accrued. | CS | 415 | 0.10 | 41.50 | 0.00 | | | | | | |
| 07/18/2022 | Prep letter to clerk with objection. | ASW | 150 | 0.10 | 15.00 | -10.00 | | | | | | |
| 07/20/2022 | Receive and review email from client regarding Honda. He wants to call this company to find out if this is related to the deposition. | ASW | 150 | 0.10 | 15.00 | 0.00 | | | | | | |
| 07/20/2022 | Call to client re phone message. He is going to go to court tomorrow to get a copy of the complaint and figure out the deal with Honda and Bank of America. They are to call us tomorrow to let us know what happened. | CS | 415 | 0.20 | 83.00 | 0.00 | | | | | | |

AA 073

| 07/20/2022 | Email to Dugan concerning delinquencies. | CS | 415 | 0.10 | 41.50 | 0.00 | | | | | |
| 07/21/2022 | Receive, review, and respond to email from Dugan regarding interest on liens. | CS | 415 | 0.10 | 41.50 | 0.00 | | | | | |
| 07/21/2022 | Email to Dugan regarding interest accruing. | CS | 415 | 0.10 | 41.50 | -41.50 | | | | | |
| 07/22/2022 | Call to client to find out how he made out at court. No answer, leave message. | ASW | 150 | 0.10 | 15.00 | -15.00 | | | | | |
| 07/25/2022 | Receive and review email from client regarding case search. Review file. Email to client with specific instructions. | ASW | 150 | 0.10 | 15.00 | 0.00 | | | | | |
| 07/27/2022 | Email to client regarding update concerning complaint from Judge Gallaghers. | ASW | 150 | 0.10 | 15.00 | -15.00 | | | | | |
| 07/27/2022 | Email to Dugan asking after response to two emails. | CS | 415 | 0.10 | 41.50 | 0.00 | | | | | |
| 07/28/2022 | Receive and review email from Dugan regarding waiting on a response from his client and probably getting back to me in a couple of days. | CS | 415 | 0.10 | 41.50 | -41.50 | | | | | |
| 07/29/2022 | Receive, review, and respond to email from client regarding no update on complaint yet. | ASW | 150 | 0.10 | 15.00 | -15.00 | | | | | |
| 08/01/2022 | Receive and review phone message from client regarding magistrate's office records. Call to client. No answer, leave message. | CS | 415 | 0.10 | 41.50 | 0.00 | | | | | |
| 08/01/2022 | Return call from client. Discuss Sarah's employment. Discuss judgment against client. | CS | 415 | 0.10 | 41.50 | 0.00 | | | | | |
| 08/09/2022 | Review new plan calculations. | CS | 415 | 0.10 | 41.50 | 0.00 | | | | | |
| 08/14/2022 | Email to Dugan to follow up on garbage debts. | CS | 415 | 0.10 | 41.50 | 0.00 | | | | | |
| 08/15/2022 | Receive and review email from Dugan regarding waiving interest on penalty amounts and concerning liens. | CS | 415 | 0.10 | 41.50 | 0.00 | | | | | |
| 08/15/2022 | Email to Dugan regarding interest, liens, and total balance due. | CS | 415 | 0.10 | 41.50 | -41.50 | | | | | |
| 08/17/2022 | Email to client asking after stub. | ASW | 150 | 0.10 | 15.00 | -10.00 | | | | | |
| 08/23/2022 | Receive and review phone message from Jim Wood at Portnoff. Call to Jim Wood. He handles the bankruptcy cases for Portnoff. He is going to send me a case that says that garbage fees count as a municipal claim. He says that § 7101's definition of municipal claim would cover garbage service. (Reading the definition, there is a decent argument either way.) He offered to waive the interest on the penalty amounts. I said I'm not OK with them charging that improperly, and then just offering to waive it when they are challenged. He'll get me the authority for that. He also said that he thinks there is a case pending on this issue in Scranton and that he'll find out and send that information to me as well. | CS | 415 | 0.30 | 124.50 | 0.00 | | | | | |
| 08/23/2022 | Read statute. Email to ASW with instructions. | CS | 415 | 0.10 | 41.50 | 0.00 | | | | | |
| 08/24/2022 | Email to client asking after stub. | ASW | 150 | 0.10 | 15.00 | -10.00 | | | | | |
| 08/26/2022 | Receive, review, and respond to email from Wood regarding doing an investigation and getting back to us next week. | CS | 415 | 0.10 | 41.50 | -41.50 | | | | | |
| 09/01/2022 | Review mortgage modification paperwork. | CS | 415 | 0.10 | 41.50 | 0.00 | | | | | |

| Date | Description | Init | Rate | Hours | Amount | Adj | | Name | Date | Description | | Hours | Amount |
|------|-------------|------|------|-------|--------|-----|---|------|------|-------------|---|-------|--------|
| 09/04/2022 | Receive and review email from Wood. Read Portnoff's explanation of authority to charge interest on penalty portion of claim for garbage fees. Read cases Portnoff cited. Analyze and approve calculations. They offered to waive $428.45 in interest. We also need the plan to provide for any trash fees they owe for 2021 and 2022 since Portnoff isn't collecting those. | CS | 415 | 0.40 | 166.00 | 0.00 | | | | | | | |
| 09/04/2022 | Email to Wood regarding plan presently and asking after years 2018-2020. | CS | 415 | 0.10 | 41.50 | 0.00 | | | | | | | |
| 09/06/2022 | Edit to schedule J and Plan. . | CS | 415 | 0.10 | 41.50 | 0.00 | | | | | | | |
| 09/07/2022 | Received and review email from James Wood. Review the plan. Email to ASW. | CS | 415 | 0.10 | 41.50 | 0.00 | | | | | | | |
| 09/21/2022 | Conference with CS and client regarding information to prepare case. | TLB | 135 | 1.00 | 135.00 | 0.00 | | | | | | | |
| 09/21/2022 | Meet with paralegal to finalize schedules and plan. | CS | 415 | 0.60 | 249.00 | 0.00 | | | | | | | |
| 09/21/2022 | Meeting with client to finalize bankruptcy documentation. | CS | 415 | 0.60 | 249.00 | 0.00 | | | | | | | |
| 09/22/2022 | Conference with CS and client to review petition. | TLB | 135 | 1.90 | 256.50 | 0.00 | | | | | | | |
| 09/22/2022 | Prepare petition for signatures and send to client and CS. | TLB | 135 | 0.20 | 27.00 | 0.00 | | | | | | | |
| 09/22/2022 | File petition and schedules and additional documents. | TLB | 135 | 0.50 | 67.50 | 0.00 | | | | | | | |
| 09/23/2022 | Prepare wage attachment motion, order, certificate of service, and letter to employer. | ASW | 150 | 0.20 | 30.00 | 0.00 | | | | | | | |
| 09/23/2022 | File motion for wage attachment. | ASW | 150 | 0.10 | 15.00 | 0.00 | | | | | | | |
| 09/24/2022 | Receive and review voicemail from client regarding IRA. Called client. Discussed savings account. Discuss system to ensure that mortgage payments are made on time. | CS | 415 | 0.20 | 83.00 | 0.00 | | | | | | | |
| 09/26/2022 | Call from client re mortgage payment and automatic billpay through bank. | CS | 415 | 0.30 | 124.50 | 0.00 | | | | | | | |
| 09/26/2022 | Receive, review, and respond to message from client regarding cashier's check and tracking from USPS, new savings account information, and automatic transfer request information. | TLB | 135 | 0.10 | 13.50 | 0.00 | | | | | | | |
| 09/27/2022 | Send documents required by trustee for 341 meeting to trustee. | ASW | 150 | 0.10 | 15.00 | -10.00 | | | | | | | |
| 09/28/2022 | Receive, review, and respond to email from Marcy at 1stopbk regarding certificate having incorrect case number. | ASW | 150 | 0.10 | 15.00 | 0.00 | | | | | | | |
| 09/28/2022 | Call from client. She said they thought they put the wrong case number on the check to the trustee. Review trustee portal. Payment was received. Inform client. | ASW | 150 | 0.10 | 15.00 | 0.00 | | | | | | | |
| 09/28/2022 | Receive and review Notice of Chapter 13 Bankruptcy Case. (Calendar hearing, email to client with hearing notice and instructions, enter 341 meeting/trustee information into file) | ASW | 150 | 0.30 | 45.00 | -30.00 | | Roberson | 11/13/2022 | Receive and review Notice of Chapter 13 Bankruptcy Case. Process checklist of tasks for after 341 meeting has been scheduled. (Calendar hearing, email copy of notice to client with letter regarding instructions and enclosing preparation questions, enter 341 meeting/trustee information into file), set task to do preparation call with client two weeks before meeting and prepare file for meeting.) | P of S rate | 0.30 | 15.00 |
| 09/28/2022 | Receive and review BNC certificate of notice re 341 notice. No undeliverable recipients. NAN. | ASW | 150 | 0.10 | 15.00 | -15.00 | | | | | | | |

AA 075

| Date | Description | Init | Code | Hrs | Amount | Adj | Name | Date | Description | L | Hrs | Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 09/29/2022 | Receive and review objection to plan. Call to client regarding mortgage company filing objection. Discuss modification payments and discrepancy. | CS | 415 | 0.10 | 41.50 | 0.00 | Roberson | 12/12/2022 | Receive and review objection to plan filed by Mario Hanyon for Wells Fargo | A | 0.10 | 41.50 |
| 09/29/2022 | Call to Attorney Daniel Jones at Stern & Eisenberg. Discuss objection and plan. Ask Jones to withdraw objection. Discuss mortgage payments, modification, and discrepancy with numbers. I said I would wait a week to see the proof of claim and to see if he withdraws his objection. If they don't withdraw, I would want his clients to show the authority for their objection. | CS | 415 | 0.40 | 166.00 | 0.00 | Roberson | 01/17/2023 | Call from McHale regarding objection. Discuss our positions concerning bottom line number on MT (discussed expenses at length), secured claim not listed in plan, and special provision concerning length of plan. | A | 0.80 | 332.00 |
| 09/30/2022 | Receive, review, and respond to email from Marcy at 1stopbk regarding filing certificate. | ASW | 150 | 0.10 | 15.00 | -15.00 | | | | | | |
| 09/30/2022 | Receive and review email from Jones regarding the handling of mortgage claim in a previous case and attaching Decantis mortgage claim. | CS | 415 | 0.10 | 41.50 | 0.00 | | | | | | |
| 09/30/2022 | Receive and review email from client regarding paperwork they received from the mortgage company. | CS | 415 | 0.10 | 41.50 | 0.00 | | | | | | |
| 10/03/2022 | Call from client regarding mortgage payment change and amount to pay mortgage company. | ASW | 150 | 0.10 | 15.00 | 0.00 | | | | | | |
| 10/03/2022 | Receive and review letter from Select Portfolio Servicing regarding representation. | ASW | 150 | 0.10 | 15.00 | 0.00 | | | | | | |
| 10/03/2022 | Analyze proof of claim 1 filed on the docket. | ASW | 150 | 0.20 | 30.00 | 0.00 | Roberson | 12/09/2022 | Analyze proof of claim 1 filed on the docket. | P | 0.20 | 30.00 |
| 10/04/2022 | Receive and review order granting wage attachment. | ASW | 150 | 0.10 | 15.00 | -15.00 | | | | | | |
| 10/04/2022 | Analyze proof of claim 2 filed on the docket. | ASW | 150 | 0.20 | 30.00 | 0.00 | Roberson | 12/09/2022 | Analyze proof of claim 1 filed on the docket. | P | 0.20 | 30.00 |
| 10/04/2022 | Analyze proof of claim 3 filed on the docket. Prep new payment address letter to client. | ASW | 150 | 0.20 | 30.00 | 0.00 | Roberson | 12/09/2022 | Analyze proof of claim 1 filed on the docket. | P | 0.20 | 30.00 |
| 10/04/2022 | Receive and review bnc certificate of notice for order granting wage attachment. Employer served. NAN. | ASW | 150 | 0.10 | 15.00 | -15.00 | | | | | | |
| 10/04/2022 | Call to client's employer regarding wage garnishment and bankruptcy plan payments. | CS | 415 | 0.30 | 124.50 | 0.00 | | | | | | |
| 10/04/2022 | Review paralegal's analysis of claim 3. Mortgage looks current. They have unapplied funds. If those funds were applied, it would be current. They did a recalculation with the escrow analysis and I think that is the issue here. | CS | 415 | 0.20 | 83.00 | 0.00 | Roberson | 02/03/2023 | Review paralegal's analysis of proof of claim for signature loan cosigned by Greg (MCU). Evaluate treatment of the same in plan. | A | 0.10 | 41.50 |
| 10/04/2022 | Receive and review paralegal's analysis of claim 1 filed on the docket. No letter needed. | CS | 415 | 0.10 | 41.50 | 0.00 | Roberson | 02/03/2023 | Review paralegal's analysis of proof of claim for signature loan cosigned by Greg (MCU). Evaluate treatment of the same in plan. | A | 0.10 | 41.50 |
| 10/04/2022 | Receive and review paralegal's analysis of claim 2 filed on the docket. No letter needed. | CS | 415 | 0.10 | 41.50 | 0.00 | Roberson | 02/03/2023 | Review paralegal's analysis of proof of claim for signature loan cosigned by Greg (MCU). Evaluate treatment of the same in plan. | A | 0.10 | 41.50 |
| 10/05/2022 | Receive and review email from client confirming she made mortgage changes. | ASW | 150 | 0.10 | 15.00 | 0.00 | | | | | | |
| 10/06/2022 | Receive and review letter from Select Portfolio regarding lien subject to bankruptcy. | ASW | 150 | 0.10 | 15.00 | 0.00 | | | | | | |
| 10/06/2022 | Receive and review returned mail notice to Powerpay. Message to client regarding returned mail and asking for new address. | ASW | 150 | 0.10 | 15.00 | 0.00 | | | | | | |

| Date | Description | | | | | | Name | Date | Description | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/12/2022 | Receive and review email from Jones regarding arrears and paying them outside of plan.  Analyze escrow calculations and interpretation of instructions for Form 401A and their argument that the intructions permit the escrow calculation. Call to opposing counsel. Discuss calculations, objection, and paying arrears. | CS | 415 | 0.50 | 207.50 | 0.00 | | | | | | |
| 10/21/2022 | Receive, review, and respond to email from client regarding wage attachment. | ASW | 150 | 0.10 | 15.00 | 0.00 | | | | | | |
| 10/22/2022 | Prepare Debtor's Motion for Sanctions Under Rule 9011 In Connection With Doc. 12. | CS | 415 | 1.20 | 498.00 | 0.00 | | | | | | |
| 10/22/2022 | Time for instructions to paralegal regarding finalizing and preparing the motions. | CS | 415 | 0.10 | 41.50 | -41.50 | | | | | | |
| 10/25/2022 | Review file and organize it in preparation for 341 meeting. | ASW | 150 | 0.90 | 135.00 | -90.00 | | | | | | |
| 10/25/2022 | Review file. Review plan. Prepare three letters to three companies serving plan. | ASW | 150 | 0.20 | 30.00 | 0.00 | | | | | | |
| 10/26/2022 | Prep letter with plan to fourth company (Midland Funding). | ASW | 150 | 0.10 | 15.00 | 0.00 | | | | | | |
| 10/26/2022 | Prepare 9011 motion for filing. | ASW | 150 | 0.20 | 30.00 | 0.00 | | | | | | |
| 10/27/2022 | Finish prepping 9011 motions. | ASW | 150 | 0.10 | 15.00 | 0.00 | | | | | | |
| 10/27/2022 | Review claims for unexpected amounts or classifications and corresponding impact on plan. Confirm that all necessary claims have either been filed or that a task has been set to ensure filing. Set task if any claim needs future attention (e.g., objections/lien avoidance.) Draft summary memo to atty. | ASW | 150 | 0.90 | 135.00 | 0.00 | Roberson | 01/06/2023 | Analyze all claims in comparison with the plan to confirm if any came in at an unexpected amount or class and how that may affect plan funding and/or confirmation, and what actions need to be taken with respect to the same. Confirm that all claims we want to be filed have been filed, and, if not, set tasks for their deadline to be filed and to confirm they have been. Analyze whether we should object to any claims filed. Set any tasks required for future action to be taken (objections/lien avoidance/step plan/selling/surrendering property.) Draft memo to CS summarizing claims and case status. | P | 0.90 | 135.00 |
| 10/27/2022 | Review 9011 motion from ASW. Edit proposed orders. | CS | 415 | 0.30 | 124.50 | 0.00 | | | | | | |
| 10/27/2022 | Email to Jones asking if he would accept service of 9011 motions. | CS | 415 | 0.10 | 41.50 | 0.00 | | | | | | |
| 10/28/2022 | Receive, review, and respond to email from client regarding zoom link for Monday. | ASW | 150 | 0.10 | 15.00 | -10.00 | | | | | | |
| 10/28/2022 | Receive and review email from Jones concerning not being authorized to accept service on client's behalf. | CS | 415 | 0.10 | 41.50 | -41.50 | | | | | | |
| 10/31/2022 | Prepare for 341 meeting. | CS | 415 | 0.20 | 83.00 | 0.00 | | | | | | |
| 10/31/2022 | Review ASW's analysis of claims filed and not yet filed. Advised that we do not need to file a not-yet- filed claim for Midland, and that we will not object to the unsecured status that is alleged on the claims of two holders of judicial liens. | CS | 415 | 0.10 | 41.50 | 0.00 | | | | | | |
| 10/31/2022 | Meeting with client to prepare for 341 meeting. . | CS | 415 | 0.30 | 124.50 | 0.00 | Roberson | 01/09/2023 | Pre 341 meeting with client. | A | 0.70 | 290.50 |
| 10/31/2022 | Attend 341 Meeting. | CS | 415 | 0.50 | 207.50 | 0.00 | Roberson | 01/09/2023 | Attend 341 Meeting | A | 0.30 | 124.50 |
| 10/31/2022 | Review and approve certificate of service for sanctions motions. | CS | 415 | 0.10 | 41.50 | -41.50 | | | | | | |
| 10/31/2022 | File certificate of service. | ASW | 150 | 0.10 | 15.00 | 0.00 | Roberson | 01/24/2023 | File Request For Payment | P | 0.10 | 15.00 |
| 10/31/2022 | Memo to ASW regarding notes for the file from 341 hearing and agreement reached with McHale regarding continuation of confirmation hearing. | CS | 415 | 0.10 | 41.50 | 0.00 | | | | | | |

| Date | Description | | | | | | Name | Date | Description | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/31/2022 | Receive and review email from Kim DeSanto, legal secretary for Attorney Wood, regarding my client's plan to include the debt owed to the city of Scranton. | CS | 415 | 0.10 | 41.50 | 0.00 | | | | | | |
| 11/04/2022 | Receive, review, and respond to email from client regarding wage garnishment check being sent to them instead of trustee. | ASW | 150 | 0.10 | 15.00 | 0.00 | | | | | | |
| 11/04/2022 | Receive and review email from client regarding people who handle Dom's checks. | ASW | 150 | 0.10 | 15.00 | -15.00 | | | | | | |
| 11/04/2022 | Receive and review email from client regarding speaking to employer and having the situation cleared up. | ASW | 150 | 0.10 | 15.00 | -15.00 | | | | | | |
| 11/04/2022 | Analyze claim 4 filed on the docket. | ASW | 150 | 0.30 | 45.00 | 0.00 | Roberson | 12/09/2022 | Analyze proof of claim 1 filed on the docket. | P | 0.20 | 30.00 |
| 11/04/2022 | Receive and review certification that 341 meeting held and confirmation hearing date set. Calendar confirmation hearing date. Draft letter to client regarding the same. Draft pre-confirmation certification. Review file to confirm all tax returns required to be filed have been filed. | ASW | 150 | 0.30 | 45.00 | -30.00 | R.B. Dwyer | 10/23/2022 | Emails from and to D. Verdugo re confirmation hearing date | A | 0.05 | 24.50 |
| 11/04/2022 | Review paralegal's analysis of claim 4. | CS | 415 | 0.10 | 41.50 | 0.00 | Roberson | 12/09/2022 | Analyze proof of claim 1 filed on the docket. | P | 0.20 | 30.00 |
| 11/04/2022 | Receive and review objection to Ch 13 plan filed on docket. | CS | 415 | 0.10 | 41.50 | 0.00 | Roberson | 12/12/2022 | Receive and review objection to plan filed by Mario Hanyon for Wells Fargo | A | 0.10 | 41.50 |
| 11/09/2022 | Receive and review signed pre-confirmation certification. File the same. | ASW | 150 | 0.10 | 15.00 | 0.00 | Roberson | 01/24/2023 | Receive and review signed pre-confirmation certification. File the same. | P | 0.10 | 15.00 |
| 11/09/2022 | Receive and review withdrawal of objection to confirmation of plan filed on docket. | CS | 415 | 0.10 | 41.50 | 0.00 | | | | | | |
| 11/15/2022 | Prepare Request for Payment. | ASW | 150 | 0.10 | 15.00 | 0.00 | | | | | | |
| 11/16/2022 | File Request for Payment. | ASW | 150 | 0.10 | 15.00 | 0.00 | Roberson | 01/24/2023 | File Request For Payment | P | 0.10 | 15.00 |
| 11/17/2022 | Receive and review message from client regarding wage garnishment. Call to accountant. Accountant prepares the checks and sends them to employer. Call to Dom. Dom was at work. Spoke with Natasha. Natasha will rectify error and mail the checks. | ASW | 150 | 0.20 | 30.00 | 0.00 | | | | | | |
| 11/22/2022 | Analyze proof of claim 5 filed on the docket. | ASW | 150 | 0.20 | 30.00 | 0.00 | Roberson | 12/09/2022 | Analyze proof of claim 1 filed on the docket. | P | 0.20 | 30.00 |
| 11/23/2022 | Call to Jones' office. Nick Miller, managing paralegal, said the continuance of the hearing is acceptable.<br>Email to trustee. | ASW | 150 | 0.10 | 15.00 | 0.00 | | | | | | |
| 11/23/2022 | Review paralegal's analysis of claim 5. | CS | 415 | 0.10 | 41.50 | 0.00 | Roberson | 02/03/2023 | Review paralegal's analysis of proof of claim for signature loan cosigned by Greg (MCU). Evaluate treatment of the same in plan. | A | 0.10 | 41.50 |
| 11/23/2022 | Receive and review email from trustee's regarding continuing confirmation hearing to 01/05. | ASW | 150 | 0.10 | 15.00 | -15.00 | | | | | | |
| 11/23/2022 | Receive email from trustee's office asking to continue the confirmation hearing. Review file. Reply to email and give consent to continuance. | CS | 415 | 0.10 | 41.50 | 0.00 | | | | | | |
| 11/23/2022 | Receive and review email from trustee's office regarding reaching out to attorney Jones and his return to office before the confirmation hearing. | CS | 415 | 0.10 | 41.50 | 0.00 | | | | | | |
| 11/28/2022 | Call to client to inform him he doesn't have to attend hearing tomorrow and that it is going to be continued to January. | ASW | 150 | 0.10 | 15.00 | -10.00 | | | | | | |
| 12/02/2022 | Analyze proof of claim 6 filed on the docket. Email analysis to CS. | ASW | 150 | 0.20 | 30.00 | 0.00 | Roberson | 12/09/2022 | Analyze proof of claim 1 filed on the docket. | P | 0.20 | 30.00 |
| 12/06/2022 | Email to Resurgent requesting documents upon which claim is based. | CS | 415 | 0.10 | 41.50 | 0.00 | | | | | | |

| Date | Description | | | | | | Name | Date | Description | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/07/2022 | Receive and review notice of rescheduled confirmation hearing. | ASW | 150 | 0.10 | 15.00 | 0.00 | | | | | | | |
| 12/13/2022 | Email to client with objection withdrawal, pre- confirmation certification of compliance, and cert of service of plan, and request for pmt filed on the docket. | ASW | 150 | 0.10 | 15.00 | -10.00 | Roberson | 01/18/2023 | Email to client with objection filed on the docket and cert of service. | P at S rate | 0.10 | 5.00 |
| 12/14/2022 | Receive and review withdrawal of claim 6 filed on the docket. | ASW | 150 | 0.10 | 15.00 | 0.00 | R.B. Dwyer | 09/11/2023 | Review withdrawal of Pathward claim | A | 0.05 | 24.50 |
| 12/19/2022 | Prepare lien avoidance motions (3). | ASW | 150 | 0.60 | 90.00 | 0.00 | | | | | | |
| 12/20/2022 | Review lien avoidance motions. | CS | 415 | 0.30 | 124.50 | 0.00 | | | | | | |
| 12/22/2022 | File and serve three motions to avoid liens. | ASW | 150 | 0.30 | 45.00 | 0.00 | | | | | | |
| 12/27/2022 | Review file to confirm there are no barriers to plan being confirmed. Call to client regarding delinquent payments. No answer, leave message. | ASW | 150 | 0.20 | 30.00 | 0.00 | | | | | | |
| 12/27/2022 | Email to McHale regarding entireties exemptions and whether the objection can be withdrawn. | CS | 415 | 0.10 | 41.50 | 0.00 | | | | | | |
| 12/28/2022 | Call with client regarding payments. | ASW | 150 | 0.10 | 15.00 | 0.00 | | | | | | |
| 12/28/2022 | Receive, review, and respond to email from client with receipt and tracking information for check to trustee. | ASW | 150 | 0.10 | 15.00 | -10.00 | | | | | | |
| 12/28/2022 | Receive and review email from client regarding wage garnishment. | ASW | 150 | 0.10 | 15.00 | -15.00 | | | | | | |
| 12/28/2022 | Second call with client regarding missed plan payments. | ASW | 150 | 0.20 | 30.00 | 0.00 | | | | | | |
| 12/29/2022 | Receive, review, and respond to email from client with overnight receipt for 10/21 check. | ASW | 150 | 0.10 | 15.00 | -15.00 | | | | | | |
| 12/29/2022 | Call from client regarding missing trustee payment and check. | ASW | 150 | 0.20 | 30.00 | 0.00 | | | | | | |
| 12/29/2022 | Receive and review email from Bowers at trustee's regarding updates on objections. | CS | 415 | 0.10 | 41.50 | 0.00 | | | | | | |
| 01/03/2023 | Receive and review withdrawal (objection to plan) filed on docket. | CS | 415 | 0.10 | 41.50 | -20.75 | R.B. Dwyer | 09/11/2023 | Review withdrawal of Pathward claim | A | 0.05 | 24.50 |
| 01/03/2023 | Call with client. He tried to track the trustee check down and they are assuming it got lost in the mail. They are going to call the accountant and cancel the check and then reissue a new check. | ASW | 150 | 0.10 | 15.00 | 0.00 | | | | | | |
| 01/04/2023 | Receive and review email from client with tracking for 12/02 check sent to trustee. | ASW | 150 | 0.10 | 15.00 | -15.00 | | | | | | |
| 01/04/2023 | Call to client to let him know he doesn't have to go to confirmation hearing. | ASW | 150 | 0.10 | 15.00 | -10.00 | R.B. Dwyer | 10/23/2023 | Emails from and to D. Verdugo re confirmation hearing date | A | 0.05 | 24.50 |
| 01/05/2023 | Receive and review email from client regarding sending 12/02 check. | ASW | 150 | 0.10 | 15.00 | -10.00 | | | | | | |
| 01/09/2023 | Email to client with withdrawal of objection and order confirming plan. | ASW | 150 | 0.10 | 15.00 | -10.00 | Roberson | 01/18/2023 | Email to client with objection filed on the docket and cert of service. | P at S rate | 0.10 | 5.00 |
| 01/13/2023 | Receive and review electronic notice of filing: Order Confirming Plan. Update file to reflect same. Serve order (prepare mailing, certificate of service, file the same.). | ASW | 150 | 0.30 | 45.00 | 0.00 | | | | | | |
| 01/18/2023 | Email to client with certificate of service filed on docket. | ASW | 150 | 0.10 | 15.00 | -10.00 | Roberson | 01/18/2023 | Email to client with objection filed on the docket and cert of service. | P at S rate | 0.10 | 5.00 |
| 02/07/2023 | Receive and review orders granting motion to avoid lien of LVNV (2) and Midland. Prepare letters to court asking for certified orders. | ASW | 150 | 0.20 | 30.00 | 0.00 | | | | | | |
| 02/10/2023 | Receive and review email from case administrator with certified orders avoiding liens. | CS | 415 | 0.10 | 41.50 | 0.00 | | | | | | |
| 05/04/2023 | Receive and review message from client asking about roof warranty and whether that was affected by the bankruptcy filing. | CS | 415 | 0.10 | 41.50 | 0.00 | | | | | | |
| 07/20/2023 | Review notice of mortgage payment change. Email to client regarding the same. | ASW | 150 | 0.50 | 75.00 | 0.00 | | | | | | |

| 09/27/2023 | Email to Jones regarding escrow calculation. | CS | 415 | 0.10 | 41.50 | 0.00 |
| 10/04/2023 | Email to Jones asking for response on escrow recalc. | CS | 415 | 0.10 | 41.50 | -41.50 |
| 10/04/2023 | Receive, review, and respond to email from Jones regarding insurance. | CS | 415 | 0.10 | 41.50 | 0.00 |
| 10/11/2023 | Email to Jones. to follow up on escrow recalculation. | CS | 415 | 0.10 | 41.50 | 0.00 |
| 10/11/2023 | Receive and review email from Jones regarding clients new policy. | CS | 415 | 0.10 | 41.50 | 0.00 |
| 10/30/2023 | Receive and review notice of mortgage payment change. | ASW | 150 | 0.20 | 30.00 | 0.00 |
| 12/01/2023 | Review notice of mortgage payment change. | ASW | 150 | 0.20 | 30.00 | 0.00 |
| | | | | Sub-total Fees: | 13,169.00 | -1299.75 |
| | | | | Net Fees After Discount: | 11,869.25 | |

### Expenses

| Date | Description | Price | Units | Amount | Discount |
|------|-------------|-------|-------|--------|----------|
| 06/21/2022 | Accurint search. | 19.57 | 1 | 19.57 | 0.00 |
| 07/05/2022 | Best Case fee. | 8.00 | 1 | 8.00 | 0.00 |
| 09/23/2022 | Filing Fee. | 313.00 | 1 | 313.00 | 0.00 |
| 02/09/2023 | Filing Fee. | 11.00 | 3 | 33.00 | 0.00 |
| 06/20/2022 | Fax Received from Dominic Decantis regarding Life Insurance Policy. | 0.50 | 0 | 0.05 | 0.00 |
| 06/20/2022 | Fax Received from The Baltimore Life Insurance Company regarding Dominic Decantis' Life Insurance Policy. | 0.50 | 0 | 0.05 | 0.00 |
| 06/20/2022 | Fax Received from The Baltimore Life Insurance Company regarding Dominic Decantis' Life Insurance Policy. | 0.50 | 0 | 0.05 | 0.00 |
| 12/22/2022 | Postage for motion to avoid lien to Midland Funding, LLC (Officer, Managing, or General Agent). | 1.00 | 8 | 8.09 | 0.00 |
| 12/22/2022 | Postage for motion to avoid lien to Midland Funding, LLC. | 1.00 | 8 | 8.09 | 0.00 |
| 12/22/2022 | Postage for motion to avoid lien to Hayt, Hayt & Landau, LLC (Officer, Managing, or General Agent). | 1.00 | 8 | 8.09 | 0.00 |
| 12/22/2022 | Postage for motion to avoid lien to Resurgent Capital services as Servicer for LVNV Funding, LLC (Second Lien). | 1.00 | 8 | 8.09 | 0.00 |
| 12/22/2022 | Postage for motion to avoid lien to LVNV Funding (Officer, Managing, or General Agent). | 1.00 | 8 | 8.09 | 0.00 |
| 12/22/2022 | Postage for motion to avoid lien to LVNV Funding (Officer, Managing, or General Agent)(Second Lien). | 1.00 | 8 | 8.09 | 0.00 |
| 12/22/2022 | Postage for motion to avoid lien to Resurgent Capital services as Servicer for LVNV Funding, LLC. | 1.00 | 8 | 8.09 | 0.00 |
| 01/13/2023 | Postage and cost for service of Order confirming plan to creditors | 1.00 | 20 | 19.50 | 0.00 |
| | | | | ====== | |
| | | | Total: | 449.85 | |

### Total

Net Fees After Discount: 11,869.25
Net Expenses After Discount: 449.85
======
12,319.10

Total post-discounted value of entries containing "email": 1,473.50
As a percentage of the total fees: 12.4%

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | CHAPTER 13 |
| DOMINIC JOSEPH DECANTIS; AKA DOMINIC DECANTIS; AKA DOMINIC J DECANTIS, | CASE NO. 5:22-bk-01826-MJC |
| Debtor | |

## <u>NOTICE</u>

Today the Debtor filed *Application of Attorney for Chapter 13 Debtor for Compensation and Reimbursement of Expenses*. The application requests the total sum of $12,319.10.

