# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| DOMINIC DECANTIS,<br>    Appellant | : | |
| | : | |
| vs. | : | |
| | : | |
| JACK N. ZAHAROPOULOS,<br>STANDING CHAPTER 13<br>TRUSTEE | : | |
| | : | |
| | : | |
| | : | |
|     Appellee | : | CASE NO. 3:25-cv-01927-KM |

On Appeal from the United States Bankruptcy Court
for the Middle District of Pennsylvania
in Case No. 5:22-bk-01826-MJC

---

## BRIEF OF APPELLEE, JACK N. ZAHAROPOULOS, STANDING
## CHAPTER 13 TRUSTEE, FOR THE MIDDLE DISTRICT
## OF PENNSYLVANIA

---

Agatha R. McHale, Esquire
Attorney for Appellee/Trustee
Jack N. Zaharopoulos
Standing Chapter 13 Trustee
8125 Adams Drive, Suite A
Hummelstown, PA  17036
(717) 566-6097

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................... i

TABLE OF AUTHORITIES............................................................................. ii

I.    STATEMENT OF THE CASE …................................................................ 1

II.   SUMMARY OF THE ARGUMENT …........................................................ 3

III.  ARGUMENT ............................................................................................ 7

STANDARD OF REVIEW…......................................................................... 7

A.    THE BANKRUPTCY COURT'S REDUCTION OF COUNSEL'S FEES BY 40% WAS PROPER, AS COURTS ARE PERMITTED DISCRETION TO USE PERCENTAGE DEDUCTION AS MEANS TO "TRIM" EXCESSIVE FEES………………………………………………….................................... 8

B.    THE BANKRUPTCY COURT PROPERLY USED THE PRESUMPTIVELY REASONABLE FEE STANDARD AS A BASELINE TO DETERMINE COUNSEL'S FEES AS EXCESSIVE……….................................. 15

C.    COUNSEL'S "CREDIBLE, UNCONTRAVERTED MARKET EVIDENCE" IS BASED ON STATISTICAL ANALYSES UNSUPPORTED BY EXPERT REVIEW AND IMMATERIAL TO THE COURT'S CONSIDERATION OF FEES........................................................................................................... 20

IV.   CONCLUSION .......................................................................................... 25

CERTIFICATE OF COMPLIANCE............................................................... 28

CERTIFICATE OF SERVICE........................................................................ 29

## TABLE OF AUTHORITIES

**Cases**

*Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.,*

57 F.3d 1215 (3d Cir. 1995) ............................................................................. 7

*Gunter v. Ridgewood Energy Corp.,*

223 F.3d 190 (3d Cir. 2000) …................................................................. 10, 12

*In re 388 Route 22 Readington Holdings LLC,*

No. 22-1143, 2023 U. S. App. LEXIS 16436 (3d Cir. June 29, 2023) …………. 8

*In re Badyrka,*

No. 5:20-03618-MJC, 2022 Bankr. LEXIS 2712 (Bankr. M.D. Pa. Sep. 20, 2022)

........................................................................................................... passim

*In re Beckhorn,*

No. 5:21-00849-MJC (Bankr. M.D. Pa. Nov. 17, 2022) ..................................... 2

*In re Busy Beaver Bldg. Ctrs.,*

19 F.3d 833 (3d Cir. 1994) .......................................................................... passim

*In re Carpenter,*

665 B.R. 89 (Bankr. M.D. Pa. 2024) .............................................................. 19

*In re Evans,*

153 B.R. 960 (Bankr. E.D. Pa. 1993) .............................................................. 26

*In re Jones,*

661 B.R. 922 (Bankr. E.D. Pa. 2024) .......................................................... passim

*In re Johannes,*

No. 5:20-01044-MJC, 2026 Bankr. LEXIS 119 (Bankr. M.D. Pa. Jan. 20, 2026)

.................................................................................................................. 2, 11

*In re Lewis,*

No.3:24CV387, 2026, LC 20019 (M.D. Pa. Jan. 23, 2026) ................................. 3

*In re Liebold,*

No. 5:24-00842-MJC (Bankr. M.D. Pa. Mar. 2, 2026) ......................................... 3

*In re Long,*

553 B.R. 266 (Bankr. M.D. Pa. 2016) ................................................................. 19

*In re RBGSC Inv. Corp.,*

253 B.R. 352 (E.D. Pa. 2000) ……..................................................................... 7

*In re Roberson,*

No. 5:22-02242-MJC, (Bankr. M.D. Pa. Mar. 27, 2024) ...................................... 3

*In re Ross,*

858 F. 3d 779 (3d Cir. 2017) ................................................................................ 8

iii

*In re Schuman,*

No. 12-60675, 2013 Bankr. LEXIS 1159 (Bankr. N.D.N.Y. Mar. 22, 2013)

.................................................................................................. 5, 16

*In re Strauss,*

No. 5:21-00995-MJC, 2023 Bankr. LEXIS 841 (Bankr. M.D. Pa. Mar. 31, 2023)

..................................................................................................8

