**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DOMINIC DECANTIS,<br><br>Appellant,<br><br>v.<br><br>JACK N. ZAHAROPOULOS, et al.,<br><br>Appellees. | CIVIL ACTION NO. 3:25-CV-01927<br><br>(MEHALCHICK, J.) |

## MEMORANDUM

Before the Court is Appellant Dominic Joseph DeCantis's ("DeCantis") appeal of a September 30, 2025, bankruptcy court decision rendered by United States Bankruptcy Court Judge Mark J. Conway. (Doc. 1). Jack N. Zaharopoulo ("Zaharopoulo") filed a response on March 25, 2026. (Doc. 14). For the following reasons, Judge Conway's decision is **AFFIRMED**.

## I. BACKGROUND AND PROCEDURAL HISTORY

On September 22, 2022, DeCantis filed for Chapter 13 bankruptcy. (Doc. 4-1; Doc. 4-6, at 1). The Bankruptcy Court for the Middle District of Pennsylvania confirmed DeCantis's bankruptcy plan on January 6, 2023. (Doc. 4-6, at 1). On April 29, 2024, DeCantis's counsel, Carlo Sabatini ("Counsel"), filed an interim application for attorney's fees requesting $11,869.25 in compensation and $449.85 in expenses totaling $12,319.10. (Doc. 13, at 11; Doc. 13-1, at 207; Doc. 14, at 7). The parties agreed to a stipulation reducing the requested amount by $3,354.50 and reducing the total amount to $8,964.60. (Doc. 13, at 11; Doc. 13-1, at 113). On September 30, 2025, Judge Conway granted in part and denied in part the fee application, awarding fees but applying a forty percent reduction to Counsel's initial $11,869.25 compensation request. (Doc. 13-1, at 209). Judge Conway awarded $7,121.55 in

fees and $449.85 in expenses for a total of $7,571.40. (Doc. 13-1, at 209-10). DeCantis filed this action prior to filing a second fee application. (Doc. 13, at 8). However, the Court stayed this matter, and while the case was stayed, Judge Conway granted DeCantis's second fee application which disclaimed the possibility of any additional fee applications being granted. (Doc. 13, at 8-9).

## II. Legal Standard

This Court has subject matter jurisdiction to hear this bankruptcy appeal pursuant to 28 U.S.C. § 158(a). "The district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees [entered by the Bankruptcy Court]." 28 U.S.C. § 158(a)(1). "Because of the unique characteristics of bankruptcy proceedings, finality is viewed 'in a more pragmatic and less technical sense.'" *Patrick v. Dell Fin. Servs.*, 366 B.R. 378, 384 (M.D. Pa. 2007) (quoting *718 Arch St. Assocs., Ltd. v. Blatstein (In re Blatstein),* 192 F.3d 88, 94 (3d Cir. 1999) (internal citations omitted)). "An appeal of a Bankruptcy Court's order is taken 'by filing a notice of appeal with the clerk [of the Bankruptcy Court] within the time allowed by Rule 8002.'" *In re Rose Color Inc.*, 198 F. App'x 197, 200 (3d Cir. 2006) (quoting Fed. R. Bankr. P. 8001); *see also Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc.*, 141 F.3d 490, 494 (3d Cir. 1998) (stating "[a] party may 'appeal from a final judgment, order, or decree of a bankruptcy judge to a district court' as of right 'by filing a notice of appeal with the [bankruptcy court] clerk within the time allowed by Rule 8002.'" (quoting Fed. R. Bankr. P. 8001)). "In reviewing a bankruptcy court's decisions, [Article III courts] review [the bankruptcy court's] legal determinations *de novo,* its factual findings for clear error, and its exercise of discretion for abuse thereof[.]" *In re RBGSC Inv. Corp.*, 253 B.R. 352, 362 (E.D. Pa. 2000). Courts review factual findings under the "clearly erroneous" standard which "is fairly stringent: 'It is the responsibility of an appellate court to accept the ultimate factual

determination of the fact-finder unless that determination either is completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data.'" *Fellheimer, Eichen & Braverman, P.C. v. Charter Techs. Inc.*, 57 F.3d 1215, 1223 (3d Cir. 1995) (quoting *Hoots v. Pennsylvania,* 703 F.2d 722, 725 (3d Cir. 1983)). "A finding of fact is clearly erroneous when it is completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supporting evidentiary data." *Jordan v. Wolf (In re Wolf)*, 573 B.R. 179, 182 (E.D. Pa. 2017) (cleaned up). Meanwhile, a *de novo* review requires a "fresh" review of the Bankruptcy Court's conclusions of law. *In re LTL Mgmt., LLC*, 64 F.4th 84, 99 (3d Cir. 2023).