If you object to the relief requested, you must file your objection/response on or before 21 days from the date of this notice with the Clerk of the United States Bankruptcy Court, Max Rosenn U.S. Courthouse, 197 South Main Street, Wilkes-Barre, PA 18701

If you file and serve an objection/response within the time permitted, a hearing will be held on May 30, 2024 at 10:00 AM at Max Rosenn U.S. Courthouse, 197 South Main Street, Wilkes-Barre, PA 18701. If you do not file an objection/response within the time permitted the Court will deem the motion unopposed and proceed to consider the motion without further notice or hearing, and may grant the relief requested.

Date: April 29, 2024

s/ Carlo Sabatini
Carlo Sabatini, Attorney for Debtor
Bar Number PA 83831
Sabatini Law Firm, LLC
216 N. Blakely St.
Dunmore, PA 18512
Phone (570) 341-9000
Facsimile (570) 504-2769
Email ecf@bankruptcypa.com

AA 081

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | CHAPTER 13 |
| DOMINIC JOSEPH DECANTIS; AKA DOMINIC DECANTIS; AKA DOMINIC J DECANTIS, | CASE NO. 5-22-bk-01826-MJC |
| Debtor | Application of Attorney for Chapter 13 Debtor for Compensation and Reimbursement of Expenses |

## <u>ORDER APPROVING INTERIM COMPENSATION TO COUNSEL FOR DEBTOR</u>

Upon consideration of *Application of Attorney for Chapter 13 Debtor for Compensation and Reimbursement of Expenses* it is ordered that the following interim amounts are awarded: compensation in the amount of $11,869.25 and reimbursement of expenses in the amount of $449.85 for a total sum of $12,319.10. This compensation is in addition to all amounts previously paid by the Debtor, approved by this court, or that were included in the confirmed plan. Counsel is authorized to apply the $813.00 of client funds that it is holding in its trust account toward this amount. The remaining $11,506.10 may be paid by the Chapter 13 Trustee, but only to the extent that funds are available to pay it.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br><br>DOMINIC JOSEPH DECANTIS; AKA DOMINIC DECANTIS; AKA DOMINIC J DECANTIS,<br>Debtor | CHAPTER 13<br><br>CASE NO. 5:22-bk-01826-MJC |

**Certification of Service Upon Paper Filer Pursuant to L.B.R. 9013-3**

| Title of Paper Served: | NOTICE OF APPLICATION OF ATTORNEY FOR CHAPTER 13 DEBTOR FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES | |
|---|---|---|
| Name and Address of Recipient: | Entity the Recipient Represents (if applicable) | Method of Service |
| The entities on the attached service list | | United States Mail – First Class Postage Prepaid |

I certify that I am over 18 years of age and service was effectuated today as above described.

Dated: April 29, 2024

s/ Ashley Werner
Ashley Werner, Paralegal
Sabatini Law Firm, LLC
216 N. Blakely St.
Dunmore, PA 18512
Phone (570) 341-9000
Facsimile (570) 504-2769
Email kecf@bankruptcypa.com

AA 083

| |
|---|
| City of Scranton<br>c/o Portnoff Law Associates, Ltd.<br>P.O. Box 3020<br>Norristown, PA 19404-3020 |
| LVNV Funding LLC<br>Resurgent Capital Services<br>PO Box 10587<br>Greenville, SC   29603-0587 |
| LVNV Funding, LLC<br>C/O Resurgent Capital Services<br>PO Box 10466<br>Greenville, SC  29603-0466 |
| Lackawanna County Treasurer Office<br>123 Wyoming Ave<br>Scranton, PA  18503-2026 |
| Martin Rubin, Managing Attorney<br>Hayt, Hayt & Landau, LLC<br>2 Industrial Way W<br>Eatontown, NJ 07724-2279 |
| Michael L Schuman<br>c/o Hayt, Hayt, & Landau, LLC<br>2 Industrial Way W<br>Eatontown, NJ 07724-2279 |
| Midland Credit Management, Inc.<br>PO Box 2037<br>Warren, MI 48090-2037 |
| Midland Funding, LLC<br>c/o Hayt, Hayt & Landau, LLC<br>2 Industrial Way W<br>Eatontown, NJ  07724-2265 |
| PRESSLER  FELT & WARSHAW  LLP<br>7 ENTIN RD<br>PARSIPPANY NJ 07054-5020 |
| Officer, Managing, or General Agent<br>Arrow Financial Services, LLC<br>2605 Camino del Rio S<br>San Diego, CA  92108-3706 |
| Officer, Managing, or General Agent<br>Hayt, Hayt & Landau, LLC<br>2 Industrial Way W<br>Eatontown, NJ  07724-2265 |
| LVNV Funding LLC<br>c/o Resurgent Capital Services |

AA 084

| |
|---|
| P.O. Box 10587<br>Greenville, SC 29603-0587 |
| Officer, Managing, or General Agent<br>LVNV Funding, LLC<br>PO Box 10466<br>Greenville, SC  29603-0466 |
| Portnoff Law Associates, Ltd.<br>PO Box 3020<br>Norristown, PA  19404-3020 |
| Select Portfolio Sevices<br>PO Box 65250<br>Salt Lake City, UT 84165-0250 |
| Single Tax Office<br>Lackawanna County Gov't Center<br>123 Wyoming Ave<br>Scranton, PA  18503-2026 |
| U.S. Bank N.A., as trustee, et al<br>c/o Select Portfolio Servicing, Inc.<br>P.O. Box 65250<br>Salt Lake City, UT 84165-0250 |
| U.S. Bank N.A., as trustee, et al<br>c/o Stern & Eisenberg, PC<br>1581 Main Street, Suite 200<br>The Shops at Valley Square<br>Warrington, PA 18976-3403 |
| Xfinity<br>PO Box 6505<br>Chelmsford, MA  01824-0905 |
| Pennsylvania Department of Revenue<br>Bankruptcy Division<br>P.O. Box 280946<br>Harrisburg, PA 17128-0946 |
| U.S. Bank N.A., as trustee, on behalf of the<br>c/o Stern & Eisenberg, PC<br>1581 Main Street<br>Suite 200<br>The Shops at Valley Square |
| Arrow Financial Services, LLC<br>2605 Camino del Rio S<br>San Diego, CA  92108-3706 |
| BANK OF AMERICA<br>PO BOX 982238<br>EL PASO TX 79998-2238 |

AA 085

| |
|---|
| City of Scranton<br>c/o James R. Wood, Esquire<br>2700 Horizon Drive, Suite 100<br>King of Prussia, PA 19406-2726 |
| City of Scranton<br>c/o Portnoff Law Associates, Ltd.<br>P.O. Box 3020<br>Norristown, PA 19404-3020 |
| Fidelity Bank<br>PO Box 997<br>Scranton, PA  18501-0997 |
| PowerPay, LLC/Connexus Credit Union<br>PO Box 62426<br>King of Prussia, PA 19406-0395 |

AA 086

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | DOMINIC JOSEPH DECANTIS; AKA DOMINIC DECANTIS; AKA DOMINIC J. DECANTIS, Debtor | : CHAPTER 13<br>:<br>:<br>: |
| | | : |
| | JACK N. ZAHAROPOULOS STANDING CHAPTER 13 TRUSTEE, Objectant | :<br>:<br>: |
| | | : CASE NO. 5:22-bk-01826-MJC |
| | vs. | :<br>: |
| | CARLO SABATINI, ESQUIRE, Applicant | :<br>: |

**TRUSTEE'S OBJECTION TO INTERIM
APPLICATION OF ATTORNEY FOR CHAPTER 13 DEBTOR
FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES**

AND NOW, this 20th day of May, 2024, comes Jack N. Zaharopoulos, Standing Chapter 13 Trustee, by and through his attorney Agatha R. McHale, Esquire, who objects, pursuant to 11 U.S.C. §330(a)(2), to the Interim Application of Attorney for Chapter 13 Debtor for Compensation and Reimbursement of Expenses filed on April 29, 2024, and states as follows:

**Facts**

1.    Objectant, Jack N. Zaharopoulos, is the duly appointed Trustee in this case and, therefore, the representative of the Estate under § 323(a).

2.    On September 22, 2022, Debtor filed a Petition under Chapter 13 of the Bankruptcy Code.

3.    On April 29, 2024, Applicant filed his Interim Application for Compensation and Reimbursement of Expenses.

4.    The District has determined that $4,500.00 is a presumptively reasonable fee

AA 087

("PRF") for an attorney representing a debtor in a Chapter 13 Bankruptcy filed in this District throughout the conclusion of the case.  L.R. 2016-2 (c)

5.    Applicant's Interim Fee Application requests $11,506.10 in compensation and reimbursement of expenses to be paid through the Chapter 13 Plan, but only to the extent that funds are available to pay it.

6.    Applicant's fees and expenses in the present case total approximately $12,319.10 including the amount of $813.00 taken prior to the Interim Fee Application.

7.    General unsecured creditors have been paid a total of $2,131.18.

## Applicable Law

8.    The PRF should be used "as a guide or 'starting point' to what should be considered a 'reasonable fee in a routine Chapter 13 case in this District.'" *In re Thomas,* No. 5:18-03265-MJC (Bankr. M.D. Pa. Oct. 18, 2023); *In re Badyrka*, No. 5:20-20-03618-MJC, 2022 WL 4656034 at *6 (Bankr. M.D. Pa. Sept. 30, 2022) (citation omitted).

9.    Under Bankruptcy Rule 2017(b), the Court "may determine whether any payment of money or any transfer of property, or any agreement therefor, by the debtor to an attorney after entry of an order for relief in a case under the Code is excessive . . . ." Fed. R. Bankr. P. 2017(b). "Excessive attorney's fees should not be awarded where such award contravenes the purposes of Chapter 13." *In re Tcherneva*, 638 B.R. 676 (Bankr. E.D.N.Y. 2022).

10.    The applicant bears the burden of proving that the fees and expenses sought are reasonable and necessary. *Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.*, 50 F.3d 253, 261 (3rd Cir. 1995). "When the issues are not complex and the process is straightforward, an attorney is expected to exercise 'billing judgment' and is encouraged to reduce its customary fees in appropriate circumstances to reflect a less substantial expenditure of the attorney's time." *In re*

*Parilla*, 530 B.R. 1, 13 (Bankr. D.P.R. 2015) (quoting *In re Thorn*, 192 B.R. 52, 56 (Bankr. N.D.N.Y. 1984).

11.     Under § 330(a), the Court may award reasonable compensation for actual, necessary services rendered by the attorney and paraprofessionals employed by the attorney, the reasonableness to be based on (i) the nature of the services; (ii) the extent of the services; (iii) the value of the services; (iv) the time spent on the services; and (v) the cost of comparable services in non-bankruptcy cases. *See In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 840 (3rd Cir. 1994).

12.     Chapter 13 debtors' attorneys may be awarded fees pursuant to § 330(a)(4)(B), which allows reasonable fees for representing the interests of Chapter 13 debtors in connection with the bankruptcy case "based on consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section." Attorney fees are subject to Court review for reasonableness irrespective of whether the debtor is in agreement with the fee amount. § 329(b); *In re Parilla*, 530 B.R. 1, 10 (Bankr. D.P.R. 2015).

13.     The Third Circuit has noted that "[d]isagreeable as the chore may be, the bankruptcy court must protect the estate, lest overreaching attorneys or other professionals drain it of wealth which by right should inure to the benefit of unsecured creditors." *Busy Beaver,* 19 F.3d at 844 (citation omitted).

14.     The "court shall not allow compensation for (i) unnecessary duplication of services; or (ii) services that were not (I) reasonably likely to benefit the debtor's estate; or (II) necessary to the administration of the case." § 330(a)(4)(A).

15.     The Court must conduct an objective inquiry based upon what services a reasonable lawyer or law firm would have performed in the same circumstances. *In re Fleming Companies, Inc.*, 304 B.R. 85, 89-90 (Bankr. D. Del. 2003). A "judge's experience with fee petitions and his

or her expert judgment pertaining to appropriate billing practices, bounded on an understanding of the legal profession, will be the starting point for any analysis." *Id.* (citing *Busy Beaver*, 19 F.3d at 854). When making its consideration, the Court is not required to make a line-by-line analysis of the fee application, and a sampling will suffice. *See*, e.g., *In re Maruko, Inc.*, 160 B.R. 633, 642 (Bankr. S.D. Cal. 1993). Since "it's time is precious, the reviewing Court need only correct reasonable discernible abuses, not pin down to the nearest dollar the precise fee to which the professional is ideally entitled." *Busy Beaver*, 19 F.3d 833 at 844-845; *see* also *In re Strauss*, No. 21-00995-MJC (Bankr. M.D. Pa. Mar. 31, 2023).

16.    The Court may use a percentage deduction as a practical means of "trimming fat from a fee application" if the Court determines that some of the time claimed by a party should be excluded. *In re Nicholas*, 496 B.R 69, 76 (Bankr. E.D.N.Y. 2011). *See also In re Old Summit Mfg., LLC*, 323 BR. 154, 162-163 (Banr. MD. Pa. 2004) (50% reduction); *In re Sullivan,* 674 F.3d 65 (1st Cir. 2012); *In re Claudio*, 459 B.R. 500 (Bankr. D. Mass. 2011); *In re Spillman Dev. Grp., Ltd.,* 376 B.R. 543 (Bankr. W.D. Tex. 2007).

17.    Judge France previously stated "[a] bankruptcy court must balance adequately compensating attorneys in order to encourage competent counsel to represent bankruptcy debtors with insuring that the costs of administration do not consume assets that otherwise would be available to creditors. In making a fee determination, the court must take into consideration whether the professional exercised "reasonable billing judgment." *In re Fontaine*, 2015 WL 5162557, at *3 (Bankr. M.D Pa. 2015).

18.    Under § 1325(a)(6), a debtor must be able to make all payments under the plan and comply with the plan. Moreover, LR 2016-2(a) states that "[a]fter the petition is filed, an attorney may not receive payment of fees except through the chapter 13 plan, unless payment is otherwise

approved by the Court."

19.    As stated in *In re Roberson*, "at [a] minimum, the time records must be specific enough to allow a court to determine whether the hours claimed are reasonable for the work performed." No. 22-02242-MJC, n.3 (Bankr. MD. Pa. Mar. 27, 2024); *citing In re Topa,* 2023 WL 2657095 at *2 (Bankr. N.D. Ohio 2023)*; In re Molina,* 632 B.R. 561, 573 (Bankr. S.D.N.Y. 2021).

## <u>Analysis and Facts Specific to the Present Fee Application</u>

20.    The Trustee avers the fees requested underfund the plan by approximately $4,664.60.

21.    This runs contrary to § 1325(a)(6), and LR 2016-2(a), which provides that the debtor must be able to make all payments in the plan, and comply with the plan, unless otherwise approved by the court.

22.    This case is a routine Chapter 13 case with no unique or complex issues.

23.    The Trustee further avers that the Interim Fee Application is not reasonable for the following reasons:

   a.    The Trustee believes, and therefore avers, that the following services billed in Applicant's Interim Fee Application were performed in an inefficient manner, which resulted in excessive time billed relative to the complexity of the case. As such, the following entries should be reduced to a reasonable rate:

      (1)    On June 18, 2022, Applicant's staff charged 1.40 hours in the amount of $189.00 for "[r]eceive and review documentation needed to prepare schedules from client. Organize documentation and add to client's electronic file."

(2)    On June 19, 2022, Applicant's staff charged 1.80 hours in the amount of $243.00 for "[r]eceive and review documentation needed to prepare schedules from client. Organize documentation and add to client's electronic file."

(3)    On October 3, 2022, Applicant's staff charged 0.20 hours in the amount of $30.00 for "[a]nalyze proof of claim 1 filed on the docket."

(4)    On October 4, 2022, Applicant's staff charged 0.20 hours in the amount of $30.00 for "[a]nalyze proof of claim 2 filed on the docket."

(5)    On October 4, 2022, Applicant's staff charged 0.20 hours in the amount of $30.00 for "[a]nalyze proof of claim 3 filed on the docket. Prep new payment address letter to client."

(6)    On October 4, 2022, Applicant charged 0.20 hours in the amount of $83.00 for "[r]eview paralegal's analysis of claim 3. Mortgage looks current. They have unapplied funds. If those funds were applied, it would be current. They did a recalculation with the escrow analysis and I think that is the issue here."

(7)    On October 4, 2022, Applicant charged 0.10 hours in the amount of $41.50 for "[r]eceive and review paralegal's analysis of claim 1 filed on the docket. No letter needed."

(8)    On October 4, 2022, Applicant charged 0.10 hours in the amount of $41.50 for "[r]eceive and review paralegal's analysis of claim 2 filed

on the docket. No letter needed."

(9)    On November 4, 2022, Applicant's staff charged 0.30 hours in the amount of $45.00 for "[a]nalyze claim 4 filed on the docket."

(10)    On November 4, 2022, Applicant charged 0.10 hours in the amount of $41.50 for "[r]eview paralegal's analysis of claim 4."

(11)    On November 22, 2022, Applicant's staff charged 0.20 hours in the amount of $30.00 for "[a]nalyze proof of claim 5 filed on the docket."

(12)    On November 23, 2022, Applicant charged 0.10 hours in the amount of $41.50 for "[r]eview paralegal's analysis of claim 5."

(13)    On December 2, 2022, Applicant's staff charged 0.20 hours in the amount of $30.00 for "[a]nalyze proof of claim 6 filed on the docket. Email analysis to CS."

(14)    On December 14, 2022, Applicant's staff charged 0.10 hours in the amount of $15.00 for "[r]eceive and review withdrawal of claim 6 filed on the docket."

Applicant and Applicant's staff billed approximately 2 hours in the amount of $459.00 for reviewing and analyzing proofs of claim.

b.    The Trustee believes, and therefore avers, that the following services billed in Applicant's Interim Fee Application are too vague to conclude how they benefited the Debtor's bankruptcy estate. The Trustee cannot discern if the services performed were administrative in nature, duplicative, or reasonably commensurate with the complexity of the task being performed. Because the entries lack sufficient

specificity for the Court to discern whether these fees are properly billable, the following fees should therefore be disallowed:

(1)     On June 19, 2022, Applicant's staff charged 1.90 hours in the amount of $256.50 for "[p]repare petition and schedules."

(2)     On June 20, 2022, Applicant's staff charged 0.70 hours in the amount of $94.50 for "[c]ontinue preparing schedules."

(3)     On June 21, 2022, Applicant's staff charged 1.20 hours in the amount of $180.00 for "[w]ork with I, J, MT, and Plan."

(4)     On June 21, 2022, Applicant's staff charged 1.10 hours in the amount of $148.50 for "[c]ontinue preparing schedules."

(5)     On June 22, 2022, Applicant's staff charged 0.40 hours in the amount of $54.00 for "[c]ontinue preparing schedules."

(6)     On June 23, 2022, Applicant charged 1.70 hours in the amount of $705.50 for "[w]ork with I, J, and MT. Prepare plan."

(7)     On June 23, 2022, Applicant's staff charged 0.40 hours in the amount of $54.00 for "[c]ontinue preparing schedules."

(8)     On June 24, 2022, Applicant's staff charged 0.50 hours in the amount of $75.00 for "[a]djust I and MT, and special provisions attachment in plan."

(9)     On June 25, 2022, Applicant's staff charged 1.20 hours in the amount of $162.00 for "[c]ontinue preparing schedules."

(10)    On June 26, 2022, Applicant's staff charged 1.80 hours in the amount of $243.00 for "[c]ontinue preparing schedules."

(11)   On June 26, 2022, Applicant's staff charged 1.50 hours in the amount of $202.50 for [c]ontinue preparing schedules."

(12)   On June 29, 2022, Applicant charged 0.60 hours in the amount of $249.00 for "[m]eet with paralegal to go over schedules, work on plan calculations, and address issues that she had flagged for me."

(13)   On June 29, 2022, Applicant's staff charged 1.70 hours in the amount of $229.50 for [c]ontinue preparing schedules."

(14)   On June 30, 2022, Applicant's staff charged 1.80 hours in the amount of $243.00 for "[c]ontinue preparing schedules."

(15)   On July 1, 2022, Applicant's staff charged 2.70 hours in the amount of $405.00 for [c]ontinue preparing schedules."

(16)   On July 1, 2022, Applicant charged 1.70 hours in the amount of $705.50 for "[d]raft post-filing instructions for client, draft plan attachment and complete my review of petition and schedules."

(17)   On July 1, 2022, Applicant's staff charged 0.30 hours in the amount of $40.50 for "[c]ontinue preparing schedules."

(18)   On July 2, 2022, Applicant's staff charged 0.40 hours in the amount of $54.00 for "[g]enerate, review, and revise schedules."

(19)   On September 21, 2022, Applicant's staff charged 1.00 hours in the amount of $135.00 for "[c]onference with CS and client regarding information to prepare case."

(20)   On September 21, 2022, Applicant charged 0.60 hours in the amount of $249.00 for "[m]eet with paralegal to finalize schedules and

plan."

 (21) On September 21, 2022, Applicant charged 0.60 hours in the amount of $249.00 for "[m]eeting with client to finalize bankruptcy documentation."

 (22) On September 22, 2022, Applicant's staff charged 1.90 hours in the amount of $256.50 for "[c]onference with CS and client to review petition."

Applicant and Applicant's staff billed approximately 25.70 hours in the amount of $4,991.50 for preparation of the petition, schedules, means test, and plan.

c. The Trustee believes, and therefore avers, that the following services billed at an attorney rate in Applicant's Interim Fee Application are excessive and should be reduced to a paralegal rate:

 (1) On September 6, 2022, Applicant charged 0.10 hours in the amount of $41.50 for "[e]dit to schedule J and Plan."

 (2) On October 27, 2022, Applicant charged 0.10 hours in the amount of $41.50 for "[e]mail to Jones asking if he would accept service of 9011 motions."

 (3) On December 6, 2022, Applicant charged 0.10 hours in the amount of $41.50 for "[e]mail to Resurgent requesting documents upon which claim is based."

 (4) On October 11, 2023, Applicant charged 0.10 hours in the amount of $41.50 for "[e]mail to Jones. to follow up on escrow recalculation."

d.  The Trustee believes, and therefore avers, that the following services billed in Applicant's Interim Fee Application are duplicative in nature and should not be billable to the client:

(1)  On July 12, 2022, Applicant charged 0.10 hours in the amount of $41.50 for "[r]eceive and review email from Dugan attaching breakdown of delinquencies and interest."

(2)  Also on July 12, 2022, Applicant charged 0.10 hours in the amount of $41.50 for "[e]mail to Dugan regarding delinquencies and interest accrued."

e.  The Trustee believes, and therefore avers, that the following services billed in Applicant's Interim Fee Application are administrative in nature and should not be billable:

(1)  On June 13, 2022, Applicant's staff charged 0.10 hours in the amount of $15.00 for "[r]eceive and review email from client attaching budget."

(2)  On July 5, 2022, Applicant charged 0.10 hours in the amount of $41.50 for "[e]mail to Schuman regarding deposition continuance."

(3)  On July 5, 2022, Applicant charged 0.10 hours in the amount of $41.50 for "[r]eceive, review, and respond to email from Hannum regarding rescheduling deposition and allowing 30-day extension to respond."

(4)  On July 11, 2022, Applicant charged 0.10 hours in the amount of $41.50 for "[r]eceive and review email from client with collection

letter."

(5)     On July 12, 2022, Applicant charged 0.10 hours in the amount of $41.50 for "[r]eview message from client. Call to client. No answer, leave message regarding plan payment."

(6)     On July 20, 2022, Applicant's staff charged 0.10 hours in the amount of $15.00 for "[r]eceive and review email from client regarding Honda. He wants to call this company to find out if this is related to the deposition."

(7)     On July 27, 2022, Applicant charged 0.10 hours in the amount of $41.50 for "[e]mail to Dugan asking after response to two emails."

(8)     On August 1, 2022, Applicant charged 0.10 hours in the amount of $41.50 for "[r]eceive and review phone message from client regarding magistrate's office records. Call to client. No answer, leave message."

(9)     On August 14, 2022, Applicant charged 0.10 hours in the amount of $41.50 for "[e]mail to Dugan to follow up on garbage debts."

(10)    On August 15, 2022, Applicant charged 0.10 hours in the amount of $41.50 for "[r]eceive and review email from Dugan regarding waving interest on penalty amounts and concerning liens."

(11)    On August 23, 2022, Applicant charged 0.10 hours in the amount of $41.50 for "[r]ead statute. Email to ASW with instructions."

(12)    On September 23, 2022, Applicant's staff charged 0.10 hours in the amount of $15.00 for "[f]ile motion for wage attachment."

(13)    On September 30, 2022, Applicant charged 0.10 hours in the amount of $41.50 for "[r]eceive and review email from Jones regarding the handling of mortgage claim in a previous case and attaching Decantis mortgage claim."

(14)    On September 30, 2022, Applicant charged 0.10 hours in the amount of $41.50 for "[r]eceive and review email from client regarding paperwork they received from the mortgage company."

(15)    On October 3, 2022, Applicant's staff charged 0.10 hours in the amount of $15.00 for "[r]eceive and review letter from Select Portfolio Servicing regarding representation."

(16)    On October 5, 2022, Applicant's staff charged 0.10 hours in the amount of $15.00 for "[r]eceive and review email from client confirming she made mortgage changes."

(17)    On October 6, 2022, Applicant's staff charged 0.10 hours in the amount of $15.00 for "[r]eceive and review letter from Select Portfolio regarding lien subject to bankruptcy."

(18)    On October 25, 2022, Applicant's staff charged 0.90 hours in the amount of $135.00 for "[r]eview file and organize it in preparation for 341 meeting."

(19)    On October 31, 2022, Applicant's staff charged 0.10 hours in the amount of $41.50 for "[r]eceive and review email from Kim DeSanto, legal secretary for Attorney Wood, regarding my client's plan to include the debt owed to the city of Scranton."

(20)    On November 23, 2022, Applicant charged 0.10 hours in the amount of $41.50 for "[r]eceive and review email from trustee's office regarding reaching out to attorney Jones and his return to office before the confirmation hearing."

(21)    On December 7, 2022, Applicant's staff charged 0.10 hours in the amount of $15.00 for "[r]eceive and review notice of rescheduled confirmation hearing."

(22)    On February 10, 2023, Applicant charged 0.10 hours in the amount of $41.50 for "[r]eceive and review email from case administrator with certified orders avoiding liens."

(23)    On May 4, 2023, Applicant charged 0.10 hours in the amount of $41.50 for "[r]eceive and review message from client asking about roof warranty and whether that was affected by the bankruptcy filing."

(24)    On October 11, 2023, Applicant charged 0.10 hours in the amount of $41.50 for "[r]eceive and review email from Jones regarding clients new policy."

(25)    On October 30, 2023, Applicant's staff charged 0.20 hours in the amount of $30.00 for "[r]eceive and review notice of mortgage payment change."

(26)    On December 1, 2023, Applicant's staff charged 0.20 hours in the amount of $30.00 for "[r]eview notice of mortgage payment change."

Applicant and Applicant's staff billed approximately 3.60 hours in the amount of $964.00 for administrative tasks.

f.      The Trustee believes, and therefore avers, that the following services billed in Applicant's Interim Fee Application are excessive and should be reduced:

(1)     On June 17, 2022, Applicant's staff charged 0.30 hours in the amount of $45.00 for "[c]all with client. She had questions concerning taxes. She said that she believes the tax information she gave us is incorrect. Provided correct tax information."

(2)     On June 24, 2022, Applicant's staff charged 0.20 hours in the amount of $30.00 for "[c]all from client regarding UGI bill."

(3)     On July 1, 2022, Applicant's staff charged 0.40 hours in the amount of $54.00 for "[c]all to client to ask for information regarding taxes, wage garnishment, and life insurance."

(4)     On October 26, 2022, Applicant's staff charged 0.20 hours in the amount of $30.00 for "[p]repare 9011 motion for filing."

(5)     On October 27, 2022, Applicant's staff charged 0.10 hours in the amount of $15.00 for "[f]inish prepping 9011 motions."

(6)     On October 27, 2022, Applicant charged 0.30 hours in the amount of $124.50 for "[r]eview 9011 motion from ASW. Edit proposed orders."

(7)     On December 20, 2022, Applicant charged 0.30 hours in the amount of $124.50 for "[r]eview lien avoidance motions."

(8)     On December 22, 2022, Applicant's staff charged 0.30 hours in the

amount of $45.00 for "[f]ile and serve three motions to avoid liens."

(9)    On December 28, 2022, Applicant's staff charged 0.20 hours in the amount of $30.00 for "[s]econd call with client regarding missed plan payments."

(10)    On December 29, 2022, Applicant's staff charged 0.20 hours in the amount of $30.00 for "[c]all from client regarding missing trustee payment and check."

(11)    On January 13, 2023, Applicant's staff charged 0.30 hours in the amount of $45.00 for "[r]eceive and review electronic notice of filing: Order Confirming Plan. Update file to reflect same. Serve order (prepare mailing, certificate of service, file the same.).

(12)    On July 20, 2023, Applicant's staff charged 0.50 hours in the amount of $75.00 for "[r]eview notice of mortgage payment change. Email to client regarding the same."

WHEREFORE, the Trustee respectfully requests this Honorable Court to set a hearing on the Application and, after hearing, appropriately adjust Applicant's request for compensation.