*In re Stromberg,*

161 B.R. 510 (Bankr. D. Colo. 1993) .............................................18, 19

*In re Szymczak,*

246 B.R. 774 (Bankr. N.J. 2000) ........................................................ 11

*In re Vaughn,*

660 B.R. 827 (Bankr. S.D. Ohio 2024) ......................................... 6, 25

*LTL Mgmt., LLC v. Those Parties Listed on App. A. to Comply. (In re LTL Mgmt.,*

*LLC.)*

64 F. 4th 84 (3d Cir. 2023) .................................................................. 7

*Moreno v. City of Sacramento*,

534 F. 3d 1106 (9th Cir. 2008) .......................................................... 10

*Nicholas v. Oren (In re Nicholas),*

496 B.R. 69 (Bankr. E.D. N.Y. 2011) ………........................................... 8

iv

*Perdue v. Kenny A.*,

   559 U.S. 542 (2010) ................................................................................. 10

*Rode v. Dellarciprete*,

   892 F.2d 1177 (3d Cir. 1990) …….................................................................. 13

*Zolfo, Cooper & Co. v. Sunbeam-Oster Co.*,

   50 F.3d 253 (3d Cir. 1995) ................................................................. 20

**Statutes**

11 U.S.C. § 330 ................................................................... 19, 25, 26

11 U.S.C. § 330(a)(2) ...................................................................... passim

11 U.S.C. § 330(a)(3) ...................................................................... passim

11 U.S.C. § 330(a)(3)(F) ...................................................................... 17

**Rules**

M.D. Pa. Bankr. LBR 2016-2.................................................................. 5, 15, 16

## I.      STATEMENT OF THE CASE

Appellant's counsel Carlo Sabatini[1] filed an Interim Application of Attorney for Chapter 13 Debtor for Compensation and Reimbursement Expenses on April 29, 2024, requesting $11,869.25 in compensation and $449.85 in expenses totaling $12,319.10. (Att'y Fee Appl. Ex. A, at 2, Appellee's App. 3.) The Standing Chapter 13 Trustee objected to Counsel's application on May 20, 2024, in large part, because a bulk of those fees were to be paid through the chapter 13 plan and would underfund the Debtor's[2] plan by approximately $4,664.60. (Trustee Obj. Fee Appl. Ex. B, at 5, Appellee's App. 9.) Additionally, Counsel requested fees for services that Trustee averred were excessive in relation to the complexity of the tasks; fees that could have, and should have been delegated to a para-professional at a lesser rate; fees that were too vague to conclude how they benefited the Debtor's case; fees that appeared duplicative; and fees that were administrative in nature and not subject to billing. (*Id*. at 5-16, Appellee's App. 9-20.)

The parties presented for hearing on May 30, 2024, and the court continued the matter to July 25, 2024 to allow additional time to resolve the Trustee's objection. Subsequently, the parties filed a stipulation whereby Counsel agreed to a

---

[1] Carlo Sabatini will herein be referred to as "Counsel." Counsel represented Appellant in his Chapter 13 bankruptcy, his services of which are at the heart of this matter.
[2] Debtor referenced herein in bankruptcy court proceedings is Appellant in the instant case.

fee reduction of $3,354.50. (Stipulation Ex. C, at 1, Appellee's App. 23.) At the July 25, 2024 continued hearing, the bankruptcy court, well within its discretion, did not approve the stipulation and continued the hearing again to August 7, 2024.

At the August 7, 2024 hearing, the court permitted Counsel an additional continuance to allow more time for discovery. Counsel then filed a Brief in Support of Fee Application on October 7, 2024, which included statistics calculated by Counsel based on data received from the Trustee. (Att'y Br. Oct. 7, 2024 Ex. D, at 2, Appellee's App. 26.)

On September 30, 2025, the court entered an order granting in part, and denying in part, Counsel's fee application. (Ct. Order Ex. E, at 4, Appellee's App. 75.) The court reduced Counsel's fees by 40%, reasoning that, as presented, they were excessive for a routine chapter 13 case with few complex issues and Counsel failed to meet his burden to prove otherwise. (*Id.*) Counsel filed Notice of Appeal on October 13, 2025.

The bankruptcy court "…has written extensively regarding Mr. Sabatini's excessive fees and billing practices…." *In re Johannes*, No. 5:20-01044-MJC, 2026 Bankr. LEXIS 119, at *5 (Bankr. M.D. Pa. Jan. 20, 2026) (citing *In re Badyrka*, No. 5:20-03618-MJC, 2022 Bankr. LEXIS 2712 (Bankr. M.D. Pa. Sep. 20, 2022)); *See also,* Ct. Order, *In re Beckhorn*, No. 5:21-00849-MJC (Bankr.

2

M.D. Pa. Nov. 17, 2022), ECF No. 38; Ct. Order, *In re Roberson*, No. 5:22-02242-MJC, (Bankr. M.D. Pa. Mar. 27, 2024), ECF No. 58. *See also*, Ct. Order, *In re Liebold*, No. 5:24-00842-MJC (Bankr. M.D. Pa. Mar. 2, 2026), ECF No. 53. Additionally, the Honorable Julia K. Munley of this Court has recently had an opportunity to review Counsel's fees, affirming the bankruptcy court's findings there. *In re Lewis*, No.3:24CV387, 2026, LC 20019 (M.D. Pa. Jan. 23, 2026) (appeal docketed, No. 26-1389 (3d Cir. Feb. 21, 2026).