## III. DISCUSSION

DeCantis avers that the Court should reverse Judge Conway's reduction of Counsel's fee request because 1) Judge Conway erred by imposing "a 40% across-the-board reduction to the requested fees without explaining how [he] selected the 40% figure, and without connecting that percentage to any articulated findings," 2) Judge Conway "improperly evaluated the lodestar request by measuring it against the district's 'Presumptively Reasonable Fee' . . . [without considering] whether compensation is reasonable in light of customary compensation charged in non-bankruptcy matters," and 3) by failing to "address material, uncontroverted market evidence submitted in response" to information DeCantis provided about "how the work performed benefited the debtor." (Doc. 13, at 12-14). Zaharopoulos counters that "[t]he bankruptcy court acted within its statutory discretion in reducing Counsel's fees by 40%, and accurately determined that his fees were excessive in relation to the complexity of the tasks." (Doc. 14, at 9). Zaharopoulos further contends that Judge Conway "correctly used the 'Presumptively Reasonable Fee' (PRF) as its starting point, and

did not err in determining that Counsel's self-created and self-serving statistical analysis did not meet his burden to prove that his fees were appropriate." (Doc. 14, at 9).

Under 11 U.S.C. § 330(a)(1), a bankruptcy court may award "(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and (B) reimbursement for actual, necessary expenses." According to § 330, "the court may, on its own motion or on the motion of the United States Trustee, the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested." 11 U.S.C.A. § 330(a)(2). Section 330 only permits reasonable compensation and provides the following regarding when compensation is reasonable:

> (3) In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including--
>
> > (A) the time spent on such services;
> >
> > (B) the rates charged for such services;
> >
> > (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> >
> > (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> >
> > (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> >
> > (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.
>
> 11 U.S.C.A. § 330(a)(3).

"[Section] 330's language, 'the court may award' reasonable compensation, 'imbues the court with discretionary authority,' and [with this language,] . . . the bankruptcy court possesses both the power and the duty to review fee applications." *Zolfo, Cooper & Co. v. Sunbeam-Oster Co.*, 50 F.3d 253, 258 (3d Cir. 1995) (quoting *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 841 (3d Cir. 1994)). "In evaluating reasonableness, as the Third Circuit has explained, a reviewing court considers: (i) the nature of the services; (ii) the extent of the services; (iii) the value of the services; (iv) the time spent on the services; and (v) the cost of comparable services in non-bankruptcy cases. A bankruptcy court has wide discretion to review fee applications." *In re Allegiance Coal USA Ltd.*, 670 B.R. 1, 16 (D. Del. 2025); *see In re Jeffery*, No. 2:23-CV-04452, 2025 WL 2555372, at *2 (E.D. Pa. Sept. 3, 2025) (stating "[i]n determining reasonableness, courts consider a number of factors, including the time spent, the rates charged, the necessity and benefit of the services rendered, and customary compensation for similar services outside bankruptcy Services that are duplicative, not necessary, or not reasonably likely to benefit the estate may not be compensated") (citations omitted).

District courts review a bankruptcy court's decision to award, deny, or reduce fees for abuse of discretion. *See In re Allegiance Coal USA Ltd.*, 670 B.R. at 16 (noting that "[t]his Court reviews the Bankruptcy Court's fee award for abuse of discretion"); *In re S.W.G. Realty Assocs., II, L.P.*, 265 B.R. 534, 536 (E.D. Pa. 2001) (noting the same). Bankruptcy court judges may rely on their expertise and experience as an attorney when evaluating the reasonableness of requested attorney fees. *See Zolfo, Cooper & Co.*, 50 F.3d at 258 (stating "the bankruptcy court may discount evidence presented by the fee applicant, since courts 'are themselves experts on the value of services rendered in a bankruptcy proceeding and are not bound by the evidence offered'") (quoting *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d at 854). Once a bankruptcy judge determines that a fee is unreasonable, the bankruptcy judge has discretion in how to