Respectfully submitted,

Jack N. Zaharopoulos
Standing Chapter 13 Trustee
8125 Adams Drive, Suite A
Hummelstown, PA 17036
(717) 566-6097

BY:    /s/ Agatha R. McHale            
Attorney for Trustee

AA 102

## <u>CERTIFICATE OF SERVICE</u>

AND NOW, this 20th day of May, 2024, I, hereby certify that I served a copy of this

Objection either electronically or by depositing the same in the United States Mail, at

Hummelstown, Pennsylvania, postage prepaid, first class, addressed to the following:

Carlo Sabatini, Esquire
Sabatini Law Firm, LLC
216 North Blakely Street
Dunmore, PA 18512
Email: usbkct@bankruptcypa.com

/s/ Derek M. Strouphauer
Paralegal for Chapter 13 Trustee
8125 Adams Drive, Suite A
Hummelstown, PA 17036
(717) 566-6097

AA 103

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | DOMINIC JOSEPH DECANTIS; AKA DOMINIC DECANTIS; AKA DOMINIC J. DECANTIS,<br>　　　　Debtor | : CHAPTER 13<br>:<br>:<br>:<br>: |
| | JACK N. ZAHAROPOULOS STANDING CHAPTER 13 TRUSTEE,<br>　　　　Objectant | :<br>:<br>:<br>: |
| | vs. | : CASE NO. 5:22-bk-01826-MJC<br>:<br>: |
| | CARLO SABATINI, ESQUIRE,<br>　　　　Applicant | : TRUSTEE'S OBJECTION TO<br>: INTERIM FEE APPLICATION |

## **<u>ORDER</u>**

AND NOW, upon consideration of the Trustee's Objection to Application of Attorney for Chapter 13 Debtor for Compensation and Reimbursement of Expenses, and all other matters of record, it is hereby ORDERED AND DECREED the attorney's fees sought in the Interim Application of Attorney for Chapter 13 Debtor for Compensation and Reimbursement of Expenses are hereby ADJUSTED AS FOLLOWS:

AA 104

**Ashley Weisenfluh**

| | |
|---|---|
| **From:** | PAMB_LiveDB@pamb.uscourts.gov |
| **Sent:** | Thursday, May 30, 2024 4:05 PM |
| **To:** | Courtmail@pamb.uscourts.gov |
| **Subject:** | Ch-13 5:22-bk-01826-MJC -Dominic Joseph DeC  Hearing Continued |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30-page limit do not apply.**

## U.S. Bankruptcy Court

## Middle District of Pennsylvania

Notice of Electronic Filing

The following transaction was received from Price, Lyndsey entered on 05/30/2024 at 3:09 PM EDT and filed on 05/30/2024

| | |
|---|---|
| **Case Name:** | Dominic Joseph DeCantis |
| **Case Number:** | 5:22-bk-01826-MJC |
| **Document Number:** | 51 |

**Docket Text:**
**Proceeding Memo for hearing scheduled on: 05/30/2024**
**MATTER:** Application for allowance of compensation & expenses (#48]) filed by Debtor; Objection filed by Trustee (#[49])
**APPEARANCES:** Agatha R. McHale, Esq.; Carlo Sabatini, Esq. (by remote appearance)
**DISPOSITION:** Hearing called and continued.
**HEARING Scheduled for 07/25/2024 at 02:00 PM at U.S. Courthouse, 197 S. Main St. Wilkes-Barre, PA.** (Price, Lyndsey)

The following document(s) are associated with this transaction:

**5:22-bk-01826-MJC Notice will be electronically mailed to:**

Steven K Eisenberg on behalf of Creditor U.S. Bank N.A., as trustee, on behalf of the J.P. Morgan Mortgage Acquisition Corp. 2006-FRE2 Asset Backed Pass-Through Certificates, Series 2006-FRE2
seisenberg@sterneisenberg.com, bkecf@sterneisenberg.com

1

AA 105

Daniel Philip Jones on behalf of Creditor U.S. Bank N.A., as trustee, on behalf of the J.P. Morgan Mortgage Acquisition Corp. 2006-FRE2 Asset Backed Pass-Through Certificates, Series 2006-FRE2
djones@sterneisenberg.com, bkecf@sterneisenberg.com

Carlo Sabatini on behalf of Debtor 1 Dominic Joseph DeCantis
usbkct@bankruptcypa.com,
kecf@bankruptcypa.com;ivms@bankruptcypa.com;necf@bankruptcypa.com;sabecf@gmail.com;secf
@bankruptcypa.com;sabatini.carlob107053@notify-prod.bestcase.com

United States Trustee
ustpregion03.ha.ecf@usdoj.gov

James Randolph Wood on behalf of Creditor City of Scranton
jwood@portnoffonline.com, jwood@ecf.inforuptcy.com

Jack N Zaharopoulos
TWecf@pamd13trustee.com

**5:22-bk-01826-MJC Notice will not be electronically mailed to:**

LVNV Funding LLC
c/o Resurgent Capital Services
P.O. Box 10587
Greenville, SC 29603-0587

AA 106

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF PENNSYLVANIA
WILKES-BARRE DIVISION

IN RE:                          )  Case No. 5:22-bk-01826-MJC
                                )  Chapter 13
DOMINIC JOSEPH DeCANTIS,        )
                                )
                                )  274 Max Rosenn U.S. Courthouse
                    Debtor.     )  197 South Main Street
                                )  Wilkes-Barre, PA 18701
                                )
                                )  May 30, 2024
                                )  10:50 a.m.


TRANSCRIPT OF APPLICATION FOR ALLOWANCE OF COMPENSATION AND
EXPENSES (48) FILED BY DEBTOR; OBJECTION FILED BY TRUSTEE (49)
BEFORE HONORABLE MARK J. CONWAY
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Chapter 13          Jack N. Zaharopoulos,
Trustee:                    Standing Chapter 13 Trustee
                            By:  AGATHA R. McHALE, ESQ.
                            8125 Adams Drive, Suite A
                            Hummelstown, Pennsylvania 17036

APPEARANCES VIA ZOOM:

For the Debtor:             Sabatini Law Firm
                            By:  CARLO SABATINI, ESQ.
                            216 N. Blakely Street
                            Dunmore, Pennsylvania 18512

Audio Operator:             Lyndsey Price

Transcription Service:      TRANSCRIPTS PLUS, INC.
                            435 Riverview Circle
                            New Hope, Pennsylvania 18938
                            Telephone:  215-862-1115
                            e-mail CourtTranscripts@aol.com


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

2

1          THE CLERK:  The next eleven matters are fee

2    applications filed by Carlo Sabatini --

3          THE COURT:  Yeah, I think -- there's the next eleven,

4    and Ms. McHale is going to put something -- just to indicate

5    that it's being continued.

6          THE CLERK:  Yes.

7          THE COURT:  Oh, Mr. Sabatini's on Zoom, too.

8          THE CLERK:  Yes, he is.

9          THE COURT:  Okay.  Ms. McHale, is that accurate?

10   We're continuing these, my notes say, to July 15th?

11         THE CLERK:  July 25th?

12         MS. McHALE:  I thought it was July 25th.

13         THE COURT:  Oh, wait a minute.  Okay.  My notes --

14         MS. McHALE:  Yes.

15         THE COURT:  Okay.  July 25th at 2 p.m.

16         MS. McHALE:  2 p.m., yes, Your Honor.

17         THE COURT:  Okay.  Mr. Sabatini, is that okay with

18   you?

19         MR. SABATINI:  Fine with me, Your Honor; thank you.

20         THE COURT:  Okay.  What number -- Lyndsey, when don't

21   you just give the numbers on the record so --

22         THE CLERK:  Just the number?  Do you want case

23   numbers, too?

24         THE COURT:  Just the matter.  Like, number 73.

25         THE CLERK:  Okay, yep.  Starting with Number 72,

3

1  Number 73, Number 74, Number 75, Number 76, Number 77, Number

2  78, Number 79, Number 80, 81, 82.

3          THE COURT:  Okay.  All of those matters, as

4  indicated, will be moved to July 25th, 2024, 2 p.m.  I

5  understand the Trustee and counsel are working diligently to

6  get some resolution.  Correct?

7          MS. McHALE:  We are, Your Honor.

8          MR. SABATINI:  Correct, Your Honor.

9          MS. McHALE:  And we've already gone through two of

10  the --

11          THE COURT:  Okay, great.

12          MS. McHALE:  -- two of the fee apps.

13          THE COURT:  All right.  Well, hopefully I won't see

14  on July 25th, but we'll be here anyway.  Okay?  All right;

15  thank you.  Thank you, Mr. Sabatini.

16          MR. SABATINI:  Thank you, Your Honor.

17      (Whereupon, at 10:51 a.m., the hearing was adjourned.)

18

19

20

21

22

23

24

25

AA 109

4

1
2
3
4
5                    <u>CERTIFICATE OF TRANSCRIBER</u>

6

7        I, KAREN HARTMANN, a certified Electronic Court

8   Transcriber, certify that the foregoing is a correct transcript

9   from the electronic sound recording of the proceedings in the

10  above-entitled matter.

11

12      ___/s/ *Karen Hartmann*_____

13  Karen Hartmann, AAERT CET 475  Date: October 16, 2025

14  TRANSCRIPTS PLUS, INC.

15
16
17
18
19
20
21
22
23
24
25

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:

DOMINIC JOSEPH DECANTIS; AKA
DOMINIC DECANTIS; AKA DOMINIC J
DECANTIS,

Debtor

CHAPTER 13

CASE NO. 5-22-bk-01826-MJC

## STIPULATION RESOLVING OBJECTION TO APPLICATION FOR COMPENSATION AND EXPENSES FILED BY TRUSTEE

1.      On April 29, 2024, Counsel for Debtor filed Application for Allowance of

Compensation & Expenses.

2.      The Trustee filed an objection.

3.      The parties have agreed that to resolve the objection Applicant will reduce his

request by $3,354.50.

4.      An amended proposed order reflecting this reduction is being contemporaneously

filed with this stipulation.

5.      The parties request that the Court enter the amended proposed order.

| | |
|---|---|
| s/Carlo Sabatini | s/Agatha McHale (with consent) |
| Carlo Sabatini, PA 83831 | Agatha McHale, PA 47613 |
| Attorney for Debtor | Staff Attorney for Jack Zaharopoulos |
| Sabatini Law Firm, LLC | Middle District of PA Chapter 13 Trustee |
| 216 N. Blakely St. | 8125 Adams Dr., Ste. A |
| Dunmore, PA 18512 | Hummelstown, PA 17036 |
| Phone (570) 341-9000 | Phone (717) 566-6097 |
| Facsimile (570) 504-2769 | Facsimile (717) 566-8313 |
| Email: ecf@bankruptcypa.com | Email amchale@pamd13trustee.com |

AA 111

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | CHAPTER 13 |
| DOMINIC JOSEPH DECANTIS; AKA DOMINIC DECANTIS; AKA DOMINIC J DECANTIS, | CASE NO. 5-22-bk-01826-MJC |
| Debtor | Application of Attorney for Chapter 13 Debtor for Compensation and Reimbursement of Expenses |

**ORDER APPROVING INTERIM COMPENSATION TO COUNSEL FOR DEBTOR**

Upon consideration of *Application of Attorney for Chapter 13 Debtor for Compensation and Reimbursement of Expenses* filed by Debtor's counsel, Doc. 48, and it appearing that the parties have resolved the Trustee's Objection to same via Stipulation, Docs. 49, 52, it is ordered that the following interim amounts are awarded: compensation in the amount of $8,514.75 and reimbursement of expenses in the amount of $449.85 for a total sum of $8,964.60. This compensation is in addition to all amounts previously paid by the Debtor, approved by this court, or that were included in the confirmed plan. Counsel is authorized to apply the $813.00 of client funds that it is holding in its trust account toward this amount. The remaining $8,151.60 may be paid by the Chapter 13 Trustee, but only to the extent that funds are available to pay it.

AA 112

**Ashley Weisenfluh**

| | |
|---|---|
| **From:** | PAMB_LiveDB@pamb.uscourts.gov |
| **Sent:** | Wednesday, August 7, 2024 1:05 PM |
| **To:** | Courtmail@pamb.uscourts.gov |
| **Subject:** | Ch-13 5:22-bk-01826-MJC -Dominic Joseph DeC Hearing Held |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30-page limit do not apply.**

### U.S. Bankruptcy Court

### Middle District of Pennsylvania

Notice of Electronic Filing

The following transaction was received from Ratchford, Patricia entered on 08/07/2024 at 1:02 PM EDT and filed on 08/07/2024

| | |
|---|---|
| **Case Name:** | Dominic Joseph DeCantis |
| **Case Number:** | 5:22-bk-01826-MJC |
| **Document Number:** | 58 |

**Docket Text:**
**Proceeding Memo for hearing scheduled on: 08/07/2024**
**MATTER:** Application for allowance of compensation & expenses (#[48]) filed by Debtor; Objection filed by Trustee (#[49])
**APPEARANCES:** Agatha R. McHale, Esq., Carlo Sabatini, Esq. (both by remote appearance)
**DISPOSITION:** Hearing held. Order - Counsel for the Debtor to supplement the record in support of the Stipulation filed as discussed in open Court on or before October 7, 2024; thereafter, the matter is taken under advisement. IT IS SO ORDERED on 08/07/2024. /s/ Mark J. Conway
(Ratchford, Patricia)

The following document(s) are associated with this transaction:

**5:22-bk-01826-MJC Notice will be electronically mailed to:**

Steven K Eisenberg on behalf of Creditor U.S. Bank N.A., as trustee, on behalf of the J.P. Morgan Mortgage Acquisition Corp. 2006-FRE2 Asset Backed Pass-Through Certificates, Series 2006-FRE2
seisenberg@sterneisenberg.com, bkecf@sterneisenberg.com

AA 113

Daniel Philip Jones on behalf of Creditor U.S. Bank N.A., as trustee, on behalf of the J.P. Morgan Mortgage Acquisition Corp. 2006-FRE2 Asset Backed Pass-Through Certificates, Series 2006-FRE2
djones@sterneisenberg.com, bkecf@sterneisenberg.com

Carlo Sabatini on behalf of Debtor 1 Dominic Joseph DeCantis
usbkct@bankruptcypa.com,
kecf@bankruptcypa.com;ivms@bankruptcypa.com;necf@bankruptcypa.com;sabecf@gmail.com;secf@bankruptcypa.com;sabatini.carlob107053@notify-prod.bestcase.com

United States Trustee
ustpregion03.ha.ecf@usdoj.gov

James Randolph Wood on behalf of Creditor City of Scranton
jwood@portnoffonline.com, jwood@ecf.inforuptcy.com

Jack N Zaharopoulos
TWecf@pamd13trustee.com

**5:22-bk-01826-MJC Notice will not be electronically mailed to:**

LVNV Funding LLC
c/o Resurgent Capital Services
P.O. Box 10587
Greenville, SC 29603-0587

```
                  UNITED STATES BANKRUPTCY COURT
                 MIDDLE DISTRICT OF PENNSYLVANIA
                      WILKES-BARRE DIVISION

IN RE:                          )  Case No. 5:22-bk-01826-MJC
                                )  Chapter 13
DOMINIC JOSEPH DeCANTIS,        )
                                )  Via Teleconference
                                )  274 Max Rosenn U.S. Courthouse
                    Debtor.     )  197 South Main Street
                                )  Wilkes-Barre, PA 18701
                                )
                                )  August 7, 2024
                                )  10:08 a.m.


    TRANSCRIPT OF APPLICATION FOR ALLOWANCE OF COMPENSATION AND
  EXPENSES (48) FILED BY DEBTOR; OBJECTION FILED BY TRUSTEE (49)
                 BEFORE HONORABLE MARK J. CONWAY
               UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES VIA TELECONFERENCE:

For the Debtor:            Sabatini Law Firm
                           By:  CARLO SABATINI, ESQ.
                           216 N. Blakely Street
                           Dunmore, Pennsylvania 18512

For the Chapter 13         Jack N. Zaharopoulos,
Trustee:                   Standing Chapter 13 Trustee
                           By:  AGATHA R. McHALE, ESQ.
                           8125 Adams Drive, Suite A
                           Hummelstown, Pennsylvania 17036


Audio Operator:            Lyndsey Price

Transcription Service:     TRANSCRIPTS PLUS, INC.
                           435 Riverview Circle
                           New Hope, Pennsylvania 18938
                           Telephone:  215-862-1115
                           e-mail CourtTranscripts@aol.com


  Proceedings recorded by electronic sound recording, transcript
              produced by transcription service.
```

AA 115

2

1          THE COURT:  We are here today, today being Wednesday,

2    August 7th, 2024, in the case of Dominic Joseph DeCantis, Case

3    Number 22-1826.  This is the application of allowance of

4    compensation and expenses filed by the debtor at Docket Number

5    48; and the objection to that application filed by the Trustee

6    at Docket 49.

7          I will also indicate that counsel for the debtor and

8    counsel for the Trustee had met or had meetings.  And I think

9    the objection, as far as the Trustee is concerned, was resolved

10   via the filing of a stipulation at Docket 52 on July 18, 2024.

11   That stipulation essentially indicated that the parties agreed

12   to reduce the debtor's counsel's application by the amount of

13   $3,354.50.  That stipulation does not identify what entries

14   were agreed to be reduced specifically, so I'm not sure where

15   that number comes from.

16         But I will also indicate that where we started in the

17   application, the fees requested were 11,869.25, and expenses

18   were 449.85.

19         Mr. Sabatini had received a retainer of $500, and a

20   payment by the debtor of $313, which represented the advanced

21   cost for the filing fee.

22         The total application indicated 57.2 total hours,

23   less a courtesy discount of some sort of 6.8 hours, for a net

24   of 50.4 hours.

25         Does that sound correct, Mr. Sabatini?

3

1          MR. SABATINI:  It sounds correct.  I haven't double-

2   checked all the math, but it doesn't sound wrong.

3          THE COURT:  Okay.  Well, I'm not intentionally giving

4   you any wrong numbers.  I think I'm reading from the proper

5   documents.

6          MR. SABATINI:  Sure.

7          THE COURT:  So, Ms. McHale, you objected to this fee

8   application.  Why don't you tell me where the Trustee's at

9   today?

10         MS. McHALE:  Well, Your Honor, we went through --

11   what we did was, in addition to this fee app, there were at

12   least nine other fee apps.  And we -- after we had reviewed a

13   certain number of them, we had come to a consensus, I think, on

14   certain entries that we agreed could be used to -- that could

15   be reduced, and then I think that caused us to come back to

16   this one.

17         Now, I know when this proposal was made -- and this

18   is color-coded.  I have a [sic] itemized listing of services,

19   and we have it color-coded that would explain the changes that

20   we made.  So, if Your Honor wants me to --

21         THE COURT:  Let me interrupt you.  Was that filed?

22         MS. McHALE:  No, I don't think that was filed as part

23   of the -- that was part of the settlement negotiations.

24         THE COURT:  Can that --

25         MS. McHALE:  But I'm --

4

1          THE COURT:  Can that be filed?

2          MS. McHALE:  Mr. Sabatini, do you -- you -- what are

3  your feelings on that?  I would be fine with that.

4          MR. SABATINI:  Yeah, I have no objection to filing

5  it.  I mean, if it -- if it -- it would be faster, if Your

6  Honor just wants to see it right now, I could email it.  I have

7  it -- I have it up.

8          THE COURT:  Well, just file it on the record as an

9  exhibit -- on the docket as an exhibit, and I'll look at it.

10          MR. SABATINI:  Okay.  Let me forward this to --

11          THE COURT:  So, there's -- that -- and I'll call it

12  an exhibit.  That exhibit that we're talking about, that

13  specifically identifies how you two got to the stipulated

14  amount of 3,354.50?

15          MS. McHALE:  I believe it does.  Would you agree with

16  that, Carlo?  Because you attached this to the proposal when

17  you sent it to me.

18          MR. SABATINI:  And so --

19          MS. McHALE:  Are we looking for the same thing?  It's

20  nine pages.

21          MR. SABATINI:  Right.  And the -- the net fee after

22  the discount on that was 5,983.25.  Does that line up with --

23  oh, I'm sorry.  No, that's not wrong [sic] -- that's --

24          MS. McHALE:  No, because we reduced --

25          MR. SABATINI:  (Indiscernible - multiple speakers).

5

1          MS. McHALE:   -- it by 3,000.

2          MR. SABATINI:   Yeah, 8,514.75, right.   So, that --

3    and then 449, right.   So, this shows where the -- where all of

4    the additional discounts were made, right.

5          MS. McHALE:   Right.   Because the difference between

6    those two numbers would be the 3,000, right?   At the -- at the

7    bottom of it, it's 8,514.75 -- less 5,983.25 -- no, that's only

8    2,000.

9          THE COURT:   Okay.   Well, let's --

10         MS. McHALE:   But I think it's --

11         THE COURT:   Let's -- let me interrupt.   Why don't you

12   two figure out what the exhibit should be, and upload it onto

13   the docket as an exhibit to the fee app, or to the stipulation,

14   perhaps, whatever you think is appropriate?   So, I could see

15   that, and see what reductions the Debtor agreed to with the

16   Trustee, and maybe that will help the Court.

17         However, I -- obviously, there were many fee

18   applications that the Chapter 13 Trustee objected to and agreed

19   -- there was an agreement reached via a stipulation.   Again,

20   the Court was somewhat in the dark as far as what the specific

21   resolution of each and every one of those files were.   But the

22   ultimate fee, although it was on the high side of what I think

23   is reasonable, I didn't find it to be outrageous.   And I think

24   I approved -- if there was 13 objections in 13 cases, I think I

25   approved 12 of them, and the only case left is this DeCantis.

6

1   Does that sound right, Ms. McHale?

2                MS. McHALE:  Yes.

3                THE COURT:  Okay.

4                MS. McHALE:  Yes, it does.

5                THE COURT:  DeCantis is still on my desk because I

6   can't figure out, Mr. Sabatini, how you could spend 57 hours on

7   this case.  And just my quick summary review of the case, and

8   having practiced for 30 years doing Chapter 13 work, it seems

9   to me to be a simple case.  There's six proofs of claims filed,

10  and only six proofs of claims filed.  There was one mortgage,

11  one car loan.  There were three judgments that you avoided via

12  motions to avoid lien, and they were standard pro forma motions

13  to avoid liens that didn't seem to be complicated or even

14  objected to in any way, shape, or form.  There was only two

15  general unsecured creditors in the schedules.

16          The debtor is a cook at a local restaurant called

17  Camelot up in Clarks Summit, which actually is a very nice

18  place.  A friend of mine owns that, and good food, good drink;

19  not that that's necessarily relevant.  But he makes about

20  $3,000 a month.

21          So, I can't understand, as being a former

22  practitioner, how you can spend 50 or 60 hours on this case.

23  In particular, I think the Trustee zeroed in on, as did I,

24  there's 25, almost 26 hours of time just preparing the

25  schedules, the means test, and the plan; that equated to

7

1  $5,000.

2          And when you look at these documents, you've got to

3  step back and -- Ms. McHale, have you ever prepared schedules

4  for a debtor?

5          MS. McHALE:  I did, but very few, and that was a lot

6  of years ago.

7          THE COURT:  Okay.

8          MS. McHALE:  Nothing under the amendments, no.

9          THE COURT:  Okay.  Was that via, like, a -- did you

10 have a software program at the time?

11         MS. McHALE:  We did.

12         THE COURT:  Okay.

13         MS. McHALE:  And most of that work would have been

14 done by my paralegal, as I recall.

15         THE COURT:  Right.  So, really, what it is, it's data

16 entry.  And the data being entered into the schedules -- I

17 mean, if you took Schedule I and, in particular, Schedule J out

18 of it, as far as the volume of numbers actually being entered,

19 there's about 15 numbers, 20 numbers, 30 numbers, don't hold

20 me.  But there's not thousands of numbers, not thousands of

21 entries that get put into schedules.

22         So, Mr. Sabatini, in all of these cases that we've

23 been going around and around on, I'm at a loss as to how you

24 spent 26 hours preparing schedules.  And maybe, I guess what

25 I'm asking you is, can you identify what, in particular, makes

8

1 this case so unique, or complicated, or complex to be almost

2 double -- or more than double, perhaps almost triple what is

3 the 4,500 PRF in this District?

4       MR. SABATINI:  I don't think that there's anything

5 unusually complex about the case.  The agreement that was

6 reached with the Trustee -- and that -- and my staff is in the

7 process of filing that exhibit right now.  So, hopefully, Your

8 Honor will be able to see it in a few moments.

9       But most of the time that was spent preparing the

10 schedules was written off.  So, I -- and I've mentioned before

11 that this -- this case is older.  All right, so these schedules

12 were prepared over two years ago.  And since that time, because

13 of the -- you know, what I've learned about the Court's

14 concerns about how much time I've been spending, I've put in

15 new programming and procedures that will provide a lot more

16 detail about exactly what's happening when we're preparing the

17 schedules, and how much time is being spent on various tasks.

18       And I -- in one of your opinions on one of my fee

19 applications, you -- you -- and I'm paraphrasing here, you

20 mentioned that, you know, the -- that there was substantial

21 work, and you questioned whether that level of detail was

22 necessary.  And so, part of my goal here is to show you, you

23 know, I'm spending this many hours doing this.  If you think

24 that that, you know, that the -- the cost benefit analysis of

25 that effort is not worth it, then I'll stop doing that.  Right?

9

1    And I'll go through, and the parts of my process that you think

2    are, you know -- you know, that maybe they make the schedules

3    technically more accurate, but that that degree of accuracy is

4    not necessary for most cases, I have no -- you know, I'll cut

5    those things out, and we won't spend the time doing that.

6         I think that we are doing -- you know, as I mentioned

7    in prior hearings, I think that there's a wide range of effort

8    that can go into a case -- into, you know, a garden variety

9    case.  There's a wide range of detail that could be put into

10   that case and still be considered reasonable.  And I think

11   that, you know, obviously we're on the higher end of that

12   range.  It doesn't mean lawyers who do less aren't doing a good

13   job.  It just means that we have different perspectives about

14   how much should go into it.  And if you are looking at the

15   breakdowns that you're going to get into these later cases that

16   show you, look, they spent two hours going through credit

17   reports to make sure that they got every debt, and you don't

18   think that that's worth that time, then we'll stop going

19   through the credit reports to get every debt.  Right?

20        So -- so, this -- so, part of the reason why in this

21   case I agreed to take off most of the time spent preparing the

22   schedules is because I recognize that in prior cases, without

23   me being able to provide you with a more specific breakdown as

24   to what's happening in each step of that process, you know, I'm

25   not carrying my burden of showing where the time is being spent

10

1  preparing the schedules.

2        So, the future cases, you know, with the -- the later

3  cases, you know, that have -- will have that additional detail.

4  And that's where, you know, hopefully I could, you know, make

5  further adjustments to my process to eliminate the things that

6  you think aren't necessary.

7        THE COURT:  Okay.  Well, I appreciate that.  But I do

8  look at your billing.  Unfortunately, I've had the distasteful

9  task, if I can paraphrase the Third Circuit in *Busy Beaver* --

10 the last thing I wanted to do when I came on the bench is to

11 dissect attorneys' fees and fee applications.  And I will say,

12 and I will repeat what I've said before, that I would

13 guesstimate that 90 percent-plus of the fee applications that

14 go by my desk are approved without comment, without adjustment.

15 So, the less than 10 percent of fee applications that go to a

16 hearing, or have an objection, or -- either by a creditor, or

17 the trustee or objected to by the Court must really be out of

18 the ordinary of what I see on a day-to-day basis and how I

19 prepared for Chapter 13 cases, Chapter 7 cases, Chapter 11

20 cases.  So, I don't -- from a percentage basis, it's probably

21 much less than 10 percent actually get pulled and reviewed

22 closely by the Court or are subjected to a hearing by the

23 Court.

24        But I think the Trustee did an excellent job in her

25 objections, and really identified pretty much what the Court

11

1  looks at, as well, as to what just does not appear to be

2  reasonable.  And as I sit here, and as I put myself back at my

3  desk in my law office, I can't understand what you and your

4  staff would spend all this time on in a case where there just

5  isn't that many moving parts.  Again, there's two creditors,

6  two general unsecured creditors and three or four secured

7  creditors.

8          And I'll just point as an example, Mr. Sabatini,

9  June 23rd, 2022, this is three months before the case was

10  filed, you charged 1.7 hours for $705, quote, "Work with I, J

11  and M.T. Prepare plan."  Now -- and this -- again, I don't --

12  this isn't in a vacuum.  This is after your staff spent, I

13  don't know, say, 10 hours preparing the schedules, which,

14  again, only have 10, 20, 30, 40 entries in it.  I don't know

15  how you, as a billing attorney at $415 per hour, can charge 1.7

16  hours to review or work with I and J.  And it leads me to

17  believe that either your staff isn't doing anything prior to

18  that point, and you're doing all the ditch-digging, to borrow

19  from my *Badyrka* opinion, or you're just -- or they don't know

20  what they're doing, or you're doing all the data entry on

21  June 23rd, 2022.

22          So, she raised -- Ms. McHale raised the fact that

23  there's no specificity in your description.  And I guess,

24  because of all this time entries, I don't know what you could

25  have done for 1.7 hours.  That's -- that's -- you know, that's

12

1 an hour and a half-plus of sitting there working on this simple

2 case.  And, you know, and, again, that's just one of the

3 charges that you put in.

4        On July 1st, a couple of days later, you put another

5 1.7 in.  On June 29th, before that, you put 0.6 in.  September

6 21, another 0.6.  And then September 21, another 0.6.  I just

7 don't understand what you, as an attorney at $415 per hour,

8 could possibly be looking at that's lawyer-related and not data

9 collection, data entry type-related.

10       So, maybe you can enlighten me as to what you're

11 actually doing for all of that time.

12       MR. SABATINI:  So, Your Honor, I don't remember

13 exactly what I did for 1.7 hours two years ago.  The --

14       THE COURT:  But can you generalize what you did, or

15 what you could have done?  I'd ask you to guess what you could

16 have been doing for all that time because, to me, again, I've

17 prepared -- you probably know my numbers more than I do.  I

18 don't know how many Chapter 13s I prepared over the last 30

19 years, but I did a lot of them.  I don't know if it's 100 or

20 1000 of them.  But I know I never spent that kind of time on a

21 simple Chapter 13 case.

22       I sit here today and I can't imagine what you could

23 have done for all that time.  And, again, maybe you have the

24 time in your practice to sit and look at these numbers, and

25 look at them again, and look at them again.  But I just know

1  that I was a fairly busy practitioner, and I looked at it as

2  best I did.  I think I did a thorough job for my client.  But I

3  never ever spent that kind of time in a simple Chapter 13 case.

4          So, if you could tell me exactly what you think you

5  could have done for, I don't know, five or six hours.

6          MR. SABATINI:  Your Honor, I can't tell you exactly

7  what I did.  But I can tell you that I think I, J, the means

8  test, and the plan is the lawyer's job in these -- not to go

9  collect the data and to put that raw stuff in, but to see what

10  we can do to try and reduce the plan's payment.  I think that -

11  - and I -- I think I'll request some discovery from the

12  Trustee's Office to get some information about my statistics in

13  terms of what my clients pay unsecured creditors, compared to

14  the averages in the District.  I -- I believe it's quite low.

15  And --

16          THE COURT:  Mr. Sabatini, again --

17          MR. SABATINI:  And if --

18          THE COURT:  -- I know we've been on these fishing

19  expeditions before as far as all discovery and comparing your

20  numbers versus others.  I -- I'm not sure if that has any

21  relevance to my decision-making.

22          MR. SABATINI:  I --

23          THE COURT:  But you certainly are more than --

24          MR. SABATINI:  Your Honor, I disagree.

25          THE COURT:  Well, you could -- you could request

14

1  whatever you think is appropriate.

2          MR. SABATINI:  Here's why I think it's very relevant,

3  because if by studying every number on the means test, and

4  Schedule J, and I, I'm able to identify, even just $100 that I

5  can -- of an expense that can be accounted for in the plan, a

6  payment of $100 less a month, that's $6,000 over the course of

7  a five-year case.

8          THE COURT:  Right.  This --

9          MR. SABATINI:  Right?  So --

10          THE COURT:  This one's a three-year case, though, I

11  think.

12          MR. SABATINI:  Okay.  So, it's $3,600.  If I find

13  just $100, right, and -- and I think that it's very relevant

14  that if the time that I'm putting in here means that my clients

15  pay substantially less, then it makes sense to my clients for

16  that time to be spent.  I don't think -- I don't view a

17  lawyer's job is just looking over the information that the

18  paralegal put in and saying, "All right.  Well, that's what it

19  is.  It is what it is, and I'll just file the plan, using those

20  numbers."  I think my job is to study that, and figure out what

21  can I do to try and make this --

22          THE COURT:  I --

23          MR. SABATINI:  -- more economical for my client.

24          THE COURT:  Mr. Sabatini, I think you're -- I agree

25  with you.  I'm trying to understand if, you know -- I feel as

1  though I could study it and, again I'm -- I'm estimating -- I'm

2  trying to recall my own practice.  And I'm -- just can't

3  understand what you actually did that would take five or six

4  hours to study these few numbers, and that's what I'm trying to

5  get at.  I mean, if you had I and J, and the means test, and

6  the plan in front of you, which, by the way, are all pretty

7  much generated via a software program.  Now, there's some

8  manipulation that attorneys can do, which is what you're

9  talking about, and which is what I did.  But I still don't

10 understand how you could sit in front of these numbers, which

11 really don't move around a lot, and shouldn't move around a

12 lot.  But what you did for -- on June 23rd for 1.7 hours.

13          MR. SABATINI:  Your Honor, I don't know

14 specifically --

15          THE COURT:  Okay.

16          MR. SABATINI:  -- what numbers I was looking at on

17 June 23rd.  Right?  What numbers in Schedule J and the means

18 test.  I can tell you that it's real, that I'm not lying and

19 saying I spent 1.7 hours.  I have my staff -- and you could see

20 two days before, my staff spent 1.2 hours working with I, and

21 J, and the means test, and the plan.  Right?  So, I'm not doing

22 the raw entry.  I am analyzing those numbers, saying, all

23 right, if we make it -- and it's the -- and the software -- the

24 bankruptcy software does not do the job, in my opinion.  And I

25 -- I've shown you my spreadsheet.  Right?  I -- I haven't

16

1    really.  I've shown you a taste of my spreadsheet.  And it's

2    very complicated, and adjustments to one small place can have

3    substantial downstream effects on a lot of the calculations.

4    Right?  So, it takes a lot of time.

5              THE COURT:  But what?  What does?

6              MR. SABATINI:  And --

7              THE COURT:  That's what I'm trying to get at.  I mean

8    -- and I'm really wrestling with understanding what you're

9    actually doing that takes a lot of time.  There's not many

10   numbers here, especially in this case.  This is -- this is a

11   case that -- when I was going through all of the ones that the

12   Trustee objected to, this one, to me, appears to be one of the

13   more simple cases out of those -- I think it was 13, but don't

14   hold me to that number.  Out of the 13, this one appeared to be

15   one of the more simple cases, at least from the docket and the

16   schedules, and the lack of any default in mortgage, default in

17   car loan.  There were two objections to the plan; that got

18   resolved.  But, again, that's all standard stuff.