## II.    SUMMARY OF THE ARGUMENT

The bankruptcy court acted within its statutory discretion in reducing Counsel's fees by 40%, and accurately determined that his fees were excessive in relation to the complexity of the tasks. In its findings, the court correctly used the "Presumptively Reasonable Fee" (PRF) as its starting point, and did not err in determining that Counsel's self-created and self-serving statistical analysis did not meet his burden to prove that his fees were appropriate.

By way of background, Appellant Dominic DeCantis (represented by Counsel), filed a chapter 13 petition on September 22, 2022, and his plan of reorganization was confirmed on January 6, 2023. From start to finish, there were two resolved plan objections and three uncontested/routine motions for lien avoidance. As to proofs of claim filed in the case, there were four unsecured claims

3

and two secured claims. In all, this was a straightforward chapter 13 case which had few litigable matters and certainly no complex issues.

Counsel submitted his Disclosure of Compensation for Attorney for Debtor on September 22, 2022, which included timesheets representative of services billed. (Att'y. Fee Statement Ex. F, at 1, Appellee's App. 78.) In his first interim fee application, Counsel requested payments for fees totaling $11,869.25 with the rate summary below:

- Carlo Sabatini: 18.5 hours at $415 per hour: $7,677.50

- Ashley Werner: 17.8 hours at $150 per hour: $2,670.00

- Tiffany Bator: 20.9 hours at $135 per hour: $2,821.50

Counsel and his staff billed an overall total of 57.2 hours for this matter.

Trustee raised an objection to these fees because they were excessive in both the volume of hours expended on the case and the rates charged in relation to certain tasks. (Trustee Obj. Fee Appl. Ex. B, at 5-16, Appellee's App. 9-20.) Counsel and Trustee were able to reach an agreement by stipulation to reduce the fees by $3,354.50. (Stipulation Ex. C, at 1, Appellee's App. 23.) The court later, after a hearing on the matter and review of Counsel's supplemental brief and affidavit, further reduced Counsel's fees by an additional $1,033.20, which, including Counsel's concession, totaled $4,387.70. (Ct. Order Ex. E, at 4,

4

Appellee's App. 75.) It found, in its discretion under 11 U.S.C. § 330(a)(2), that the amount of time Counsel spent on many tasks was excessive and his burden to prove otherwise was not satisfied. (*Id*.) Therefore, the court reduced Counsel's fees to equal a 40% total deduction. Many courts have held that a percentage deduction is a practical way to "trim" fees and they are not required to review fee applications line-by-line (as discussed more fully below). Courts have additionally found that bankruptcy courts have a duty to protect the estate from excessive attorney fees. Accordingly, the court's 40% reduction of Counsel's fees in the present matter was within its discretion and proper. Moreover, the court provided a detailed, five-page order explaining why the deduction was appropriate here.

As part of its analysis that Counsel's fees were excessive, the court relied in part on the PRF standard, which was $4,500.00 in this district at the time of filing.[3] Multiple courts, including the bankruptcy court in the instant matter, rely on the PRF as a "starting point" of reasonable fee determination. Fittingly, the PRF has been described as the "pre-calculated lodestar." *In re Schuman*, No. 12-60675, 2013 Bankr. LEXIS 1159, at *1, (Bankr. N.D.N.Y. Mar. 22, 2013). Fees calculated in excess of the PRF are subject to the court's scrutiny, whereby it may make reductions it finds reasonably necessary based on factors provided in 11 U.S.C. §

---

[3] PRF is governed by L.B.R. 2016-2(c), and has increased to $5,000 for cases filed after October 1, 2024.

330(a)(3). Thus, the court's reliance on the PRF as the standard baseline in the instant matter is not arbitrary as Counsel asserts, as it plainly represents the standard of reasonable fees for chapter 13 cases in this district.

Counsel presented to the bankruptcy court, in support of his assertion that his fees are reasonable, statistical analyses that he created based upon information provided by the Trustee's office. These analyses were intended to defend his fees, averring that, as a higher-than-average rate attorney, he provides higher quality services for his clients, resulting in better outcomes. (Att'y Br. Oct. 7, 2024 Ex. D, at 3-4, Appellee's App. 26-27.) Counsel classifies "better results" as his clients paying less to their creditors. However, this assertion is at odds with the equitable remedy sought in bankruptcy court, and courts have found that better results for the debtor should not necessarily come at the detriment of the estate. *In re Vaughn*, 660 B.R. 827, 851 (Bankr. S.D. Ohio 2024). The bankruptcy court here, accordingly, did not credit Counsel's report as a consideration of its finding for or against him. (Ct. Order Ex. E, at 1-5, Appellee's App. 72-76.)

Trustee will not suppose as to reasons why the court did not credit this "evidence," but maintains that the self-generated equations designed to create results that favor Counsel, unverified by an expert third-party, are unfounded and should not have been considered by the court, which rightly held that Counsel

6

failed to meet his burden of proof. Counsel's "market evidence," again, a statistical analysis he created himself, is irrelevant to the statutory inquiry.