reduce the fees and may rely on percentage reductions. *See In re 388 Route 22 Readington Holdings LLC*, No. 22-1143, 2023 WL 4249266, at *3 (3d Cir. June 29, 2023) (nonprecedential) (stating "[w]hen reviewing for abuse of discretion, we grant less deference to court decisions that are unaccompanied by reasoning, but adequate reasoning for a fee award need not be accompanied by a precise computational breakdown. Indeed, it is within a bankruptcy court's discretion to reduce fees by a percentage") (citations and internal quotations omitted); *see also In re Kern*, No. 20-18381, 2021 WL 3518806, at *5 (Bankr. D.N.J. Aug. 10, 2021) (stating "'[i]f a court determines some of the time claimed by a party should be excluded, it may also use a percentage deduction as a practical means of trimming fat from a fee application'") (quoting *In re Nicholas*, 496 B.R. 69, 76 (Bankr. E.D.N.Y. 2011)).

DeCantis challenges both 1) Judge Conway's determination that the requested fee amount was unreasonable and 2) the amount and manner by which Judge Conway reduced Counsel's requested fee amount. (Doc. 13, at 20-34). DeCantis argues Judge Conway erred when making his initial determination that Counsel's requested fee amount was unreasonable because he impermissibly relied on Middle District of Pennsylvania's set presumptively reasonable fee ("PRF") for bankruptcy cases. (Doc. 13, at 29-34). DeCantis further contends that even if Judge Conway acted within his discretion to determine the requested amount was unreasonable, he abused his discretion by choosing an arbitrary percentage to reduce the fees by. (Doc. 13, at 20-29). DeCantis finally avers that Judge Conway erred by failing to consider Counsel's statistical evidence. (Doc. 13, at 34-41).

Beginning with Judge Conway's initial reasonableness determination, the Court finds that Judge Conway did not abuse his discretion by determining that Counsel's requested fee amount went beyond reasonable compensation. (Doc. 13-1, at 206-09). Judge Conway first determined that DeCantis's bankruptcy proceedings involved "a standard or routine Chapter

13 case with no unique or complex issues." (Doc. 13-1, at 207). Judge Conway held a hearing in which he reviewed Counsel's time entries. (Doc. 6; Doc. 13-1, at 209). At this hearing, Judge Conway questioned Counsel regarding how Counsel could spend around fifty-seven hours on a standard, noncomplex Chapter 13 bankruptcy proceeding and stated, based on his own over thirty years of experience in bankruptcy law, that DeCantis's proceedings should not have required that many billed hours to complete. (Doc. 6, at 6-7, 12). Judge Conway questioned Counsel about specific time entries such as time entries indicating that Counsel spent around twenty-six hours "preparing the schedules, the means test, and the plan." (Doc. 6, at 6-7). Judge Conway noted that preparing such schedules involves simple data entry into a computer program and based on the lack of complexity of DeCantis's proceedings, such a task should not have taken twenty-six hours. (Doc. 6, at 7-8).

Judge Conway then walked through various time entries which either had overly vague descriptions or descriptions of activities which should not have taken as long as Counsel claimed they had taken. (Doc. 6, at 10-12). Judge Conway provided Counsel with an opportunity to explain these time entries but ultimately was not satisfied by the explanations stating regarding Counsel's claimed time spent creating schedules, "I still have yet to get a definitive explanation or a description of the actual work that is done over 26 hours." (Doc. 6, at 20). Judge Conway properly relied on his "experience and expertise to locate the questionable charges and fees" and determined that Counsel did not adequately justify billing such excessive hours even after being given the opportunity to explain questionable time entries. *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d at 854 (noting a bankruptcy judge may rely on their experience when determining fee requests are unreasonable); *see Zolfo, Cooper & Co.*, 50 F.3d at 258 (noting the same); *see also In re Lewis*, No. 3:24CV387, 2026 WL 184294, at *7

(M.D. Pa. Jan. 23, 2026) (same). Accordingly, Judge Conway properly concluded that Counsel's total requested fee amount was unreasonable based on Counsel's time entries.

Judge Conway also evaluated whether the fees sought were reasonable by considering the Middle District's PRF, which the local bankruptcy rules set at $4,500 for routine Chapter 13 cases at the time Counsel worked on DeCantis's proceedings. (Doc. 13-1, at 208). DeCantis avers that Judge Conway erred by relying on the PRF because in *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833 (3d Cir. 1994), the Third Circuit found that 11 U.S.C. § 330(a)(3)(F) requires courts to base their reasonable fee determinations on reasonable compensation for legal work generally in the district rather than on compensation for bankruptcy attorneys specifically. (Doc. 13, at 30-31). The Court disagrees with DeCantis's characterization of Judge Conway's analysis and the caselaw.