19             So, I'm just trying to understand why this one, you

20   billed 12 -- 11 -- $12,000 versus the other ones that I

21   approved.  And I just don't see the difference in the case.

22   And, in fact, the difference that I see is that this one was

23   probably one of the more easier-looking cases to the Court.

24   And I'm asking you to tell me why this was one of the more

25   complicated and time-consuming cases.

17

1          MR. SABATINI:  All right.  Well, I'll have -- I'll go

2   back, and I will -- now that I'm -- understand what the Court's

3   concern is with it -- with this particular application, I will

4   go take a look at I and J, and the means test, and see if I

5   could identify what, in particular, I was looking at.  Again, I

6   won't be sure, but I might be able to look at those and --

7   because the -- the -- a case could be relatively simple in

8   terms of -- for example, the case that Aggie and I are briefing

9   right now, she just filed a brief today in Martir, right.  This

10  case doesn't have over -- you know, over years to cure it.

11  It's -- this case is simply an above median income, income-

12  driven plan.  And there's been a lot of time that's been spent

13  on I and J, and the means test in that case because she's above

14  median, and we're trying to make sure that she doesn't have to

15  pay any more than she can.  And she has some unusual

16  circumstances that -- which are going to be the subject of the

17  brief.

18          But the fact that you look at the docket and there's

19  no cramdowns, there's no -- there's no liens to avoid, there's

20  nothing else complicated going on doesn't mean that the time

21  spent on the income and expense analysis is any less.  So, even

22  cases that are otherwise uncomplicated, like DeCantis, their

23  income and expense situation could be very time-intensive.

24          So, all -- you know, now that I'm aware of the

25  Court's concern on that June 23rd entry, I'll -- I'll, you

18

1  know, go back and look at my records and see if I can --

2         THE COURT:  Well, I am plucking that out of the

3  entire bill, and that was part of the Trustee's objection.  You

4  know, there's another 1.7 hours a couple days -- there's 0.6

5  six days later, similar entry.  And then there's 1.7 on July 1,

6  similar entry.  And, again, the case wasn't filed until a month

7  or two later, on September 22nd.  And it --

8         MR. SABATINI:  So, the point --

9         THE COURT:  It just boggles my mind as to what you

10 and your staff could be doing for all those hours.  It's hours

11 and hours.  You know, there's lots of cases out there where

12 other judges have allocated, you know, saying it's more than

13 reasonable for a law office to put together schedules in a

14 Chapter 13 for five or six hours, four hours, seven hours.  And

15 that's what I see primarily coming across my desk.  That's my

16 recollection of the hours that were involved for my office.

17        So, to see a simple Chapter 13 case with 50 hours, it

18 is somewhat mind-boggling to the Court that -- what you

19 actually could have been doing for 50 hours, there's -- there's

20 less than 50 entries on the schedules.  So, you know, again,

21 I'm picking on those entries in particular because that's your

22 fees at $415 an hour.  And if you're doing just paralegal work

23 or overhead work, you and your staff, then perhaps a lot of

24 this shouldn't be billed at all.

25        I do know from our prior hearings that the amount of

19

1  spreadsheets, and checklists, and checking checklists, that

2  time doesn't appear to be in this particular bill like it used

3  to be.  But, I mean, that was mind-numbing how many entries you

4  had regarding a checklist in a simple case.

5         And, again, I reemphasize that your fees and billable

6  rates are probably the highest in the District.  So, I think

7  you have that -- all of those factors combined lead to these,

8  what I find to be, unreasonable bills and as, I think, the

9  Trustee found the bill to be unreasonable.

10        So, I'm still wrestling -- I think, going back to

11  *Badyrka*, I think I'm still wrestling with the same issues, that

12  I don't understand what you could be doing in these simple

13  Chapter 13 cases to generate these kinds of bills.

14        MR. SABATINI:  So, I just want to make sure I didn't

15  miss any of the specific entries.  You mentioned the June 23rd,

16  the June 26th -- I'm sorry, the June 29th entry for 0.6 hours.

17  And then there -- you mentioned the, I think, July 1st -- did

18  you mention July 1st?  June 29th --

19        THE COURT:  Well, I mentioned just the ones that you

20  were involved in, yeah.  I mean, then you take all of the staff

21  time that did the same work, and that -- I piggyback on what

22  that Chapter 13 Trustee did, and on Page 10 of her objection,

23  it's, you know, it's -- she says, "The applicant and staff

24  billed approximately 25.7 hours in the amount of $4,991.50 for

25  preparation of the petition, schedules, means test, and plan."

20

1          And, again, when the presumptive reasonable fee for

2    an entire Chapter 13 case in this District is 4,500, or 5,000,

3    or 5,500, depending on where it lands currently, I know that's

4    subject to an increase, it's just -- it's hard for the Court to

5    determine or to find exactly what work -- and I put work -- or

6    services that you provided to generate $5,000 in fees.

7          So, I know I sound like a broken record, and I feel

8    like this is Groundhog Day with your billing, Mr. Sabatini, but

9    I still have yet to get a definitive explanation or a

10   description of the actual work that is done over 26 hours.

11         MR. SABATINI:  Your Honor, this is what I explained

12   at the beginning of my presentation, that a lot of the -- some

13   of the entries that you're questioning specifically today were

14   fully discounted.  Some were partially discounted in the

15   negotiations with the Trustee.  And, again, the reason for that

16   is because I recognize that I'm not meeting my burden of

17   telling you specifically what was done in the preparation of

18   the schedules.  And that cases that were prepared later with

19   the newer software are going to have -- and I've already filed

20   some of these applications that have much more detail about

21   where the time was spent.

22         And, you know, again, I feel like I sound like a

23   broken record, but if -- if you feel like the time that we're

24   spending doing those particular tasks is not worth it, we'll

25   stop doing those tasks.  So I -- you know, we filed all of

1  these applications at the same time because the Trustee had all

2  of these on hold, pending *Badyrka* and *Roberson*.  And the other

3  benefit here was that it kind of gets rid of all of the older

4  cases that aren't -- that don't have the detail that the

5  Court's looking for.

6          So, I, you know, wrote down a lot of the time

7  because, again, I --

8          THE COURT:  Okay.  Let me --

9          MR. SABATINI:  -- I understand that I can't answer

10  your question.

11          THE COURT:  Let me interrupt you, Mr. Sabatini, only

12  because I'm looking at the bill as submitted with your

13  application, and none of the work preparing the schedules is

14  discounted.  So, what you're telling me is, in the exhibit that

15  you were submitting to the Court today, the bulk of the --

16          MR. SABATINI:  Right, that's been filed.

17          THE COURT:  The bulk of the $3,300 is consumed in the

18  preparation of the schedules?

19          MR. SABATINI:  When you say the 3,300, is that the

20  difference -- you're saying the additional discount --

21          THE COURT:  Yeah, that's the --

22          MR. SABATINI:  -- for the negotiation with the

23  Trustee?

24          THE COURT:  Yes, that's the amount that was in the

25  stipulation, 3,300.

AA 135

22

1          MR. SABATINI:  I would say that's -- eyeballing it, I
2    would say that's accurate.  It's on the docket now, I believe,
3    so if your [sic] Court wanted to see it --

4          THE COURT:  Okay.

5          MR. SABATINI:  If Your Honor wanted to see it, it's
6    there.

7          But the other thing is, I understand that there are -
8    - you know, that you're telling me I'm one of the few people
9    that you have these hearings with.  I've -- I submitted in one
10   of the -- it may be in *Roberson*, an exhibit showing that over
11   the course of my career, I've been awarded 98 -- about 98
12   percent of the fees that I've requested in contested fee
13   applications.  And, you know, this -- I -- I haven't had this
14   type of experience with any other judge.  Right?  So, I
15   understand everyone comes -- you know, has a different
16   perspective, but I don't -- I -- these are the types of bills
17   that I have been submitting in bankruptcy for 20 years.  Right?
18   They're -- I didn't say, "Oh, Judge Conway is on the docket,
19   I'm now going to really -- on the bench, and I'm now going to
20   dramatically change my billing practices and start charging for
21   a bunch of stuff I never charged before."  These -- these were
22   -- so, *Badyrka*, I -- I was taken aback because I -- I felt
23   that, you know -- obviously, it wasn't personal.  It felt
24   personal because, you know, some of the -- some of the language
25   in there was harsh, I thought, and was the type of language

23

1 that a judge uses for a lawyer who just isn't getting the

2 message, who's been told by judge after judge, time after time

3 that they have certain problems, and they're not addressing

4 them.  And I -- you know, I was surprised -- that -- that's

5 just, you know -- and maybe since it was directed at me instead

6 of one of my fellow practitioners, it felt more personal.  I

7 mean, I -- you know, I know it's not personal.  And --

8          THE COURT:  I assure you, Mr. Sabatini, it's not

9 personal at all.  In fact, I approved 12 --

10          MR. SABATINI:  Right.

11          THE COURT:  -- 12 out of 13 of these contested fee

12 applications.

13          MR. SABATINI:  Right.

14          THE COURT:  This one, for the reasons I already

15 stated, stuck out like a sore thumb and required further

16 discussion.  I wish --

17          MR. SABATINI:  Sure.

18          THE COURT:  I wish I was -- trust me, it's personal

19 to me because I feel as though the Court is wasting a

20 tremendous amount of time going through these fee applications

21 and getting stuck talking about the same issues time after

22 time.  When I have a whole body of fee applications in Chapter

23 13 cases, including my own, that I've reviewed over 30 --

24 almost 35 years now, I guess I can say, that seem to go in one

25 particular direction as far as what's reasonable, and what's

24

1  billed, and the work that the attorney and the attorney's staff

2  perform for a Chapter 13 debtor.  And then there's your bills

3  that -- you know, there are 15 pages of -- well, they used to

4  be 15 pages of checking checklists and all of that, which,

5  again, after all those hearings, I'm still not sure what all of

6  those checklists actually accomplished for the debtor and the

7  debtor's estate.  But now these bills don't have the checklists

8  in it, but it does seem to have just the same amount of work

9  with different descriptions.

10        So, I'm trying to sit here, and I'm asking, in one

11  out of 13 of your recent filings, what work did you actually do

12  in this simple Chapter 13 case?  And that's -- I think that's

13  where you and I are having a disconnect, because you're saying

14  you did the work, but I fail to understand what work you did.

15        (Background noise from telephonic participant)

16        MS. McHALE:  I'm sorry, Your Honor.

17        THE COURT:  Okay.  I just fail to understand what

18  actual work was performed that was reasonable and necessary to

19  move this case forward and that benefitted the debtor and/or

20  the estate.

21        So -- and, again, here, you go back to Mr. DeCantis.

22  He's a cook at a local restaurant making $3,000 a month.  He

23  files.  He's in bankruptcy.  He's a -- struggling to pay bills.

24  And there's a bill for $12,000.  The plan itself is a total of

25  $15,000.  It seems as though, you know, if you -- if I looked

25

1  at it -- it's interesting.  I guess, if I wanted to be

2  difficult or make this personal with you, I could say something

3  like the plan in your invoice seems to be nicely situated so

4  that you can get all of your fees.  Now, I know that's not the

5  case here.  I think the Trustee has indicated that it's -- your

6  billing underfunds the plan by four or $5,000, which, I guess,

7  means that, out of your $11,000 bill, you may only get six or

8  $7,000 through the plan.

9       So, I don't think your billing is tied to the plan.

10 I'm not making that -- I'm not making that finding in any way,

11 shape, or form because I know these bills are pretty consistent

12 over the last couple of years from what our hearings have

13 shown.  But I -- I suppose I'm going to -- why is this in

14 Chapter 13 versus Chapter 7?  Can you answer that?

15       MR. SABATINI:  No, but I could have it -- I can -- at

16 the same time that I'm looking into those other time entries, I

17 could prepare something for you on that.

18       THE COURT:  And it may be because they're clearly

19 over the means test, the income level.  You know, I feel bad

20 for Mr. DeCantis, in a way, because he's in a Chapter 13 for

21 three years paying $424, according to his plan and 11,000 of it

22 was your fees, but then you take out whatever you have to take

23 out, and maybe six or seven of it might be paid to you.  But

24 did he need to be into a Chapter 13 plan?  He doesn't seem to

25 have been behind on his mortgage; wasn't behind on his car

26

1  payment, or not much anyway.  I'm not aware of any mortgage

2  foreclosure or car repossession.  There were three judgments, I

3  think, that were entered, according to my review of the docket.

4          So, they're the things that the Court looks at, just

5  to be practical and trying -- I was preparing for today, trying

6  to get in your head in a way, and think of how this case could

7  have been more complicated to warrant eleven or $12,000 in

8  fees, and I just don't see it.  And I assure you, it's not

9  personal.  I would prefer never to look at another one of your

10 fee applications.

11         MR. SABATINI:  Your Honor, in the motion to

12 reconsider in *Roberson*, the last footnote in the opinion, I

13 think that you and I had a miscommunication about what my

14 argument was because -- I'll read the footnote, and then I'll

15 address it.  It says, "Mr. Sabatini has added a new argument

16 that the Court may suffer from," quote, "commitment bias,"

17 close quote, "because it has consistently reduced his fees in

18 other similar cases.  However, the Court routinely, and almost

19 daily, approves fee applications from other attorneys without

20 objections.  The Court deems those applications to be

21 reasonable.  It is only when the charges, such as here, are

22 deemed unreasonable the Court is obligated to review the fees

23 and reduce excessive billing when appropriate.  There is no

24 bias.  Mr. Sabatini simply has not met his burden to convince

25 the Court to change its opinion."

27

1         And I never intentionally said that the commitment
2    bias is that you have a bias against me as evidenced from what
3    has happened in other earlier cases.

4         By commitment bias, what I was saying is that the
5    Third Circuit requires that before the Court issues a ruling on
6    fees, that the attorney be given the opportunity to understand
7    what the Court's concerns are and to address those before the
8    ruling is made.  Right?  Because once the ruling is made, and
9    that's out there and is a public opinion, it's just human
10   nature that to change your mind is a harder ask than it is to
11   explain -- you know, to provide the information to address your
12   concerns before you publicly write an opinion saying why the
13   fees are not warranted.

14        So, by commitment bias, I didn't mean to infer that
15   any of your prior opinions are causing you to reduce your fees
16   here.  Simply that in *Roberson*, you issued an opinion writing
17   down fees for numerous entries and then said, you know, if you
18   have a problem with this and you want to come in and provide
19   the information and -- you can file a motion to reconsider.
20   And, of course, a reconsideration motion has a much higher
21   burden, right, than a -- than what my burden is here.  So --

22        THE COURT:  That's correct.

23        MR. SABATINI:  So, I didn't mean to say that I feel
24   the Court has a bias against me, that's not what I'm saying.  I
25   just wanted to clear the air on that.

28

1          THE COURT:  Okay.  I appreciate that, because that's
2    what it appeared at that -- at that particular argument.  That
3    is certainly what it sounded like.  That was an argument that
4    it seemed like you were making.  And I do not have any type of
5    bias.  I look at every case with fresh eyes.

6          And I -- again, I will repeat myself.  I look at the
7    DeCantis case as a simple Chapter 13 case where I don't
8    understand how you could bill twelve -- eleven or $12,000 in
9    fees, having nothing to do with *Badyrka*, or *Thomas*, or any of
10   those other cases that I wrote about, *Roberson* in particular --
11   and don't forget, *Roberson*, you were asking for one or two
12   distinct entries and said, I should look at those entries in a
13   vacuum.  I disagreed with you, and I think Ms. McHale
14   disagreed, because, again, similarly to this case, you had five
15   or ten hours of meetings already with the client.

16          So, I don't want to impugn your work in any way,
17   shape, or form.  I think you put out a good work product.  But
18   it's not $10,000 in fees better than anyone else in this
19   District, and that's the problem.  I think a simple Chapter 13
20   bankruptcy is a simple Chapter 13 bankruptcy in this District.

21          So, I don't have any bias.  I look at these cases
22   based upon the documents filed in the docket and what's shown.
23   And my purpose today for this discussion was for you to
24   convince me that this case had special circumstances that
25   warranted an eleven or $12,000 fee.  And I'm going to be honest

29

1  with you, I'm not hearing that.

2         MR. SABATINI:  Right.  I don't --

3         THE COURT:  So, then I have to look --

4         MR. SABATINI:  Your Honor --

5         THE COURT:  Then I have to look at what you and the

6  Trustee agreed to as to cuts and see if that's appropriate.  Or

7  should there be more cuts?  And I think that's what the Court

8  is tasked with.  And I would prefer not to be tasked with this

9  role.  But I think *Busy B* [sic], and all the other cases, say I

10 have to do this, and I'm going to do this.

11        So, that's where we're at.  So, it seems like you're

12 going to submit -- you want to submit something in support of,

13 I guess, those few entries, and perhaps why this is a 13 versus

14 a 7, or whatever other argument you want to make.

15        How much time do you need?

16        MR. SABATINI:  Two weeks.

17        THE COURT:  That's fine.  Where does that bring us

18 to?

19        COURTROOM DEPUTY:  That takes us to 8/21

20        THE COURT:  8/21.

21        MR. SABATINI:  Yep.

22        THE COURT:  I'll look at that exhibit that was put up

23 on the docket in connection with whatever supplemental

24 statement, supplemental brief you want to file.  Whatever you

25 want to call it, Mr. Sabatini; it doesn't matter to me.

30

1          Ms. McHale, do you think you need to file anything at
2   this point, or do you want to get out of this --

3          MS. McHALE:  I --

4          THE COURT:  -- out of this matter?

5          MS. McHALE:  I -- I don't believe I need to file --

6          THE COURT:  And I'll laugh -- I'm laughing as I say
7   that.

8          MS. McHALE:  I don't believe I need to file anything,
9   Your Honor.

10         I would point out that when I look at this case, the
11  debtor claimed state exemptions.  I believe it was filed for a
12  Chapter -- filed as a Chapter 13 because of the equity that was
13  in the house, and they didn't want to take the chance that the
14  7 trustee would sell it, so they claimed state exemptions.

15         THE COURT:  Okay.  But --

16         MS. McHALE:  And I think that's why --

17         THE COURT:  But, Ms. McHale, let me -- let's -- we're
18  all seasoned attorneys, and I'm not a seasoned judge yet, but I
19  guess I'm getting there slowly.  But I think I knew about
20  exemptions, and tenants by the entireties property issues, and
21  things of that nature.

22         If that's the only reason, Mr. Sabatini, was there a
23  concern that there was joint debt and the Chapter 7 trustee
24  would sell the property?

25         MR. SABATINI:  (No verbal response).

1          THE COURT:  And I think you're right, Ms. McHale.  My
2    review of the case, I think the property may have been worth
3    one eighty, and there may have been a fifty or $60,000
4    mortgage.  But I'm not sure if that is a definitive answer
5    because I think you probably could accomplish the same things
6    in a Chapter 7.
7          But, Mr. Sabatini, I'm not -- I think Ms. McHale was
8    throwing you some help as far as perhaps what your reasoning
9    was, but I'm not sure if that was it or not.
10          MR. SABATINI:  I -- I don't know.  I have to look
11    back and see if there were other reasons.  That could be a
12    reason that -- it certainly could -- it could certainly could
13    be the reason.
14          THE COURT:  Okay.  Okay, again, I'm not sure how
15    relevant that is.  It doesn't really change the scope of this
16    particular Chapter 13.
17          So, is there anything else we can accomplish today?
18          MR. SABATINI:  Your Honor, I do think that my
19    performance relative to the other attorneys in the District is
20    relevant.  Right?  You're saying that I do a good job, but that
21    I don't do a $10,000 better job than the other lawyers.  And if
22    the statistical information shows that my clients pay
23    substantially less to unsecured creditors than the clients of
24    other attorneys, I think that would go a way towards justifying
25    that what I'm doing in these cases, even though it might be

32

1  more time-consuming, is worthwhile.  So --

2        THE COURT:  Mr. Sabatini, I think you're

3  overcomplicating this.  To me, and I apologize for saying this,

4  this is a fee application that's before the Court.  You have a

5  burden of showing me that your fees were reasonable and

6  necessary.  Going off on tangents as far as other cases, other

7  attorneys, I don't know what kind of statistics can be shown or

8  who can verify your statistics, because I think every case --

9  at least my experience was, there's -- it's apples and oranges.

10 You have higher earning people, lower earning people.  You have

11 mortgage foreclosures.  You have car repossessions.  You have

12 clients that are good clients, clients that are bad clients,

13 clients that are cooperative, clients that pay their bills,

14 their post-petition bills, clients that don't pay their post-

15 petition bills.  So, I'm not sure how any statistic that you're

16 able to put together would be helpful to the Court.

17       THE COURT:  Having said that, I'm not going to tell

18 you, you can't -- you can file whatever you want, but I'm just

19 not sure if all that work is going to be worth it or mean any -

20 - have any meaningful effect on the Court's analysis.

21       MR. SABATINI:  Well, Your Honor, I don't have -- I --

22 what I would like to do is discovery on the Trustee's Office to

23 get statistics about my cases compared to the other attorneys.

24 I don't have -- there's no way for me to have that information.

25 It's not -- I've looked, I can't find any type of publicly

33

1  available information that I could use.  I think that the

2  Trustee's Office does have the ability to generate a report

3  that talks about what my cases look like compared to other

4  cases.

5        And I agree with the Court, that every case is

6  different, but that's -- you know, the point of a statistical

7  analysis over a broad set is that there are trends.  And if,

8  you know, my clients pay five percent of their unsecured debt

9  on average, and the average Chapter 13 debtor pays half of

10  their unsecured debt, I think that would mean a lot in terms of

11  explaining why the additional time that I've put into Schedules

12  I, and J, and the means test are beneficial to the client.

13        THE COURT:  Okay.  Well, I will tell you, I mean, my

14  goal in representing Chapter 13 clients was to pay as very

15  little as possible to the trustee; I don't want to shock Ms.

16  McHale or disclose any of my practice secrets.  But I think,

17  Mr. Sabatini, every practicing, every good Chapter 13 attorney,

18  their goal is to pay as little as possible to Ms. McHale.  So,

19  you know, for whatever reason my client would have paid 50

20  cents on the dollar versus five cents on the dollar, I don't

21  know how a statistic would necessarily show why my clients paid

22  50 percent versus your five percent.

23        You know, again, I'd be curious to see how you'd be

24  able to correlate and tie all that together to make it useful

25  in any way, shape, or form.  But, again, I'm not going to

34

1   prevent you from filing something.  I'm not sure if the Trustee

2   has those documents, or will allow that discovery, or will

3   provide it, or if it's something easy to provide, or something

4   complicated to provide.  But I guess you two can work that out.

5          MR. SABATINI:  All right.  So, in light of that, I

6   would like to try and do that.  So, instead of having 14 days,

7   could I have two months so that I could serve the discovery,

8   get a response, and then hopefully use that information to be

9   able to prepare my filing?

10         THE COURT:  Ms. McHale, any problem with that?

11         MS. McHALE:  No problem, Your Honor, because I

12  believe it is going to take some discussions, because I have a

13  lot of thoughts running through my mind about it, as well.

14         THE COURT:  Okay.

15         COURTROOM DEPUTY:  October 7.

16         THE COURT:  Mr. Sabatini, I will note -- and I have

17  spent an inordinate amount of time on your fee applications

18  over the last three years, and I feel as though the Court has

19  been more than fair with you as far as providing you with time

20  and opportunity to make your arguments.  And it's difficult to

21  hear today, after so many hearings and so much time spent on

22  your fee applications, and I say that plural, that you're not

23  able to tell me today exactly what work, what services were

24  provided on June 22nd, 2022 that encompassed 1.7 hours.

25         Now, I think we talked prior to this actual hearing,

35

1   and I don't know if it was on a -- when this was scheduled to

2   be heard, or if we just talked on a Chapter 13 day about this

3   hearing.  And I -- I think we did talk about this being more of

4   a general discussion.  So, I'm not going to hold you to not

5   knowing the specifics of this particular case on that specific

6   day.  But that is -- part of the Court's problem is that I

7   really can't understand what actual work was done for 1.7 hours

8   in working on I, J, and the means test, and the plan after all

9   the other work was done prior.

10          So, I'm trying to give you my thoughts.  And I try to

11  do that whenever I'm on the bench, to tell the litigants in

12  front of me what I'm thinking and what I'm looking for.  So, I

13  hope that helps you.  And I look forward to getting whatever

14  paperwork you're going to supply on October 7th, 2024.

15          Anything else?

16          MR. SABATINI:  Well, Your Honor, I -- I couldn't

17  possibly prepare, you know, to be able to tell you in detail

18  what I did on -- for each one of these time entries on this

19  bill before today.  Right?  So, I -- well, I would hope that

20  the Court would understand that I -- that there -- that I'm not

21  prepared to tell you today about June 23rd, because since I

22  didn't know about that particular entry being of particular

23  concern --

24          THE COURT:  I think -- I think that's what I said.

25          MR. SABATINI:  -- it wouldn't have made sense --

36

1          THE COURT:  I think that's what I said, Mr. Sabatini.
2   But I --

3          MR. SABATINI:  Well --

4          THE COURT:  I think we all have been practicing a
5   long time, and you would -- you know, typically you would know
6   when you pick up a file from your paralegal, and it's ready to
7   be reviewed by the attorney, you have a standard operating
8   procedure of what you're looking for and what you're looking
9   at.  And I don't know what you would look at for 1.7 hours at
10  that point in this particular case, and that's all I was
11  asking.

12         And I also indicated that I understand you not
13  knowing that specific entry today.  So, I think we're on the
14  same page there, at least for today.

15         MR. SABATINI:  Okay.  All right; thank you.  I have
16  nothing further.  Thank you, Your Honor.

17         THE COURT:  Ms. McHale?

18         MS. McHALE:  Nothing further, Your Honor.  Thank you.

19         THE COURT:  Okay.  Well, thank you.  Appreciate that.

20         We're adjourned.

21         MS. McHALE:  Thank you.

22     (Whereupon, at 11:06 a.m., the hearing was adjourned.)

23

24

25

37

1

2

3

4                    <u>CERTIFICATE OF TRANSCRIBER</u>

5

6       I, KAREN HARTMANN, a certified Electronic Court

7  Transcriber, certify that the foregoing is a correct transcript

8  from the electronic sound recording of the proceedings in the

9  above-entitled matter.

10

11      /s/ *Karen Hartmann*

12  Karen Hartmann, AAERT CET 475   Date:   February 3, 2025

13  TRANSCRIPTS PLUS, INC.

14

15

16

17

18

19

20

21

22

23

24

25

**TRANSCRIPTS PLUS, INC.**
**215-862-1115 ● CourtTranscripts@aol.com**

AA 151

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | CHAPTER 13 |
| DOMINIC JOSEPH DECANTIS; AKA DOMINIC DECANTIS; AKA DOMINIC J DECANTIS, | CASE NO. 5-22-bk-01826-MJC |
| Debtor | |

## DEBTOR'S BRIEF IN SUPPORT OF FEE APPLICATION

This brief and accompanying affidavit are being submitted as allowed by this Court at the August 7, 2024 hearing in this matter.

**1. In Counsel's cases, the median amount paid by debtors towards combined attorney's fees and unsecured debt is much less than the median amount paid in cases filed by other attorneys.**

At the hearing, the Court questioned "what actual work was performed that was reasonable and necessary to move this case forward and that benefited the debtor and/or the estate." N.T. at 10:45.[1] Counsel submits that the above-average amount of time that is spent in Counsel's cases results in the typical debtor paying *less* overall, even after factoring in a higher attorney's fee. That result is a clear benefit to the debtor.

Two reports that the Trustee provided to Counsel help demonstrate the effectiveness of Counsel's efforts. One report is titled "Legal Claims Paid to Debtor Attorney Carlo Sabatini" (hereinafter "the Sabatini Report")(Affidavit of Carlo Sabatini in Support of Fee Application ("Aff.") ¶ 1.) The Trustee describes the cases that populate the Sabatini Report as: "Legal claims of Debtor Attorney, and Plan was completed, and Petition date is after September 30, 2013 and

---

[1] The August 7, 2024 hearing was not transcribed; therefore, Notes of Testimony ("N.T.") will refer to the time of day for the hearing's audio recording.

1

through September 11, 2024 @ 9:49 am."[2] (Aff. ¶ 2.) The second report is titled "Legal Claims

Paid to Debtor Attorney ***Excluding*** Carlo Sabatini" (hereinafter "the Other Attorney Report,"

emphasis added). (Aff. ¶ 4.) The description for the Other Attorney Report is the same as the

Sabatini Report, except that the ending time is a few minutes later. (Aff. ¶ 5.) The two reports

each provide four pieces of data for each case on the report: the case number; the total amount of

*filed* unsecured claims; the total amount *paid* to unsecured claims; and the total amount of

attorney fees paid through the Trustee. (Aff. ¶ 6.) Counsel used this information to calculate for

each of his cases the amount of attorney fees and unsecured claims that the trustee paid in each

case expressed as a percentage of the unsecured claims. (Aff. ¶ 7.) Thus, the applicable formula

is expressed as follows:

$$\frac{\text{(Total Unsecured Paid + Attorney Fees Paid)}}{\text{Total Unsecured}} = \text{Percentage paid}$$

(Aff. ¶ 8.)

Take, for example, case number 20-02046. The Sabatini Report shows the following

information for that case:

| Total Unsecured | Total Unsecured Paid | Attorney Fees Paid |
|---|---|---|
| $42,823.33 | $2,196.06 | $5,425.72 |

(Aff. ¶ 12.)

This information was entered into the above formula as follows:

$$\frac{\$2,196.06 + \$5,425.72}{\$42,823.33} = 17.8\%$$

---

[2] The report also contains this notation: "Note: 'Attorney Fees Paid' column shows only attorney fees paid through the Trustee.  Direct payments from the Debtor are excluded." (Aff. ¶ 3.)

2

(Aff. ¶ 13.)

Thus, in this sample case, the amount that the debtor paid through the plan for the combined amount of attorney's fees and unsecured claims was a figure that was equal to 17.8% of the total amount of filed unsecured claims.[3] After completing that calculation for each case, Counsel then determined the median amount the Trustee paid in his cases during the period for which data was provided. That median amount was 17.8%.[4] (Aff. ¶ 10.)

Counsel then repeated that exercise for the cases on the Other Attorney Report. (Aff. ¶ 14.) The median amount paid by the Trustee in cases filed by attorneys other than Sabatini during the same period was 36.43%. (Aff. ¶ 15.) Thus, the percentage that the Trustee paid in the median Other Attorney case was more than *twice* as much as what was paid in the median Sabatini case.[5]

Counsel submits that these statistics support that the time spent by Counsel is time *well* spent. If, by spending extra hours reviewing the budget, re-running calculations, or testing alternative plan formulations an attorney can save a debtor even just $100 or $200 a month, then

---

[3] The debtor actually paid only 5.13% of the unsecured claims that were filed.

[4] The fact that the median calculation is the same as the sample in the previous paragraph is no coincidence. That case was chosen for use as the sample *because* that case represents the median. (Aff. ¶ 11.)

[5] Note that the *median* is being used rather than the *mean* because the latter statistic is misleading as it is dramatically impacted by outliers. For example, the Other Attorney report includes a $10,000,000 unsecured claim that was filed in case 18-00593, (Aff. ¶ 16.) and which was actually entered in the Trustee's system as a $1,000,000,000 claim. (Aff. ¶ 17.) Because that claim is included in the Other Attorney Report, the "average" amount of unsecured claims filed per case during this period is $233,535. (Aff. ¶ 18.) Once that claim is removed, the case average drops to less than $50,000. (Aff. ¶ 19.) This case highlights the extreme effect that outliers can have on averages. The "median" statistic does not suffer from the same weakness, so that statistic is used here instead.

3

AA 154

that difference can amount to a savings of $3,600 - $12,000 over the course of a three-to-five-year plan.

**2. The Presumptively Reasonable Fee is not an appropriate benchmark.**

Lawyers who charge the Presumptively Reasonable Fee have little *financial* motivation to spend numerous hours trying to save their clients a few hundred dollars a month. Of course, many scrupulous attorneys are well-motivated by their *professional* and *ethical* obligations to do the best job that they reasonably can for their client. However, there are limits on what a busy attorney can do. As this Court noted at the hearing, in its own experience with a busy practice, spending too much time was impossible: "Again, maybe you have the time in your practice to sit and look at these numbers and look at them again and look at them again. But I just know that I was a fairly busy practitioner, and I looked at it as best I did. I think I did a thorough job for my client, but I never ever spent that kind of time in a simple chapter 13 case."
N.T at 10:27.