### III.   ARGUMENT

### Standard of Review

When a district court reviews a bankruptcy court's decisions, it reviews "its legal determinations *de novo*, its factual findings for clear error, and its exercise of discretion for abuse thereof." *In re RBGSC Inv. Corp.*, 253 B.R. 352, 362 (E.D. Pa. 2000). A *de novo* review requires a fresh review of the bankruptcy court's conclusions of law. *LTL Mgmt., LLC v. Those Parties Listed on Appendix A to Complaint (In re LTL Mgmt., LLC)*, 64 F.4th 84, 99 (3d Cir. 2023). As for clear error, "[i]t is the responsibility of an appellate court to accept the ultimate factual determination of the fact-finder unless that determination either is completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data." *Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.,* 57 F.3d 1215, 1223 (3d Cir.1995). Finally, an abuse of discretion exists when a decision "rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *LTL Mgmt.*, 64 F.4th at 99.

7

A.   THE BANKRUPTCY COURT'S REDUCTION OF COUNSEL'S FEES BY 40% WAS PROPER, AS COURTS ARE PERMITTED DISCRETION TO USE PERCENTAGE DEDUCTION AS MEANS TO "TRIM" EXCESSIVE FEES.

"If a court determines some of the time claimed by a party should be excluded, it may also use a percentage deduction as a practical means of trimming fat from a fee application." *Nicholas v. Oren (In re Nicholas)*, 496 B.R. 69, 76 (Bankr. E.D. N.Y. 2011); *see also In re Strauss*, No. 5:21-00995-MJC, 2023 Bankr. LEXIS 841 at *15, (Bankr. M.D. Pa. Mar. 31, 2023). "Because its time is precious, the reviewing court need only correct reasonably discernible abuses, not pin down to the nearest dollar the precise fee to which the professional is ideally entitled." *In re Busy Beaver Bldg. Ctrs.*, 19 F.3d 833, 845 (3d Cir. 1994).

"When reviewing for abuse of discretion, 'we grant less deference to court decisions that are unaccompanied by reasoning,' *In re Ross*, 858 F.3d 779, 786 (3d Cir. 2017), but adequate reasoning for a fee award need not be accompanied by a precise computational breakdown. Indeed, it is within a bankruptcy court's discretion to reduce fees by a percentage." *In re 388 Route 22 Readington Holdings LLC,* No. 22-1143, 2023 U. S. App. LEXIS 16436 at *9-10 (3d Cir. June 29, 2023).

Pursuant to §330(a)(2) of the Bankruptcy Code, "[t]he court may, *on its own motion* or on the motion of the United States Trustee, the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest,

8

award compensation that is less than the amount of compensation that is requested." 11 USCS § 330(a)(2) (emphasis added).

Accordingly, the court's discretion is subject to considerations under §330(a)(3):

> In determining the amount of reasonable compensation, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title [11 USCS §§ 101 et seq.];
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title [11 USCS §§ 101 et seq.].

11 USCS § 330(a)(3).

Relating to the court's discretion in the present matter, Trustee avers that Counsel incorrectly analogizes *Gunter v. Ridgewood Energy, Corp., Perdue v. Kenny A. ex rel. Winn,* and *Moreno v. City of Sacramento* with the facts here.[4] Notably, Counsel draws an improper inference that bankruptcy courts are obligated to limit their discretionary authority where it comes to attorney fees. However, the Third Circuit held inversely in *In re Busy Beaver:* "[b]ankruptcy cases do not, on the other hand, share a common bond with 'statutory fee' cases. In that genre of cases, the adversarial nature of the proceedings, the result of the losing parties' obligation to bear the burden of the fees awarded, guarantees that someone other than the court will closely review the fee request and will bring to the court's attention potential deficiencies, hence ensuring a more precise fee award." *In re Busy Beaver Bldg. Ctrs.*, 19 F.3d at 842. The Third Circuit further elaborated that, "[d]isagreeable as the chore may be, the bankruptcy court *must* protect the estate, lest overreaching attorneys or other professionals drain it of wealth which by right should inure to the benefit of unsecured creditors" (emphasis added). *Id.* at 27. Furthermore, "The court's responsibility to protect the estate is especially

---

[4] *Gunter* was a complicated class action arising from failed oil and gas investments seeking fees of $3.1 million, *Perdue* was a class action arising from constitutional and statutory claims seeking fees of $14 million, and *Moreno* was a due process challenge seeking $704,858.07 in fees. *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 191, (3d Cir. 2000); *Perdue v. Kenny A.*, 559 U.S. 542, 547, (2010), *Moreno v. City of Sacramento*, 534 F. 3d 1106, 1110 (9th Cir. 2008).

important in chapter 13 cases where there is little motivation for a debtor, or creditors, to object to a particular fee allowance." *In re Szymczak*, 246 B.R. 774, 778 (Bankr. N.J. 2000); *see also In re Johannes*, No. 5:20-01044-MJC, 2026 Bankr. LEXIS 119, at *4 (Bankr. M.D. Pa. Jan. 20, 2026).

Counsel's improper reliance on these cases to bolster his argument ignores the necessary duty of the bankruptcy court to protect debtors' estates. The court acted within its discretionary authority to reduce Counsel's fees, and thusly raised its concern as to why he was requesting fees nearly three times the PRF for a standard chapter 13 case:

> **Court**:         So, I can't understand, as being a former practitioner, how you can spend 50 or 60 hours on this case. In particular, I think the Trustee zeroed in on, as did I, there's 25, almost 26 hours of time just preparing the schedules, the means test, and the plan; that equated to $5,000.

(Ct. Tr. Aug. 7, 2024 Ex. G, at 6:21 – 7:1, Appellee's App. 93-94.)