During Judge Conway's hearing on fees, Judge Conway referenced the Middle District's PRF for Chapter 13 proceedings when questioning Counsel as to why a seemingly ordinary, noncomplex Chapter 13 proceeding required compensation more than double that of what is generally considered reasonable in the district. (Doc. 6, at 7-8) (stating "what I'm asking you is, can you identify what, in particular, makes his case so unique, or complicated, or complex to be almost double -- or more than double, perhaps almost triple what is the 4,500 PRF in this District"). Counsel responded that he did not "think that [there was] anything unusually complex about the case" and Judge Conway, unsatisfied with Counsel's responses, concluded that the requested fee amount was unreasonable. (Doc. 6, at 8; Doc. 13-1, at 208-09). Judge Conway did not reference the PRF to imply that it is the only appropriate fee amount Counsel could have asked for. (Doc. 6, at 7-8). To the contrary, Judge Conway ultimately awarded fees above the $4,500 PRF. (Doc. 13-1, at 209). Judge Conway cited the PRF as a point of reference for what is generally considered reasonable while comparing his

understanding of what degree of billing is reasonable for a simple case to Counsel's requested fee amount. (Doc. 6, at 7-8).

Judge Conway's use of the PRF is consistent with the Third Circuit's decision in *In re Busy Beaver Bldg. Centers, Inc.*. In that case, the Third Circuit held that bankruptcy courts must consider what non-bankruptcy attorneys would be compensated for similar amounts of work because bankruptcy attorneys should not receive higher compensation then other attorneys. *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d at 856 (stating "because § 330(a) does not entitle debtors' attorneys to any higher compensation than that earned by non-bankruptcy attorneys, the court should review a fee application to ensure the applicant exercises the same billing judgment as do non-bankruptcy attorneys") (citations and internal quotations omitted)). DeCantis overreads the Third Circuit's decision when arguing that Judge Conway erred by considering the PRF.[1] (Doc. 13, at 32). The Third Circuit's holding that § 330 requires bankruptcy courts to ensure that bankruptcy attorneys are not compensated disproportionately to non-bankruptcy attorneys does not mean that a bankruptcy court judge cannot consider the PRF or that information about what bankruptcy attorneys generally charge is completely irrelevant. To the contrary, the Third Circuit explicitly authorized bankruptcy court judges to rely on their knowledge and expertise relevant to billing practices "as a starting point" for determining what appears reasonable. *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d at 854 (stating "a bankruptcy judge's experience with fee petitions and his or her

[1] DeCantis also cites the fact that Judge Henry Van Eck, the Middle District's other bankruptcy judge, declines to use the PRF when reviewing fee applications to support his contention that use of the PRF is impermissible. (Doc. 13, at 33). However, it is not an abuse of discretion for a bankruptcy court judge to reach different conclusions and be persuaded by different considerations than other bankruptcy court judges. *See In re Boy Scouts of Am.*, 666 B.R. 489, 503 (D. Del. 2025), *aff'd*, No. 25-1136, 2025 WL 3251775 (3d Cir. Nov. 21, 2025) (stating "[m]erely showing that the Bankruptcy Court rendered a decision different from that rendered by another court in another case is insufficient to show reversible error").

expert judgment pertaining to appropriate billing practices . . . will be the *starting point* for any analysis . . . [A] bankruptcy judge should use his or her experience and expertise to locate the questionable charges and fees") (emphasis in original); *see also In re 388 Route 22 Readington Holdings, LLC*, No. CV 21-1244, 2023 WL 4418718, at *9 (D.N.J. July 10, 2023) (finding that a bankruptcy judge properly relied on "her experience with the fees commonly charged by bankruptcy professionals"). Information about what bankruptcy attorneys charge, while not determinative or controlling, is relevant to a determination of reasonableness, and Judge Conway only considered the PRF while questioning Counsel about suspect time entries and while evaluating Counsel's attempts to justify them. (Doc. 6, at 7-8; Doc. 13-1, at 208-09). Judge Conway afforded Counsel the opportunity to explain these apparent discrepancies, and Judge Conway found that Counsel was unable to. (Doc. 13-1, at 209 n. 7). Accordingly, Judge Conway acted within his discretion when finding that the requested fee amount was unreasonably high and his consideration of the PRF was not an abuse of discretion.