Counsel here does limit the volume of his practice so that he has time to look at the numbers and, if there might be a benefit to be gained for the client, to look at them again and to look at them yet again. That approach generally yields dividends for the client – not only with a smaller overall payment to unsecured creditors and attorney's fees (as demonstrated above), but also with a much greater likelihood of success.

For Counsel's Chapter 13 cases that closed during the 5-year period ending on December 31, 2020, only 5% ended with a dismissal instead of a discharge.[6] (Aff. ¶ 20.) The district-wide

---

[6] This statistic was calculated using a report that Counsel believes was obtained from the Clerk in 2021. (Aff. ¶ 21.) Rather than burdening the Clerk with a separate request for an updated report, Counsel is refraining from updating the statistic. However, from Counsel's review of his own records, it appears that none of the cases that closed in 2021, 2022 or 2023 were dismissed rather

4

statistic for the same period is very different: 45% of the cases closed with a dismissal instead of a discharge. (Aff. ¶ 23.) Of course, it is likely that a substantial reason that Counsel's cases succeed much more often than cases filed by other attorneys is because Counsel's clients are paying so much less to their lawyer and unsecured creditors, which in turn, translates into a smaller plan payment which is easier to make.

However, this approach is not financially feasible if Counsel is hamstrung by the Presumptively Reasonable Fee. For example, Judge Van Eck spent the first five years of his practice using the no-look fee and then spent the remaining 13 years using the lodestar. He has "very clear opinions about which approach is better for both the client and the attorney . . . . clients get a much better representation from a lodestar approach." (*In re Merriweather* 21-bk-00110, Tr. of October 27, 2021 Hearing, Ex. A, 29:24-30:4.) Furthermore, Judge Van Eck believes that the Presumptively Reasonable Fee is ***irrelevant*** when evaluating a lodestar application, even where the total application might seem high. In *Merriweather*, the U.S. Trustee attempted to use the Presumptively Reasonable Fee as a yardstick, and was quickly shot down:

> MR. SCHALK:
> ***
> Beyond that, Your Honor, we state no position on the reasonableness of the fees that have been sought as to the hourly rate. But, again, Your Honor, we are -- there is a general concern when it comes to the fact that we do have a presumptively reasonable rate to get a case to confirmation of [$4,500], and we're seeing applications to get a fairly standard case to confirmation that's double that. And –
>
> THE COURT: Well, you see, I think that's a mistake. I don't think that one has anything to do with the other, and I've heard that before, and I just want to say that it doesn't matter to me.

---

than discharged. (Aff. ¶ 22.) Thus, if this figure were updated to an 8-year period ending on December 31, 2023, it should be less than 5%.

Ex. A at 26:17-27:3.

And after some additional colloquy, the court reiterated emphatically that there is no connection between the Presumptively Reasonable Fee and the lodestar: **"But if all the charges add up to an amount that's twice what the normal no-look fee is, I don't care, that doesn't bother me a bit."** (Ex. A at 28:25-29:2 (emphasis added).) Judge Van Eck's analysis is correct. *Busy Beaver* instructs that the relevant market by which a fee should be judged is *non*-bankruptcy services. *Busy Beaver*, 19 F.3d at 849. Thus, the existence of the Presumptively Reasonable Fee – which applies only in bankruptcy cases – is not a reason to reduce a fee.

However, here, the Court seems to be creating a requirement that an applicant seeking to be compensated on a lodestar basis must demonstrate why a case is complex enough to justify a substantial departure from the Presumptively Reasonable Fee. *See e.g.,* N.T. at 10:18 ("And maybe I guess what I'm asking you is can you identify what in particular makes this case so unique, or complicated, or complex to be almost double or more than double, perhaps almost triple what is the $4,500 PRF in this district." *See also,* N.T. at 10:38-10:39 ("Again, when the presumptive reasonable fee for an entire chapter 13 case in this district is 4,500 or 5,000 or 5,500 . . . it's just it's hard for the Court to determine or to find exactly what work . . . or services that you provided to generate $5,000 in fees.")

Extra time is being spent on these cases not because they are unusually complicated, but instead because the expectation is that the additional attention to detail will have a net benefit to the client. And, as demonstrated above, that expectation is borne out – the Trustee disburses less than half as much to Counsel and unsecured creditors as might be expected from a case filed by a different law firm. And the likelihood of the case failing is a mere one-ninth of the district average.

6

One example of the type of additional detail that Counsel spends is on Schedule J. At the hearing, the Court described the quantity of numbers that are on the typical set of bankruptcy schedules, and the amount of time that might be expected to work with those numbers:

> I mean, if you took Schedule I and in particular Schedule J out of it as far as the volume of numbers actually being entered, there's about 15 numbers, 20 numbers, 30 numbers don't hold me, but there's not thousands of numbers, not thousands of entries that could put into schedules. So, Mr. Sabatini, in all of these cases that we've been going around and around on, I'm at a loss as to how you spend 26 hours preparing schedules.

N.T at 10:17-10:18.

Part 2 of Schedule J is where a debtor is required to estimate ongoing monthly expenses. (Aff. ¶ 24.) That part has 35 separate lines for different categories of expenses. (Aff. ¶ 25.) By comparison, the budget that Mr. DeCantis completed for Counsel contained 161 lines for different categories of expenses. (Aff. ¶ 26.) That information was then used to prepare the 35 lines that are required for Schedule J. (Aff. ¶ 26.) In Counsel's experience, the more granular the information that is requested from a debtor, the more comprehensive it is likely to be. (Aff. ¶ 27.) For example, Line 12 of Schedule J asks for "Transportation. Include gas, maintenance, bus or train fare." (Dkt. Entry 1, p. 31.) A debtor tasked with that generic instruction could easily fail to include other transportation-related expenses that might simply be forgotten, such as for vehicle registration, vehicle inspections, and driver's license renewals. For Mr. DeCantis, those three categories summed to $131.63/year, (Aff. ¶ 28), which means that he will pay $394.89 less to the Trustee over the life of this case as compared to if those expenses had been missed.

Of course, some of the 35 lines on Schedule J specifically combine expenses that are listed separately on the 161-line budget that was completed by DeCantis. For example, Line 6c of Schedule J asks for "Telephone, cell phone, Internet, satellite, and cable services." Each of

AA 158

those five categories is simply a separate entry on the 161-line budget. So, one might expect both budgets to fully capture the same information. However, by breaking the categories apart separately, it is more practical for the paralegal who is preparing the schedules to verify the accuracy of each claimed expense. Here, that verification process caused the amount budgeted for cable to be increased from Debtor's original estimate of $88/month to a documented amount of $93.25/month, and Debtor's internet expense to be increased from an estimated amount of $87/month to a documented amount of $110.79/month. (Aff. ¶ 29.) That combined monthly additional expense of $29.04 will translate to Mr. DeCantis saving $1,045.44 over the three-year plan.

Counsel follows the same detail-oriented procedures in every case, because he believes that the net result benefits the client. (Aff. ¶ 30.) These procedures are followed *even if the plan does not have enough funds to pay for the time that such additional detail requires*.[7] (Aff. ¶ 31.) And in cases such as this one where the plan funding is inadequate, the fee application almost always waives excess fees. (Aff. ¶ 32.) See Dkt. Entry 48, p. 2 ("To the extent that the Trustee

---

[7] At the hearing, the Court raised, and then dismissed, the specter of a possibility that Counsel's work is related to the amount of plan funding available:

> It seems as though, you know, if I looked at it. It's interesting, I guess if I wanted to be difficult or make this personal with you, I could say something like the plan and your invoice seems to be nicely situated so that you can get all of your fees. Now I know that's not the case here. I think the Trustee has indicated that your billing under funds the plan by four or five thousand dollars, which I guess means that out of your $11,000 bill, you may only get six or seven thousand dollars through the plan. So, I don't think your billing is tied to the plan. I'm not making that . . . finding in any way shape or form because I know these bills are pretty consistent over the last couple of years from what our hearings have shown.

N.T at 10:46 – 10:47.

does not have sufficient funds to pay the amount requested, then Applicant waives the remaining

fees. Applicant estimates that the total amount actually received from the Trustee's office will be

less than $7,068.77.")[8]


3.  **The settlement with the Trustee**

In *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 845 (3d Cir. 1994), the Circuit

held that

> Congress' grant of authority to the UST to challenge fee petitions
> merely bestows the UST with standing and/or encourages the UST
> to do so; it in no way signifies by negative implication that the
> bankruptcy court is without the power and duty to review fee
> applications independently ***when the UST does not object***. Unless
> the parties in interest or the bankruptcy courts take on this task,
> many if not most fee applications would receive no effective review.

*Id.* at 842, emphasis added.

Of course, this Court has the power to review a fee application *sua sponte* whether or not

there is an objection. But, where the Chapter 13 Trustee has taken an active role in carefully

reviewing and objecting to the application, the need for this Court to conduct a detailed

secondary review is greatly diminished. "Because its time is precious, the reviewing court need

only correct reasonably discernible abuses, not pin down to the nearest dollar the precise fee to

which the professional is ideally entitled." *Id.* at 845. If the Court chooses to rely on the

Trustee's investigation, the reasonableness of that decision would be readily apparent here,

where the Court is already of the opinion that "the Trustee did an excellent job in her objections

---

[8] At the hearing, the Court also questioned why this case was filed under Chapter 13 rather than
Chapter 7. One reason was to cure the $8,761.81 secured claim on Debtors' residence as
described in § 2.C of the Plan. (See Dkt. Entry 5.)

AA 160

and really identified pretty much what the Court looks at as well as to what just does not appear to be reasonable." N.T. at 10:23.

Here, the Trustee settled his objection to the application.[9] (Aff. ¶ 33.) As part of that settlement, the parties agreed that Counsel would charge for only six hours of paralegal time and two hours of attorney time for preparing the petition, schedules and plan. (Ex. B, ¶ 4; Aff. ¶ 34.) The additional discount represented on the settlement document to effectuate that compromise amounts to $2,753.00. (Dkt. Entry 57, pp. 1 – 3, grey cells in last column; Aff. ¶ 35.)[10]

Six hours of paralegal time and two hours of attorney time to prepare a petition and schedules is certainly not a "reasonably discernable abuse." Other judges in this district have approved far more. See, e.g., *In re Barker*, 5:20-bk-02896, Dkt. Entries 34-2 and 37, (Judge Henry Van Eck approving without reduction $18,437 in fees for pre-confirmation services, including 10.1 hours of paralegal time and 6.4 hours of attorney time preparing the budget, schedules, or the plan, and an additional 8.8 hours of time working on checklists, Aff. ¶ 40); *In re DeSanto*, 18-bk-01167, Dkt. Entries 30-2 and 31 (Judge Robert Opel, II approving without reduction $11,007.50 in fees for services through the day after confirmation, including 24.5 hours of paralegal time and 4.5 hours of attorney time preparing schedules or the plan, processing checklists, and preparing for and meeting with the client and filing the case, Aff.

---

[9] Per the Court's instruction at the hearing, Counsel has filed on the docket the adjusted bill that reflects the settlement. (See Dkt. Entry 57, Aff. ¶ 36) Also, as explained at that hearing, that document contains color coding which explains the resolutions of the various line items that the Trustee had objected to. (Aff. ¶ 37.) That color coding is described in the email from Sabatini to McHale which was sent on July 3, 2024, (Aff. ¶ 38), a copy of which is attached as Exhibit B.

[10] In preparing this brief, Counsel discovered that the paralegal time which was retained rather than discounted amounted to 6.5 hours rather than just 6 hours. (Aff. ¶ 39.) Counsel apologizes for this error. $75.00 should be removed from the bill, representing the additional .5 hours of paralegal time.

¶ 41); and *In re Sumski*,[11] 17-bk-02507, Dkt. Entries 39-2 and 40 (Judge John Thomas approving without reduction $20,517.59 in fees for services through the day after confirmation, including 44.2 hours of paralegal time and 2.6 hours of attorney time for work related to preparing schedules or the plan, meeting with the clients, and filing the case, Aff. ¶ 42).

At the hearing, the Court specifically questioned three entries of attorney time: 1.7 hours on June 23, 2022, .6 hours on June 29, 2022, and 1.7 hours on July 1, 2022.[12] Each of those entries was related to the preparation of the schedules and plan. Counsel, as promised, has reviewed his files but has been unable to determine precisely what aspect of schedule preparation or plan review was being conducted on those dates. (Aff. ¶¶ 43 - 44.) When these time entries were created, Counsel was unaware that the Court expected greater detail. (Aff. ¶ 45.) However, Counsel submits that the entries do provide more than sufficient detail to comply with the standards set by the Third Circuit.

In *Rode v. Dellarciprete*, 892 F.2d 1177 (3d Cir. 1990) the district court had found that a fee petition failed to include "adequate and specific descriptions of services and the time devoted to those services." *Id.* at 1190. The Circuit reversed, finding that the information provided was "very specific. . . ." *Id.* at 1191. The Circuit listed the following sample entries to support its holding that the entries were very specific, and that the information was enough for the district court to determine if the fees claimed were reasonable:

---

[11] This case is another example of the Counsel's practice of doing the work even when there is no prospect of being paid. (Aff. ¶ 39.) The *Sumski* fee application was filed less than six months into a five-year case where the total base plan was only $9,000.00. *Id.* Over $10,000 of the Court-ordered fees were written off after discharge. *Id.* Additionally, Counsel never filed an application to be paid for all of the additional work done during the last 54 months of the case. *Id.*

[12] Counsel is not suggesting that the Court has no other objection to the bill. Rather, the Court made it clear that it is questioning why the overall bill is so much greater than the Presumptively Reasonable Fee.

11

1. Time of Laurence W. Dague, Esquire: Settlement: 12.9 hours; Application for Attorney's Fees: 4.1 hours; and miscellaneous research, telephone conversations, and conferences concerning facts, evidence, and witnesses: 1.3 hours. Total hours: 18.3.

2. Time of Dianne E. Dusman, Esquire: Settlement: 1.8 hours; Trial Brief: 5.2 hours; and miscellaneous research, telephone conversations, and conferences concerning facts, evidence, and witnesses: .2 hours. Total hours: 7.2.

3. Time of Carol L. Karl, law clerk/paralegal: Settlement: 1.9 hours; and miscellaneous research, telephone conversations, and conferences concerning facts, evidence, and witnesses: 1.8 hours. Total hours: 3.7.

4. Time of Michael Fenten, law clerk: miscellaneous research, telephone conversations, and conferences concerning facts, evidence, and witnesses: .2 hours. Total hours: .2.

Id. at n. 13.

Counsel submits that the three time entries identified by the Court here provide substantially more specificity than what the Circuit found acceptable in *Rode*. In the first entry, Counsel worked with I, J, the Means Test and the Plan. In the second entry, Counsel was working to answer questions that had been specifically flagged for him by the paralegal who was doing the bulk of the work on the case. And in the final entry, Counsel drafted instructions for the client, drafted the attachment for the plan, and completed a review of the petition and the schedules. This level of detail is substantially more than the Circuit requires.

Counsel submits that it would be appropriate for the Court to credit the Trustee's decision to settle the objection, and for the Court to award the amounts agreed to by the parties.

Respectfully submitted,

s/ Carlo Sabatini

Carlo Sabatini, Attorney for Debtor
Sabatini Law Firm, LLC
216 N. Blakely St.
Dunmore, PA 18512

12

AA 163

Phone (570) 341-9000
Facsimile (570) 504-2769
Email ecf@bankruptcypa.com
Bar Number PA 83831

AA 164

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF PENNSYLVANIA
## HARRISBURG DIVISION

```
IN RE:                          )    Case No. 1:21-bk-00110-HWV
                                )    Chapter 13
                                )
PATSY MERRIWEATHER,             )    Bankruptcy Courtroom No. 1
f/k/a Patsy Corbett,            )    Ronald Reagan Federal Building
                                )    228 Walnut Street
                                )    Harrisburg, PA 17101
         Debtor.                )
                                )    October 27, 2021
                                )    9:52 a.m.
```

TRANSCRIPT OF FIRST APPLICATION FOR ALLOWANCE OF COMPENSATION &
 EXPENSES. NOTICE SERVED ON 9/16/2021. FILED BY GARY J. IMBLUM
OF IMBLUM LAW OFFICES, P.C. ON BEHALF OF PATSY MERRIWEATHER.
    OBJECTIONS DUE BY 10/7/2021 (37);  OBJECTION TO FIRST
APPLICATION OF ATTORNEY FOR CHAPTER 13 DEBTOR FOR COMPENSATION
 AND REIMBURSEMENT OF EXPENSES FILED BY TRUSTEE (RE: RELATED
                    DOCUMENT(S) (43)
           BEFORE HONORABLE HENRY W. VAN ECK
        UNITED STATES BANKRUPTCY COURT CHIEF JUDGE

APPEARANCES:

For the Debtor:          Imblum Law Offices, P.C.
                         By:  GARY J. IMBLUM, ESQ.
                         4615 Derry Street
                         Harrisburg, PA 17111

For Chapter 13 Trustee:  Standing Chapter 13 Trustee Office
                         By:  JAMES K. JONES, ESQ.
                         8125 Adams Drive, Suite A
                         Hummelstown, PA 17036

For U.S. Trustee:        U.S. Trustee's Office
                         By:  JOSEPH SCHALK, ESQ.
                         228 Walnut Street, Suite 1190
                         Harrisburg, Pennsylvania 17101

AUDIO OPERATOR:          KAREN DAVIS
```

**TRANSCRIPTION SERVICE:**    **TRANSCRIPTS PLUS, INC.**
**435 Riverview Circle**
**New Hope, Pennsylvania 18938**
**Telephone: 215-862-1115**
**e-mail CourtTranscripts@aol.com**