> **Court**:         So, Mr. Sabatini, in all these cases that we've been going around and around on, I'm at a loss as to how you spent 26 hours preparing schedules. And maybe, I guess what I'm asking you is, can you identify what, in particular, makes this case so unique, or complicated, or complex to be almost double—or more than double, perhaps almost triple what is the $4,500 PRF in this District?

(*Id.* at 7:22 – 8:3, Appellee's App. 94-95.)

11

Moreover, Counsel leans on *Gunter v. Ridgewood Energy Corp.,* quoting; "[the court] must analyze the circumstances requiring the reduction and its relation to the fee, and it must make specific findings to support its action." (Appellant Br. Feb. 25, 2026 15, ECF No. 13 (quoting *Gunter*, 223 F.3d at 190).) It is the Trustee's position that the bankruptcy court did exactly that.

The court held a fifty-eight-minute hearing on August 7, 2024 where the Honorable Judge Conway repeatedly asked Counsel to provide explanation regarding specific fees. (Ct. Tr. Aug. 7, 2024 Ex. G, at 1-37, Appellee's App. 87-124.) (highlighting occurrences) Counsel concedes in his brief that he was unable to answer with specificity at the time, whereas the court permitted additional time to prepare the requested information. (*Id.* at 34:5–25, 35:1–14, Appellee's App.121-22.) The court then considered Counsel's brief that he filed on October 7, 2024. (Att'y Br. Oct. 7, 2024 Ex. D, at 1-13, Appellee's App. 24-37.)

Pursuant to Counsel's logic based on *Gunter*, the court should have drawn a correlation between its reasoning and the actual fees, as well as explicate its action. In its order issued September 30, 2025, the court was explicit in its findings and it clearly laid out its reasoning for the fee reduction. (Ct. Order Ex. E, at 1-5, Appellee's App. 71-76.) Trustee specifically cites where the court pinpointed areas of concern: "the Court referenced several entries that appeared to be excessive,

12

non-billable administrative or overhead. The Court asked Applicant what services were performed on the following billing entries: 6/23/22 - 1.7 hours; 6/29/22 - 1.7 hours; 7/1/22 - 1.7 hours. Applicant was unable to support these entries and admitted that he was not able to meet his burden." (*Id.* at 4, Appellee's App. 75.) Counsel's implication that the court's justification of its action is nebulous is properly rebutted by the court's order.

Counsel further avers that the bankruptcy court abused its discretion by requiring more details regarding his fees, and cites *Rode v. Dellarciprete*, where the Third Circuit reverses the district court finding that fee petitions must include, "adequate and specific descriptions of services and the time devoted to those services," stating further that, "[a] fee petition is required to be specific enough to allow the district court "to determine if the hours claimed are unreasonable for the work performed." *Rode v. Dellarciprete*, 892 F.2d 1177, 1180, 1190 (3d Cir. 1990).

The Trustee believes that, contrary to Counsel's argument, the court was not questioning the specificity of his fees. It posits that the court knew *what* the tasks were for which Counsel was charging, but wanted an explanation as to *what* he and his staff were doing that would justify *why* exorbitant time was spent on certain tasks, or *why* certain tasks were billed at an attorney rate where they could have

13

been billed at a lesser, para-professional rate. *In re Busy Beaver* explains that the court's role is to "prevent "*reasonably discernable* abuses" in a counsel's fee application." *Busy Beaver*, 19 F.3d at 845; See also *In re Jones*, 661 B.R. 922, 926 (Bankr. E.D. Pa. 2024). To prevent "discernable abuses," it stands to reason that the court would question fees it found concerning, which it did persistently at the August 7, 2024 hearing. (Ct. Tr. Aug. 7, 2024 Ex. G, at 1-37, Appellee's App. 87-124.) (highlighting occurrences)

Trustee further avers that Counsel's assertion that the court's explanation is "terse and conclusory" is unfounded. As previously noted, the court is granted authority under the Bankruptcy Code to "award compensation that is less than the amount of compensation that is requested." 11 USCS § 330(a)(2). Additionally, the court's order was specific as to its findings, and, "terse" as Counsel may find them, they were adeptly supported by relevant caselaw and facts.

Accordingly, Trustee asserts that the bankruptcy court acted within its discretionary authority to make a percentage reduction of Counsel's fees, and 40% was properly deducted.

14

B.    THE BANKRUPTCY COURT PROPERLY USED THE PRESUMPTIVELY REASONABLE FEE STANDARD AS A BASELINE TO DETERMINE COUNSEL'S FEES AS EXCESSIVE.

Local Bankruptcy Rule 2016-2 provides the framework for the attorney compensation for chapter 13 cases in this district.:

> a) General Rule. This rule applies to compensation of Debtors' Attorneys in all chapter 13 cases. Attorneys may be compensated in one of two ways: (i) hourly billing (the "Lodestar" method) (L.B.R. 2016-2(b)); or (ii) accepting the "Presumptively Reasonable Fee" (L.B.R. 2016-2(c)). The attorney for the debtor must indicate in the district plan (L.B.F. 3015-1) whether the debtor and counsel have agreed that the attorney will be compensated under either the Lodestar fee or the Presumptively Reasonable Fee. After the petition is filed, an attorney may not receive payment of fees except through the chapter 13 plan, unless payment is otherwise approved by the Court.
>
> (b) Lodestar fee applications. A Lodestar fee application must comply with L.B.R. 2016-1 but may exclude the information required under L.B.R. 2016-1(a)(2) and (a)(8). A model Lodestar fee application form is set forth in L.B.F. 2016-2(b).
>
> (c) Presumptively Reasonable Fee.
>
> (1) Except as otherwise provided in this subsection, an attorney may charge a Presumptively Reasonable Fee not to exceed $5,000.00 that includes all legal services rendered by the attorney through the conclusion of the case.