DeCantis argues that regardless of whether Judge Conway properly exercised his discretion in finding that Counsel's time entries were unreasonable, he abused his discretion by reducing the total fee amount by forty percent. (Doc. 13, at 20-29). Relying on cases outside of bankruptcy, DeCantis avers that Judge Conway erred by arbitrarily reducing fees by forty percent when he could have chosen any other number. (Doc. 13, at 20-29). The Third Circuit has emphasized that a bankruptcy judge's duty to review fee application differs from the duty of judge's preceding over adversarial proceedings because bankruptcy courts have a duty to protect protector the debtor's estate. *See In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d at 841 (noting that bankruptcy courts have "inherent obligation to monitor the debtor's estate and to serve the public interest" and this duty distinguishes fee evaluations in bankruptcy cases from fee evaluations in adversarial proceedings where "the adversarial nature of the proceedings,

the result of the losing parties' obligation to bear the burden of the fees awarded, guarantees that someone other than the court will closely review the fee request and will bring to the court's attention potential deficiencies"). Courts in the Third Circuit have found that it is not an abuse of a bankruptcy judge's discretion for the judge to reduce requested fees by a set percentage if the judge finds that a requested fee is unreasonably high. *See In re 388 Route 22 Readington Holdings LLC*, 2023 WL 4249266, at *3 ("it is within a bankruptcy court's discretion to reduce fees by a percentage"); *see also In re Kern*, 2021 WL 3518806, at *5 (reducing fees by a set percentage); *see also In re DeMarco*, No. BR 14-28245, 2016 WL 899915, at *6 (Bankr. D.N.J. Feb. 9, 2016) (same). Judge Conway's decision to reduce fees by forty percent is a reasonable use of his discretion considering that he found that Counsel was unable to explain certain time entries including time entries showing Counsel spent around twenty-six hours on relatively simple data entry. (Doc. 6, at 6-24; Doc. 13-1, at 209-10).

DeCantis finally argues that Judge Conway erred by failing to consider statistical evidence Counsel prepared. (Doc. 13, at 34-41). According to DeCantis, this evidence shows that Counsel's suggested fees were lower than other bankruptcy attorneys' fees and that Counsel's bankruptcy petitions fail less often than other attorneys' petitions. (Doc. 13, at 34-41). However, it is within a bankruptcy court's discretion to discount evidence based on their experience and expertise. *See Zolfo, Cooper & Co. v. Sunbeam-Oster Co.*, 50 F.3d at 258 (stating "the bankruptcy court may discount evidence presented by the fee applicant, since courts 'are themselves experts on the value of services rendered in a bankruptcy proceeding and are not bound by the evidence offered") (quoting *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d at 854); *see also In re 388 Route 22 Readington Holdings, LLC*, No. CV 21-01239, 2021 WL 6072534, at *7 (D.N.J. Dec. 23, 2021) (stating the same). Counsel raised the issue of statistics showing his clients pay less than other bankruptcy clients during Judge Conway's fee hearing. (Doc. 6, at

32-34). Judge Conway countered that without expert testimony evaluating the statistics, he did not believe such statistics would be helpful because DeCantis's Chapter 13 proceedings were straightforward and uncomplicated whereas Counsel's statistics likely incorporate fees in cases involving less simple proceedings. (Doc. 6, at 32-34). Regarding Counsel's claims that his clients are typically more successful than other bankruptcy petitioners, Judge Conway noted that even after he reduced the requested fees, he still awarded fees "substantially in excess of the PRF and what most other practitioners in this District charge in a routine consumer Chapter 13 case." (Doc. 13-1, at 209 n.8). Thus, Judge Conway acted within his discretion when reducing the sought fees and the Court **DENIES** DeCantis's appeal. (Doc. 1). The Court will **AFFIRM** the Bankruptcy Court's findings and conclusions as they relate to fees.

## IV. CONCLUSION

Based on the foregoing, DeCantis's appeal is **DENIED** and the decision of the Bankruptcy Court is **AFFIRMED**. (Doc. 1). An appropriate Order will follow.

**BY THE COURT:**

**Dated: September 16, 2026**

/s/ Karoline Mehalchick

**KAROLINE MEHALCHICK**
**United States District Judge**