```
Proceedings recorded by electronic sound recording, transcript
           produced by transcription service.
```

AA 165

2

1          THE COURT:  I did pass over Merriweather, I know that

2   that's a status conference at this point, but let's do the

3   motions to dismiss, if you don't mind first, there's very few

4   of them, it will be quick.

5       (Recess from Merriweather matter 9:52 a.m.)

6       (Recommence Merriweather matter 9:55 a.m.)

7          THE COURT:  I want to go back to the Merriweather

8   matter now.

9          Mr. Jones, there aren't any -- is there anything else

10  besides Merriweather?

11         MR. JONES:  Merriweather and Mintscheff, I believe.

12         THE COURT:  Well, that's not until 10, we've got a

13  minute on that.

14         MR. JONES:  Okay, I'm sorry.

15         THE COURT:  So -- yeah, Mintscheff we'll be dealing

16  with next.

17         Let's go with Patsy Merriweather, Number 14 on my

18  list.  Begin with entry of appearances; is there anyone here

19  for the Debtor?

20         MR. IMBLUM:  Gary Imblum for the Debtor, Your Honor.

21         THE COURT:  Good.  Can you make sure that microphone

22  is close enough to you?

23         MR. IMBLUM:  Excuse me.

24         THE COURT:  Not too close, but close enough to hear.

25         MR. IMBLUM:  Is that good?

TRANSCRIPTS PLUS, INC.
215-862-1115• CourtTranscripts@aol.com

AA 166

Case 5:22-bk-01826-MJC    Doc 60-1    Filed 10/07/24    Entered 10/07/24 22:31:51    Desc
Exhibit A - Merriweather Transcript    Page 2 of 32

3

1           THE COURT:  Yeah, that sounds good.  She'll let me
2     know if it's not.
3           And, of course, Mr. Jones, you're on behalf of the
4     Chapter 13 Office.
5           So there was an application --
6           MR. SCHALK:  Your Honor?
7           THE COURT:  Yeah?
8           MR. SCHALK:  Joseph Schalk on behalf of the Office of
9     the United States Trustee.
10           THE COURT:  Oh, I wasn't aware that you were
11     appearing in the matter, Mr. Schalk, I thought you were just
12     here to keep us company.
13           MR. SCHALK:  Nope.
14           THE COURT:  Okay; good to know you're here.
15           MR. JONES:  Give his paralegal back there some work,
16     uhm-hum, yeah.
17           THE COURT:  Yeah.  Yeah, an assistant.
18           First application for allowance of compensation with
19     the Trustee objection.  So it's technically your application,
20     Mr. Imblum, what's going on?
21           MR. IMBLUM:  Well, I discussed this with Mr. Jones,
22     and I guess the procedure under Busy Beaver, if I'm not
23     mistaken, is that the Court would issue an opinion on the
24     objections, and then I could ask for a hearing if I disagreed,
25     is that the correct procedure?

TRANSCRIPTS PLUS, INC.
215-862-1115● CourtTranscripts@aol.com

AA 167

4

1          THE COURT:  The way I read <u>Busy Beaver</u> is I have an

2   independent duty to review all applications, lodestar

3   applications, and I apply the standard in <u>In Re Busy Beaver</u> if

4   -- and I've called your office -- my chambers has called your

5   office with questions about time entries.  I can remember one

6   occasion where I think it was a two-hour entry for what

7   appeared to be a very short phone call, and it was a typo.

8          MR. IMBLUM:  Right, and it was point two, yes.

9          THE COURT:  Right.  So that is sort of a microcosm of

10  what I see the process is.

11         If I had more serious concerns, I would list it for

12  hearing, and you would come in.  And under <u>In Re Busy Beaver</u>, I

13  cannot really deduct anything until I've explained to you what

14  my concerns are, and then given you an opportunity, after a

15  reasonable period of time, 30 days or so, to come to the Court

16  to defend your time entries, and that's when the hearing would

17  take place.

18         MR. IMBLUM:  Okay.

19         THE COURT:  Now that's if I'm exercising my

20  independent duty under <u>In Re Busy Beaver</u>.

21         Here, we have an objecting party who has also a

22  commensurate obligation as the Chapter 13 Trustee's office to

23  review these things, and where appropriate, object.

24         Now under that circumstance, I think the procedure

25  would be slightly different in that I am to hear the objection;

TRANSCRIPTS PLUS, INC.
215-862-1115• CourtTranscripts@aol.com

Case 5:22-bk-01826-MJC    Doc 60-1    Filed 10/07/24    Entered 10/07/24 22:31:51    Desc
Exhibit A - Merriweather Transcript    Page 4 of 32

AA 168

5

1  decide if I agree or disagree with the objection.  If I

2  disagree, I think I overrule the objection and grant the fee

3  application.

4        If I agree with all or part of the objection, I would

5  then have to provide you, Mr. Imblum, with the basis of that,

6  and then provide you with an opportunity, 30 days or so, to

7  come back to court and explain why I shouldn't be concerned

8  about those entries.

9        MR. IMBLUM:  Okay.

10        THE COURT:  So that's how I see it.  Mr. Jones, do

11  you agree?

12        MR. JONES:  That's how we see it, too, Your Honor.  I

13  mean, basically this whole matter arose from Judge Conway

14  objecting in the Badyrka case.  I'm not sure if you're familiar

15  with that, it was an initial fee app, again, over $10,000 right

16  after confirmation, and he just believed that that was just a

17  bit outrageous for a District where normally cases are settled

18  -- are completed with about a 45 hundred dollars attorney fee,

19  but he raised that issue.

20        The Trustee wanted to raise the same issue in our

21  District, again, to sort of get some direction as to where the

22  Court sits as far as some of these fee apps that seem to be out

23  of the normal, let's say, as far as the $4,500 presumptively

24  reasonable fee that we have in the District.

25        So there were some objections that were made.  And,

TRANSCRIPTS PLUS, INC.
215-862-1115● CourtTranscripts@aol.com

AA 169

Case 5:22-bk-01826-MJC    Doc 60-1    Filed 10/07/24    Entered 10/07/24 22:31:51    Desc
Exhibit A - Merriweather Transcript    Page 5 of 32

6

1  again, we're kind of looking at them both in a microcosm, as

2  far as the individual entry, but we're also looking at the

3  macro of the whole matter in that, you know, individually,

4  they may not seem out of the ordinary.  But as has been

5  indicated, you can die by a thousand paper cuts.  In other

6  words, they're small, but when they accumulate, it becomes a

7  situation where the fees are just out of line for a fairly

8  ordinary case.

9            So as I indicated, the Trustee believed that there

10  were certain billing methods that were excessive, wanted to

11  raise them at a time when Judge Conway was, likewise,

12  reviewing, and to determine whether the bench has changed, or

13  just guidance as far as where we stood.

14            The reason we asked for a status conference was I

15  don't believe it really would help any of us if I just sat here

16  and read the objections to the Court.  Obviously under the --

17            THE COURT:  Oh, I read them.

18            MR. JONES:  You read them; yeah, that's what I mean.

19            THE COURT:  Yeah, I read them.

20            MR. JONES:  I mean, you read them.  For me to read

21  them into the record, or whatever, and so we were unsure how

22  exactly you wanted to proceed.

23            There are actually five -- there's the set of five

24  objections, Merriweather was the first one that was set for

25  today; there are two more set for Wednesday; there is one that

TRANSCRIPTS PLUS, INC.
215-862-1115● CourtTranscripts@aol.com

AA 170

Case 5:22-bk-01826-MJC    Doc 60-1    Filed 10/07/24    Entered 10/07/24 22:31:51    Desc
Exhibit A - Merriweather Transcript    Page 6 of 32

7

1  I believe still has not been scheduled; and there's another

2  case that's dismissed, but that may come back.  So there's five

3  altogether, and we wanted to get an idea -- in light of

4  Merriweather, in light of the others, how the Court wanted to

5  proceed.

6           THE COURT:  Sure.

7           MR. IMBLUM:  Actually just for clarification, that

8  case isn't dismissed.  It was -- you filed a certification of

9  default; I filed an objection.

10          MR. JONES:  Oh, objection, okay.

11          MR. IMBLUM:  So the case was not actually dismissed.

12          MR. JONES:  Okay; I'm sorry.

13          MR. IMBLUM:  It was -- that's -- well --

14          MR. JONES:  I thought it was -- well, a

15  reconsideration; I'm sorry.

16          MR. IMBLUM:  Yes.

17          MR. JONES:  Okay, yeah.

18          THE COURT:  So it's an important issue, and I can --

19  we also have a relatively new standing Chapter 13 Trustee who

20  is trying to figure out with a new Judge -- and a still fairly

21  new judge in four and a half years so, you know, I've been

22  around for a little while, but not as long as some of my

23  predecessors.

24          So I understand why the objections were filed; I read

25  the objections; I understand them.  I think that your office

TRANSCRIPTS PLUS, INC.
215-862-1115• CourtTranscripts@aol.com

AA 171

Case 5:22-bk-01826-MJC    Doc 60-1    Filed 10/07/24    Entered 10/07/24 22:31:51    Desc
Exhibit A - Merriweather Transcript    Page 7 of 32

8

1  has followed the spirit of <u>In Re Busy Beaver</u>.  You can

2  obviously quibble over the objections and their impact on the

3  case examined, as you said, in isolation.  Some of those

4  charges are point six, right, which is the smallest increment,

5  Mr. Imblum, that you can bill at, correct?

6          MR. IMBLUM:  You mean point one for six minutes of

7  time?

8          THE COURT:  I'm sorry; point one, yes, six minutes.

9          MR. IMBLUM:  I'm sorry, just to clarify, Your Honor,

10  yes.

11          THE COURT:  No, you're correct, it's a six-minute

12  increment, that's what I meant to say.

13          MR. IMBLUM:  Okay.

14          THE COURT:  Which is a point one.

15          MR. IMBLUM:  Yes.

16          THE COURT:  There's no smaller -- under your fee

17  agreement, there's no smaller increment of time, right?

18          MR. IMBLUM:  No.

19          THE COURT:  So in isolation, it may look a bit like

20  nitpicking, but actually it follows the spirit of <u>In Re Busy</u>

21  <u>Beaver</u>.  One of the things in there is not just the total

22  amount, which, frankly, I look at, but to me, it's not a

23  starting point, nor is it an ending point.

24          The whole point of lodestar is that it is done on a

25  contemporaneous basis with the activity itself, and that you're

TRANSCRIPTS PLUS, INC.
215-862-1115• CourtTranscripts@aol.com

AA 172

Case 5:22-bk-01826-MJC    Doc 60-1    Filed 10/07/24    Entered 10/07/24 22:31:51    Desc
Exhibit A - Merriweather Transcript    Page 8 of 32

9

1  tracking your time pursuant to a fee agreement, and that you're

2  entitled to the fair market value of your services.

3         So the number one thing I look at -- and I'm not

4  familiar with the case, Mr. Jones, that you referenced.  I

5  don't know, was there an objection in that case?

6         MR. JONES:  I'm sorry, which case?

7         THE COURT:  You referenced the case that -- that

8  Judge Conway was --

9         MR. SCHALK:  In Re Badyrka.

10         MR. JONES:  Oh, Badyrka, I'm sorry.  No, that was a

11  sua sponte objection raised by Judge Conway.

12         THE COURT:  Okay.  I am familiar with that case; I

13  had that case.  I actually had that case for a while before it

14  went up to him, I do know of the case that you mentioned.

15         So under In Re Busy Beaver, I take that pretty

16  seriously.  My staff looks at everything that is filed.

17         And, Mr. Imblum, you are the most prolific lodestar

18  filer in our District, so we look at a lot of your time.

19         MR. IMBLUM:  And I understand that's -- I think

20  that's why I'm here today.

21         THE COURT:  I think probably, too.

22         MR. IMBLUM:  Yes.

23         THE COURT:  I would note there are others who are

24  filing lodestar who might have been initially an easier initial

25  objection to make because I have routinely approved Mr.

TRANSCRIPTS PLUS, INC.
215-862-1115• CourtTranscripts@aol.com

AA 173

Case 5:22-bk-01826-MJC    Doc 60-1    Filed 10/07/24    Entered 10/07/24 22:31:51    Desc
Exhibit A - Merriweather Transcript    Page 9 of 32

1  Imblum's fee applications after reviewing them, and I think

2  that sort of speaks to my position about his billing practices.

3  And I'll go so far as to state that when it comes to lodestar,

4  he's an exemplary example of how to track your time.  He does

5  so, and oftentimes I find that he asks his paralegal and

6  paraprofessionals to do as much as possible to avoid charging

7  at the hourly rate.

8          I've looked at his time a lot.  And that's not to say

9  it's perfect, okay, because reasonable minds can differ.  And,

10  you know, I've had to look at his time sheets more than once,

11  and wonder if it's something I should take issue with or not,

12  and I think you could do that with really anybody's time.  If

13  you go back ten years and look at my lodestars, I might quibble

14  with some of my own now -- some of the ones I said.  In other

15  words, reasonable minds can differ.  This is a discretionary

16  area, there is no bright line.

17          In Re Busy Beaver gives us some very good guidance,

18  so let me tell you what I think is the most important about

19  that guidance.  It's not the dollar amount that's charged

20  ultimately, I really think that has the smallest of impact.

21          I begin with was the time carefully tracked?  Does it

22  appear to have been tracked contemporaneous?  For example,

23  despite people's best efforts, and maybe misconceptions, having

24  tracked time contemporaneous myself, I can tell when someone is

25  tracking it contemporaneous, and when they have reconstructed

1   it based upon review of the docket, I can tell.  Really,

2   anybody who's tracked time can tell.  So maybe I'm not perfect

3   at that, but sometimes it's pretty obvious.

4       It seems pretty obvious to me that Mr. Imblum tracks

5   it contemporaneous.  I have seen no evidence that he doesn't.

6   So to me, that's a really good start because you don't want to

7   be in a position where you've reconstructed it, and you're

8   standing in front of a judge, and the judge says, "Did you

9   track this contemporaneous?"  "Well, no."  "So you had to

10  reconstruct it; how'd you do that?"  "Well, I went back and I

11  did the best I could.  I went through my correspondence file, I

12  looked at the docket, I remembered what I could, but I probably

13  didn't capture it all.  And where I wasn't sure about anything,

14  then I didn't include it."  "Oh, so you're admitting that these

15  aren't accurate?"

16      That's not a good place to be in, right?  But Mr.

17  Imblum doesn't have to worry about that.  So the

18  contemporaneous thing, I think, is very important.

19      The second aspect is that I look at, the most

20  important thing, is what is the hourly rate, and what are the

21  services being provided.  Personally -- and, again, under In Re

22  Busy Beaver, I am allowed to use my own experience, so you will

23  hear me make reference to my own experience here.  As both of

24  you well know, I did a lot of consumer work, and I did a lot of

25  business work.  I did a lot of debtor work, and I did a lot of

AA 175

12

1 creditor work.  I had different rates for all of them, and
2 that's because that's what the market would bear.  I charged a
3 lot more for my Chapter 11 work than I did for my simple
4 consumer work.

5          I charged a different rate to creditors.  Sometimes
6 they had a flat fee schedule, sometimes they had an hourly
7 rate.

8          For consumer bankruptcies, I had a lower rate than I
9 had for business bankruptcies because there's more work in a
10 business bankruptcy, and it's of a more specialized nature.
11 That's exactly what <u>Busy Beaver</u> wants.  They want your fee to
12 be rationally related to the value of your services.  And the
13 value of your services goes up with the greater need for
14 specialized knowledge.

15          Chapter 11 bankruptcy practitioners are routinely
16 north of 400; not consumer, though.  Consumer is just as often
17 south of 300 as it is north of 300, and they're only in the
18 margins generally, so right around 300.  That's really to me
19 the most indicative thing is is the hourly rate marketable?

20          What's the hourly rate on this, Mr. Imblum?

21          MR. IMBLUM:  My rate's 295; Jeff Troutman in my
22 office bills at 235; and the paralegals bill either 135 or 145,
23 Your Honor, I'd have to check that.

24          THE COURT:  All right.  And, Mr. Jones, I didn't hear
25 a complaint about the hourly rate that was charged.

TRANSCRIPTS PLUS, INC.
215-862-1115• CourtTranscripts@aol.com

AA 176

Case 5:22-bk-01826-MJC    Doc 60-1    Filed 10/07/24    Entered 10/07/24 22:31:51    Desc
Exhibit A - Merriweather Transcript    Page 12 of 32

13

1          MR. JONES:  No, we did not object to the hourly rate.

2          THE COURT:  And I don't think there is any basis to

3  object to it.

4          Mr. Imblum, how long have you been doing bankruptcy

5  work?

6          MR. IMBLUM:  Since 1987.

7          THE COURT:  I don't want to do the math in front of

8  everybody because I'll get it wrong, but it's a long time,

9  right?

10          MR. IMBLUM:  44 years.

11          THE COURT:  So I just find the rate to be very

12  reasonable.

13          MR. IMBLUM:  No, I'm sorry, it can't be 44.  I'm

14  sorry, I'm not good at math.

15          THE COURT:  See, that's why I don't do math on the

16  record.

17          MR. IMBLUM:  Yes.

18  Lieutenant

19          MR. JONES:  Many years.

20          MR. IMBLUM:  Many years.

21          MR. JONES:  I will stipulate to many years.

22          THE COURT:  Yes.

23          MR. IMBLUM:  Many years.

24          THE COURT:  So I find -- you know, there's no

25  challenge to the rate, and I'm not going to sua sponte raise

TRANSCRIPTS PLUS, INC.
215-862-1115• CourtTranscripts@aol.com

AA 177

Case 5:22-bk-01826-MJC    Doc 60-1    Filed 10/07/24    Entered 10/07/24 22:31:51    Desc
Exhibit A - Merriweather Transcript    Page 13 of 32

14

1  it.

2         The other thing that I look at that I think is really

3  very important is what -- who is doing what, and that was

4  raised here.  And that is the issue that you can nibble around

5  the edges and quibble about, should an attorney be doing a

6  function, or should it be a paralegal function, or should it be

7  something that an assistant should do that shouldn't be billed

8  out to the client at all?  And I think that's where we ought to

9  focus in this matter, I think that's where your office focused,

10  Mr. Jones.

11         MR. JONES:  Most of the objections, correct, it would

12  be.

13         THE COURT:  Yeah, and those are reasonable objections

14  because here we get into a very, you know, discretionary area

15  where it's kind of tough.  And I'll give you an example:  I was

16  reviewing it, and on the one hand, I saw charges -- I won't

17  make any specific reference, but generally speaking, I saw

18  charges in there where the attorney reviewed a notice -- well,

19  I will make reference to one.  The attorney reviewed an entry

20  on the docket that Zaharopoulos had been appointed as the

21  Chapter 13 Trustee.  Gosh, I don't know about that, right, Mr.

22  Imblum?  Does that mean that that happened in all 300, or 400,

23  or 500 of your cases?  Didn't we all sort of know that Jack was

24  appointed?  And do you have to look at the docket and bill

25  point six for that?

TRANSCRIPTS PLUS, INC.
215-862-1115● CourtTranscripts@aol.com

AA 178

Case 5:22-bk-01826-MJC     Doc 60-1     Filed 10/07/24     Entered 10/07/24 22:31:51     Desc
Exhibit A - Merriweather Transcript     Page 14 of 32

15

1          On the other hand, it's a significant event in the

2     case, but that one troubled me a little, right?  I don't know

3     why you billed for that, and I think the objection there seems

4     to be well-founded.  But I have to give you the opportunity,

5     Mr. Imblum, to explore it further.

6          And here's the more tricky -- here's the trickier

7     one:  The attorney reviewed an order that was entered by the

8     Court that he knew was going to be entered, or was in court

9     while it was entered and approved.  On the one hand, you may

10    ask yourself, "Why is the attorney billing to review an order

11    that he knew was going to be entered?"

12         On the other hand, if I object to that, if I raise a

13    concern with it, I'm sending the message that I don't want

14    attorneys to read the orders that I'm entering.  That's a

15    problem, I can't send that message, and I won't.

16         But I will say this:  If that occurs, and it's not

17    inappropriate for an attorney to review an order to make sure

18    that it is properly entered.  Just yesterday, I had to admit to

19    an attorney that our chambers -- I entered the wrong order.  I

20    was supposed to enter an interim order, instead I entered the

21    final order.  That was a mistake, I had to undo that yesterday.

22         MR. IMBLUM:  And if --

23         THE COURT:  So I have to have the attorney review the

24    order.

25         MR. IMBLUM:  If I can comment, Your Honor?

TRANSCRIPTS PLUS, INC.
215-862-1115● CourtTranscripts@aol.com

AA 179

Case 5:22-bk-01826-MJC    Doc 60-1    Filed 10/07/24    Entered 10/07/24 22:31:51    Desc
Exhibit A - Merriweather Transcript    Page 15 of 32

1          THE COURT:  Yeah.

2          MR. IMBLUM:  The reason I review the order is just to

3   make it's consistent with what happened in court, and what was

4   supposed to be entered, and that's why I review it.

5          THE COURT:  And so you should bill at the smallest

6   possible increment for that.

7          MR. IMBLUM:  And I believe I did.

8          THE COURT:  Which you did.

9          MR. IMBLUM:  Yes.

10         THE COURT:  But you see, that's a tricky one for me,

11  because on the one hand, gosh, I never billed for that.  I just

12  considered it part of my job, so I never billed for it.

13         But on the other hand, as I've said, if I tell you

14  not to look at those orders, and you're not going to get paid,

15  I'm sending a message that I'm not comfortable with, which is I

16  don't want the attorney reviewing the orders I enter when, in

17  fact, I do want them to do that.

18         And against all that, I measure, of course, we're all

19  assuming here that there is a fee agreement that's been

20  properly executed that the client is -- when they execute it,

21  understands what it means.  This is the rights and

22  responsibility thing, and that they have a written fee

23  agreement that complies with the professional rules of conduct

24  as applies in Pennsylvania.  That's all the baseline.  If you

25  don't have one of those, you're going to have a problem

TRANSCRIPTS PLUS, INC.
215-862-1115• CourtTranscripts@aol.com

AA 180

Case 5:22-bk-01826-MJC    Doc 60-1    Filed 10/07/24    Entered 10/07/24 22:31:51    Desc
Exhibit A - Merriweather Transcript    Page 16 of 32

17

1   collecting lodestar, but we assume that that is the case here.

2          So I would recommend in this instance that the

3   parties maybe talk about some of what I've talked about today

4   to provide some guidance.

5          In my thinking, the dollar amount doesn't bother me

6   if there are contemporaneous time entries that appear to be

7   accurate and contemporaneously kept.

8          I don't even care ultimately if the services -- well,

9   I mean, I care.  But it doesn't matter if the services

10  ultimately benefit the estate, as long as they were designed

11  to benefit the estate at the time they were incurred, and

12  they're reasonably necessary to defend the estate and the

13  debtor.  And I didn't see an objection on that either, Mr.

14  Jones.

15         MR. JONES:  No, Judge.  And obviously if it benefits

16  the debtor also in a Chapter 13, that's billable, and we

17  acknowledge that.

18         THE COURT:  Okay.

19         My main concern with this objection -- and I haven't

20  looked at any of the others -- is sort of outlined by what I

21  said.  There is a lot of point ones, some of which I might

22  agree probably shouldn't be there.  I'm not making any findings

23  of fact here, but you could probably take a close look based on

24  what I've said today and get a better idea of what those might

25  be.

TRANSCRIPTS PLUS, INC.
215-862-1115• CourtTranscripts@aol.com

AA 181

Case 5:22-bk-01826-MJC     Doc 60-1     Filed 10/07/24     Entered 10/07/24 22:31:51     Desc
Exhibit A - Merriweather Transcript     Page 17 of 32

18

1          And then there are some that, I think, maybe a

2    paralegal could have done, as opposed to the attorney.  Or

3    maybe in some cases you could argue are so clerical in nature

4    and administrative in nature that no one should be billing for

5    them.

6          Review of a pro memo that comes through on the

7    docket.  Gosh, does that have to be billed?  Isn't that

8    something that we all expect you to do?  Look at the time

9    stamped -- I imagine in my mind when I see these things that

10   involve the ECF entry, I remember the days when we pushed

11   papers across the counter right over here in the Clerk's

12   Office, you remember, you had someone down there competing with

13   our person to try to get the paper pushed over before 4:30 when

14   they closed.

15          MR. IMBLUM:  Yes.

16          THE COURT:  And you would get back -- we'd have to

17   have time stamped copies, get back.  You would just glance at

18   it to make sure the time stamp was on there, and you're done.

19   You don't bill for that.

20          And so, you know, glancing at an ECF to confirm that

21   the pro memo is what the judge said, gosh, I don't know, maybe

22   that shouldn't be billed at all either.  So you could quibble

23   about those things, and I think they're fair game for you to

24   defend, because maybe there's a good reason for it, right?  The

25   pro memo has to match, that's what the notice is that goes out

TRANSCRIPTS PLUS, INC.
215-862-1115● CourtTranscripts@aol.com

AA 182

Case 5:22-bk-01826-MJC    Doc 60-1    Filed 10/07/24    Entered 10/07/24 22:31:51    Desc
Exhibit A - Merriweather Transcript    Page 18 of 32

19

1  to people, you know?  But is it really something that's so

2  administrative that maybe that's not something that you need to

3  bill for?

4          Is that -- against all of this, my standard will

5  always be this:  What could you bill if you were not a

6  bankruptcy attorney, and you were doing regular construction

7  litigation or other work outside of bankruptcy?  What would the

8  client tolerate?  I think the client would call up -- because I

9  represented -- I did a lot of work outside of bankruptcy, and

10 they would question those charges.  The reason the debtor may

11 not do it here is precisely the reason that I am to get

12 involved, which is debtors, they're vulnerable, they don't want

13 to complain to their bankruptcy attorney.  They want their

14 bankruptcy attorney to like them, and to continue to represent

15 them, and help them, because they're desperate; that's why I'm

16 doing this.

17         Busy Beaver recognizes that the debtor class is a

18 vulnerable class.  And when they're in a desperate situation

19 because they're going to lose their home, or they've been sued

20 by credit card companies, I've sat across the table with moms

21 and pops, grandmoms, granddads, young married couples, single

22 people desperate for help.  And when you have that initial

23 conference with them, and you explain to them what bankruptcy

24 can do for them, you can see the tension leaving their body,

25 and they become extremely vulnerable.  They'll sign anything in

TRANSCRIPTS PLUS, INC.
215-862-1115• CourtTranscripts@aol.com

Case 5:22-bk-01826-MJC    Doc 60-1    Filed 10/07/24    Entered 10/07/24 22:31:51    Desc
Exhibit A - Merriweather Transcript    Page 19 of 32

AA 183

20

1 that moment.

2          And this is not to suggest, Mr. Imblum, that you take

3 advantage of that, because most of us, as good practitioners,

4 never took advantage of that.  But we must recognize that they

5 are vulnerable, they'll agree to anything, they'll sign

6 anything.

7          And that's why I have to make sure that what they

8 sign is fair, and what they're billed ultimately is fair,

9 because that feeling continues throughout the case.  So I'm

10 here to make sure that those feelings don't overwhelm what

11 would otherwise be a very reasonable decision to pick up the

12 phone, and call their attorney, and challenge some of these.

13          That's my thinking.  I've laid it all out for you, I

14 hope that provides some guidance.

15          MR. JONES:  Your Honor, that's exactly what we were

16 looking for, just some guidance --

17          THE COURT:  Okay.

18          MR. JONES:  -- in light of everything.

19          THE COURT:  So I think maybe 30 days for the parties

20 to go over this case, and maybe the others, as well, if you

21 want to file a request to continue the other hearings.  Or if

22 you want to have those hearings or status conferences, or

23 whatever, it's up -- I'll leave it up to you.

24          MR. IMBLUM:  I think at this point, Your Honor, we'll

25 talk and see if we can work it out.

TRANSCRIPTS PLUS, INC.
215-862-1115● CourtTranscripts@aol.com

AA 184

Case 5:22-bk-01826-MJC     Doc 60-1     Filed 10/07/24     Entered 10/07/24 22:31:51     Desc
Exhibit A - Merriweather Transcript     Page 20 of 32

21

1           MR. JONES:  Yeah.

2           MR. IMBLUM:  And if not, I'll ask for a hearing -- or

3  we'll ask for a hearing.

4           THE COURT:  Right.  And then I'll be prepared to tell

5  you the charges that I think really ought to be defended, and

6  we'll follow the process.

7           Okay, so 30 days?

8           MR. JONES:  That's fine.

9           MR. IMBLUM:  That's fine, Your Honor.

10          MR. JONES:  The 22nd, I believe.

11          THE COURT:  That will put us November --

12          MR. IMBLUM:  Oh, the --

13          MR. JONES:  Don't rely on me, though.

14          THE COURT:  What's that?

15          MR. JONES:  I said I think it's the 22nd, but don't

16  rely on me today.

17          THE COURT:  The 24th?

18          MR. JONES:  24th, I'm sorry.

19          MR. IMBLUM:  24th.

20          MR. JONES:  It's the 24th.

21          THE COURT:  Just before Thanksgiving.

22          MR. IMBLUM:  Yeah.

23          MR. JONES:  I was close.

24          THE COURT:  So the 24th at 9:30 -- we'll maybe make

25  it 10 o'clock.

TRANSCRIPTS PLUS, INC.
215-862-1115● CourtTranscripts@aol.com

Case 5:22-bk-01826-MJC    Doc 60-1    Filed 10/07/24    Entered 10/07/24 22:31:51    Desc
Exhibit A - Merriweather Transcript    Page 21 of 32

AA 185

22

1          MR. JONES:  10 o'clock is fine.

2          MR. IMBLUM:  Okay, yes.

3          THE COURT:  Because I'm not going to do this --

4          MR. JONES:  That's fine, yeah.

5          THE COURT:  -- while we're going through regular

6  confirmations.

7          MR. JONES:  Right.

8          THE COURT:  It will delay things too much.

9          MR. IMBLUM:  Understood.

10          THE COURT:  So if it's okay, 10 o'clock.

11          MR. IMBLUM:  Yes.

12          THE COURT:  And to the extent that you want to

13  combine any of the others, I'm generally reluctant to combine

14  records, but this seems like it's going to be administrative

15  enough that if you're willing to put others on with it, I would

16  be okay with that, as long as it doesn't get too confusing.

17          MR. JONES:  Right.

18          MR. IMBLUM:  Yes.

19          MR. JONES:  Yeah, I think the issues are set out, we

20  just need to see if we agree or if we disagree, and proceed

21  from there.

22          THE COURT:  Right.

23          MR. IMBLUM:  Yeah, we've discussed this, and I think

24  there are certain categories of objections that can be

25  addressed, if we need to do that.  And I think we can

TRANSCRIPTS PLUS, INC.
215-862-1115• CourtTranscripts@aol.com

AA 186

Case 5:22-bk-01826-MJC    Doc 60-1    Filed 10/07/24    Entered 10/07/24 22:31:51    Desc
Exhibit A - Merriweather Transcript    Page 22 of 32

23

1  categorize them, and they apply to all the fee apps.

2          THE COURT:  And that's, I think, a wise approach;
3  okay.

4          MR. JONES:  The latter objections, I think, were a
5  little more organized than the Merriweather one was.
6  Merriweather was -- just went right through.

7          THE COURT:  I thought Merriweather was actually
8  pretty well organized, compared to what I --

9          MR. JONES:  Yeah, but I think the other one -- at
10  least they grouped them as far as the types of objections.

11          THE COURT:  Yeah.

12          MR. JONES:  There are two others that are scheduled
13  for the 10th, I suppose we should just request a continuance in
14  regard to those also.

15          THE COURT:  Are all the parties here for those?

16          MR. IMBLUM:  It's just --

17          THE COURT:  Just the -- the --

18          MR. IMBLUM:  Yeah, it's on my fee apps.

19          THE COURT:  So which ones are those?  I'll sua sponte
20  continue them, if you want me to, to the same date?

21          MR. IMBLUM:  That's okay, because I think in the
22  meantime, we'll talk, and either we'll need a hearing, or we'll
23  be able to resolve this.  So that -- yeah, that's fine to
24  continue them.

25          THE COURT:  So which two are those?

TRANSCRIPTS PLUS, INC.
215-862-1115● CourtTranscripts@aol.com

AA 187

Case 5:22-bk-01826-MJC    Doc 60-1    Filed 10/07/24    Entered 10/07/24 22:31:51    Desc
Exhibit A - Merriweather Transcript    Page 23 of 32

24

1             MR. IMBLUM:  I don't know --

2             MR. JONES:  I'm trying to remember which two.

3             MR. SCHALK:  Your Honor, I think I have the list.

4             THE COURT:  Mr. Schalk, I forgot about you; I'm so

5    sorry.  What's --

6             MR. SCHALK:  That's all right, I get ignored often.

7    It's all right.

8                          (Laughter)

9             MR. SCHALK:  Your Honor, those two cases are Cohan,

10   19-00398, and Silks, S I L K S, 17-04205.

11            THE COURT:  Thank you.

12            MR. SCHALK:  Yup.

13            THE COURT:  The first one was Cohan?

14            MR. SCHALK:  Cohen, C O H A N.

15            THE COURT:  Okay.  So, Joan, let's go ahead and sua

16   sponte continue those to the same date since all the parties

17   are here.

18            But, Mr. Schalk, I should hear from the UST.  Do you

19   have a position on this?

20            MR. SCHALK:  Your Honor, we were ordered by Judge

21   Conway to appear in the Badyrka matter; we are interested in

22   this issue.  We expressed similar concerns with the Standing

23   Chapter 13 Trustee.  I think Your Honor hit on the key issue

24   here, and I think it really is the issue of both duplication of

25   service, whether that's happened here or not; and then the

TRANSCRIPTS PLUS, INC.
215-862-1115• CourtTranscripts@aol.com

AA 188

Case 5:22-bk-01826-MJC    Doc 60-1    Filed 10/07/24    Entered 10/07/24 22:31:51    Desc
Exhibit A - Merriweather Transcript    Page 24 of 32

25

1 delegation of service, and what level that service should be

2 provided at.  Whether that's attorney time, paralegal time, or

3 administrative, or overhead time.

4          We will note, Your Honor, that we do feel and believe

5 that the Court should pay attention to whether or not the

6 services are reasonably likely to benefit the debtor's estate,

7 as provided under 330(a)(4)(A).

8          I think that's an issue with the United States

9 Trustee that we see perhaps more so in post confirmation fee

10 applications and not necessarily in first or initial fee

11 applications filed with respect to getting a case started.  So

12 I'll withhold comment on that concern to the other matters.

13 You'll --

14          THE COURT:  So that's interesting.  I would like to

15 hear more on that because -- well, there's Baker Botts, I hope

16 people aren't trying to collect for their defense of their fee

17 applications.

18          MR. SCHALK:  No, I don't think Mr. -- I'm 100 percent

19 certain Mr. Imblum has never done that.

20          THE COURT:  Yeah, I don't think so either.

21          MR. IMBLUM:  No, I -- I'm aware that that's improper.

22 I -- no, I haven't billed for that.

23          THE COURT:  Yeah.

24          MR. SCHALK:  That's a pretty clear one.

25          MR. IMBLUM:  Yeah.

TRANSCRIPTS PLUS, INC.
215-862-1115● CourtTranscripts@aol.com

AA 189

Case 5:22-bk-01826-MJC    Doc 60-1    Filed 10/07/24    Entered 10/07/24 22:31:51    Desc
Exhibit A - Merriweather Transcript    Page 25 of 32

26

1           THE COURT:  Yeah.  So but --

2           MR. SCHALK:  No, Your Honor --

3           THE COURT:  But you -- you did --

4           MR. SCHALK:  But I think that's better saved for

5  later applications, because I think what you're seeing, Your

6  Honor -- and I don't think Mr. Imblum would contest this with

7  me -- Mr. Imblum, as you noted, is a prolific fee application

8  filer.  We often see fifth, sixth, seventh, eighth applications

9  in cases that really do total up, Your Honor, and impact

10  distribution to unsecured creditors.  And I think there are

11  certain things that may concern the Office of the United States

12  Trustee that perhaps didn't concern the prior standing Chapter

13  13 Trustee, and that this standing Chapter 13 Trustee may want

14  some clarification from the Court as to whether certain items

15  really do benefit the estate or are necessary to the estate

16  post confirmation.

17           Beyond that, Your Honor, we state no position on the

18  reasonableness of the fees that have been sought as to the

19  hourly rate.  But, again, Your Honor, we are -- there is a

20  general concern when it comes to the fact that we do have a

21  presumptively reasonable rate to get a case to confirmation of

22  forty-five hundred dollars, and we're seeing applications to

23  get a fairly standard case to confirmation that's double that.

24  And --

25           THE COURT:  Well, you see, I think that's a mistake.

TRANSCRIPTS PLUS, INC.
215-862-1115● CourtTranscripts@aol.com

Case 5:22-bk-01826-MJC    Doc 60-1    Filed 10/07/24    Entered 10/07/24 22:31:51    Desc
Exhibit A - Merriweather Transcript    Page 26 of 32

AA 190

27

1  I don't think that one has anything to do with the other, and

2  I've heard that before, and I just want to say that it doesn't

3  matter to me.

4          MR. SCHALK:  I under --

5          THE COURT:  What matters is whether or not there is a

6  fee agreement that was properly disclosed; the client agreed to

7  it; the rate is reasonable; the services provided are being

8  provided by the appropriate party; they're appropriately

9  delegated, when necessary.

10          And although I didn't mention it, you're exactly

11  right, Mr. Schalk, duplication of services is another concern I

12  have, not on these fee applications that I've seen so far, but

13  in others that I am very close to, and will likely now, sua

14  sponte schedule hearings on.  I have seen excessive duplication

15  of services in other fee applications, and it bothers me quite

16  a bit, so I think that's also fair game.

17          MR. SCHALK:  Yeah.  Your Honor, and I understand that

18  Your Honor may think it -- and here's why I bring that up, Your

19  Honor.  That's part of Judge Conway's concern, so that may be a

20  difference between Your Honor's.

21          THE COURT:  It could be, but to me, it doesn't --

22  what matter is is In Re Busy Beaver adhered to, which is all

23  about market rate.  Did the client agree to this; is it a

24  reasonable agreement?  Hey listen, billing in six-minute

25  increments at 295 an hour, for example, the case in front of

TRANSCRIPTS PLUS, INC.
215-862-1115• CourtTranscripts@aol.com

Case 5:22-bk-01826-MJC    Doc 60-1    Filed 10/07/24    Entered 10/07/24 22:31:51    Desc
Exhibit A - Merriweather Transcript    Page 27 of 32

AA 191

28

1  me, I think is eminently reasonable.  It's eminently marketable

2  in any area of the law, so no one has a challenge there.

3         To the comment of "death by a thousand cuts," I think

4  that's what's at issue here.  Is it excessive billing in the

5  sense that there are things that really are so administrative,

6  they probably shouldn't be billed for, even though they're

7  being billed in the smallest possible increment.  Again, I

8  think about what would a regularly sophisticated client in

9  another area of the law outside of bankruptcy find

10  objectionable.  And perhaps glancing at a time stamp on a

11  document or glancing at a docket entry, yeah, that might be

12  something that would cause me as a normal client to pick up the

13  phone and call my attorney and go, "Really?  You're going to

14  bill me for that?  Come on, man."

15         MR. SCHALK:  I understand that, Your Honor.

16         THE COURT:  So I get that.

17         MR. SCHALK:  I understand.

18         THE COURT:  But if everything else adds up, I don't

19  really care how much it is as long as it's -- the services were

20  necessary at the time they were performed; they were reasonably

21  calculated to help the estate; they weren't excessive in that

22  you spent four hours on preparing an answer to a motion for

23  relief.  Look, that's too much, right, unless there's really

24  good reason for it.

25         But if all the charges add up to an amount that's

TRANSCRIPTS PLUS, INC.
215-862-1115● CourtTranscripts@aol.com

AA 192

Case 5:22-bk-01826-MJC    Doc 60-1    Filed 10/07/24    Entered 10/07/24 22:31:51    Desc
Exhibit A - Merriweather Transcript    Page 28 of 32

1    twice what the normal no-look fee is, I don't care, that

2    doesn't bother me a bit.

3         MR. SCHALK:  Understood.  I understand, Your Honor.

4    And all I would say is I think you did hit on a key point

5    there: what's the reasonable customer or the reasonable client

6    going to do?

7         THE COURT:  That's right.

8         MR. SCHALK:  When the answer is, "Well, it's just

9    coming out of your unsecured creditor's pocket," that's a

10   concern for the United States Trustee, right?  We also need to

11   also look out for unsecured creditors that often are not coming

12   in before this Court that are having -- you know, that's a

13   question, are we seeing things that maybe take money away from

14   creditors that would otherwise get it?

15        THE COURT:  No, I totally -- I think we're on the

16   same page there, I agree with that.

17        MR. SCHALK:  Yup.

18        THE COURT:  So -- but --

19        MR. SCHALK:  That's all.

20        THE COURT:  So I think we've covered it.  I do have

21   very well-developed thoughts on the matter.  One of the very

22   first things I had to adjust to when I got this position was

23   this issue.  And I, quite frankly, didn't struggle with it that

24   much because I practiced for 18 years.  I spent the first five

25   of it doing the no-look fee, and then I spent the remaining 13

TRANSCRIPTS PLUS, INC.
215-862-1115• CourtTranscripts@aol.com

AA 193

Case 5:22-bk-01826-MJC    Doc 60-1    Filed 10/07/24    Entered 10/07/24 22:31:51    Desc
Exhibit A - Merriweather Transcript    Page 29 of 32

30

doing a lodestar.  And I can tell you, I have very clear
opinions about which approach is better for both the client and
the attorney.  Personally I think clients get a much better
representation from a lodestar approach because I have seen
attorneys, and it has affected my own decision-making process.
When I was no-look fee and nothing more, and I had 55 messages
to return, phone calls to return, guess who got on the top of
that pile?  The clients with lodestar who would pay me for the
time it took to call me back.  And the first words out of my
mouth were always, "Hey, Bill, how are you doing?  I got to
remind you, I've got to bill you for this call, so we'll try
and keep it short.  What's going on?"  As opposed to someone
where I've already got the plan confirmed, and they're calling
because something happened, and I might have enough time by the
end of the day to get through 55 messages and call them, but I
might not.

        The practice of law is a business, as well, and you
have to be mindful that attorneys are doing their job, and
selling their services.  And if they do so in accordance with
the well-defined fee agreement, and it's consistent with market
practices, they should be paid for that, that's my view.

        But I also agree with you, Mr. Schalk.  If they're
duplicating services, they're not properly delegating, or the
services really aren't necessary or designed to protect the
estate, that money should not come out of the expense of the

TRANSCRIPTS PLUS, INC.
215-862-1115• CourtTranscripts@aol.com

AA 194

Case 5:22-bk-01826-MJC    Doc 60-1    Filed 10/07/24    Entered 10/07/24 22:31:51    Desc
Exhibit A - Merriweather Transcript    Page 30 of 32

31

1    unsecured.  So that message is resonating with me, as well.

2           MR. SCHALK:  Thank you, Your Honor; nothing else.

3           THE COURT:  Appreciate it; okay, enough said.

4           MR. IMBLUM:  Thank you.

5           THE COURT:  Thank you, both.  We'll see you on

6    November 24th.

7           MR. JONES:  Your Honor, there are two other cases

8    that I just checked that are scheduled for the 10th, if we

9    could continue those also to the 24th.

10          THE COURT:  Cohan and Silks.  There's two more

11   besides those?

12          MR. JONES:  Correct.  Teresa Marie Becker, docketed

13   to Number 18-02864.

14          THE COURT:  Okay.

15          MR. JONES:  And Robert Swan, docketed to 20-02797.

16   Those have all now been scheduled.

17          THE COURT:  Okay, very good.  Joan will add those to

18   the list, and we'll continue those sua sponte to the 24th.

19          MR. JONES:  Thank you.

20          THE COURT:  Thank you, both; appreciate it.

21          MR. SCHALK:  Thank you, Your Honor.

22          THE COURT:  Thank you, Mr. Schalk.

23      (Whereupon, at 10:32 a.m., the hearing was adjourned.)

24

25

TRANSCRIPTS PLUS, INC.
215-862-1115• CourtTranscripts@aol.com

AA 195

Case 5:22-bk-01826-MJC    Doc 60-1    Filed 10/07/24    Entered 10/07/24 22:31:51    Desc
Exhibit A - Merriweather Transcript    Page 31 of 32

32