M.D. Pa. Bankr. LBR 2016-2.

The Eastern District of Pennsylvania Bankruptcy Court (like many courts) also uses a PRF for chapter 13 cases. There, the bankruptcy court explained the PRF in *In re Jones*:

15

> The Local Rules of this District set forth certain "no look" fee amounts which dictate the manner in which fee applications are analyzed and approved. L.B.R. 2016-3(a)(1)-(2). To the extent that counsel seeks fees either at or below the "no look" amounts in an above or below median case, a short form application which does not include time sheets may be filed or counsel can seek approval through the confirmation process by including a certification of the fees in the form plan. *Id.* Where counsel seeks fees above the "no look" amounts in an above or below median case, counsel must "file a long form application that conforms substantially to [Local Bankruptcy Form] 2016-3B." *Id.* at (a)(3). Unlike other Districts, the "no-look" fee threshold under the Local Rules does not act as a floor or ceiling. *See id.* at (a)(1)-(3). Rather, **the "no-look" amount merely acts as a guidepost for this Court when assessing reasonable fees**."

*In re Jones*, 661 B.R. at 925 (emphasis added).

The Northern District of New York bankruptcy court in *In re Schuman* provided analysis for how the PRF is derived: "…to set the presumptive fee, the court employed the 'prevailing rationale' or 'lodestar' approach of determining what services are customary and necessary, the amount of time reasonably expended to complete such services, and the reasonable hourly rate for those performing the tasks. The court then multiplied the time that should be spent by the rate to arrive at the presumptive fee. This approach can be described as a 'pre-calculated lodestar.'" *In re Schuman*, 2013 Bankr. LEXIS 1159 at *1.

The Trustee avers that the court in the instant matter was proper in its use of the PRF as a guideline for determining Counsel's fees as excessive. Specifically,

16

Trustee believes that Counsel's analysis of § 330(a)(3)(F) of the bankruptcy code is incorrectly grounded. Counsel argues that the Bankruptcy Code instructs that courts consider "whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title." 11 U.S.C. § 330(a)(3)(F). It appears that Counsel is interpreting this to mean that the court should compare whether his requested fees in the amount of $11,869.25 are reasonable compared to, in total, what attorneys in other areas of practice would charge clients. If the statute is analyzed so broadly by comparison here, then undeniably there are countless examples where other attorneys charged their clients at least $11,000. However, Counsel skips integral portions of the same analysis to draw his conclusion. *In re Busy Beaver* provides that; "because § 330(a) does not entitle debtors' attorneys to any <u>higher</u> compensation than that earned by non-bankruptcy attorneys, *In re Manoa Fin. Co.*, 853 F.2d at 690, the court should review a fee application *to ensure the applicant exercises the same "billing judgment" as do non-bankruptcy attorneys* by, for example, writing off unproductive research time, duplicative services, redundant costs precipitated by overstaffing, or other expenses with regard to which the professional generally assumes the cost as overhead in corresponding non-bankruptcy matters, or for which analogous non-bankruptcy

17

clients typically decline to pay." *Busy Beaver Bldg. Ctrs.*, 19 F.3d at 855-856 (emphasis added).

As the *Stromberg* court explained, this comparison is relevant to *how* bankruptcy attorneys should charge their clients, not how much. *In re Stromberg*, 161 B.R. 510, 517 (Bankr. D. Colo. 1993). Namely, bankruptcy attorneys should not charge their debtor clients, who are less inclined to dispute fees, for services that a private practice attorney would not charge clients. *Id.*

Counsel also finds fault with the divergent opinions between the two bankruptcy courts here in the Middle District regarding consideration of the PRF in determining fee reasonability, suggesting that the bankruptcy court in this matter incorrectly analyzes fee applications in relation to the PRF. However, the Third Circuit has held that judges should rely on their professional experience when reviewing attorney fees. "A judge's experience with fee petitions and his or her expert judgment pertaining to appropriate billing practices, founded on an understanding of the legal profession, will be the starting point for any analysis." *Busy Beaver Bldg. Ctrs.*, 19 F.3d at 854. As such, the judges in this district, granted the same statutory authority to review and reduce fee applications, are entitled to their differing viewpoints which serve to shape their decisions in this regard.