```
 1
 2
 3
 4
 5
 6
 7                    CERTIFICATE OF TRANSCRIBER
 8
 9      I, KAREN HARTMANN, a certified Electronic Court
10  Transcriber, certify that the foregoing is a correct transcript
11  from the electronic sound recording of the proceedings in the
12  above-entitled matter.
13
14
15
16
17
18  Karen Hartmann, AAERT CET 475   Date: November 17, 2021
19  TRANSCRIPTS PLUS, INC.
20
21
22
23
24
25
```

**TRANSCRIPTS PLUS, INC.**
**215-862-1115• CourtTranscripts@aol.com**

AA 196

## Ashley Werner

| | |
|---|---|
| **From:** | Carlo Sabatini |
| **Sent:** | Wednesday, July 3, 2024 2:42 PM |
| **To:** | Agatha McHale |
| **Cc:** | Ashley Werner |
| **Subject:** | Decantis; 5:22-bk-01826-MJC |
| **Attachments:** | Settlement Proposal.pdf |

I saved the two most-complicated cases for last. (The other, Pypiak, might come tomorrow. If not, next week.) These were the first two cases that were done, so it was before we had come to agreement on a number of issues. I've tried to work those later agreements into this proposal.

The attached .pdf shows the settlement proposal. In addition to our normal bill, this spreadsheet has two additional columns: "Aggie" and "Proposal."

"Aggie" shows what the bill would be if all of your objections are granted. For each entry where you objected, we lodged a discount in the Aggie column. That column also includes any time that we had already discounted. For you to be able to easily tell the difference, we assigned a fill color to each cell that contains a discount for one of your objections. In other words, the discounted amounts in that column which are just in a standard white cell are amounts that I had already discounted on the bill when the fee app was originally filed. The yellow cells in your column are the discounts that we think you would agree to based on subsequent agreements – e.g., the proof of claim review structure that we've been using. The orange cells in your column are the rest of your objections.

The "Proposal" column contains the discounts that I am proposing as settlement of the fee application. This column contains two additional colors. Blue means that we are not agreeable to the discount that you requested. Generally, blue means that we aren't discounting at all except that on the first page we did apply some discount to bring the time down to a lower rate. Grey in this column means that the time is for schedule prep. I've discounted all of the grey time except for 6 hours of paralegal and 2 hours of attorney time. Orange in that column means that I am accepting your objection. Yellow means that I'm agreeing to reduce the amount the same way that we have to similar entries in the past.

The totals at the bottom of the columns show that our original request was $11,869 and that we are willing to reduce that to $8,514.75. If all of your objections were allowed in full, the fees would be $5,983.25.

Please let me know if this works. If you me to explain this in person, let me know when is good for you. Thanks.

Carlo Sabatini
Sabatini Law Firm, LLC
216 N. Blakely St.
Dunmore, PA 18512
(570) 614-4444
carlo@bankruptcypa.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | CHAPTER 13 |
| DOMINIC JOSEPH DECANTIS; AKA DOMINIC DECANTIS; AKA DOMINIC J DECANTIS, | CASE NO. 5-22-bk-01826-MJC |
| Debtor | |

**AFFIDAVIT OF CARLO SABATINI IN SUPPORT OF FEE APPLICATION[1]**

1.    The Trustee in this case provided me with a report titled "Legal Claims Paid to Debtor Attorney Carlo Sabatini" (hereinafter "the Sabatini Report").

2.    The report describes the cases that populate the Sabatini Report as: "Legal claims of Debtor Attorney, and Plan was completed, and Petition date is after September 30, 2013 and through September 11, 2024 @ 9:49 am."

3.    The Sabatini Report also contains this notation: "Note: 'Attorney Fees Paid' column shows only attorney fees paid through the Trustee.  Direct payments from the Debtor are excluded."

4.    The Trustee in this case provided me with a report titled "Legal Claims Paid to Debtor Attorney Excluding Carlo Sabatini" (hereinafter "the Other Attorney Report")

5.    The description for the Other Attorney Report is the same as the Sabatini Report, except that the ending time on the Other Attorney Report is a few minutes later.

6.    The two reports each provide four pieces of data for each case on the report: the case number; the total amount of *filed* unsecured claims; the total amount *paid* to unsecured claims; and the total amount of attorney fees paid through the Trustee.

---

[1] This Affidavit contains little additional information other than what is already in the brief being contemporaneously filed, and the Court likely will not gain much from reading this affidavit as a stand-alone document.

AA 198

7.    I used the information on the Sabatini Report to calculate for each of my cases on the report the amount of attorney fees and unsecured claims that the trustee paid in each case expressed as a percentage of the unsecured claims.

8.    Thus, the applicable formula used for the calculation is expressed as follows:

$$\frac{(\text{Total Unsecured Paid} + \text{Attorney Fees Paid})}{\text{Total Unsecured}} = \text{Percentage paid}$$

9.    After completing that calculation for each case, I then determined the median amount the Trustee paid in my cases during the period for which data was provided.

10.    That median amount was 17.8%.

11.    That median case was case number 20-02046.

12.    The Sabatini Report shows the following information for that case:

| Total Unsecured | Total Unsecured Paid | Attorney Fees Paid |
|---|---|---|
| $42,823.33 | $2,196.06 | $5,425.72 |

13.    This information was entered into the formula in ¶ 8 as follows:

$$\frac{\$2,196.06 + \$5,425.72}{\$42,823.33} = 17.8\%$$

14.    I then determined the median amount the Trustee paid in each case on the Other Attorney Report.

15.    The median amount paid by the Trustee in cases filed by attorneys other than me during the same period was 36.43%.

16.    The Other Attorney report includes a $10,000,000 unsecured claim that was filed in case 18-00593.

2

17.     As of October 4, 2024, www.trustee13.com showed that the claim referenced in the previous paragraph was actually entered in the Trustee's system as a $1,000,000,000 claim.

18.     When that claim is included in the Other Attorney Report, the "average" amount of unsecured claims filed per case during this period is $233,535.

19.     Once that claim is removed from the calculation, the case average drops to less than $50,000.

20.     For the Chapter 13 cases filed by my office that closed during the 5-year period ending on December 31, 2020, only 5% ended with a dismissal instead of a discharge.

21.     This statistic was calculated using a report that I believe I obtained from the office of the Clerk of this Court in 2021.

22.     From my own review of my own records, it appears that none of the cases that closed in 2021, 2022 or 2023 were dismissed rather than discharged.

23.     Of the cases filed in this district, and which then closed during the 5-year period ending on December 31, 2020, 45% ended with a dismissal instead of a discharge. I calculated this statistic using the reports available at https://www.uscourts.gov/statistics-reports/analysis-reports/bankruptcy-abuse-prevention-and-consumer-protection-act-report, and specifically Publication Table Number BAPCPA 6 for each of the five years in the period.

24.     Part 2 of Schedule J is where a debtor is required to estimate ongoing monthly expenses.

25.     That part has 35 separate lines for different categories of expenses.

26.     The budget that Debtor in this case completed for Counsel contained 161 lines for different categories of expenses. That information was then used to prepare the 35 lines that are required for Schedule J.

AA 200

27.     In Counsel's experience, the more granular the information that is requested from a debtor, the more comprehensive it is likely to be.

28.     The budget that Debtor in this case completed for Counsel identified expenses for vehicle registration, vehicle inspections, and driver's license renewals totaling $131.63/year.

29.     Here, my office's verification process for Debtor's budget caused the amount budgeted for cable to be increased from Debtor's original estimate of $88/month to a documented amount of $93.25/month, and Debtor's internet expense to be increased from an estimated amount of $87/month to a documented amount of $110.79/month.

30.     I follow the same detail-oriented procedures in every case, because I believe that the net result benefits the client.

31.     These procedures are followed even if the plan does not have enough funds to pay for the time that such additional detail requires.

32.     In cases such as this one where the plan funding is inadequate, the fee application almost always waives excess fees.

33.     The Trustee settled his objection to the fee application in this case.

34.     As part of that settlement, the parties agreed that Counsel would charge for only six hours of paralegal time and two hours of attorney time for preparing the petition, schedules and plan.

35.     The additional discount represented on the settlement document to effectuate that compromise amounts to $2,753.00.

36.     Dkt. Entry 57 is the adjusted bill that reflects the settlement with the Trustee.

AA 201

37.     That document contains color coding which explains the resolutions of the various line items that the Trustee had objected to. That color coding is described in an email from Sabatini to McHale which was sent on July 3, 2024.

38.     In preparing the brief being contemporaneously filed with this affidavit, Counsel discovered that the paralegal time which was retained rather than discounted amounted to 6.5 hours rather than just 6 hours.

39.     *In re Sumski*, 17-bk-02507, Dkt. Entries 39-2 and 40 is an example of my practice of doing work even when there is no prospect of being paid. The *Sumski* fee application was filed less than six months into a five-year case where the total base plan was only $9,000.00. Over $10,000 of the Court-ordered fees were written off after discharge. Additionally, I never filed an application to be paid for all of the additional work done during the last 54 months of the case.

40.     In *In re Barker*, 5:20-bk-02896, Dkt. Entries 34-2 and 37, Judge Henry Van Eck approved without reduction $18,437 in fees for pre-confirmation services, including 10.1 hours of paralegal time and 6.4 hours of attorney time preparing the budget, schedules, or the plan, and an additional 8.8 hours of time working on checklists.

41.     In *In re DeSanto*, 18-bk-01167, Dkt. Entries 30-2 and 31, Judge Robert Opel, II approved without reduction $11,007.50 in fees for services through the day after confirmation, including 24.5 hours of paralegal time and 4.5 hours of attorney time preparing schedules or the plan, processing checklists, and preparing for and meeting with the client and filing the case.

42.     In *In re Sumski*, 17-bk-02507, Dkt. Entries 39-2 and 40, Judge John Thomas approved without reduction $20,517.59 in fees for services through the day after confirmation, including 44.2 hours of paralegal time and 2.6 hours of attorney time for work related to preparing schedules or the plan, meeting with the clients, and filing the case.

5

43.     At the hearing, the Court specifically questioned three entries of attorney time:

a.   1.7 hours on June 23, 2022,

b.   .6 hours on June 29, 2022, and

c.   1.7 hours on July 1, 2022.

44.     I have reviewed my files but have been unable to determine precisely what aspect of schedule preparation or plan review was being conducted on those dates.

45.     When these time entries were created, I was unaware that the Court expected greater detail.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 7, 2024

s/ Carlo Sabatini
_____
Carlo Sabatini

AA 203

**UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | **Chapter 13** |
| | : | |
| **Dominic Joseph DeCantis,** | : | **Case No. 5:22-01826-MJC** |
| | : | |
| Debtor. | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

# <u>O R D E R</u>

      **AND NOW**, upon consideration of the First Interim Application of Attorney for Chapter 13 Debtor for Compensation and Reimbursement of Expenses, filed on April 29, 2024, Doc. 48 ("Application") filed by Mr. Carlo Sabatini, Esquire as Counsel for the Debtor ("Applicant"), in which the Applicant requested interim allowance of compensation in the amount of $11,869.25[1] and the reimbursement of expenses in the amount of $449.85 for the period June 13, 2022 to December 1, 2023;

      **AND**, the Chapter 13 Trustee ("Trustee") filed an Objection to the Application on May 20, 2024, Doc. 49 ("Objection");

      **AND**, the Applicant and Trustee entered into a Stipulation resolving the Objection, Doc. 52, whereby the Applicant agreed to reduce his fees by $3,354.50, thereby reducing the Application request to $8,514.75, plus expenses ("Stipulation")(*see* Doc. 57);[2]

---

[1] The Application lists a staggering 57.2 hours, prior to any discounts, billed to this consumer Chapter 13 case thus far.  Mr. Sabatini's time alone totaled 18.5 hours billed at $415 per hour.  There are approximately 35 total hours entered prior to the petition being filed.  This Application is identified as interim and as such, Applicant could seek payment of additional sums.

[2] The Court appreciates the Trustee's obligation to identify improper or excessive billing entries by the Applicant and the Applicant's agreement to settle the disputes by the terms of the Stipulation.  However, the Court, after consuming an inordinate amount of time on Applicant's fee applications, has concerns with regard to Applicant's ongoing billing practices in these routine Chapter 13 cases.

AA 204

**AND**, the Court having held a hearing on the Application on August 7, 2024[3] and the Applicant submitting a supplemental Brief and Affidavit on October 7, 2024 (Doc. 60, 61);

**AND**, based on Debtor's Schedules filed in this case, Debtor is married, employed as a cook at a local restaurant, and with his wife they have a total net monthly income of $4,543.42, monthly expenses of $4,119.36, leaving a monthly net income of $424.06. Doc. 1 (Schedules I and J). This net income is the monthly payment provided under the Debtor's 36-month Chapter 13 Plan for a total Plan payment of $15,266.16. Doc. 5. The Plan was confirmed by Order entered January 6, 2023. Doc. 37;

**AND**, only six (6) proofs of claim were filed by creditors indicating a total of $56,796.44 of secured claims and $15,505.65 of unsecured claims;

**AND,** Applicant's original interim request for fees of $11,869.25 and reimbursement of expenses of $449.85 for a total of $12,319.10 would account for over 80% of the total plan payments which, after payment of Chapter 13 administrative costs, would leave no funds available for distribution to creditors;

**AND**, upon review of the case docket and the Applicant's submissions, the Court finding that this case is a standard or routine Chapter 13 case with no unique or complex issues[4] and that a reduction in the amount of allowed compensation is necessary due to charges for services that are non-billable administrative tasks, paralegal or secretarial duties that should have been billed at non-attorney rates, and for excessive time billed for certain tasks;

**AND**, as Applicant knows from prior hearings, for requests for compensation, the burden of proof rests on the applicant to establish that the fees earned are reasonable and necessary. *Zolfo,*

---

[3] The Transcript of the hearing, Doc 62, shall be hereinafter referred to as "Tr." At the hearing, Mr. Sabatini appeared. The Debtor did not appear.
[4] Mr. Sabatini agreed that the case was not complex, "I don't think that there's anything complex about the case." Tr. at p. 8.

*Cooper & Co. v. Sunbeam-Oster Co.*, 50 F.3d 253, 261 (3d Cir. 1995) (citing *In re Metro Transp. Co.*, 107 B.R. 50, 53 (E.D. Pa. 1989)); *In re Pochron*, 2022 WL 1085459, at *2 (Bankr. S.D. Ohio 2022); *In re Murray*, 2007 WL 2317523, at *2 (Bankr. E.D. Pa. 2007).  "This burden is not to be taken lightly, especially given that every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors or use by [the] debtor."  *In re Pettibone Corp.*, 74 B.R. 293, 299 (Bankr. N.D. Ill. 1987) (citing *In re Hotel Associates, Inc.*, 15 B.R. 487, 488 (Bankr. E.D. Pa. 1981));

**AND**, based on and incorporating the Court's legal analysis in *In re Badyrka*, 2022 WL 4656034 (Bankr. M.D. Pa. 2022), *In re Thomas*, 2023 WL 6885827 (Bankr. M.D. Pa. 2023), *In re Beckhorn*, Case No. 5:21-0849-MJC (Bankr. M.D. Pa. November 17, 2022) and *In re Grove*, Case No. 5:20-0698-MJC (Bankr. M.D. Pa. March 31, 2023);

**AND**, this District having set a Presumptively Reasonable Fee ("PRF") for routine Chapter 13 cases of $4,500, L.B.R. 2016-2 (c), which Courts have used as a "starting point" to what should be considered a "reasonable" fee in a routine Chapter 13 case. *See In re Schuman*, 2013 WL 1195279, at *6-7 (Bankr. N.D.N.Y. 2013) (describing presumptive fee as "pre-calculated lodestar" and utilizing it as a starting point for review of lodestar fee applications); [5]

**AND**, the Court finding that it is not required to make a line by line analysis of the fee application, *see In re 388 Route 22 Readington Holdings LLC*, 2023 WL 4249266, at *3 (3d Cir. 2023); *Badyrka*, 2022 WL 4656034, at *9; *In re McKeeman v. Laughlin,* 236 B.R. 667, 672 (B.A.P. 8th Cir. 1999) ("When ... a case presents routine chapter 13 matters, the court may review the fees requested in light of fees typically charged, and may reduce the requested fee accordingly.

---

[5] The PRF in this District was increased to $5,000 effective for cases filed on or after October 1, 2024.

3

It is not necessary for the court to find that the time spent on any given task was excessive before reducing the award.");

**AND,** at the August 7, 2024 hearing, the Court referenced several entries that appeared to be excessive, non-billable administrative or overhead.[6]  The Court asked Applicant what services were performed on the following billing entries: 6/23/22 - 1.7 hours; 6/29/22 - 1.7 hours; 7/1/22 - 1.7 hours.  Applicant was unable to support these entries and admitted that he was not able to meet his burden;[7]

**AND,** accordingly, the Court shall apply a forty percent (40%) reduction to the Application, *see In re Kern*, 2021 WL 3518806, at *5 (Bankr. D. N.J. 2021) ("If a court determines some of the time claimed by a party should be excluded, it may also use a percentage deduction as a practical means of trimming fat from a fee application." (*quoting In re Nicholas*, 496 B.R. 69, 76 (Bankr. E.D.N.Y. 2011)));[8]


It is hereby **ORDERED** that:

1. The Application is **GRANTED** in part and **DENIED** in part as set forth below.

2. Compensation for professional services on the Application is **ALLOWED** in favor of the Applicant in the amount of **$7,121.55.**

3. Reimbursement of expenses is **ALLOWED** in favor of the Applicant in the amount of **$449.85.**

---

[6] As discussed with Applicant at the hearing, during this period, the Court did approve approximately twelve (12) of Applicant's fee applications in other cases where the Trustee objected.  Tr. at 5-6.
[7] Applicant indicated "I'm not carrying my burden of showing where the time is being spent preparing the schedules" and "I recognize that I'm not meeting my burden …" Tr. at 9, 20.  When given additional post-hearing time, Applicant indicated that he was "unable to determine precisely what aspect of schedule preparation or plan review was being conducted on those dates." Doc. 61, at ¶44.
[8] This reduction still provides Applicant with a fee substantially in excess of the PRF and what most other practitioners in this District charge in a routine consumer Chapter 13 case.

4. To the extent the Applicant wishes to move for reconsideration of this Order, the Applicant may do so and the Court may hold a hearing, if requested.


By the Court,


_____
Mark J. Conway, Bankruptcy Judge
Dated: September 30, 2025

5

AA 208

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re Dominic Joseph DeCantis, | Bankruptcy No. 5:22-bk-01826-MJC |
| Debtor | Chapter 13 |
| Address: 830 N Main Ave.<br>Scranton, PA 18504 | |
| Last four digits of Debtor SSN: 6719 | |

## NOTICE OF APPEAL AND STATEMENT OF ELECTION

### Part 1: Identify the appellant(s)

1. Name(s) of appellant(s):

   **Dominic DeCantis**

2. Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

   For appeals in an adversary proceeding.
   - ☐ Plaintiff
   - ☐ Defendant
   - ☐ Other (describe) _____

   For appeals in a bankruptcy case and not in an adversary proceeding.
   - ☒ Debtor
   - ☐ Creditor
   - ☐ Trustee
   - ☐ Other (describe) _____

### Part 2: Identify the subject of this appeal

1. Describe the judgment—or the appealable order or decree—from which the appeal is taken:

   **Order that fee application is granted in part and denied in part entered at Docket Entry 63.**

2. State the date on which the judgment—or the appealable order or decree—was entered:

   **September 30, 2025**

### Part 3: Identify the other parties to the appeal

List the names of all parties to the judgment—or the appealable order or decree—from which the appeal is taken and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

1. Party: **Dominic Joseph DeCantis**      Attorney: <u>Carlo Sabatini</u>

AA 209

<u>Sabatini Law Firm, LLC</u>
<u>216 N. Blakely St.</u>
<u>Dunmore, PA 18512</u>
<u>(570) 341-9000</u>

2.  Party:                                        Attorney:

## Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court. If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below. Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

❑   Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

## Part 5: Sign below

**s/ Carlo Sabatini**                              Date: <u>October 13, 2025</u>
Signature of attorney for appellant(s) (or
appellant(s) if not represented by an attorney)

Name, address, and telephone number of attorney
(or appellant(s) if not represented by an attorney):

**Carlo Sabatini**
**Sabatini Law Firm, LLC**
**216 N. Blakely St.**
**Dunmore, PA 18512**
**(570) 341-9000**

Fee waiver notice: If appellant is a child support creditor or its representative and appellant has filed the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.

[**Note to inmate filers:** If you are an inmate filer in an institution and you seek the timing benefit of Fed. R. Bankr. P. 8002(c)(1), complete Director's Form 4170 (Declaration of Inmate Filing) and file that declaration along with the Notice of Appeal.]

AA 210

## UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 13 |
| | : | |
| Dominic Joseph DeCantis, | : | Case No. 5:22-01826-MJC |
| | : | |
| Debtor. | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

# **O R D E R**

**AND NOW**, upon consideration of the First Interim Application of Attorney for Chapter 13 Debtor for Compensation and Reimbursement of Expenses, filed on April 29, 2024, Doc. 48 ("Application") filed by Mr. Carlo Sabatini, Esquire as Counsel for the Debtor ("Applicant"), in which the Applicant requested interim allowance of compensation in the amount of $11,869.25[1] and the reimbursement of expenses in the amount of $449.85 for the period June 13, 2022 to December 1, 2023;

**AND**, the Chapter 13 Trustee ("Trustee") filed an Objection to the Application on May 20, 2024, Doc. 49 ("Objection");

**AND**, the Applicant and Trustee entered into a Stipulation resolving the Objection, Doc. 52, whereby the Applicant agreed to reduce his fees by $3,354.50, thereby reducing the Application request to $8,514.75, plus expenses ("Stipulation")(*see* Doc. 57);[2]

---

[1] The Application lists a staggering 57.2 hours, prior to any discounts, billed to this consumer Chapter 13 case thus far. Mr. Sabatini's time alone totaled 18.5 hours billed at $415 per hour. There are approximately 35 total hours entered prior to the petition being filed. This Application is identified as interim and as such, Applicant could seek payment of additional sums.
[2] The Court appreciates the Trustee's obligation to identify improper or excessive billing entries by the Applicant and the Applicant's agreement to settle the disputes by the terms of the Stipulation. However, the Court, after consuming an inordinate amount of time on Applicant's fee applications, has concerns with regard to Applicant's ongoing billing practices in these routine Chapter 13 cases.

AA 211

**AND**, the Court having held a hearing on the Application on August 7, 2024[3] and the Applicant submitting a supplemental Brief and Affidavit on October 7, 2024 (Doc. 60, 61);

**AND**, based on Debtor's Schedules filed in this case, Debtor is married, employed as a cook at a local restaurant, and with his wife they have a total net monthly income of $4,543.42, monthly expenses of $4,119.36, leaving a monthly net income of $424.06.  Doc. 1 (Schedules I and J).  This net income is the monthly payment provided under the Debtor's 36-month Chapter 13 Plan for a total Plan payment of $15,266.16.  Doc. 5.  The Plan was confirmed by Order entered January 6, 2023.  Doc. 37;

**AND**, only six (6) proofs of claim were filed by creditors indicating a total of $56,796.44 of secured claims and $15,505.65 of unsecured claims;

**AND,** Applicant's original interim request for fees of $11,869.25 and reimbursement of expenses of $449.85 for a total of $12,319.10 would account for over 80% of the total plan payments which, after payment of Chapter 13 administrative costs, would leave no funds available for distribution to creditors;

**AND**, upon review of the case docket and the Applicant's submissions, the Court finding that this case is a standard or routine Chapter 13 case with no unique or complex issues[4] and that a reduction in the amount of allowed compensation is necessary due to charges for services that are non-billable administrative tasks, paralegal or secretarial duties that should have been billed at non-attorney rates, and for excessive time billed for certain tasks;

**AND**, as Applicant knows from prior hearings, for requests for compensation, the burden of proof rests on the applicant to establish that the fees earned are reasonable and necessary.  *Zolfo,*

---

[3] The Transcript of the hearing, Doc 62, shall be hereinafter referred to as "Tr." At the hearing, Mr. Sabatini appeared.  The Debtor did not appear.
[4] Mr. Sabatini agreed that the case was not complex, "I don't think that there's anything complex about the case."  Tr. at p. 8.

2

AA 212

*Cooper & Co. v. Sunbeam-Oster Co.*, 50 F.3d 253, 261 (3d Cir. 1995) (citing *In re Metro Transp. Co.*, 107 B.R. 50, 53 (E.D. Pa. 1989)); *In re Pochron*, 2022 WL 1085459, at *2 (Bankr. S.D. Ohio 2022); *In re Murray*, 2007 WL 2317523, at *2 (Bankr. E.D. Pa. 2007). "This burden is not to be taken lightly, especially given that every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors or use by [the] debtor." *In re Pettibone Corp.*, 74 B.R. 293, 299 (Bankr. N.D. Ill. 1987) (citing *In re Hotel Associates, Inc.*, 15 B.R. 487, 488 (Bankr. E.D. Pa. 1981));

**AND**, based on and incorporating the Court's legal analysis in *In re Badyrka*, 2022 WL 4656034 (Bankr. M.D. Pa. 2022), *In re Thomas*, 2023 WL 6885827 (Bankr. M.D. Pa. 2023), *In re Beckhorn*, Case No. 5:21-0849-MJC (Bankr. M.D. Pa. November 17, 2022) and *In re Grove*, Case No. 5:20-0698-MJC (Bankr. M.D. Pa. March 31, 2023);

**AND**, this District having set a Presumptively Reasonable Fee ("PRF") for routine Chapter 13 cases of $4,500, L.B.R. 2016-2 (c), which Courts have used as a "starting point" to what should be considered a "reasonable" fee in a routine Chapter 13 case. *See In re Schuman*, 2013 WL 1195279, at *6-7 (Bankr. N.D.N.Y. 2013) (describing presumptive fee as "pre-calculated lodestar" and utilizing it as a starting point for review of lodestar fee applications); [5]

**AND**, the Court finding that it is not required to make a line by line analysis of the fee application, *see In re 388 Route 22 Readington Holdings LLC*, 2023 WL 4249266, at *3 (3d Cir. 2023); *Badyrka*, 2022 WL 4656034, at *9; *In re McKeeman v. Laughlin,* 236 B.R. 667, 672 (B.A.P. 8th Cir. 1999) ("When ... a case presents routine chapter 13 matters, the court may review the fees requested in light of fees typically charged, and may reduce the requested fee accordingly.

---

[5] The PRF in this District was increased to $5,000 effective for cases filed on or after October 1, 2024.

3

It is not necessary for the court to find that the time spent on any given task was excessive before reducing the award.");

**AND,** at the August 7, 2024 hearing, the Court referenced several entries that appeared to be excessive, non-billable administrative or overhead.[6]  The Court asked Applicant what services were performed on the following billing entries: 6/23/22 - 1.7 hours; 6/29/22 - 1.7 hours; 7/1/22 - 1.7 hours.  Applicant was unable to support these entries and admitted that he was not able to meet his burden;[7]

**AND,** accordingly, the Court shall apply a forty percent (40%) reduction to the Application, *see In re Kern*, 2021 WL 3518806, at *5 (Bankr. D. N.J. 2021) ("If a court determines some of the time claimed by a party should be excluded, it may also use a percentage deduction as a practical means of trimming fat from a fee application." (*quoting In re Nicholas*, 496 B.R. 69, 76 (Bankr. E.D.N.Y. 2011)));[8]

It is hereby **ORDERED** that:

1. The Application is **GRANTED** in part and **DENIED** in part as set forth below.

2. Compensation for professional services on the Application is **ALLOWED** in favor of the Applicant in the amount of **$7,121.55**.

3. Reimbursement of expenses is **ALLOWED** in favor of the Applicant in the amount of **$449.85.**

---

[6] As discussed with Applicant at the hearing, during this period, the Court did approve approximately twelve (12) of Applicant's fee applications in other cases where the Trustee objected.  Tr. at 5-6.
[7] Applicant indicated "I'm not carrying my burden of showing where the time is being spent preparing the schedules" and "I recognize that I'm not meeting my burden …" Tr. at 9, 20.  When given additional post-hearing time, Applicant indicated that he was "unable to determine precisely what aspect of schedule preparation or plan review was being conducted on those dates."  Doc. 61, at ¶44.
[8] This reduction still provides Applicant with a fee substantially in excess of the PRF and what most other practitioners in this District charge in a routine consumer Chapter 13 case.

AA 214

4.  To the extent the Applicant wishes to move for reconsideration of this Order, the

    Applicant may do so and the Court may hold a hearing, if requested.

By the Court,

_____
Mark J. Conway, Bankruptcy Judge
Dated: September 30, 2025

5

AA 215

**Itemized Listing of Services**

| Date | Description | Initials | Rate | Time | Amount | Disc. | Aggie | Proposal |
|------|-------------|----------|------|------|--------|-------|-------|----------|
| 06/13/2022 | Meet with clients for consultataion. | CS | 415 | 0.80 | 332.00 | -166.00 | -166.00 | -166.00 |
| 06/13/2022 | Meeting with client concerning budget and the numbers looking like they won't work for a bankruptcy case. | CS | 415 | 0.80 | 332.00 | 0.00 | 0.00 | 0.00 |