18

The bankruptcy court in the instant matter has stated that attorney use of the PRF for fees is not required, but cautions that hourly fees are subject to the court's scrutiny in its finding in *In re Badyrka*; "An attorney is free to agree with his client that he will be compensated on the basis of time spent times an hourly rate. If the attorney chooses to forego the PRF arrangement and file a fee application, the Court should review those fee requests under 11 U.S.C. § 330 and 11 U.S.C. § 1325." *Badyrka*, 2022 Bankr. LEXIS 2712, at *13 (citing *In re Long,* 553 B.R. 266, 271 (Bankr. M.D. Pa. 2016)). Additionally in *In re Carpenter*, Judge Conway recognized that "[t]he [Supreme] Court [] admonished that attorneys, in applying for fees, 'should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *In re Carpenter*, 665 B.R. 89, 102 (Bankr. M.D. Pa. 2024) (quoting *In re Stromberg*, 161 B.R. 510, 517 (Bankr. D. Colo. 1993) (citation omitted)). "[N]ot every hour or part of an hour spent by an attorney is 'billable' and it is incumbent on the attorney to exercise 'billing judgment' when submitting applications to the court'" *Id.*

Counsel overlooks, in his argument that the PRF should not be "tethered" to the fee application, the rationale espoused in *Jones* that the PRF should not act as a floor or a ceiling, but a guideline for attorney fees. *In re Jones*, 661 B.R. at 925.

19

His argument implies that the court here treats it as a ceiling. If that were the case, Counsel's fees would have been much less than awarded. Trustee believes that the court applies the PRF as a guidepost, and therefore disagrees with Counsel that the bankruptcy court erred in its reference to the PRF when ruling on his fees. The court, in a separate matter regarding Counsel's fees, has held, "[t]he Court presumes that upon the attorney's affirmation of the work done, fees that are less than or equal to the PRF are deemed to be reasonable." *Badyrka*, 2022 Bankr. LEXIS 2712, at \*14. However, scrutinization of higher fees does not equal a ceiling as Counsel suggests. The court here, as is customary practice in this and neighboring districts, uses the PRF as a balance on the scale rather than a bright line constraint.

Accordingly, it is the Trustee's position that, because the PRF is considered the standard for chapter 13 cases, the bankruptcy court appropriately referenced such to make its determination regarding Counsel's fees.

C.    <u>COUNSEL'S "CREDIBLE, UNCONTRAVERTED MARKET EVIDENCE" IS BASED ON STATISTICAL ANALYSES UNSUPPORTED BY EXPERT REVIEW AND IMMATERIAL TO THE COURT'S CONSIDERATION OF FEES.</u>

"The fee applicant has the burden of proving it has earned the fees it requests, and that the fees are reasonable." *Zolfo, Cooper & Co. v. Sunbeam-Oster Co.*, 50 F.3d 253, 261, (3d. Cir. 1995).

20

The Third Circuit in *In re Busy Beaver* further explains:

Although this case does not present us with a pressing need to define precisely how a bankruptcy court should verify the market rates, if any, for select clerical services, we observe that certainly a bankruptcy judge's experience with fee petitions and his or her expert judgment pertaining to appropriate billing practices, founded on an understanding of the legal profession, will be the <u>starting point</u> for any analysis. By starting point we mean to suggest that a bankruptcy judge should use his or her experience and expertise to locate the questionable charges and fees, and once having questioned a charge or fee may properly require the applicant to meet the burden to prove the market would recompense him or her for that charge.

Then the court should carefully consider relevant, competent evidence submitted with the fee application, provided as a supplement to the fee application, or presented at a hearing, *see supra* Part II B., even if the evidence directly contradicts the court's own judgment. *See In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992) ("Markets know market values better than judges do.") 32 Of course, if the bankruptcy court discounts any evidence presented by the fee applicant, *see In re York Int'l Bldg., Inc.*, 527 F.2d 1061, 1068 (9th Cir. 1975) (stating that courts "are themselves experts on the value of services rendered in a bankruptcy proceeding and are not bound by the evidence offered"); *Brown v. Culpepper*, 561 F.2d 1177, 1177-78 (5th Cir. 1977) (per curiam) (same), the court should to the extent practicable make findings of fact and provide reasoned explanations in the record to facilitate review, *see, e.g., In re Rusty Jones, Inc.*, 134 Bankr. 321, 333 (Bankr. N.D. Ill. 1991).

*Busy Beaver Bldg. Ctrs.*, 19 F.3d at 854.

During the August 7th hearing, Counsel suggested the type of evidence he would prepare for the court, "…if statistical information shows that my clients pay

21

substantially less to unsecured creditors than the clients of other attorneys, I think that would go a long way towards justifying that what I'm doing in these cases, even though it might be more time consuming, is worthwhile." (Ct. Tr. Aug. 7, 2024 Ex. G, at 31:21 – 32:1, Appellee's App. 118-19.) To which the court replied, "To me, and I apologize for saying this, this is a fee application that's before the Court. You have a burden of showing me that your fees were reasonable and necessary. Going off on tangents as far as other cases, other attorneys, I don't know what kind of statistics can be shown or who can verify your statistics, because I think every case—at least my experience was, there's—it's apples and oranges." (*Id.* at 32:3 – 9, 119.) The court continues, "…[if] for whatever reason my client would have paid 50 cents on the dollar versus five cents on the dollar, I don't know how a statistic would necessarily show why my clients paid 50 percent versus your five percent." (*Id.* at 33:19 – 22, 120.)

Counsel prepared a brief which included a formula derived by him to demonstrate that his clients pay less to unsecured creditors, in addition to comparative analyses to other bankruptcy attorneys in the district. However, as noted above, the court had reservations regarding this type of evidence. Largely, it is unclear as to how these figures represent performance as related to outcome, and

22

also because it is unsubstantiated or unsupported by a third-party expert. (*Id.* at 32:7, 120.)