| 06/13/2022 | Third meeting with client regarding amended budget numbers. Discuss at length living within those numbers. Discuss bills that bankruptcy won't discharge. Discuss filing timeline. | CS | 415 | 0.40 | 166.00 | 0.00 | 0.00 | 0.00 |
| 06/13/2022 | Receive and review email from client attaching budget. | ASW | 150 | 0.10 | 15.00 | -10.00 | -15.00 | -15.00 |
| 06/17/2022 | Call from client. She had questions concerning taxes. She said that she believes the tax information she gave us is incorrect. Provided correct tax information. | ASW | 150 | 0.30 | 45.00 | 0.00 | -45.00 | -30.00 |
| 06/18/2022 | Receive and review documentation needed to prepare schedules from client. Organize documentation and add to client's electronic file. | TLB | 135 | 0.30 | 40.50 | -25.50 | -25.50 | -25.50 |
| 06/18/2022 | Receive and review documentation needed to prepare schedules from client. Organize documentation and add to client's electronic file. | TLB | 135 | 1.40 | 189.00 | -119.00 | -119.00 | -119.00 |
| 06/19/2022 | Receive and review documentation needed to prepare schedules from client. Organize documentation and add to client's electronic file. | TLB | 135 | 1.80 | 243.00 | -153.00 | -153.00 | -153.00 |
| 06/19/2022 | Prepare petition and schedules. | TLB | 135 | 1.90 | 256.50 | 0.00 | -256.50 | 0.00 |
| 06/20/2022 | Call from client. Answer questions concerning life insurance policy, social security document, garbage bill, listing assets in bankruptcy case. | ASW | 150 | 0.20 | 30.00 | 0.00 | 0.00 | 0.00 |
| 06/20/2022 | Call from client regarding life insurance policy. | ASW | 150 | 0.10 | 15.00 | 0.00 | 0.00 | 0.00 |
| 06/20/2022 | Continue preparing schedules. | TLB | 135 | 0.70 | 94.50 | 0.00 | -94.50 | 0.00 |
| 06/21/2022 | Do background check. Review file concerning filing timeline and issues with filing now. | ASW | 150 | 0.20 | 30.00 | 0.00 | 0.00 | 0.00 |
| 06/21/2022 | Work with I, J, MT, and Plan. | ASW | 150 | 1.20 | 180.00 | 0.00 | -180.00 | 0.00 |
| 06/21/2022 | Continue preparing schedules. | TLB | 135 | 1.10 | 148.50 | 0.00 | -148.50 | 0.00 |
| 06/22/2022 | Continue preparing schedules. | TLB | 135 | 0.40 | 54.00 | 0.00 | -54.00 | 0.00 |
| 06/23/2022 | Work with I, J, and MT. Prepare plan. | CS | 415 | 1.70 | 705.50 | 0.00 | -705.50 | 0.00 |
| 06/23/2022 | Continue preparing schedules. | TLB | 135 | 0.40 | 54.00 | 0.00 | -54.00 | 0.00 |
| 06/24/2022 | Call from client regarding UGI bill. | ASW | 150 | 0.20 | 30.00 | 0.00 | -30.00 | -20.00 |
| 06/24/2022 | Adjust I and MT, and special provisions attachment in plan. | ASW | 150 | 0.50 | 75.00 | 0.00 | -75.00 | 0.00 |
| 06/24/2022 | Receive and review documentation needed to prepare schedules from client. Organize documentation and add to client's electronic file. | TLB | 135 | 0.10 | 13.50 | -8.50 | -8.50 | -8.50 |
| 06/25/2022 | Continue preparing schedules. | TLB | 135 | 1.20 | 162.00 | 0.00 | -162.00 | -162.00 |
| 06/26/2022 | Continue preparing schedules. | TLB | 135 | 1.80 | 243.00 | 0.00 | -243.00 | -243.00 |
| 06/26/2022 | Continue preparing schedules. | TLB | 135 | 1.50 | 202.50 | 0.00 | -202.50 | -202.50 |
| 06/29/2022 | Meet with paralegal to go over schedules, work on plan calculations, and address issues that she had flagged for me. | CS | 415 | 0.60 | 249.00 | 0.00 | -249.00 | -124.50 |
| 06/29/2022 | Continue preparing schedules. | TLB | 135 | 1.70 | 229.50 | 0.00 | -229.50 | -229.50 |
| 06/30/2022 | Continue preparing schedules. | TLB | 135 | 1.80 | 243.00 | 0.00 | -243.00 | -243.00 |
| 07/01/2022 | Continue preparing schedules. | ASW | 150 | 2.70 | 405.00 | 0.00 | -405.00 | -405.00 |

AA 216

| Date | Description | | | | | | | |
|------|-------------|---|---|---|---|---|---|---|
| 07/01/2022 | Draft post-filing instructions for client, draft plan attachment and complete my review of petition and schedules. | CS | 415 | 1.70 | 705.50 | 0.00 | -705.50 | -705.50 |
| 07/01/2022 | Continue preparing schedules. | TLB | 135 | **0.30** | 40.50 | 0.00 | -40.50 | 0.00 |
| 07/01/2022 | Call to client to ask for information regarding taxes, wage garnishment, and life insurance. | TLB | 135 | 0.40 | 54.00 | 0.00 | -54.00 | -54.00 |
| 07/01/2022 | Receive, review, and respond to email from Leininger with Portnoff Law garbage fee balances. | CS | 415 | 0.10 | 41.50 | 0.00 | 0.00 | 0.00 |
| 07/02/2022 | Generate, review, and revise schedules. | TLB | 135 | 0.40 | 54.00 | 0.00 | -54.00 | -54.00 |
| 07/03/2022 | Zoom meeting with client. Discussed the difficulty they would have in making a payment large enough to cure the garbage fees arrears. They are going to re-consider and we will meet again. | CS | 415 | 0.10 | 41.50 | 0.00 | 0.00 | 0.00 |
| 07/05/2022 | Email to Schuman regarding deposition continuance. | CS | 415 | 0.10 | 41.50 | 0.00 | -26.50 | -26.50 |
| 07/05/2022 | Receive, review, and respond to email from Hannum regarding rescheduling deposition and allowing 30- day extension to respond. | CS | 415 | 0.10 | 41.50 | 0.00 | -26.50 | -26.50 |
| 07/05/2022 | Receive, review, and respond to email from Leininger with breakdown of garbage debts. | CS | 415 | 0.10 | 41.50 | 0.00 | 0.00 | 0.00 |
| 07/11/2022 | Receive and review email from client with collection letter. | CS | 415 | 0.10 | 41.50 | 0.00 | -41.50 | -41.50 |
| 07/12/2022 | Prep objection in Midland v. Dominic Decantis. | ASW | 150 | 0.10 | 15.00 | 0.00 | 0.00 | 0.00 |
| 07/12/2022 | Review message from client. Call to client. No answer, leave message regarding plan payment. | CS | 415 | 0.10 | 41.50 | 0.00 | -41.50 | -41.50 |
| 07/12/2022 | Return call from client concerning Sarah's new employment and what that means for the bankruptcy. Client asked about letter he received. Discuss the same. Discuss garbage bill and timeline for filing. | CS | 415 | 0.20 | 83.00 | 0.00 | 0.00 | 0.00 |
| 07/12/2022 | Receive and review email from Dugan attaching breakdown of delinquencies and interest. | CS | 415 | 0.10 | 41.50 | 0.00 | -41.50 | 0.00 |
| 07/12/2022 | Email to Dugan regarding delinquencies and interest accrued. | CS | 415 | 0.10 | 41.50 | 0.00 | -41.50 | 0.00 |
| 07/18/2022 | Prep letter to clerk with objection. | ASW | 150 | 0.10 | 15.00 | -10.00 | -10.00 | -10.00 |
| 07/20/2022 | Receive and review email from client regarding Honda. He wants to call this company to find out if this is related to the deposition. | ASW | 150 | 0.10 | 15.00 | 0.00 | -15.00 | -15.00 |
| 07/20/2022 | Call to client re phone message. He is going to go to court tomorrow to get a copy of the complaint and figure out the deal with Honda and Bank of America. They are to call us tomorrow to let us know what happened. | CS | 415 | 0.20 | 83.00 | 0.00 | 0.00 | 0.00 |
| 07/20/2022 | Email to Dugan concerning delinquencies. | CS | 415 | 0.10 | 41.50 | 0.00 | 0.00 | 0.00 |
| 07/21/2022 | Receive, review, and respond to email from Dugan regarding interest on liens. | CS | 415 | 0.10 | 41.50 | 0.00 | 0.00 | 0.00 |
| 07/21/2022 | Email to Dugan regarding interest accruing. | CS | 415 | 0.10 | 41.50 | -41.50 | -41.50 | -41.50 |
| 07/22/2022 | Call to client to find out how he made out at court. No answer, leave message. | ASW | 150 | 0.10 | 15.00 | -15.00 | -15.00 | -15.00 |
| 07/25/2022 | Receive and review email from client regarding case search. Review file. Email to client with specific instructions. | ASW | 150 | 0.10 | 15.00 | 0.00 | 0.00 | 0.00 |
| 07/27/2022 | Email to client regarding update concerning complaint from Judge Gallaghers. | ASW | 150 | 0.10 | 15.00 | -15.00 | -15.00 | -15.00 |
| 07/27/2022 | Email to Dugan asking after response to two emails. | CS | 415 | 0.10 | 41.50 | 0.00 | -41.50 | 0.00 |

AA 217

| Date | Description | | | | | | | |
|------|-------------|---|---|---|---|---|---|---|
| 07/28/2022 | Receive and review email from Dugan regarding waiting on a response from his client and probably getting back to me in a couple of days. | CS | 415 | 0.10 | 41.50 | -41.50 | -41.50 | -41.50 |
| 07/29/2022 | Receive, review, and respond to email from client regarding no update on complaint yet. | ASW | 150 | 0.10 | 15.00 | -15.00 | -15.00 | -15.00 |
| 08/01/2022 | Receive and review phone message from client regarding magistrate's office records. Call to client. No answer, leave message. | CS | 415 | 0.10 | 41.50 | 0.00 | -41.50 | -41.50 |
| 08/01/2022 | Return call from client. Discuss Sarah's employment. Discuss judgment against client. | CS | 415 | 0.10 | 41.50 | 0.00 | 0.00 | 0.00 |
| 08/09/2022 | Review new plan calculations. | CS | 415 | 0.10 | 41.50 | 0.00 | 0.00 | 0.00 |
| 08/14/2022 | Email to Dugan to follow up on garbage debts. | CS | 415 | 0.10 | 41.50 | 0.00 | -41.50 | 0.00 |
| 08/15/2022 | Receive and review email from Dugan regarding waiving interest on penalty amounts and concerning liens. | CS | 415 | 0.10 | 41.50 | 0.00 | -41.50 | 0.00 |
| 08/15/2022 | Email to Dugan regarding interest, liens, and total balance due. | CS | 415 | 0.10 | 41.50 | -41.50 | -41.50 | -41.50 |
| 08/17/2022 | Email to client asking after stub. | ASW | 150 | 0.10 | 15.00 | -10.00 | -10.00 | -10.00 |
| 08/23/2022 | Receive and review phone message from Jim Wood at Portnoff. Call to Jim Wood. He handles the bankruptcy cases for Portnoff. He is going to send me a case that says that garbage fees count as a municipal claim. He says that § 7101's definition of municipal claim would cover garbage service. (Reading the definition, there is a decent argument either way.) He offered to waive the interest on the penalty amounts. I said I'm not OK with them charging that improperly, and then just offering to waive it when they are challenged. He'll get me the authority for that. He also said that he thinks there is a case pending on this issue in Scranton and that he'll find out and send that information to me as well. | CS | 415 | 0.30 | 124.50 | 0.00 | 0.00 | 0.00 |
| 08/23/2022 | Read statute. Email to ASW with instructions. | CS | 415 | 0.10 | 41.50 | 0.00 | -41.50 | 0.00 |
| 08/24/2022 | Email to client asking after stub. | ASW | 150 | 0.10 | 15.00 | -10.00 | -10.00 | -10.00 |
| 08/26/2022 | Receive, review, and respond to email from Wood regarding doing an investigation and getting back to us next week. | CS | 415 | 0.10 | 41.50 | -41.50 | -41.50 | -41.50 |
| 09/01/2022 | Review mortgage modification paperwork. | CS | 415 | 0.10 | 41.50 | 0.00 | 0.00 | 0.00 |
| 09/04/2022 | Receive and review email from Wood. Read Portnoff's explanation of authority to charge interest on penalty portion of claim for garbage fees. Read cases Portnoff cited. Analyze and approve calculations. They offered to waive $428.45 in interest. We also need the plan to provide for any trash fees they owe for 2021 and 2022 since Portnoff isn't collecting those. | CS | 415 | 0.40 | 166.00 | 0.00 | 0.00 | 0.00 |
| 09/04/2022 | Email to Wood regarding plan presently and asking after years 2018-2020. | CS | 415 | 0.10 | 41.50 | 0.00 | 0.00 | 0.00 |
| 09/06/2022 | Edit to schedule J and Plan. . | CS | 415 | 0.10 | 41.50 | 0.00 | -26.50 | -26.50 |
| 09/07/2022 | Received and review email from James Wood. Review the plan. Email to ASW. | CS | 415 | 0.10 | 41.50 | 0.00 | 0.00 | 0.00 |
| 09/21/2022 | Conference with CS and client regarding information to prepare case. | TLB | 135 | 1.00 | 135.00 | 0.00 | 0.00 | 0.00 |
| 09/21/2022 | Meet with paralegal to finalize schedules and plan. | CS | 415 | 0.60 | 249.00 | 0.00 | 0.00 | -249.00 |
| 09/21/2022 | Meeting with client to finalize bankruptcy documentation. | CS | 415 | 0.60 | 249.00 | 0.00 | 0.00 | 0.00 |
| 09/22/2022 | Conference with CS and client to review petition. | TLB | 135 | 1.90 | 256.50 | 0.00 | 0.00 | -81.00 |

AA 218

| Date | Description | Staff | Rate | Hours | Amount | | |
|------|-------------|-------|------|-------|--------|---|---|
| 09/22/2022 | Prepare petition for signatures and send to client and CS. | TLB | 135 | 0.20 | 27.00 | 0.00 | 0.00 | 0.00 |
| 09/22/2022 | File petition and schedules and additional documents. | TLB | 135 | 0.50 | 67.50 | 0.00 | 0.00 | 0.00 |
| 09/23/2022 | Prepare wage attachment motion, order, certificate of service, and letter to employer. | ASW | 150 | 0.20 | 30.00 | 0.00 | 0.00 | 0.00 |
| 09/23/2022 | File motion for wage attachment. | ASW | 150 | 0.10 | 15.00 | 0.00 | 0.00 | 0.00 |
| 09/24/2022 | Receive and review voicemail from client regarding IRA. Called client. Discussed savings account. Discuss system to ensure that mortgage payments are made on time. | CS | 415 | 0.20 | 83.00 | 0.00 | 0.00 | 0.00 |
| 09/26/2022 | Call from client re mortgage payment and automatic billpay through bank. | CS | 415 | 0.30 | 124.50 | 0.00 | 0.00 | 0.00 |
| 09/26/2022 | Receive, review, and respond to message from client regarding cashier's check and tracking from USPS, new savings account information, and automatic transfer request information. | TLB | 135 | 0.10 | 13.50 | 0.00 | 0.00 | 0.00 |
| 09/27/2022 | Send documents required by trustee for 341 meeting to trustee. | ASW | 150 | 0.10 | 15.00 | -10.00 | -10.00 | -10.00 |
| 09/28/2022 | Receive, review, and respond to email from Marcy at 1stopbk regarding certificate having incorrect case number. | ASW | 150 | 0.10 | 15.00 | 0.00 | 0.00 | 0.00 |
| 09/28/2022 | Call from client. She said they thought they put the wrong case number on the check to the trustee. Review trustee portal. Payment was received. Inform client. | ASW | 150 | 0.10 | 15.00 | 0.00 | 0.00 | 0.00 |
| 09/28/2022 | Receive and review Notice of Chapter 13 Bankruptcy Case. (Calendar hearing, email to client with hearing notice and instructions, enter 341 meeting/trustee information into file) | ASW | 150 | 0.30 | 45.00 | -30.00 | -30.00 | -30.00 |
| 09/28/2022 | Receive and review BNC certificate of notice re 341 notice. No undeliverable recipients. NAN. | ASW | 150 | 0.10 | 15.00 | -15.00 | -15.00 | -15.00 |
| 09/29/2022 | Receive and review objection to plan. Call to client regarding mortgage company filing objection. Discuss modification payments and discrepancy. | CS | 415 | 0.10 | 41.50 | 0.00 | 0.00 | 0.00 |
| 09/29/2022 | Call to Attorney Daniel Jones at Stern & Eisenberg. Discuss objection and plan. Ask Jones to withdraw objection. Discuss mortgage payments, modification, and discrepancy with numbers. I said I would wait a week to see the proof of claim and to see if he withdraws his objection. If they don't withdraw, I would want his clients to show the authority for their objection. | CS | 415 | 0.40 | 166.00 | 0.00 | 0.00 | 0.00 |
| 09/30/2022 | Receive, review, and respond to email from Marcy at 1stopbk regarding filing certificate. | ASW | 150 | 0.10 | 15.00 | -15.00 | -15.00 | -15.00 |
| 09/30/2022 | Receive and review email from Jones regarding the handling of mortgage claim in a previous case and attaching Decantis mortgage claim. | CS | 415 | 0.10 | 41.50 | 0.00 | -41.50 | 0.00 |
| 09/30/2022 | Receive and review email from client regarding paperwork they received from the mortgage company. | CS | 415 | 0.10 | 41.50 | 0.00 | -41.50 | 0.00 |

AA 219

| Date | Description | Staff | Rate | Hours | Amount | | | |
|---|---|---|---|---|---|---|---|---|
| 10/03/2022 | Call from client regarding mortgage payment change and amount to pay mortgage company. | ASW | 150 | 0.10 | 15.00 | 0.00 | 0.00 | 0.00 |
| 10/03/2022 | Receive and review letter from Select Portfolio Servicing regarding representation. | ASW | 150 | 0.10 | 15.00 | 0.00 | -15.00 | 0.00 |
| 10/03/2022 | Analyze proof of claim 1 filed on the docket. | ASW | 150 | 0.20 | 30.00 | 0.00 | -15.00 | -15.00 |
| 10/04/2022 | Receive and review order granting wage attachment. | ASW | 150 | 0.10 | 15.00 | -15.00 | -15.00 | -15.00 |
| 10/04/2022 | Analyze proof of claim 2 filed on the docket. | ASW | 150 | 0.20 | 30.00 | 0.00 | -15.00 | -15.00 |
| 10/04/2022 | Analyze proof of claim 3 filed on the docket. Prep new payment address letter to client. | ASW | 150 | 0.20 | 30.00 | 0.00 | -15.00 | -15.00 |
| 10/04/2022 | Receive and review bnc certificate of notice for order granting wage attachment. Employer served. NAN. | ASW | 150 | 0.10 | 15.00 | -15.00 | -15.00 | -15.00 |
| 10/04/2022 | Call to client's employer regarding wage garnishment and bankruptcy plan payments. | CS | 415 | 0.30 | 124.50 | 0.00 | 0.00 | 0.00 |
| 10/04/2022 | Review paralegal's analysis of claim 3. Mortgage looks current. They have unapplied funds. If those funds were applied, it would be current. They did a recalculation with the escrow analysis and I think that is the issue here. | CS | 415 | 0.20 | 83.00 | 0.00 | -41.50 | -41.50 |
| 10/04/2022 | Receive and review paralegal's analysis of claim 1 filed on the docket. No letter needed. | CS | 415 | 0.10 | 41.50 | 0.00 | -20.75 | -20.75 |
| 10/04/2022 | Receive and review paralegal's analysis of claim 2 filed on the docket. No letter needed. | CS | 415 | 0.10 | 41.50 | 0.00 | -20.75 | -20.75 |
| 10/05/2022 | Receive and review email from client confirming she made mortgage changes. | ASW | 150 | 0.10 | 15.00 | 0.00 | -15.00 | 0.00 |
| 10/06/2022 | Receive and review letter from Select Portfolio regarding lien subject to bankruptcy. | ASW | 150 | 0.10 | 15.00 | 0.00 | -15.00 | 0.00 |
| 10/06/2022 | Receive and review returned mail notice to Powerpay. Message to client regarding returned mail and asking for new address. | ASW | 150 | 0.10 | 15.00 | 0.00 | 0.00 | 0.00 |
| 10/12/2022 | Receive and review email from Jones regarding arrears and paying them outside of plan.  Analyze escrow calculations and interpretation of instructions for Form 401A and their argument that the intructions permit the escrow calculation. Call to opposing counsel. Discuss calculations, objection, and paying arrears. | CS | 415 | 0.50 | 207.50 | 0.00 | 0.00 | 0.00 |
| 10/21/2022 | Receive, review, and respond to email from client regarding wage attachment. | ASW | 150 | 0.10 | 15.00 | 0.00 | 0.00 | 0.00 |
| 10/22/2022 | Prepare Debtor's Motion for Sanctions Under Rule 9011 In Connection With Doc. 12. | CS | 415 | 1.20 | 498.00 | 0.00 | 0.00 | 0.00 |
| 10/22/2022 | Time for instructions to paralegal regarding finalizing and preparing the motions. | CS | 415 | 0.10 | 41.50 | -41.50 | -41.50 | -41.50 |
| 10/25/2022 | Review file and organize it in preparation for 341 meeting. | ASW | 150 | 0.90 | 135.00 | -90.00 | -135.00 | 0.00 |
| 10/25/2022 | Review file. Review plan. Prepare three letters to three companies serving plan. | ASW | 150 | 0.20 | 30.00 | 0.00 | 0.00 | 0.00 |
| 10/26/2022 | Prep letter with plan to fourth company (Midland Funding). | ASW | 150 | 0.10 | 15.00 | 0.00 | 0.00 | 0.00 |
| 10/26/2022 | Prepare 9011 motion for filing. | ASW | 150 | 0.20 | 30.00 | 0.00 | -30.00 | 0.00 |
| 10/27/2022 | Finish prepping 9011 motions. | ASW | 150 | 0.10 | 15.00 | 0.00 | -15.00 | 0.00 |

AA 220

| Date | Description | | | | | | |
|------|-------------|---|---|---|---|---|---|
| 10/27/2022 | Review claims for unexpected amounts or classifications and corresponding impact on plan. Confirm that all necessary claims have either been filed or that a task has been set to ensure filing. Set task if any claim needs future attention (e.g., objections/lien avoidance.) Draft summary memo to atty. | ASW | 150 | 0.90 | 135.00 | 0.00 | 0.00 | 0.00 |
| 10/27/2022 | Review 9011 motion from ASW. Edit proposed orders. | CS | 415 | 0.30 | 124.50 | 0.00 | -124.50 | 0.00 |
| 10/27/2022 | Email to Jones asking if he would accept service of 9011 motions. | CS | 415 | 0.10 | 41.50 | 0.00 | -26.50 | 0.00 |
| 10/28/2022 | Receive, review, and respond to email from client regarding zoom link for Monday. | ASW | 150 | 0.10 | 15.00 | -10.00 | -10.00 | -10.00 |
| 10/28/2022 | Receive and review email from Jones concerning not being authorized to accept service on client's behalf. | CS | 415 | 0.10 | 41.50 | -41.50 | -41.50 | -41.50 |
| 10/31/2022 | Prepare for 341 meeting. | CS | 415 | 0.20 | 83.00 | 0.00 | 0.00 | 0.00 |
| 10/31/2022 | Review ASW's analysis of claims filed and not yet filed. Advised that we do not need to file a not-yet- filed claim for Midland, and that we will not object to the unsecured status that is alleged on the claims of two holders of judicial liens. | CS | 415 | 0.10 | 41.50 | 0.00 | 0.00 | 0.00 |
| 10/31/2022 | Meeting with client to prepare for 341 meeting. . | CS | 415 | 0.30 | 124.50 | 0.00 | 0.00 | 0.00 |
| 10/31/2022 | Attend 341 Meeting. | CS | 415 | 0.50 | 207.50 | 0.00 | 0.00 | 0.00 |
| 10/31/2022 | Review and approve certificate of service for sanctions motions. | CS | 415 | 0.10 | 41.50 | -41.50 | -41.50 | -41.50 |
| 10/31/2022 | File certificate of service. | ASW | 150 | 0.10 | 15.00 | 0.00 | 0.00 | 0.00 |
| 10/31/2022 | Memo to ASW regarding notes for the file from 341 hearing and agreement reached with McHale regarding continuation of confirmation hearing. | CS | 415 | 0.10 | 41.50 | 0.00 | 0.00 | 0.00 |
| 10/31/2022 | Receive and review email from Kim DeSanto, legal secretary for Attorney Wood, regarding my client's plan to include the debt owed to the city of Scranton. | CS | 415 | 0.10 | 41.50 | 0.00 | -41.50 | 0.00 |
| 11/04/2022 | Receive, review, and respond to email from client regarding wage garnishment check being sent to them instead of trustee. | ASW | 150 | 0.10 | 15.00 | 0.00 | 0.00 | 0.00 |
| 11/04/2022 | Receive and review email from client regarding people who handle Dom's checks. | ASW | 150 | 0.10 | 15.00 | -15.00 | -15.00 | -15.00 |
| 11/04/2022 | Receive and review email from client regarding speaking to employer and having the situation cleared up. | ASW | 150 | 0.10 | 15.00 | -15.00 | -15.00 | -15.00 |
| 11/04/2022 | Analyze claim 4 filed on the docket. | ASW | 150 | 0.30 | 45.00 | 0.00 | -15.00 | -15.00 |
| 11/04/2022 | Receive and review certification that 341 meeting held and confirmation hearing date set. Calendar confirmation hearing date. Draft letter to client regarding the same. Draft pre-confirmation certification. Review file to confirm all tax returns required to be filed have been filed. | ASW | 150 | 0.30 | 45.00 | -30.00 | -30.00 | -30.00 |
| 11/04/2022 | Review paralegal's analysis of claim 4. | CS | 415 | 0.10 | 41.50 | 0.00 | 0.00 | 0.00 |
| 11/04/2022 | Receive and review objection to Ch 13 plan filed on docket. | CS | 415 | 0.10 | 41.50 | 0.00 | 0.00 | 0.00 |

AA 221

| 11/09/2022 | Receive and review signed pre-confirmation certification. File the same. | ASW | 150 | 0.10 | 15.00 | 0.00 | 0.00 | 0.00 |
| 11/09/2022 | Receive and review withdrawal of objection to confirmation of plan filed on docket. | CS | 415 | 0.10 | 41.50 | 0.00 | 0.00 | 0.00 |
| 11/15/2022 | Prepare Request for Payment. | ASW | 150 | 0.10 | 15.00 | 0.00 | 0.00 | 0.00 |
| 11/16/2022 | File Request for Payment. | ASW | 150 | 0.10 | 15.00 | 0.00 | 0.00 | 0.00 |
| 11/17/2022 | Receive and review message from client regarding wage garnishment. Call to accountant. Accountant prepares the checks and sends them to employer. Call to Dom. Dom was at work. Spoke with Natasha. Natasha will rectify error and mail the checks. | ASW | 150 | 0.20 | 30.00 | 0.00 | 0.00 | 0.00 |
| 11/22/2022 | Analyze proof of claim 5 filed on the docket. | ASW | 150 | 0.20 | 30.00 | 0.00 | -15.00 | -15.00 |
| 11/23/2022 | Call to Jones' office. Nick Miller, managing paralegal, said the continuance of the hearing is acceptable.<br>Email to trustee. | ASW | 150 | 0.10 | 15.00 | 0.00 | 0.00 | 0.00 |
| 11/23/2022 | Review paralegal's analysis of claim 5. | CS | 415 | 0.10 | 41.50 | 0.00 | 0.00 | 0.00 |
| 11/23/2022 | Receive and review email from trustee's regarding continuing confirmation hearing to 01/05. | ASW | 150 | 0.10 | 15.00 | -15.00 | -15.00 | -15.00 |
| 11/23/2022 | Receive email from trustee's office asking to continue the confirmation hearing. Review file. Reply to email and give consent to continuance. | CS | 415 | 0.10 | 41.50 | 0.00 | 0.00 | 0.00 |
| 11/23/2022 | Receive and review email from trustee's office regarding reaching out to attorney Jones and his return to office before the confirmation hearing. | CS | 415 | 0.10 | 41.50 | 0.00 | -41.50 | 0.00 |
| 11/28/2022 | Call to client to inform him he doesn't have to attend hearing tomorrow and that it is going to be continued to January. | ASW | 150 | 0.10 | 15.00 | -10.00 | -10.00 | -10.00 |
| 12/02/2022 | Analyze proof of claim 6 filed on the docket. Email analysis to CS. | ASW | 150 | 0.20 | 30.00 | 0.00 | -15.00 | -15.00 |
| 12/06/2022 | Email to Resurgent requesting documents upon which claim is based. | CS | 415 | 0.10 | 41.50 | 0.00 | -26.50 | -26.50 |
| 12/07/2022 | Receive and review notice of rescheduled confirmation hearing. | ASW | 150 | 0.10 | 15.00 | 0.00 | -15.00 | -15.00 |
| 12/13/2022 | Email to client with objection withdrawal, pre- confirmation certification of compliance, and cert of service of plan, and request for pmt filed on the docket. | ASW | 150 | 0.10 | 15.00 | -10.00 | -10.00 | -10.00 |
| 12/14/2022 | Receive and review withdrawal of claim 6 filed on the docket. | ASW | 150 | 0.10 | 15.00 | 0.00 | 0.00 | 0.00 |
| 12/19/2022 | Prepare lien avoidance motions (3). | ASW | 150 | 0.60 | 90.00 | 0.00 | 0.00 | 0.00 |
| 12/20/2022 | Review lien avoidance motions. | CS | 415 | 0.30 | 124.50 | 0.00 | -124.50 | 0.00 |
| 12/22/2022 | File and serve three motions to avoid liens. | ASW | 150 | 0.30 | 45.00 | 0.00 | -45.00 | 0.00 |
| 12/27/2022 | Review file to confirm there are no barriers to plan being confirmed. Call to client regarding delinquent payments. No answer, leave message. | ASW | 150 | 0.20 | 30.00 | 0.00 | 0.00 | 0.00 |
| 12/27/2022 | Email to McHale regarding entireties exemptions and whether the objection can be withdrawn. | CS | 415 | 0.10 | 41.50 | 0.00 | 0.00 | 0.00 |
| 12/28/2022 | Call with client regarding payments. | ASW | 150 | 0.10 | 15.00 | 0.00 | 0.00 | 0.00 |
| 12/28/2022 | Receive, review, and respond to email from client with receipt and tracking information for check to trustee. | ASW | 150 | 0.10 | 15.00 | -10.00 | -10.00 | -10.00 |
| 12/28/2022 | Receive and review email from client regarding wage garnishment. | ASW | 150 | 0.10 | 15.00 | -15.00 | -15.00 | -15.00 |
| 12/28/2022 | Second call with client regarding missed plan payments. | ASW | 150 | 0.20 | 30.00 | 0.00 | -30.00 | 0.00 |

AA 222

| Date | Description | | | | | | | |
|------|-------------|---|---|---|---|---|---|---|
| 12/29/2022 | Receive, review, and respond to email from client with overnight receipt for 10/21 check. | ASW | 150 | 0.10 | 15.00 | -15.00 | -15.00 | -15.00 |
| 12/29/2022 | Call from client regarding missing trustee payment and check. | ASW | 150 | 0.20 | 30.00 | 0.00 | -30.00 | 0.00 |
| 12/29/2022 | Receive and review email from Bowers at trustee's regarding updates on objections. | CS | 415 | 0.10 | 41.50 | 0.00 | 0.00 | 0.00 |
| 01/03/2023 | Receive and review withdrawal (objection to plan) filed on docket. | CS | 415 | 0.10 | 41.50 | -20.75 | -20.75 | -20.75 |
| 01/03/2023 | Call with client. He tried to track the trustee check down and they are assuming it got lost in the mail. They are going to call the accountant and cancel the check and then reissue a new check. | ASW | 150 | 0.10 | 15.00 | 0.00 | 0.00 | 0.00 |
| 01/04/2023 | Receive and review email from client with tracking for 12/02 check sent to trustee. | ASW | 150 | 0.10 | 15.00 | -15.00 | -15.00 | -15.00 |
| 01/04/2023 | Call to client to let him know he doesn't have to go to confirmation hearing. | ASW | 150 | 0.10 | 15.00 | -10.00 | -10.00 | -10.00 |
| 01/05/2023 | Receive and review email from client regarding sending 12/02 check. | ASW | 150 | 0.10 | 15.00 | -10.00 | -10.00 | -10.00 |
| 01/09/2023 | Email to client with withdrawal of objection and order confirming plan. | ASW | 150 | 0.10 | 15.00 | -10.00 | -10.00 | -10.00 |
| 01/13/2023 | Receive and review electronic notice of filing: Order Confirming Plan. Update file to reflect same. Serve order (prepare mailing, certificate of service, file the same.). | ASW | 150 | 0.30 | 45.00 | 0.00 | 0.00 | 0.00 |
| 01/18/2023 | Email to client with certificate of service filed on docket. | ASW | 150 | 0.10 | 15.00 | -10.00 | -10.00 | -10.00 |
| 02/07/2023 | Receive and review orders granting motion to avoid lien of LVNV (2) and Midland. Prepare letters to court asking for certified orders. | ASW | 150 | 0.20 | 30.00 | 0.00 | 0.00 | 0.00 |
| 02/10/2023 | Receive and review email from case administrator with certified orders avoiding liens. | CS | 415 | 0.10 | 41.50 | 0.00 | -41.50 | 0.00 |
| 05/04/2023 | Receive and review message from client asking about roof warranty and whether that was affected by the bankruptcy filing. | CS | 415 | 0.10 | 41.50 | 0.00 | -41.50 | 0.00 |
| 07/20/2023 | Review notice of mortgage payment change. Email to client regarding the same. | ASW | 150 | 0.50 | 75.00 | 0.00 | -75.00 | -75.00 |
| 09/27/2023 | Email to Jones regarding escrow calculation. | CS | 415 | 0.10 | 41.50 | 0.00 | 0.00 | 0.00 |
| 10/04/2023 | Email to Jones asking for response on escrow recalc. | CS | 415 | 0.10 | 41.50 | -41.50 | -41.50 | -41.50 |
| 10/04/2023 | Receive, review, and respond to email from Jones regarding insurance. | CS | 415 | 0.10 | 41.50 | 0.00 | 0.00 | 0.00 |
| 10/11/2023 | Email to Jones. to follow up on escrow recalculation. | CS | 415 | 0.10 | 41.50 | 0.00 | -26.50 | -26.50 |
| 10/11/2023 | Receive and review email from Jones regarding clients new policy. | CS | 415 | 0.10 | 41.50 | 0.00 | -41.50 | -41.50 |
| 10/30/2023 | Receive and review notice of mortgage payment change. | ASW | 150 | 0.20 | 30.00 | 0.00 | -30.00 | -30.00 |
| 12/01/2023 | Review notice of mortgage payment change. | ASW | 150 | 0.20 | 30.00 | 0.00 | -30.00 | -30.00 |
| | | | | Sub-total Fees: | 13,169.00 | -1299.75 | -7185.75 | -4654.25 |
| | | | | Net Fees After Discount: | | 11,869.25 | 5,983.25 | 8,514.75 |

**Expenses**

| Date | Description | Price | Units | Amount | Discount |
|------|-------------|-------|-------|--------|----------|
| 06/21/2022 | Accurint search. | 19.57 | 1 | 19.57 | 0.00 |
| 07/05/2022 | Best Case fee. | 8.00 | 1 | 8.00 | 0.00 |
| 09/23/2022 | Filing Fee. | 313.00 | 1 | 313.00 | 0.00 |
| 02/09/2023 | Filing Fee. | 11.00 | 3 | 33.00 | 0.00 |

AA 223

| 06/20/2022 | Fax Received from Dominic Decantis regarding Life Insurance Policy. | 0.50 | 0 | 0.05 | 0.00 |
|---|---|---|---|---|---|
| 06/20/2022 | Fax Received from The Baltimore Life Insurance Company regarding Dominic Decantis' Life Insurance Policy. | 0.50 | 0 | 0.05 | 0.00 |
| 06/20/2022 | Fax Received from The Baltimore Life Insurance Company regarding Dominic Decantis' Life Insurance Policy. | 0.50 | 0 | 0.05 | 0.00 |
| 12/22/2022 | Postage for motion to avoid lien to Midland Funding, LLC (Officer, Managing, or General Agent). | 1.00 | 8 | 8.09 | 0.00 |
| 12/22/2022 | Postage for motion to avoid lien to Midland Funding, LLC. | 1.00 | 8 | 8.09 | 0.00 |
| 12/22/2022 | Postage for motion to avoid lien to Hayt, Hayt & Landau, LLC (Officer, Managing, or General Agent). | 1.00 | 8 | 8.09 | 0.00 |
| 12/22/2022 | Postage for motion to avoid lien to Resurgent Capital services as Servicer for LVNV Funding, LLC (Second Lien). | 1.00 | 8 | 8.09 | 0.00 |
| 12/22/2022 | Postage for motion to avoid lien to LVNV Funding (Officer, Managing, or General Agent). | 1.00 | 8 | 8.09 | 0.00 |
| 12/22/2022 | Postage for motion to avoid lien to LVNV Funding (Officer, Managing, or General Agent)(Second Lien). | 1.00 | 8 | 8.09 | 0.00 |
| 12/22/2022 | Postage for motion to avoid lien to Resurgent Capital services as Servicer for LVNV Funding, LLC. | 1.00 | 8 | 8.09 | 0.00 |
| 01/13/2023 | Postage and cost for service of Order confirming plan to creditors | 1.00 | 20 | 19.50 | 0.00 |

*Total:* **449.85**

AA 224