Counsel's assertion that the bankruptcy court improperly disregarded the evidence because it was not addressed in the court's order is meritless. Under *In re Busy Beaver*'s framework, the court need only provide "findings of fact" and "reasoned explanations in the record to facilitate review." *Busy Beaver Bldg. Ctrs.*, 19 F.3d at 854. There is not a specific requirement that the court cite with particularity the aspects of the evidence that it did or did not consider. To the contrary, the court issued a five-page, detailed order explaining the reduction in fees.

Additionally, Counsel's asserted evidence does not contemplate the threshold questions courts are required to consider under 11 USCS § 330(a)(3)[5] when determining the reasonableness of attorney fees. That it speaks to his opinion as to the superior nature of his performance is immaterial under the Bankruptcy Code.

---

[5] 11 USCS § 330(a)(3) requires courts to consider the following relevant factors: a) time spent on services, b) rates charged for services, c) whether services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title, d) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed, e) if a professional person, whether they are board certified or otherwise demonstrate skill and experience in the bankruptcy field, and f) whether compensation is reasonable based on customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

Lastly, a crux of Counsel's argument is hinged to his proclamation of advanced representation of his clients based on self-derived calculations. Namely, that debtors represented by other attorneys in the district pay "twice as much" in attorney fees and general unsecured debts as his clients, and that they are also "nine times more likely to fail" in their plans. (Appellant Br. Feb. 25, 2026 32-34, ECF No. 13.) These results therefore, according to Counsel, "support that the time spent by Applicant is time well spent." (*Id.* at 34.)

Counsel's results are difficult to credit. Firstly, his equation balances "unsecured paid" plus "attorney fees paid" against the total unsecured debt. (*Id.*) By including attorney fees in the total of the first line, he is not objectively weighing the results based on raw data. Instead, he is asking the court to take attorney fees into consideration in evaluation of creditor debt to justify his reasoning that he should be able to charge more because they are paying less. If, as he claims, his goal is that "my clients pay less," then his equation should not take attorney fees into consideration at all. Essentially, Counsel is appropriating funds away from unsecured creditors and into his coffer by using formulaic justification as to why.

Counsel neglects the fundamental principle of bankruptcy court with this argument. Bankruptcy court is a court of equity, and the Trustee's role is to ensure

equitable administration of the estate. Much of the process is rooted in good faith to ensure fairness to the parties and put them in as close to the position they were before the proceeding. In *In re Vaughn*, the court reasoned that, "legal services provided must not only benefit the debtor, but also be necessary and appropriate under §330. Crucially, appropriateness under § 330 includes an evaluation of the results obtained by the attorney's work in the case. Thus, in reconciling *Village Apothecary* and § 330(a)(4)(B), the court is tasked with the careful balancing act between rewarding counsel for necessary services to a debtor, while also ensuring that such compensation aligns with the broader objectives and outcomes of the bankruptcy process." *In re Vaughn*, 660 B.R. 827, at 851.

Accordingly, Trustee asserts that Counsel's theory behind the fund reappropriation for his chapter 13 debtor clients is contrary to the purpose of the process and its good faith requirements, immaterial to the bankruptcy court's determination of his fees, and should not be considered relevant and competent evidence.

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, the Trustee believes and therefore avers the bankruptcy court acted properly here in making an effort to carefully review and reduce Counsel's application for fees. As the Third Circuit noted in *Busy Beaver,*

"[t]he integrity of the bankruptcy system…is at stake in the issue of a bankruptcy judge's performance of the duty to review fee applications *sua sponte*. The public expects, and it has a right to expect, that an order of a court is a judge's certification that the result is proper and justified under the law…. Nothing better serves to allay [public perceptions that high professional fees unduly drive up bankruptcy costs] than the recognition that a bankruptcy judge, before a fee application is approved, is obligated to [review carefully] and find it personally acceptable, irrespective of the (always welcomed) observation of the [United States Trustee] or other interested parties. *In re Busy Beaver,* 19 F.3d at 841 (quoting *In re Evans*, 153 B.R. 960 (Bankr. E.D. Pa. 1993)).

The bankruptcy court acted squarely within its statutory discretion under 11 U.S.C. §330 in reducing Counsel's fees by 40%. Its decision reflects a careful, reasoned and well-supported exercise of discretion, and so the bankruptcy court's order entered on September 30, 2025 should be affirmed in all respects.

26

Respectfully submitted this 25th day of March, 2026.

/s/Agatha R. McHale, Esquire
Pa. Bar No. 47613
Attorney for Trustee
Jack N. Zaharopoulos
Standing Chapter 13 Trustee
8125 Adams Drive, Suite A
Hummelstown, PA 17036
(717) 566-6097
amchale@pamd13trustee.com

27

## Certificate of Compliance

Pursuant to Fed. R. Bankr. P. 8015(h), Counsel certified that this document complies with the type-volume limitation of Fed. R. Bankr. P. 8015(a)(7)(B), which allows a brief that contains no more than 13,000 words.  This brief contains approximately 6,963 words.

/s/ Agatha R. McHale, Esquire

## **Certificate of Service**

This document is being served through the CM/ECF system.

<u>/s/ Agatha R. McHale, Esquire</u>